**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| SVETLANA LOKHOVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1603 (AJT)(MSN) |
| | ) | |
| STEFAN A. HALPER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT HALPER'S MEMORANDUM IN SUPPORT OF HIS**
**MOTION FOR SANCTIONS**

Defendant Stefan A. Halper moves this Court for the imposition of sanctions against the

Plaintiff and her counsel pursuant to Fed. R. Civ. P. 11, the Court's inherent authority, and Va.

Code § 8.02-223.2.  This suit is a renewed effort to create another judicial platform to host

Plaintiff Lokhova's alleged political views, filed after this Court warned Plaintiff not to engage

in further such litigation misconduct against Defendant.  Plaintiff and her counsel seek to

transform a clearly privileged act—pre-litigation settlement demand letters to third parties about

their defamation of Defendant Halper—into another excuse for a lawsuit.  Prelitigation demand

letters are absolutely privileged under the common law, are constitutionally protected under the

First Amendment, and are immune under Virginia statute.  The filing of this suit, therefore, is not

warranted under existing law and is being pursued for improper purposes, including the

continued harassment of Defendant in violation of Fed. R. Civ. P. 11(b).  Defendant seeks

sanctions in the form of dismissal of this suit, and payment of the costs of responding to it,

including this motion, in the amount determined to be reasonable by this Court.  Defendant also

1

seeks leave to propound discovery relevant to the issue of the amount of proper financial sanctions.

This is the second suit brought by Plaintiff against Professor Halper.   The first, *Lokhova v. Halper*, 1:19-cv-632 (LMB)(JFA) (E.D. Va. 2019) ("*Lokhova I*") was for alleged defamation, conspiracy, and tortious interference with contract based upon Plaintiff's claim that she had been accused by the media of being a Russian spy and of being the paramour of Lt. General Michael Flynn.   *Lokhova I* began with the accusation that Professor Halper was "a rat****er[1] and a spy." Compl., ¶ 1 (D.E. 1); Am. Compl., ¶ 1 (D.E. 52).   The media articles offending Lokhova (mostly in the British press), were allegedly planted by Professor Halper as the "source" of his "media stooges" in his role as the mastermind of an international conspiracy of the FBI, CIA, and Defense Department to "topple" the Trump Administration by advancing the "Russian hoax."

The offending media articles, however, made no such allegation about Lokhova (indeed, several expressly disclaimed such contentions).   Suit upon all but one of these articles was dismissed as untimely because they were published more than a year prior to suit.   *Lokhova I* was filed a week after England resident Lokhova emerged from her personal bankruptcy in London, and, like the present suit, was brought by her Virginia counsel, Mr. Steven Biss.   At the time (May 2019), Mr. Biss was already pursuing a defamation suit against various others on behalf of the just-past Chair of the House Intelligence Committee, Congressman Devin Nunes, which would eventually ripen into at least six separate defamation suits on his behalf by Mr. Biss,[2] two

---

[1]   Defendant will use the term "rat****er" rather than the original term used in both the Complaint and Amended Complaint.

[2]   Beginning in 2019, attorney Biss serially filed defamation or RICO suits for more than a billion dollars in compensatory damages on behalf of Congressman Nunes, including:  *Nunes v. Washington Post*, Case No. 1:20-cv-01405 (LO) (E.D. Va. 2020); *Nunes v. Cable News Network, Inc.,* Case 3:19-cv-889 (REP) (E.D. Va. 2019) ($435 million defamation); *Nunes v. Lizza,* 5:19-

on behalf of his former Intelligence Committee staff person, Kash Patel,"[3] and one on behalf of his "Senior Advisor" Derek Harvey.  These suits have been described by one court as closely parroting one another.  *Harvey v. CNN*, 2021 WL 615138, *1 n.1 (D. Md. Feb. 17, 2021).  In addition to vilifying Defendant, an express objective of the *Lokhova I* Complaint was pursuit of discovery "which is in the exclusive possession of the Defendants, the FBI, Cambridge University, and their agents."  D.E. 1, ¶ 65.

On February 27, 2020, Judge Brinkema dismissed *Lokhova I* as untimely and without merit.  *Lokhova v. Halper*, 441 F.Supp.3d 238 (E.D. Va. 2020).  Judge Brinkema held that the complaint's conspiracy claims were "too conclusory to survive a motion to dismiss." *Id*. at 266. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-67 (2007)). The Court also noted that the Complaint's "statements suggest that political motives, more than legitimate jurisprudential concerns, drive this litigation." *Id*. at 245 n.5.  Her opinion pointed out the inconsistency between Plaintiff claiming injury from comments made about her participation as a Cambridge PhD student at a Cambridge dinner attended by General Flynn in 2014 and her later published admission to the New York Times that she was "'not a graduate student at the time' of the dinner."  *Id.* at 246 n.5 (quoting D.E. 52, at ¶ 137 ("I was not a graduate student at the time; there is not even a course in Soviet intelligence history at Cambridge University.")).  In her later

---

cv-4064 (CJW)(MAR) (N.D. Ia. 2019) ($75 million defamation); *Nunes v. Twitter,* Case No. CL1900715-00 (Henrico Cty. Cir. Ct. Va.) ($250 million defamation); *Nunes v. Fusion GPS,* Case 1:19-cv-1148 (LO)(TCB) (E.D. Va.)  ($3.3 million, trebled to $9.9 million under RICO); *Nunes v. WP Co. LLC,* 3:20-cv-146 (REP) (E.D. Va. 2020) ($250 million).

[3]  Patel's suits claim that in 2018 he "spearheaded the House Intelligence Committee's investigation of Russian interference in the authored the Committee's 2018 investigation of Russian interference in the 2016 Presidential election.  *Patel v. Politico*, No. CL 19-006745-00 (Henrico Cty. Cir. Ct. Va. 2019) ($25 million defamation; quoting Complaint, ¶ 4); *Patel v. New York Times,* (Fairfax Cty. Cir. Ct. 2019) ($44 million defamation).

appeal to the Fourth Circuit, Plaintiff reverted to the inaccurate version of her account, falsely claiming that she was a PhD student "teaching undergraduates" at the time of the Cambridge dinner, and had only told the Times that she was not then enrolled in a Soviet history class. Lokhova Reply Brief, at 6. n3.

In response to Defendant Halper's motion for sanctions, Judge Brinkema acknowledged that:

    (i)    there was "an opinion issued by another judge in this district warning Biss not to engage in <u>ad hominem</u> attacks" citing *Steele v. Goodman*, 2019 WL 3367983, *3 (E.D. Va. July 25, 2019)[4];

    (ii)    "the complaint exaggerates the nature and content of the allegedly defamatory statements;" and

---

[4] Specifically, in July, 2019, Judge Lauck remarked of Plaintiff's counsel:

> It is with chagrin that Court must begin to address this motion by observing that, despite assistance by counsel, Plaintiffs engage in *ad homin[e]n* attacks against Goodman which the Court cannot tolerate. Whatever the legal merits of Plaintiffs' Motion for Sanctions, the Court will not consider motions declaring that a litigant—especially a *pro se* litigant—has "made a fool of himself." (*Id.* 1; *see also, supra*, n.4.) The Court reminds Counsel for Plaintiffs that, as an officer of the Court, he may be sanctioned for engaging in conduct unbefitting of this Court. Local Rule 83.1 (J), which pertains to "Courtroom Decorum," has equal force on the papers: "Counsel shall at all times conduct and demean themselves with dignity and propriety." E.D. Va. Loc. Civ. R. 83.1 (J). The Court will deny without prejudice the Motion for Sanctions.

*Steele v. Goodman*, 2019 WL 3367983, *3 (E.D. Va. July 25, 2019).

    Mr. Steele is a commentator on conspiracies, including Pizzagate and Qanon. Among other titles, Mr. Steele claims to be the Chief Counsel and a "Senior Commissioner for the Judicial Commission of Inquiry into Human Trafficking and Child Sex Abuse of the International Tribunal of Natural Justice." *Id*. Doc. No. 38, Amended Complaint, ¶ 3. On June 29, 2017, Robert Steele claimed, in a broadcast interview with Alex Jones on InfoWars, that "there is a colony on Mars that is populated by children who were kidnapped and sent into space on a 20-year ride, so that once they get to Mars, they have no alternative but to be slaves on the Mars colony." https://space.com/37366-mars-colony-alex-jones.html. NASA has denied this.

   (iii)    "Biss and Lokhova had to have known that most of her claims were time-barred, as she had previously filed an unrelated defamation lawsuit in the United Kingdom, which was dismissed as untimely under the one-year statute of limitations applicable in that jurisdiction."

*Lokhova I*, 441 F.Supp.3d at 267.

Nonetheless, considering sanctions to be "draconian," Judge Brinkema denied bad faith (inherent authority) sanctions "without prejudice" to renewal based upon the future conduct of Lokhova and her counsel.  Specifically, Judge Brinkema ruled:

The allegations of improper behavior by Biss are undoubtedly more severe than those by Lokhova, *and should Biss file further inappropriate pleadings or pursue frivolous post-judgment litigation against any of these defendants, sanctions might well be justified.*

441 F.Supp.3d at 267 (emphasis added).

Plaintiff and her counsel have appealed the dismissal of her claim to the Fourth Circuit, and Halper has cross-appealed this sanctions denial without prejudice.  *Lokhova v. Halper*, Case Nos. 20-1368 & 1437 (4th Cir.).  When argued to the 4th Circuit on March 10th, a member of the panel described the allegations of Lokhova's civil Complaint as themselves being defamatory against Professor Halper.[5]  Courts should not become weapons of defamation themselves.

As explained herein, the use of defamatory pleadings and conclusory conspiracy allegations to intimidate and to burden perceived political or media adversaries is not confined to *Lokhova I.*  But *Lokhova I* fully supports Defendant's contention herein that this suit was filed for improper purposes, including: (i) to continue with Plaintiff's campaign to injure Defendant's reputation; and (ii) to prevent, deter, and chill the exercise of Defendant's rights to protect his reputation, including by petitioning the government through litigation.  Lokhova and Biss have no veto authority over Defendant's protection of his name, and their usurpation of this Court for

---

[5] https://www.ca4.uscourts.gov/OAarchive/mp3/20-1368-20210310.mp3.

this purpose is an abuse of litigation.  Such misconduct falls well within the prohibitions of Judge Brinkema's admonition from *Lokhova I*. Furthermore, this suit falls within a pattern of lawsuits brought to vilify, deter, and preempt perceived political adversaries by imposing litigation burdens far outweighing the amounts conceivably in controversy.

After the July 25, 2019 admonition of Judge Lauck to Plaintiff's counsel against further *ad hominem* attacks Plaintiff's counsel continued to make conspiracy-tinged fulminous accusations in other cases, including[6]:

- On August 29, 2019, an Amended Complaint was filed in *Lokhova I*, repeating its profane characterization of Professor Halper as a "ratf**cker" (D.E. 52, ¶ 1);

- On November 26, 2019, Plaintiff' counsel filed a $25 million defamation suit on behalf of Kash Patel, then a staff member on the National Security Council , *Patel v. Politico*, No. CL 19006745-00 (Henrico Cir. Ct. Va.), and formerly the Intelligence Committee staff counsel to Congressman Nunes, pleading as a fact that Politico is one of the "worst offenders" in an "era of weaponized media" comprised of  "partisan hacks and character assassins," and alleging that Intelligence Committee Chair Congressman Schiff, then presiding over impeachment proceedings, was a "congenital liar" who made the ongoing House impeachment inquiry a "Kangaroo Court" thereby stripping the scheduled public impeachment testimony of Colonel Vindman and Fiona Hill  of any witness immunity from liability for defamation, an apparent act of witness intimidation under 18 U.S.C. § 1512(b)-(d);[7]

- On December 3, 2019, Plaintiff's counsel filed a $435 million defamation suit on behalf of Congressman Nunes, *Nunes v. CNN*, 3:19-cv-00889 alleging CNN "is the mother of fake news", and accusing it of misconduct by relying upon its alleged information source Lev Parnas because he is  "a renowned liar, a fraudster, a hustler . . . a radioactive wolf"), based upon public statements made on his behalf by his criminal defense counsel Joseph Bondy, but when questioned

---

[6]  *See Kunstler*, 914 F.3d at 524 ("'The court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances.'") (quoting ABA, Standards and Guidelines for Practice Under Rule 11 of the *Federal Rules of Civil Procedure* (1988)).

[7]  A copy of this Complaint, not bearing any file stamp, was available the same day by hyperlink in the Breitbart publication.

later that day on television about the phone records of Nunes' prior calls with Parnas, Congressman Nu's would claim unfamiliarity with Mr. Parnas, even though it was Parnas' alleged notoriety as a liar that was the claimed justification for Nunes filing his $435 million suit earlier that day;[8]

- On March 20, 2020, Plaintiff's counsel filed a $250 million dollar lawsuit on behalf of Congressman Nunes (*Nunes v. WP Company LLC*, 3:20-cv-146 (E.D. Va.) alleging that "Billionaire, Jeff Bezos," used a "Hit Piece" as part of a multi-year Washington Post campaign to defame President Trump and his allies;

- On May 20, 2020, the presiding judge in both of these aforementioned *Nunes* EDVA suits (the Honorable Robert Payne) transferred them out of Virginia expressing its "significant concerns about forum shopping" and previously "explained to Plaintiff's counsel on numerous occasions," and quoting in full the prior admonition of Judge Lauck leveled at the *ad hominem* pleadings of Plaintiff's counsel in the *Steele* case from the year before, noting: "Unfortunately, that circumstance also reflects some of the papers filed in this case." *Nunes v. WP Co.*, 2020 WL 2616707, *2 & 6 (E.D. Va. May 20, 2020); *Nunes v. CNN*, 2020 WL 2616704, *2 & 6 (E.D. Va. May 20, 2020);

- On July 10, 2020, Plaintiff's counsel filed a defamation claim against the Anti-Defamation League (*Garrison v. Anti-Defamation League*, 3:20-cv-00040 (E.D. Va.)), alleging that the League is "a tool of the Democratic Party and private corporations, such as Google, to target supporters of President Donald Trump," and claiming as a fact that that defendant Anti-Defamation League "knew that the Rothschilds controlled [George] Soros and that Soros controlled [Flynn NSA successor General] McMaster; and,

- On October 21, 2020, Plaintiff's counsel filed a $30 million defamation suit on behalf of Derek Harvey, a "Senior Advisor" to Congressman Nunes, against CNN, Lev Parnas, and his defense counsel Joseph Bondy, based upon the statements previously at issue in the prior *Patel* suit; this suit would be dismissed for failure to state a defamation claim, and for the absolute privilege applicable to lawyer statements about court and Congressional proceedings under Maryland law precluding liability for attorney comments about the impeachment and court proceedings; *Harvey*, 2021 WL 615138, *1 n.1, *15.

---

[8]  Spiegelman, "*Devin Nunes Shares His Fuzzy Recollections of Those Alleged Giuliani and Parnas Calls,*" LA Times (December 4, 2019) ("You know, it's possible," Nunes replied. "I haven't gone through my phone records. I don't really recall that name. I remember the name now because he has been indicted;" "I will go back and check my records, but it seems very unlikely I will be taking calls from random people.").

On March 10, 2021, a *pro se* attorney defendant in *Trimarco v. Farley, et al.*, 1:20-cv-01408-RGA (D. Del.) filed a motion to disqualify plaintiff's counsel Steven Biss or to bar his admission *pro hac vice* based upon a variety of prior disciplinary actions by Virginia courts and judicial admonishments in cases Biss handled, including the admonishment of Judge Brinkema in *Lokhova I* that "'*should Biss file further inappropriate pleadings or pursue frivolous post-judgment litigation against any of these defendants, sanctions might well be justified.*'"  D.E. 28 (quoting *Lokhova*, 441 F.Supp.3d at 267 (emphasis added)).  Exhibit 1.

The disqualification motion in *Trimarco* accurately and "respectfully note[d] that Biss filed post-judgment litigation against the defendants"—*i.e.*, this case.  *Id.*, at 10 n.5.  Mr. Biss opposed the disqualification motion by representing that:

> "This is not true.  On behalf of his client, Mr. Biss pursued an appeal to the Fourth Circuit Court of Appeals.  That Appeal is pending."

*Trimarco*, D.E. 28, at 4 n3.

At the time, however, this case was unquestionably pending in this, and was filed by Biss after judgment in *Lokhova I*, and is against the same defendant he sued unsuccessfully in *Lokhova I*—Defendant Halper:

> On March 25, 2021, Plaintiff's counsel filed a $75 million defamation complaint in the Southern District Court of New York on behalf of family member of General Flynn against CNN. Flynn v. CNN, 1:21-cv-02587.  This suit alleges that CNN is an agent of the Democratic Party and a Democratic Party trumpet.  CNN recruits, hires and promotes journalists who share its extreme ideology and political viewpoints.  CNN harbors an institutional animosity, hostility, hatred, extreme bias, spite and ill-will towards the Flynn family, and, in particular, General Flynn.  This animosity, bias, prejudice and desire to harm motivated CNN to publish the intentionally false statements and insinuations about Plaintiffs at issue in this case.  CNN intended to inflict harm through knowing or reckless falsehoods.  CNN published the false statements as part of a broad, pretextual, premeditated and ongoing disinformation campaign against General Flynn orchestrated by political operatives and agents of the Democratic National Committee ("DNC") for whom CNN acts as a surrogate and bullhorn.  CNN fears General Flynn.  The purpose of the national campaign is to impair or abrogate General Flynn's ability to run for political office in 2022 or 2024 or his ability to support another candidate for office… This is

CNN's regular way of doing business. CNN's news is not real news. It's sources are not real. They are political operatives.

*Flynn v. CNN*, 1:21-cv-02587, Docket No. 1, ¶ 22 (S.D.N.Y.)

On February 22, 2012, while this case *(Lokhova II)* was pending and during the Rule 11 safe harbor period (February 12th to March 9th), attorney Biss filed a petition with the Chief Judge of this Court captioned "Verified Emergency Petition for Reinstatement." *In re Matter of Steven Scott Biss*, 2:21-mc-00003-MSD. *See* Exhibit 2. In his petition, Mr. Biss applied for emergency readmission to the Bar of this Court under Local Civil Rule 83(L) based upon his failure to seek or obtain reinstatement to this Court in 2010 after he had been suspended for a year from the practice of law by the Virginia Supreme Court as a discipline sanction. *Id.* Mr. Biss represented that he first learned of his lack of reinstatement to the bar of this Court on February 17, 2021, again while this action was pending and during the safe harbor period. Whether, when, and how Mr. Biss is or was reinstated to the Bar of this Court is a matter allocated by Rule 83(L) to the Chief Judge. But, at no time since February 17, 2021 has Mr. Biss notified Defendant, or this Court, of this deficiency regarding his legal authority to prosecute this case on behalf of Plaintiff. Accordingly, before and after repeated judicial admonitions, Plaintiff's counsel persists in vilifying and defaming the perceived political adversaries of his clients in court to advance their political objectives. Moreover, these suits share a foreseeable if not fully intended, common effect of chilling the speech and petition rights of their targets. "If a complaint is not filed to vindicate rights in court, its purpose must be improper." *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990) (sanctioning civil rights lawyer for brining civil rights suit against county officials for political purposes).

## INTRODUCTION

In the related *Lokhova I* suit,[9] seeking $25 million in damages against Professor Halper, Plaintiff and her same counsel claimed that Lokhova, a British and Russian citizen, was defamed and lost a book contract as a result of an international conspiracy comprised of the FBI, CIA, Cambridge University "operatives," six newspapers in the United Kingdom and the United States, and numerous Twitter users, all led by Defendant Halper, in a scheme to "smear" General Michael Flynn in order to "topple" the Trump Administration. *Lokhova*, 441 F.Supp.3d at 245. The May, 2019 *Lokhova I* Complaint was promptly used to solicit funds, through GoFundMe.com and other websites, to finance Plaintiff's litigation and lifestyle. She also used her multiple social media platforms for the same purposes. In February 2020, this Court dismissed Plaintiff's defamation, conspiracy, and tortious interference claims, as untimely, conclusory, and meritless. *Id*.

Lokhova was a former graduate student at Cambridge University, earning a master's degree in 2002, but no degree thereafter. Her Master's Degree was in European Studies, but her dissertation focused upon the founder of Russia's intelligence services. Lokhova was never a student of Professor Halper and has never spoken to him. D.E. 1, ¶ 32. D.E. 52, ¶ 34. Nonetheless, in her earlier Complaint, Lokhova falsely held herself out as being a Cambridge PhD student in 2014 when she met General Flynn at a dinner hosted at Cambridge and was thereafter allegedly maligned about this meeting by Professor Halper's alleged "media stooges" in the United Kingdom and here in 2017 and 2018.

---

[9] When filing this action, Plaintiff's counsel did not identify it as a related case to *Lokhova I*, notwithstanding Judge Brinkema's specific admonition. *Lokhova II*, D.E. 1.1 (civil cover sheet). Sanctions have been imposed for nondisclosure of related case status. *See, e.g., Bailey v. Dart Container Corp. of Michigan*, 980 F.Supp. 584, 591 (D. Mass. 1997) (sanctions for failure to comply with local related case rule). This Court, however, does not appear to have a rule requiring counsel truthfulness in disclosing related cases.

The Complaint purported to describe an international conspiracy called "Spygate" in which the FBI, Defense Department, and the CIA orchestrated a "coup" attempt against President Trump by falsely alleging connections between Trump's 2016 campaign and Russian officials.  This FBI-directed "coup" was allegedly led by Professor Halper using his "media stooges" and "Cambridge operatives" formerly with British intelligence to bring down the Trump Administration by leaking false information to British newspapers.  The Complaint further alleges that Professor Halper "colluded with operatives at Cambridge University, and agents employed by Dow Jones, the Guardian, the Times, and the Post to leak false statements about Plaintiff as part of a nefarious effort to smear General Flynn and fuel and further the now debunked and dead narrative that the Trump campaign colluded with Russia." D.E. 52, ¶ 20.

According to Lokhova and her counsel, this U.S. intelligence agency-media-Cambridge-operative conspiracy was funded by Defense Department research contracts to Professor Halper that were instead used to fund the conspirators' "coup" against President Trump.  Specifically, the Amended Complaint alleged that Halper was paid over a million dollars in annual awards by the Defense Department's Office of Net Assessment, and falsely alleged that "[o]ver half of the sum paid to Halper was for his counterintelligence efforts surrounding the 2016 Presidential election." D.E. 52, ¶ 13.  Plaintiff, her counsel, and their Amended Complaint thus falsely claimed that Professor Halper had engaged in government contract fraud.

*Lokhova I* began with the accusation that Professor Halper was a "rat****er" (D.E. 1, ¶ 1.) and this epithet was used to promote the suit over the internet, including for purposes of raising internet financing for Lokhova.  D.E. 73.2.  After Defendant moved to dismiss the Complaint on the obvious ground that all but one of the newspaper articles was untimely under the one-year defamation limitations period, Lokhova and her counsel repeated the same untimely

claims in their Amended Complaint, which were later dismissed on this very ground.  *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1383-84 (4th Cir. 1991) (affirming Rule 11 sanctions for failing to withdraw "clearly-time-barred" defamation claims after the filing of a motion to dismiss on that ground).

While the case was pending before Judge Brinkema, Lokhova announced that she was publishing a book which she described as detailing "my quest for accountability and justice." This book was entitled "Honeytrap: The True Story of Spygate."  D.E. 79.2.

After the dismissal of Lokhova's suit and the admonition of Judge Brinkema, Plaintiff had two publishing houses—Simon & Schuster and Post Hill Press--market a book on the internet under a different title: "The Spider: Stefan A. Halper and the Dark Web of a Coup." Among other things, this marketing material posted by Simon & Schuster and Post Hill Press on the internet (Exhibit 3) falsely alleged that:

- Professor Halper was a "spy, an evil spider at work within and around the Trump campaign," where he "schemed, lied, and ensnared members of the Trump campaign into his web, including the future president";

- Professor Halper engaged in government contract fraud by obtaining a huge payday from the Defense Department to finance this work as a "spider" and "spy" in the Trump campaign where he "initially targeted the important Trump advisor, Lt. General Michael Flynn";

- Professor Halper "fabricated and sustained fantastical narrative of the Russian hoax"; and

- He did so by "collaborat[ing] with the intelligence establishment to take the 'kill shot on Flynn,' leaking classified information to his associates in the press."

In a subsequent letter dated March 13, 2020 to Simon & Schuster, Exhibit 4, and another to its affiliate Post Press Hill Press on April 2, 2020, Exhibit 5, counsel for Professor Halper objected to these false allegations in the marketing material and asked them to cease publication

of this defamatory marketing material.  These letters demanded that each firm enter into settlement negotiations over Professor Halper's defamation claims regarding their marketing material and initiate a litigation hold on specific material.  The letters acknowledged that the book had yet to be published and therefore the letters could not speak as to that content.

On April 10, 2020, counsel for Lokhova, Mr. Biss, sent a letter to Professor Halper's counsel Reed in response to the letters to Simon & Schuster and Post Hill Press, asserting: "Your threats of litigation and your request for a 'litigation hold' are idle and toothless because Halper knows the truth."  On behalf of Lokhova, Mr. Biss made various demands, including for a retraction of the letters, for damages, for settlement negotiations, for a litigation hold, and for a response. *Id.*

Counsel for Halper responded to the Biss letter by pointing out that demand letters are privileged, thereby precluding suit over them, and promising to renew Professor Halper's claims of bad faith litigation from *Lokhova I* if Biss filed a lawsuit over the demand letters to Simon & Schuster and Post Hill Press.

On December 31, 2020, Plaintiff and counsel Biss filed the instant lawsuit claiming defamation and tortious interference from the demand letters to Simon & Schuster and Post Hill Press.  On February 12, 2021, Defendant transmitted a draft motion for sanctions, in conformity with the procedures of Fed. R. Civ. P. 11(c)(2), demanding that Plaintiff withdraw and dismiss this action or Defendant would seek sanctions, including those available under Rule 11.  No such withdrawal of the complaint has occurred, including prior to the expiration of the safe harbor period on March 5, 2021.   Instead, Plaintiff served the Complaint upon Defendant on March 9, 2021.

## <u>APPLICABLE STANDARDS</u>

This Court has inherent authority to impose sanctions for filing litigation in bad faith, and it is abundant supply here. "'[T]he filing of a frivolous lawsuit may demonstrate bad faith where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass the defendants rather than to obtain a favorable judgment.'" *Raya v. NPAS, Inc*., 2020 WL 3550002, *3 (E.D. Va. May 11, 2020) (quoting *Hick v. Keonig*, 766 F.3d 265, 270 (7th Cir. 1985)).  *See Holmes v. Wal-Mart Stores East, L.P.*, 2011 WL 1842868, *6 n.22 (E.D. Va. April 27, 2011) (J. Ellis) ("abuse of the judicial process warrants use of the inherent power to impose sanctions on the offending party or its counsel, or both."); *Chambers v. NASCO, Inc*., 501 U.S. 32, 46 (1991)).

While inherent authority sanctions can rest upon bad faith alone, Rule 11 sanctions also require an objective finding of improper purpose.  *Raya*, 2020 WL 3550002, at *3 (citing *Blue v. U.S. Dept. of the Army*, 914 F.2d 525, 533 (4th Cir. 1990)); *Kunstler*, 914 F.2d at 518 (improper purpose determined "under an objective standard of reasonableness rather than assessing subjective intent").

 "If counsel willfully files a baseless complaint, a court may properly infer that it was filed either for purposes of harassment, or some purpose other than to vindicate rights through the judicial process." *Kunstler*, 914 F.2d at 519.  Here, the Complaint is improper because it constitutes both continued harassment (after prior admonition by this Court) and is baseless.  In *Kunstler*, for example, the Fourth Circuit upheld Rule 11 sanctions imposed upon attorney William Kunstler after he voluntarily dismissed a civil rights suit alleging a "county-wide 'conspiracy'" of local officials to use the State Bureau of Investigation as "political police" to discredit a political candidate. *Id.,* at 514-16.  The trial court concluded that the withdrawn suit

was baseless, and was filed to attract publicity, to "embarrass" local officials, and to misuse the discovery process, all of which the Fourth Circuit considered and upheld as improper.[10]

"Repeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose." *Id.*, at 519. The Fourth Circuit reached the objective conclusion that the filing of a baseless civil rights lawsuit by experienced civil rights counsel for publicity and political purposes was improper. *Id.*, at 520.

Plaintiff's counsel has asserted that he is "an experienced trial lawyer, with a national practice focused on complex business tort litigation," who has "successfully litigated to verdict/judgment hundreds of cases involving claims of defamation, false light, malicious prosecution, conspiracy, fraud, tortious interference with contract, and similar legal issues." hundreds of business tort claims to judgment. *See* Exhibit 6, *Nunes v. Cable News Network, Inc.*, 1:20-cv-03976 (LTS)(OTW) (S.D.N.Y.) D.E. 41.2 (Biss *Pro Hac Vice* Corrected Affidavit). By all accounts, Plaintiff's counsel is experienced in the filing of defamation actions, and probably equally well-versed in the purpose and use of pre-filing demand letters.

In determining whether a Rule 11 violation has occurred, a court should assess whether counsel: (1) had a factual and legal basis to support the filing of the pleading; and (2) filed the pleading with an improper motive. *Kunstler,* 914 F.2d at 513. The inquiry is an objective one, focusing on whether a reasonable attorney in like circumstances could believe that his actions were factually and legally justified." *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir. 1987). "For the purposes of Rule 11, the actual good faith of the attorney filing the pleading is irrelevant."

---

[10] *Id.*, at 515 ("Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support. Unsubstantiated claims such as these constitute an abuse of the judicial process for which Rule 11 sanctions were designed.").

*Fastov v. Palisades Swimming Pool Ass'n,* 2006 WL 4560161, *7 (D. Md. Jan. 31, 2006);

*Kunstler* 914 F.2d at 518 ("an objective standard of reasonableness rather than assessing

subjective intent").  '"Circumstantial facts surrounding the filing may also be considered as

evidence of the [party's] purpose.'"  *Sanders v. Farina*, 197 F.Supp.3d 892, 900 (E.D. Va. 2016)

(quoting *Kunstler*, 914 F.2d at 519), *aff'd*, 671 Fed. Appx. 183 (4th Cir. 2016).

Other instances of misconduct are directly relevant to this Court's determination of

whether to impose sanctions.  *See, e.g., See Kunstler*, 914 F.3d at 524; *Glucksberg v. Polan*, 251

F.Supp.2d 1294, 1296 (S.D. W.Va. 2003) (relevant under Rule 11). Thus, not only are the

aforementioned sanctions proceedings relevant to this motion, there is a wealth of other relevant

litigation history evidence, which is herein addressed.

The requested Sanctions can be imposed upon a party (Ms. Lokhova) and her counsel.

*See Holmes,* 2011 WL 1842868, at *6 n.22 ("abuse of the judicial process warrants use of the

inherent power to impose sanctions on the offending party or its counsel, or both"); *Chambers*,

501 U.S. at 46; Fed. R. Civ. P. 11(c)(1) (sanctions may be imposed upon "on any attorney, law

firm, or party who violated the rule or is responsible for the violation").

Among the factors that this Court can consider in measuring appropriate sanctions are:

"(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the

ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Kunstler*, 914 F.2d

at 523.  Of these factors, the only issue requiring potential further inquiry is the ability to pay of

Plaintiff and her counsel.  "[T]he burden is upon the parties being sanctioned to come forward

with evidence of their financial status…."  *In re Kunstler*, 914 F.2d at 524; *Johnson v. Pennymac

Loan Services, LLC*, 2020 WL 5371347, *7 (E.D. Va. Sept. 8, 2020) (financial inability is

affirmative defense).  Accordingly, under Rule 11(c)(2), Defendant Halper has previously

tendered with his safe harbor motion a set of discovery requests limited to these financial issues, and hereby requests leave to propound them for purposes of this motion. *See* Exhibit 7.

## I.     The Letters Are Absolutely Privileged as Litigation Settlement Demands

As Plaintiff's counsel knows, demand letters are preliminary to litigation and are therefore considered absolutely privileged under Virginia common law.  *Mansfield v. Bernabei*, 284 Va. 116 (2012). Plaintiff's counsel has recently had a defamation case he brought against an attorney dismissed on the basis of the same absolute privilege which is equally recognized under Maryland law.  *Harvey*, 2021 WL 615138, at *15.  This privilege is derived from the common law absolute privilege applicable to communications within litigation.  *See Massey v. Jones*, 182 Va. 200 (1944).

In *Bernabei*, for example, the Virginia Supreme Court affirmed a dismissal (demurrer) of a defamation case based upon an attorney's pre-suit written settlement demand.  In so doing, the Court identified, quoted, and followed, sections 586 and 587 of the Restatement (Second) of Torts, which state:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding. [§ 586]

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding. [§ 587]

*Bernabei*, 284 Va. at 123-124.

This absolute privilege is sometimes known as the "judicial proceedings privilege."

*Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (Garland, J.) (citing Restatement (Second) of Torts § 586).

The Virginia Supreme Court applied this privilege in *Bernabei* after observing that "[n]umerous jurisdictions apply an approach in accord with the Restatement, holding that absolute privilege may bar defamation claims on the basis of pre-filing, litigation-related communications." 284 Va. at 124.  One such jurisdiction, according to the *Bernabei* opinion, is the Fourth Circuit, which the Virginia Supreme Court explained had previously correctly predicted Virginia courts would apply the Restatement's absolute privilege.  *Id.* ("'The Fourth Circuit likewise applied absolute privilege in a case involving a pre-filing letter, finding it 'probable that Virginia would follow the lead of the Restatement [(First)] of Torts, § 587 (1938).'") (quoting *West v. Marjorie's Gifts, Inc.*, 529 F.2d 518, 518 (4th Cir. 1975) (unpublished)).

The policy promoted by this absolute privilege is clear: "the settlement of claims is facilitated through free and open communication regarding the issues between parties and their attorneys, as well as between opposing counsel."  *Bernabei*, 284 Va. at 125.  Citing longstanding Virginia precedent, the Virginia Supreme Court emphasized: "[t]he importance of encouraging compromise and settlement is unquestioned in our jurisprudence."  *Id.*, at 124.

This policy protecting pre-suit settlement communications has special salience in defamation cases because a publisher's retraction, or failure to do so, may have relevance to the issues of intent and damages, including matters of aggravation and mitigation.[11]  *See Nunes v. Lizza*, 2020 WL 5504005, *20 (N.D. Iowa Sept. 11, 2020) (rejecting Plaintiff's counsel's conclusory claim that his pre-filing demand sufficient to plead required malice).  In fact, "[a]

---

[11] *See, e.g., News Leader Co. v. Kocen*, 173 Va. 95, 106 (1939) (damages mitigation); *Knoxville Pub. Co. v. Taylor*, 31 Tenn.App. 368, 375 (1948) (retraction mitigates damages).  *See* Restatement (Second) of Torts § 580A and comment d (1977) ("Under certain circumstances evidence [of refusal] might be relevant in showing recklessness at the time the statement was published.").

demand for retraction of allegedly libelous material is often a prerequisite to an action for

defamation." *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F.Supp.2d 1334, 1337 (S.D. Fla.

1998).  *See, e.g.*, *Nunes v. CNN*, 2021 WL 665003, *5 & 8 n.6 (S.D.N.Y. Feb. 18, 2021)

(dismissing suit for lack of pre-filing demand, and for insufficiency of "only bare conclusory

statements" alleging conspiracy).

This Court has since cited the *Bernabei* opinion as standing for the proposition

that:

> All representations that are made by an attorney as part of the judicial process and
> relevant to the case are protected by absolute judicial privilege, even if such
> communications are made maliciously and with knowledge of their falsity.

*Wolfe v. Zuckerman*, 2020 WL 5351036, *2 (E.D. Va. Sept. 4, 2020) (Hilton, J.).

In *Van Vleck v. Sallyport Global Holdings, Inc.,* 2019 WL 2273845 (E.D. Va. May 28,

2019) (Hilton, J.), for example, this Court granted a motion to dismiss a suit alleging pre-suit

attorney questioning of potential witnesses because this conduct was subject to absolute

privilege. *Id.,* at *2 ("The absolute privilege applies 'to pre-filing communication' when 1) a

judicial proceeding is 'contemplated in good faith and under serious consideration,' 2) 'the

communication...relates to that anticipated proceeding,' and 3) the communication is 'made to

persons with an interest in the proposed proceeding.'") (quoting *Bernabei,* 284 Va. at 125).

Here, all three elements are satisfied.  The demand letters are pre-filing communications,

relating to anticipated litigation, made to interested parties (the publishers of the criminal

accusations).  The communications specifically related to the publishers' marketing material on

the internet, and directed them to cease and retract this material, to undertake settlement

negotiations over the damage caused, and failing that to preserve their documents for the

anticipated litigation in which they and Professor Halper would both have an interest.

As a frequent filer of defamation suits, Plaintiff's counsel is undoubtedly aware of the absolute pre-filing privilege applicable to settlement demands.   Indeed, a recent suit brought by Plaintiff's counsel against an attorney (Mr. Bondy) was dismissed On February 17th based upon the absolute privilege applicable to lawyer statements about court and Congressional proceedings under Maryland.  *Harvey*, 2021 WL 615138, *1 n.1, *15.  Maryland follows the same ALI Restatement absolute privilege for attorney speech related to litigation as does Virginia.  *See, e.g*., *O'Brien & Gere Engineers, Inc. v. City of Salisbury*, 447 Md. 394, 411 (2016) (quoting Restatement (Second) of Torts § 586)).  Therefore, while the Rule 11 safe harbor period was still pending (February 12th to March 6th), Plaintiff's counsel's claim against attorney Bondy for his litigation speech was dismissed on February 17th by federal judge Bennett on Maryland absolute privilege grounds, and yet Plaintiff's counsel has persisted in prosecuting this suit based upon

Nor can there be a reasonable dispute as to the potentially defamatory nature of the internet publications at issue. "The false accusation of the commission of a criminal act generally is sufficient to establish an injury to the plaintiff's reputation." *Lewis v. Kei*, 281 Va. 715, 726-27 (2011).[12]  It is well established in Virginia that the imputation of a crime is both defamatory and defamatory *per se*.  *Schnupp*, 249 Va. at 360 (crimes punishable by imprisonment[13] *or* of moral

---

[12]   "A statement imputes the commission of a crime when it refers to matters that would naturally and presumably be understood by those hearing them as charging a crime." *Food Lion, Inc. v. Melton*, 250 Va. 144, 150 (1995). "It is not necessary that they should make the charge in express terms." *Schnupp v. Smith*, 249 Va. 353, 360 (1995).

[13]   Crimes which are "'punishable by imprisonment in a state or federal institution' are also actionable per se." *Schnupp,* 249 Va. at 360 (quoting *Great Coastal Exp. Inc. v. Ellington*, 230 Va. 142, 147 (1985) (citing Restatement (Second) of Torts § 571)).

turpitude are *per se* defamatory);[14] *Hatfill v. New York Times*, 416 F.3d 320, 330 (4th Cir. 2005); *Goulmamine v. CVS Pharmacy, Inc*., 138 F.Supp.3d 652, 659 (E.D. Va. 2015).

The very nature of the dispute with Simon & Schuster and Post Hill Press—a challenge to their false accusations of criminality by Professor Halper (*i.e*., government contract fraud[15] and leaking classified information[16])—demonstrates the good faith nature of the proposed judicial proceedings. Accordingly, the settlement demand letters to the publishers are absolutely privileged under Virginia law.

## II.   The Settlement Demand Letters Are Absolutely Immune Under the First Amendment

Because the demand letters were preliminary to litigation, they are considered preliminary to petitioning the Government and hence fall under the absolute immunity for such communications under the First Amendment.  The Supreme Court, long ago, held that petitioning the Government is protected activity under the First Amendment, and this immunity is known as the *Noerr-Pennington* doctrine after the two Supreme Court cases in which it was first articulated.  *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *E.R.R. Presidents Conference v. Noerr Motor-Freight, Inc*., 365 U.S. 127 (1961).

*Noerr-Pennington* immunity plainly applies here to the settlement demand letters.[17]

---

[14]   *See Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015); *Tasker v. Commonwealth*, 202 Va. 1019, 1024 (1961) ("petit larceny and the making of a false statement are crimes which involve moral turpitude").

[15]   *See, e.g*., 18 U.S.C. § 1031; *United States v. Brooks*, 111 F.3d 365 (4th Cir. 1997).

[16]   *See, e.g*., 18 U.S.C. § 793; *United States v. Hung*, 629 F.2d 908 (4th Cir. 1980*); United States v. Rosen*, 445 F.Supp.2d 602 (E.D. Va. 2006), *aff'd*, 557 F.3d 192 (4th Cir. 2009).

[17]   Once *Noerr-Pennington* immunity is invoked, plaintiff shoulders the burden of overcoming it. *IGEN*, 335 F.3d at 312.

*Noerr-Pennington* immunity was first applied to lobbying activity in antitrust litigation, but it has long since been extended to include within First Amendment protection the speech and petitioning activity directed at litigation in courts. *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003) (*Noerr-Pennington* applies to "the pursuit of litigation," and immunizes such activity against business tort claims); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-30 (9th Cir. 2006) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972)).

Courts apply *Noerr-Pennington* immunity to pre-litigation demand letters because they are preliminary to the initiation of the litigation-petitioning process. *See, e.g., Sosa,* 437 F.3d at 935 (*Noerr-Pennington* immunity precludes RICO suit based upon "communication of settlement demands prior to initiating any actual litigation"); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) ("The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute. This is the position taken by most of the courts that have considered the question.").

As explained in *Sosa*, because settlement demand letters advance both petitioning and speech activities preliminary to the litigation process, the First Amendment therefore immunizes them in order to give such conduct "that breathing space essential to [its] fruitful exercise." *Sosa*, 437 F.3d at 930 (quoting *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 531 (2002)). Here, settlement demand letters seeking resolution of a defamation claim plainly fall within this First Amendment objective.

Accordingly, these settlement demand letters are immune from suit under the First Amendment.

22

### III.     The Demand Letters Are Immune from Suit Under Va. Code § 8.01-223.2

Virginia statutory immunity for matters protected by the First Amendment also applies

here.  Virginia Code § 8.02-223.2 immunizes speech on matters of public concern that are

protected under the First Amendment, subject only to an exception for knowingly false

statements.  There is no factual dispute over the language contained in the publisher's marketing

material—they accuse Professor Halper of criminal conduct which is a legal ground for a

defamation claim.  Here, the statements at issue (settlement demands) are subject to the

protections of the First Amendment under the *Noerr-Pennington* doctrine.

### IV.     Abundant Supporting Evidence of Bad Faith Litigation Exists

Plaintiff and her counsel share extensive litigation histories that extend well beyond this

case (*Lokhova II*) and the earlier related case, *Lokhova I.*

Over the last two years, Plaintiff's counsel Biss, for example, has filed multiple lawsuits

sounding in defamation on behalf of Congressman Nunes seeking more than a billion dollars in

damages. Prior to filing this suit, Plaintiff's counsel has collected sanctions admonitions and

sanctions like state quarters from courts around the country:

- On July 2, 2020, Judge Lauck issued a further order in the *Steele* case repeating and reminding Plaintiff's counsel of her sanction warning of the year before, and noting "that another Judge of this Court subsequently admonished Counsel for Plaintiffs for conduct unbefitting an officer of the Court."  *Steele,* 2020 WL 3620427, at *2 n.5 (citing *Nunes,* 2020 WL 2616707, at *2);

- An Iowa federal court described a complaint brought by Plaintiff's counsel to be "immaterial, impertinent, and scandalous," complaining that: "Plaintiff's personal attacks on Lizza have no bearing on this case. This is apparent because plaintiff never refers to the challenged allegations in resisting defendants' motion to dismiss."  *Lizza*, 2020 WL 4507326, at *23;

- Imposing sanctions under state (anti-SLAPP) statute for case dismissed because "even a cursory review reveals that nowhere in the article does it state that Plaintiff was fired," as alleged in the complaint.  *Bongino v. The Daily Beast Co.*, *LLC*, 477 F.Supp.3d 1310, 1318 (S.D. Fla. 2020);

23

- On August 13, 2020, Judge Lauck sanctioned Plaintiff's counsel under Rule 11 in *Anderson v. School Bd. of Gloucester Cty.*, 2020 WL 4719091 (E.D. Va. Aug. 13, 2020) for engaging in discovery misconduct, finding that "Counsel for Plaintiff's objections contrary to settled law are particularly troubling given this Court's previous admonishment, in its May 29, 2020 Memorandum Opinion, that Mr. Biss 'ensure that all positions, including those in briefing and in support of discovery, 'are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'… [f]ailure to do so could result in sanctions.'" *Id.*, at *6 (citing *Anderson*, 2020 WL 2832475, at *8 n.16 (quoting Fed. R. Civ. P. 11(b)(2));

- Imposing sanctions for filing a frivolous opposition to transfer. *Kesner v. Baker Botts, LLP*, 2020 WL 3050764, *2 (S.D.N.Y. June 8, 2020) (Biss signed the Complaint with "Application for Admission *Pro Hac Vice* to Be Filed" but never filed for admission.); and

- Dismissal of a RICO suit over the filing of ethics complaints against a Congressman for its "conclusory allegations," and admonishing Plaintiff's counsel that further filings comply with Fed. R. Civ. P. 11.  *Nunes v. Fusion GPS*, 2020 WL 8225339, *1 (E.D. Va. Feb. 21, 2020) (O'Grady, J.).

At some point, unheeded admonitions become license.  There should be no license for "unprofessional *ad hominem* attacks" in federal courts, especially in service of obviously meritless lawsuits.  Here, the absolute privilege applicable to settlement demands is obvious, especially to Plaintiff's counsel who relies upon them to bring suits.

## V.    The Sanction of Dismissal Is Warranted

The Fourth Circuit considered several factors in determining whether dismissal is an appropriate sanction:

> '1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.'

*Projects Management Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 373 (4th Cir. 2014) (quoting *United States v. Schaefer Equip*., 11 F.3d 450, 462-63 (4th Cir. 1993)).

All of these so-called *Schaefer Equipment* factors favor dismissal here.  Despite Judge Brinkema's prior, unheeded admonition to Plaintiff and her attorney in *Lokhova I*, they decided, jointly, thereafter to bring this suit based upon obviously and absolutely privileged communications with third parties.  The resulting burden of that decision has been imposed upon the Court and this Defendant. The need for deterrence is apparent, demonstrating that the public interest is best served here by dismissal.

**VI.    Financial Sanctions Are Warranted**

All three violations (bad faith litigation, Rule 11 infraction, and Virginia statutory immunity) justify an award of sanctions in the form of an award of reasonable attorney fees. One purpose of Rule 11 is to compensate the victims of its violation.  *Brubaker*, 943 F.2d at 1374 (citing *Kunstler,* 914 F.2d at 522).  Under this Court's inherent authority, it can also award reasonable attorney fees and expenses caused Defendant by the bad faith conduct of Plaintiff and her counsel. *Goodyear Tire & Rubber Co v. Haeger*, 137 S.Ct. 1178, 1186 (2017).

Rule 11 also authorizes the award of fees in favor of the "prevailing party the reasonable expenses, including attorneys' fees, incurred in the motion."  Fed. R. Civ. P. 11(c)(2).  Under Rule 11, fee awards are a customary if not automatic sanction.  Sanctions are measured by their objective of deterring similar misconduct in the future.  *See, e.g*., Fed. R. Civ. P. 11(c)(4) sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Among the factors that this Court can consider are: "(1) the reasonableness of the opposing party's attorneys' fees; (2) the minimum to deter; (3) the

ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Kunstler*, 914 F.2d at 523.

Defendant respectfully submits that the attorney fees incurred are reasonable because they fall within the *Vienna Metro* matric schedule, and the time spent is reasonable. Under the *Vienna Metro* matrix,[18] a reasonable hourly rate for attorneys with twenty or more years of experience is from $505 to $820. *See Smiley v. Winrock Int'l Inst. for Agric. Dev.*, 2020 WL 7260030, *2 (E.D. Va. Dec. 8, 2020) (noting that this court "has consistently used [the *Vienna Metro* matrix] in determining customary rates for Northern Virginia attorneys").

## CONCLUSION

For the foregoing reasons, the filing of a legally flawed suit over plainly privileged conduct is a suit not well grounded in fact or law, and is one filed for an improper purpose and constitutes bad faith litigation.

<div style="margin-left: 50%;">

Respectfully Submitted
_____/s/_____
Terrance G. Reed (VA Bar 46076)
Robert K. Moir (VA Bar 42359)
Lankford & Reed PLLC
120 N. St. Asaph St.
Alexandria, VA 22314
Phone: (703) 299-5000
Facsimile: (703) 299-8876
tgreed@lrfirm.net
rkmoir@lrfirm.net

Robert D. Luskin (*pro hac vice*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
Phone: (202) 551-1966
Facsimile: (202) 551-0466

</div>

---

[18]  *Vienna Metro LLC v. Pulte Home Corp.*, 2011 WL 13369780, *6-7 (E.D. Va. Aug. 24, 2011) (Lee, J.).

robertluskin@paulhastings.com

*Counsel for Stefan A. Halper*

**<ins>Certificate of Service</ins>**

      I hereby certify that on March 26, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to all counsel of record.

                            _____/s/_____

                            Terrance G. Reed