**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| SVETLANA LOKHOVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1603 (LMB)(MSN) |
| | ) | |
| STEFAN A. HALPER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT HALPER'S REPLY BRIEF**
**IN SUPPORT OF HIS MOTION FOR SANCTIONS**

Plaintiff opposes sanctions, but chooses not to address the grounds justifying them, preferring instead to unleash another defamatory attack on Professor Halper, including falsely accusing him of lying to the FBI.  Dkt. 12, at 3. Plaintiff and her counsel do not deny any of the litigation history, including Lokhova's prior suit against Professor Halper, that support sanctions here.  Nor do they address the relevant Fourth Circuit sanctions criteria, *see In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990), other than to belittle the lengthy inventory of their own misconduct as mere "opposition research." Dkt. 12, at 5 n.6.  On this day, a panel of the Fourth Circuit began its less benign description of this case by noting: "[T]his is not the first time attorney Biss's litigation conduct has earned reprimand. His history of unprofessional conduct is long." *Lokhova v. Halper*, 2021 WL 1418848, *9 (4th Cir. April 15, 2021).  After affirming this Court's discretion to "employ a wait-and-see approach based on post-judgment litigation," the Fourth Circuit left little doubt about what it saw, but left the decision to this Court "whether it will ultimately join the chorus in sanctioning attorney Biss." *Id.*

Even as to the material legal issue--whether absolute privilege or First Amendment immunity precludes this suit--the Opposition Brief offers little more than taunts about Professor

1

Halper's alleged unwillingness to bring suit against third party publishers for their defamatory comments about him on the internet.  Plaintiff's Brief, like this lawsuit, simply chooses to ignore the constitutional protection afforded litigation-related settlement letters under the *Noerr-Pennington* doctrine.  *Id*., at 14.  *See, e.g., Sosa v. DIRECTV*, 437 F.3d 923, 937 (9th Cir. 2006) (pre-suit demand letters immune from liability under *Noerr-Pennington*).  This Court should grant the requested leave to propound financial discovery and order that it be answered on or before the scheduled May 5, 2021 hearing date.

Plaintiff's initial grievance—that Defendant filed a sanctions motion rather than a motion to dismiss, thereby vexatiously multiplying the proceedings—has it backwards.  Defendant's response to the Complaint is not due until May 10th, and an earlier termination of this suit would shorten, rather than multiply, these proceedings, to the advantage of the Court and all parties. Defendant has been the victim of the false, meritless and defamatory claims by Plaintiff and her counsel in this Court since May 2019.

Nor can Plaintiff and her counsel complain about a lack of prior notice of this sanctions motion.  In February 2020, this Court admonished Plaintiff and her counsel that "should Biss file further inappropriate pleadings or pursue frivolous post-judgment litigation against any of these defendants, sanctions might well be justified."  In February 2021, Defendant provided Plaintiff and her counsel with the twenty-one-day advance notice provided under Fed. R. Civ. P. Rule 11(c)(2) failure to withdraw the lawsuit would result in the filing of this sanctions motion. Defendant is not prolonging this proceeding.

In August, 2019, Professor Halper filed a motion for bad faith litigation sanctions against Plaintiff and her counsel.  *Lokhova I*, dkt. 36.  After this Court denied sanctions without prejudice in February 2020, dkt 91, Defendant Halper filed a cross-appeal on this Court's denial

of sanctions.[1]  Thus, at all relevant times, Plaintiff and her counsel were on notice that their litigation conduct regarding Professor Halper was under judicial scrutiny as being suspect, and they continued their pursuit of federal litigation against him.[2]  The Opposition Brief's invocation and mischaracterization of new documents to malign Professor Halper further is immaterial other than as further evidence that she is seeking to relitigate her claims in *Lokhova I,* thereby justifying application of the absolute privilege and *Noerr-Pennington* immunity.

## I.      Absolute Privilege Attaches

Just as Judge Bennett recently held in dismissing another suit filed by Mr. Biss against criminal defense counsel Bondy, attorney communications about legal or congressional proceedings enjoy absolute immunity under Maryland law.  *Harvey v. Cable News Network, Inc.*, 2021 WL 615138, *15 (D. Md. Feb. 17, 2021).  In fact, Judge Bennett has since concluded that the refiling of that case in an Amended Complaint was sanctionable, bad faith, vexatious conduct because "Plaintiff Harvey and his counsel unreasonably and vexatiously extended this matter in bad faith with the filing of a last-minute Amended Complaint" failing to cure any pleading error. *Harvey v. Cable News Network, Inc.*, 2021 WL 1215083, *1 (D. Md. March 31, 2021).

---

[1] Imputation of crime is defamatory *per se, Schnupp v. Smith*, 249 Va. 353, 360 (1995), and Plaintiff only compounds her ongoing defamation by falsely accusing Professor of lying to the FBI in her Opposition Brief, which is a crime under 18 U.S.C. § 1001. Dkt. 12, at 3.

[2] Lokhova filed her initial lawsuit on May 23, 2019*. Lokhova v. Halper*, No.1:19-cv-00632, Dkt. 1. This Court dismissed the Amended Complaint on February 27, 2020. *Id.*, Dkt. 91.  Lokhova filed a notice of appeal on March 27, 2020. *Id.*, Dkt. 93.  Halper filed a notice of cross-appeal on April 2, 2020.  *Id*., Dkt. 96.  After briefing, a panel of the Fourth Circuit heard oral argument on March 10, 2020, and issued an opinion affirming this Court in all respects on April 15, 2021. *Lokhova*, 2021 WL 1418848.

Virginia law also recognizes the absolute privilege that attaches to litigation communications about litigation, including communications prior to litigation. *Mansfield v. Bernabei*, 284 Va. 116, 125 (2012) ("regarding the applicability of absolute privilege to communications preliminary to a proposed judicial proceeding, this Court adopts the rule expressed in the Restatement (Second) of Torts §§ 586, 587 as well as the additional requirement that the disclosure be made only to interested persons").

Plaintiff admits that Virginia recognizes an absolute privilege for litigation communications by "a party or witness" or by an attorney, dkt. 12, at 6, but completely overlooks that Professor Halper has been made both by Plaintiff—he was a defendant in *Lokhova I* up through the affirmance of this Court by the Fourth Circuit today*,* a prospective witness therein, and he is represented by undersigned counsel. Ignoring the obvious (that Plaintiff and her counsel continue to prosecute *Lokhova I* to this day), Plaintiff attempts to avoid the manifest litigation privilege she created upon suing Professor Halper in 2019 by falsely contending that Virginia fails to recognize any privilege applicable to "'mere potential litigation.'" Dkt. 12, at 7 (quoting *Lindeman v. Lesnick*, 268 Va. 532, 538 (2004)). Plaintiff is refusing to abide by the litigation privilege she created in 2019 and has exploited ever since to propagate defamation about Professor Halper for her personal gain.

 Plaintiff and her counsel support their misdirection quoting *dicta* from the earlier Virginia Supreme Court *Lindeman* opinion, in which it expressed concerns about the scope of prelitigation privilege. But that concern was put to rest by the Virginia Supreme Court in 2012 with its decision in *Mansfield*. There, the Virginia Supreme Court addressed the concerns raised by *Lindeman* and resolved any doubt by explicitly embracing the Restatement (Second) of Tort's

4

absolute privilege for communications preliminary to a judicial proceeding. 284 Va. at 120

(adopting Restatement (Second) of Torts §§ 586 & 587).[3]

This absolute privilege applies regardless of whether the communications are malicious[4]

or defamatory.[5]  Restatement (Second) of Torts § 586 ("An attorney at law is absolutely

privileged to publish defamatory matter concerning another in communications preliminary to a

proposed judicial proceeding . . .").[6]  The privilege is "based upon a public policy of securing to

attorneys as officers of the court the utmost freedom in their efforts to secure justice for their

clients."  *Id*., cmt. a.  The Virginia Supreme Court adopted this absolute privilege because the

"importance of encouraging compromise and settlement is unquestioned in our jurisprudence."

*Mansfield,* 284 Va. at 124. The absolute nature of the litigation privilege, however, is necessarily

tempered by the fact that courts have the authority to sanction or discipline counsel and parties.

---

[3] The Virginia Supreme Court's adoption of the Restatement privilege was predicted as far back as 1997.  *See, e.g., Long v. Old Point Bank of Phoebus*, 41 Va. Cir. 409 (Norfolk City Circuit Court 1997) (counsel letter privileged).

[4] *Wolfe v. Zuckerman*, 2020 WL 5351036, *2 (E.D. Va. Sep. 4, 2020) (privilege applies "even if such communications are made maliciously and with knowledge of their falsity"); *Riccobene v. Scales*, 19 F.Supp.2d 577, 584 (N.D. W.Va. 1999) (citing *Mosrie v. Trussell*, 467 A.2d 475 (D.C. 1983) and Restatement (Second) of Torts, § 586, comment a).

[5] *See, e.g., Litowitz v. Haddad*, 2020 WL 1820600, *4 (N.D. Ill. April 10, 2020) ("'The privilege affords complete immunity, irrespective of the attorney's knowledge of the statement's falsity or the attorney's motives in publishing the defamatory matter.'  Although the communication must 'pertain to proposed or pending litigation ... [t]he pertinency requirement is not applied strictly, and the privilege will attach even where the defamatory communication is not confined to specific issues related to the litigation.'") (quoting *Golden v. Mullen*, 693 N.E.2d 385, 389 (Ill. App. 1997).

[6] § 586, comment a ("The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding.").

In Virginia, whether this absolute privilege bars a tort claim is a question of law. *Bryant-Shannon v. Hampton Roads Community Action Program, Inc*., 2021 WL 1307139, *2 (Va. S. Ct. April 8, 2021) (citing *Isle of Wight County v. Nogiec*, 281 Va. 140, 152 (2011)).

 After erroneously denying that absolute privilege applies to potential litigation, Plaintiff then misapplies the *Mansfield* privilege standard for such pre-litigation communications.  Dkt. 12, at 9 (citing *Mansfield* and Restatement (Second) of Torts § 586).  *Mansfeld* applied absolute privilege to: (i) communications preliminary to a contemplated proceeding; (ii) that are relevant to a legal proceeding; and (iii) which are communicated to an interested person.  All three elements are satisfied here.

Plaintiff limits her challenge to the first two factors--there is no dispute that the publishers are interested parties to disputes over their own internet postings.   But the letters themselves are obviously: (i) preliminary to a defamation claim against the publishers, *and* about the ongoing legal proceedings (*Lokhova I*); and (ii) are relevant to both legal proceedings.  As to the latter, the letters inform the defamatory publishers:

> Ms. Lokhova previously made such claims against Professor Halper in a $25 million federal lawsuit (*Lokhova v. Halper*, *et al*., No. 1:19-cv-632 (LMB-JFA), which was dismissed with prejudice by a federal trial judge on numerous grounds, including the failure of Ms. Lokhova and her counsel to plead plausible facts to support any of her legal claims against Professor Halper, including for defamation. *Id*. (Docket Entry 90). This federal judgment places you on notice that Ms. Lokhova has failed to sufficiently plead or to prove the very same allegations for which she is now using Post Hill Press to defame Professor Halper.
> . . . .

Dkt. 7.5 (similar language contained in letter to Simon and Schuster (dkt 7.4)).

Thus, the letters address both a pending suit between the parties (*Lokhova I*), and a prospective suit between Defendant and the publishers.  *See, e.g., Officemax, Inc. v. Cinotti*, 966 F.Supp.2d 74, 81 (S.D.N.Y.  2013) (allegedly defamatory attorney letter

6

describing result and impact of another suit subject to absolute privilege; rejecting the "incorrect premise that the litigation privilege can only extend to the statements in the Letter if the statements were pertinent to the particular litigation before the Court.").

The letters contain the standard features of a demand letter, including an estimate of the damages to the Professor as measured against the damages pled by Plaintiff in *Lokhova I*.  Dkt. 7.4 & 7.5 ("multiples of Ms. Lokhova's estimation of her self-worth."). The letter also informs the publishers of the death threats to the Professor and his family from Lokhova's defamation, tells the publishers that they "will be held responsible" for the harm caused to Professor Halper, and asks the publishers to respond "within two weeks whether you have ceased and desisted the marketing material on your website and agree to undertake settlement negotiations for the damages inflicted to date." *Id*.  These are unquestionably the common features of settlement demand letters.  Plaintiff's critique that more menacing language is required goes a long way towards explaining their abusive approach to litigation.  But it is most certainly not the law.

Despite this clear language, Plaintiff contends these letters do not constitute settlement demand letters.  Plaintiff's challenges are of two types: (i) critiques of the formalities of Professor Halper counsel's letter to the publishers; and (ii) doubts about whether Professor Halper seriously contemplated suing publishers accusing him of crimes (leaking classified information, million-dollar government contract fraud). Neither argument has merit.

Plaintiff argues that a letter from Professor Halper's counsel to the publisher of defamatory material about Professor Halper is not privileged because it lacks an accompanying draft complaint, was "not marked 'For Settlement Purposes Only,'" and allegedly does not

contain a settlement demand or offer (despite the fact that it explicitly includes a demand "to undertake settlement negotiations for the damages inflicted to date").

Initially, Plaintiff has no standing to complain about the formality of settlement communication between interested parties about their disputed publication.  That is a matter between the two parties involved, and there is no objection from the letter recipients as to the formality of the communications.  Moreover, although it seems unlikely that Plaintiff and her counsel will ever be persuaded that less is more or that polite language – not invective – is appropriate to legal communications, the fact is that the demand served its intended purposes: that is, the avoidance of litigation between the two parties to the communications—the very goal of the absolute privilege. Settlements are favored, not punished, by the privilege. Nor are Plaintiff or her counsel credible as victims of the litigation privilege, having plied their defamatory comments about Professor Halper since May 2019 behind the walls of privilege intended to protect good faith litigation in this Court.

Second, Plaintiff mischaracterizes the relevant legal principles, which, when understood, confirm the litigation context of the communications.  In many jurisdictions, a pre-filing demand for retraction is a prerequisite to filing suit.  *See, e.g., Nunes v. Cable News Network, Inc.*, 2021 WL 665003, *7 (S.D.N.Y. Feb. 19, 2021) (dismissing Biss suit for failure to satisfy pre-filing notice and retraction demand requirement).  While Plaintiff's counsel insists that Virginia imposes no such requirement, that did not save the aforementioned *Nunes* case originally filed in this Court, which was later dismissed in New York for failure to comply with California's retraction requirement.  *Id*.

And, as Defendant cited in his Opening Memorandum (without challenge thereafter), in Virginia and elsewhere, such pre-filing letters provide compelling evidence of malice for use in

8

prosecuting claims over ongoing defamatory communications, and also constitute proof of plaintiff efforts to mitigate the harm caused by ongoing defamation (*i.e.*, by demanding that it cease and desist).  Dkt. 7, at 18 & n.11 (citing *Nunes v. Lizza*, 2020 WL 5504005, *20 (N.D. Iowa Sept. 11, 2020) (the same plaintiff counsel using pre-filing demand letter to claim malice); *News Leader Co. v. Kocen*, 173 Va. 95, 106 (1939)).

Accordingly, such pre-filing communications are integral parts of bringing defamation claims, making their admissibility for these essential purposes an important legal consideration. The vital role these types of documents play for the commencement of defamation litigation would be jeopardized by characterizing such documents as confidential and for settlement purposes only because, under the provisions of Fed. R. Evid. 408, such purely settlement documents can be considered inadmissible.  Because these documents are necessary for later use in defamation litigation regarding essential elements of proof, they cannot be marked "for settlement purposes only" without jeopardizing the defamation claim.  To the contrary, the absence of such a disclaimer signals an intent and willingness to sue, a message which should not be lost upon a seasoned publisher, even if overlooked by Plaintiff.

Furthermore, there is no requirement that a draft complaint be tendered along with a demand letter, and such practices can inhibit willingness to negotiate settlements.  Indeed, the *Mansfield* opinion followed an earlier Fourth Circuit case applying the absolute litigation privilege to a letter.  *Mansfield*, 284 Va. at 124 ("The Fourth Circuit likewise applied absolute privilege in a case involving a pre-filing letter, finding it 'probable that Virginia would follow the lead of the Restatement [ (First) ] of Torts, § 587 (1938).' *West v. Marjorie's Gifts, Inc.,* 529 F.2d 518, 518 (4th Cir. 1975) (unpublished).").  *Accord, Shrader v. Siana & Vaughan, LLP*, 2005 WL 975411, 6* (E.D. Pa. April 25, 2005) (privilege "encompasses pleadings and even less

9

formal communications such as preliminary conferences and correspondence between counsel in

furtherance of the client's interest").

As former Judge Garland has explained, applying the same Restatement principle under

D.C. law:

> In particular, the privilege applies to 'written correspondence between parties' counsel
> concerning threatened lawsuit[s]'; 'statements relating to threat[s] of litigation,'
> including statements 'analogous to [those] that are often contained in demand letters,'
> and statements made during 'settlement negotiations.'

*Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (quoting *Finkelstein, Thompson &*

*Loughran v. Hemispherix Biopharma, Inc.*, 774 A.2d 332, 343 (D.C. 2001) (quoting

*Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 14 (D.D.C. 1990)).

Thus, the letters are both preliminary to defamation proceedings against the publishers

and they invoke and expressly relate to the *Lokhova I* proceedings, which are still ongoing.

The second element of the privilege—relevancy to a judicial proceeding—is broadly

construed: "The 'communication need not be relevant in the legal sense; the term is very

liberally construed.'" *Messina*, 439 F.3d at 134 (citing § 586, and quoting *Arneja v. Gildar*, 541

A.2d 621, 624 (D.C. 1988)).[7] "The privilege will attach even where the defamatory statement is

not confined to specific issues related to the litigation, and all doubts should be resolved in favor

of finding pertinency." *Marchioni v. Bd. Of Educ. of City of Chicago*, 341 F.Supp.2d 1036, 1051

(N.D. Ill. 2004) (construing § 587, holding that defendant's derogatory letter about plaintiff

---

[7] "The relation test is very liberally construed; as long as the alleged defamatory statement "has
some reference to the subject matter of the proposed or pending litigation" it falls within the
privilege." *Messina v. Fontana*, 260 F.Supp.2d 173, 178 (D.D.C. 2003) (quoting Restatement
(Second) Of Torts § 586, comment c), *aff'd*, 439 F.3d 755 (D.C. Cir. 2006).

"during the pendency of plaintiff's federal lawsuit" against him was absolutely privileged). The low relevancy threshold is more than satisfied here.

The letters are plainly relevant to two legal proceedings—the *Lokhova I* litigation (including this Court's ongoing sanctions warning), and the defamation being published over the internet which was the direct subject of the letters. Nor can there be any doubt that these attorney communications are relevant to these ongoing or future legal proceedings. "In determining whether a statement is pertinent and relevant, 'courts are liberal and the privilege embraces anything that may possibly be pertinent. All doubts should be resolved in favor of its relevance and pertinency.'" *MacVicar v. Barnett*, 2019 WL 2361040, *9 (D. Or. June 1, 2019) (quoting *Wollam v. Brandt*, 154 Or. App. 156, 162-63 (1998)).

Ignoring the marketing material's allegations of criminal conduct by Professor Halper (leaking classified information and government contract fraud), Plaintiff focuses on other language from the marketing material, and chooses to label it as either truthful or non-defamatory. Dkt. 12, at 4. The applicability of the litigation privilege, however, does not depend upon whether the pending or potential defamation suit is meritorious.[8] Indeed, *Lokhova I* lacked any merit, which is why this Court cautioned Plaintiff and her counsel about further litigation misconduct directed at Halper. The good faith characterization of Plaintiff's continuing groundless accusations against Professor Halper as defamatory is supported by the oral argument

---

[8] *Messina*, 439 F.3d at 761 ("But the fact that the letter was defamatory (if it was) cannot determine the applicability of the privilege, since the very purpose of the privilege is to protect against liability for defamation.") *See* Restatement (Second) of Torts § 586, comment a ("Therefore the privilege is absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity.").

characterization of the same allegations from the *Lokhova I* Complaint by Judge Stephanie Thacker (author of the ultimate panel opinion) as being defamatory against Professor Halper.

Finally, Professor Halper does not have to sue a publisher who ceases to publish defamatory marketing material. The fact that litigation was avoided is the sign the litigation privilege serves its purpose; it is not evidence that it is being abused.

## II.     *Noerr-Pennington* Immunity Bars Suit

Plaintiff devotes a single paragraph to make a vague claim that First Amendment immunity is somehow inapplicable. Dkt. 12, at 14. Specifically, Plaintiff offers the *nonsequitur* observations that "Reed did not petition any department of the government," and "Halper is not entitled to the defense of absolute privilege under the First Amendment." *Id.* These are distinct issues—protected petitioning activity versus absolute privilege. The former is an immunity known as the *Noerr-Pennington* doctrine, while the latter is an absolute privilege arising under state law, as previously discussed.

The *Noerr-Pennington* doctrine is a First Amendment immunity that applies to conduct, including the preliminary conduct, involved in petitioning the Government. It most certainly applies to petitioning the federal courts. *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 399 (4th Cir. 2001) (*Noerr–Pennington* immunity "extends to petitioning the courts as well.") (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F.Supp.3d 691 (D. Md. 2017)).

In the Fourth Circuit, the applicability of *Noerr-Pennington* immunity "is a question of law." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310-13 (4th Cir. 2003). The

potency of the immunity is reflected by the *IGEN* case, in which the Fourth Circuit reversed as error a trial court's refusal to permit the pleading of *Noerr-Pennington* immunity, and then implemented the immunity by vacating a jury tort verdict of $4 million in compensatory and $400 million in punitive damages after a ten week trial.[9]  Lacking a pled immunity defense, the Fourth Circuit concluded that collateral proceedings in another lawsuit created a "rebuttable presumption of *Noerr-Pennington* immunity."  335 F.3d at 311.  Here, the defamatory nexus between this suit and the ongoing *Lokhova I* lawsuit should be similarly treated.  Regardless, the Opposition Brief offers not a single legal ground to overcome *Noerr-Pennington* immunity here, which is their burden.  *IGEN*, 335 F.3d at 312 ("IGEN has failed to satisfy this burden.").  This burden has not been acknowledged by Plaintiff, much less shouldered.

Courts apply *Noerr-Pennington* immunity to pre-litigation settlement and demand letters because they are preliminary to the act of petitioning a court for relief.  *Sosa*, 437 F.3d at 937; *Singh v. NYCTL 2009-A Trust*, 2016 WL 3962009, *4 (S.D.N.Y. July 20, 2016) ("Courts in this Circuit have held that these types of litigation communications ['demand letters, default letters, and settlement communications'] are immune from liability under the First Amendment protected by *Noerr-Pennington*.") (citing cases), *aff'd*, 683 Fed. Appx. 76 (2d Cir. 2017) ("all of his claims are barred by the *Noerr-Pennington* doctrine").

"The *Noerr-Pennington* doctrine covers not only petitions sent directly to the court, but also 'conduct incidental to the prosecution of the suit.'"  *Uribe v. Sherman Way Gardens, Ltd*.,

---

[9] Plaintiff and her counsel have not claimed any exception to *Noerr-Pennington* immunity, nor have they borne the burden of proving any exception.  *IGEN*, 335 F.3d at 312.  For example, "even litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the objective baselessness requirement." *Id*. (citing *Baltimore Scrap*, 237 F.3d at 198-99).

2008 WL 11336669, *6 (C.D. Cal.  Nov. 24, 2008) (quoting *Columbia Pictures Indus. Inc. v.*

*Prf'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991)).

Here, immunity under the *Noerr-Pennington* doctrine is obvious and unchallenged.  The

fact that Plaintiff and her counsel decline to address it is just further evidence of bad faith

justifying sanctions.

### III.      Unanswered Bad Faith Litigation Conduct

In February 2020, this Court agreed that Plaintiff and her counsel had engaged in the bad

faith behavior (*ad hominem* attacks, phantom and untimely defamation claims) that would have

supported an award of sanctions.  But instead of imposing sanctions, this Court decided to warn

them that sanctions for such conduct directed in the future against Defendant Halper "might well

be justified." *Lokhova v. Halper*, 441 F.Supp.3d 238, 267 (E.D. Va. 2020).  Plaintiff and her

counsel prove, again, that no good deed goes unpunished.  This lawsuit is ample proof that

Plaintiff and her counsel operate under the rule that conduct that is not punished will be repeated.

The Opposition Brief does not even deign to address the relevant Fourth Circuit factors

governing litigation sanctions, as set forth in *In re Kunstler*:

> 'The court may consider factors such as the offending party's history, experience, and
> ability, the severity of the violation, the degree to which malice or bad faith contributed
> to the violation, the risk of chilling the type of litigation involved, and other factors as
> deemed appropriate in individual circumstances.'

914 F.3d at 924 (quoting ABA, Standards and Guidelines for Practice Under Rule 11 of the

Federal Rules of Civil Procedure (1988)).

Here, Plaintiff and her counsel are recidivist litigators against Professor Halper.  Even

now, Plaintiff's chosen method of opposing sanctions for her conduct is to accuse Professor

Halper of lying to the FBI—a crime.  Dkt. 12, at 3.  In *Lokhova I*, this Court pointed out that

Plaintiff had filed the untimely *Lokhova I* complaints even *after* Plaintiff had had her prior

defamation case in the United Kingdom dismissed as untimely. *Lokhova*, 441 F.Supp.3d at 267

(Plaintiff "previously filed an unrelated defamation lawsuit in the United Kingdom, which was

dismissed as untimely under the one-year statute of limitations applicable in that jurisdiction.")

This Court's warning directly to Plaintiff not to file further meritless litigation against Halper

was clear, was amply justified, and was then violated by Plaintiff.

   Plaintiff's counsel makes no effort to defend the numerous cases he has brought,

permeated with *ad hominem* attacks, that are detailed in the Opening Memorandum, dkt. 7, at 23-

24, and recounted in the Fourth Circuit's opinion of this date. *Lokhova v. Halper*, 2021 WL

1418848, *9.

   Plaintiff and her counsel also do not dispute the affidavit of Plaintiff's counsel that he is

an experienced civil litigator who has "successfully litigated to verdict/judgment hundreds of

claims of defamation, false light, malicious prosecution, conspiracy, fraud, tortious interference

with contract, and similar legal issues."  Dkt. 7.6 (Attachment to Motion for Admission Pro Hac

Vice).

   Demand letters, their uses, and applicable privileges, should not be lost on either Plaintiff

or her counsel.  Further, both this Court, and defense counsel (pursuant to the safe harbor

provisions Rule 11(c)(2)) gave ample warning to Plaintiff and her counsel that further meritless

litigation against Professor Halper could be sanctioned.  Their persistence demonstrates the

degree to which this litigation is motivated by malice and bad faith.

   The collection of judicial admonitions and sanctions detailed in Defendant's Rule 11

Opening Memorandum, dkt. 7, and noted by the Fourth Circuit, *Lokhova*, 2021 WL 1418848, *9,

has only grown since it was filed less than three weeks ago.  On March 31, 2021, Judge Bennett

imposed bad faith sanctions upon Plaintiff's counsel for re-filing an equally defective Amended

Complaint alleging defamation on behalf of Mr. Harvey. *Harvey v. Cable News Network, Inc.*,

2021 WL 1215083, *1 (D. Md. March 31, 2021).

On the same day, Judge Alston of this Court denied Rule 11 sanctions against Plaintiff's

counsel, but only after providing another pointed judicial admonition:

> The Court declines to impose sanctions under Rule 11 at this time. The allegations
> made by Plaintiff are serious. They just cannot and do not confer authority to this Court
> to address the complaints Plaintiff has made. In this regard, Plaintiff's counsel is
> reminded that litigation "asserted in bad faith or for the purpose of harassment" may be
> met with sanctions. *Guidry v. Clare*, 442 F. Supp. 2d 282, 289 (E.D. Va. 2006). Here,
> Plaintiff's counsel has filed three complaints in this case since September of 2019. The
> Court has not issued a favorable ruling on any of the claims Plaintiff asserts.
> Accordingly, the Court's dismissal of Plaintiff's RICO claims is with prejudice and
> without leave to amend because in the Court's view, amendment would be futile. Fed.
> R. Civ. P. 15(a)(2). 'At some point, litigation must end.'

*Nunes v. Fusion GPS*, 2021 WL 1225983, *14 (E.D. Va. March 31, 2021) (quoting *Matter of*

*Vulcan Constr. Materials, LLC*, 433 F.Supp.3d 816, 825 (E.D. Va. 2019)).

Nor should this Court fear chilling defamation cases brought by parties who serially bring

meritless defamation cases.  Plaintiff and her counsel have brought two meritless defamation

cases before this Court against this same Defendant.  That is a result which should be chilled.

Defamation claims themselves pose a risk of chilling speech protected under the First

Amendment.  Politically-motivated defamatory lawsuits should be chilled, not promoted.

Defendant has sought both dismissal and financial sanctions.  Plaintiff and her counsel

have declined to address the relevant legal factors for assessment of either sanction.   For

example, they do not contest the applicability of any of the *Schaefer Equipment* factors that

justify dismissals.  Dkt. 7, at 24-25 (citing *United States v. Schaefer Equipment*, 11 F.3d 450,

462-63 (4th Cir. 1993)).  Dismissal is warranted under all of those factors because the degree of culpability is substantial (spanning two lawsuits for Plaintiff and multiple suits for her counsel); the blameworthiness of the client (Plaintiff), while less than that of her counsel, is nonetheless substantial and continuing based upon her filing and language decisions; the judicial process, and the administration of justice has been harmed for two years by their use of it as a platform for defamation; and the only sanction that would be effective in halting this continuing abuse and "deterring similar conduct in the future," is dismissal. 11 F.3d at 463.

Financial sanctions can be imposed under this Court's inherent authority upon parties and their counsel, and these sanctions are independent of Rule 11 sanctions.  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 44-46 (1991)).   Under Rule 11, financial sanctions can be imposed upon both party and her counsel for bringing litigation with an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" (Rule 11(b)(1).  Rule 11(c)(5)(A), however, bars imposition of financial sanctions upon parties for the frivolous legal arguments of their counsel sanctionable under Rule 11(b)(2).

Defendant has sought leave of Court to propound discovery on the issue of capacity to pay financial sanctions.[10]  *See* dkt. 7.7 (proposed document requests).  Plaintiff and her counsel have since objected to this financial discovery on grounds of attorney-client privilege, relevance, and prematurity.  Exhibit 1.  Because the parties have exhausted Rule 11(c)(2)'s twenty-one-day safe harbor procedures (including as to the requested discovery), this issue should be ripe for adjudication.  Accordingly, Defendant renews his request that the Court grant leave to propound

---

[10] Financial capacity to pay financial sanctions is relevant under *In Re Kunstler*, 914 F.2d at 523.

the financial capacity discovery, and direct that a response be made on or before the scheduled May 5, 2020 hearing date.

## CONCLUSION

This Court has already tried judicial admonition, and unfortunately it has had as little effectiveness as those issued by many other judges. Patience and tolerance has been answered with repeated misconduct.  Stronger measures are required.  Dismissal of a claimed based upon clearly privileged conduct is a stronger measure that is not draconian in this context.


Respectfully submitted,


By: _____/s/_____
Terrance G. Reed (VA Bar No. 46076)
Robert K. Moir (VA Bar No. 42359)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone): 703-299-5000
(Facsimile): 703-299-8876
tgreed@lrfirm.net
rkmoir@lrfirm.net

Robert D. Luskin (*pro hac vice*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com


*Counsel for Defendant*
*Stefan A. Halper*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of April, 2021, I electronically filed the foregoing

Notice using the CM/ECF system which will then send a notification of such filing (NEF) to all

interested parties.

By: _____/s/_____
Terrance G. Reed (VA Bar No. 46076)