IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SVETLANA LOKHOVA,          )
                           )
    Plaintiff,             )
                           )
v.                         )     1:20-cv-1603 (LMB/MSN)
                           )
STEFAN A. HALPER,          )
                           )
    Defendant.             )

MEMORANDUM OPINION

On May 5, 2021, in an oral ruling, the Court granted defendant Stefan A. Halper[1]

("Halper" or "defendant")'s Motion for Sanctions [Dkt. No. 6], dismissed this civil action, and

ordered defendant to file a petition for reasonable attorneys' fees incurred for work done after

counsel sent the Rule 11 warning to plaintiff.[2] The defendant's Petition for Reasonable

Attorneys' Fees ("Petition") [Dkt. No. 17], in which he seeks an award of $33,875 in attorneys'

fees, is now before the Court. Plaintiff has filed an opposition, and defendant has filed a reply.

For the reasons that follow, defendant's Petition will be granted, and Halper will be awarded

$33,875 for which plaintiff Svetlana Lokhova ("plaintiff" or "Lokhova") and her attorney Steven

Biss ("Biss") will be jointly and severally liable, as a reasonable sanction for their violation of

Fed. R. Civ. P. 11 and their continuing to bring frivolous litigation against Halper.

---

[1] Defendant Halper occasionally refers to himself as "plaintiff Halper," although he is the
defendant in this action. See, e.g., [Dkt. No. 21] at 1.

[2] This Memorandum Opinion repeats and expands upon the reasons for granting defendant's
Motion for Sanctions.

# I. BACKGROUND

## A. __Factual Background__

This is the second civil action brought by plaintiff and her attorney Biss against Halper. The first, Lokhova v. Halper, 1:19-cv-632 (LMB/JFA) (E.D. Va. 2019) ("Lokhova I"), which alleged claims for defamation, conspiracy, and tortious interference with contract based upon allegations that Halper was the source for media accusations that Lokhova was a Russian spy and paramour of Lt. General Michael Flynn, was dismissed by this Court as untimely and without merit. Lokhova v. Halper, 441 F. Supp. 3d 238 (E.D. Va. 2020). In that civil action, the Court found that all but two of Lokhova's defamation claims were time-barred by the one-year statute of limitations for defamation, and that the remaining two publications that were within the one-year period were not actionable defamatory statements. Id. Lokhova's tortious interference claim was dismissed as "effectively duplicative" of her defamation claim and because she failed to allege facts supporting the claim. Id. at 265–66. Additionally, Lokhova's common law conspiracy claim was dismissed because it required that an underlying tort be committed and because "her conspiracy allegations [were] too conclusory to survive a motion to dismiss." Id. at 266. Although Halper's Motion for Sanctions was denied, the denial was without prejudice, with the Court acknowledging that:

> The record is clear that Biss filed an excessively long complaint and amended complaint on Lokhova's behalf directing unprofessional ad hominem attacks at Halper and others. For example, the complaint calls Halper a "ratf***er," Compl. ¶ 1, and refers to the media defendants as "stooges," Compl. ¶ 21. Such language adds nothing but unnecessary heat to this litigation. Moreover, the complaint exaggerates the nature and content of the allegedly defamatory statements. In addition, Biss and Lokhova had to have known that most of her claims were time-barred, as she had previously filed an unrelated defamation lawsuit in the United Kingdom, which was dismissed as untimely under the one-year statute of limitations applicable in that jurisdiction. See [Dkt. No. 36-2] at 25.

Id. at 267. Observing that imposing sanctions is a "draconian measure," the Court declined to issue sanctions at that time; however, the Court put Biss on notice that should he "file further inappropriate pleadings or pursue frivolous post-judgment litigation against any of these defendants, sanctions might well be justified." Id.

Plaintiff and her counsel appealed the dismissal to the Fourth Circuit, and Halper cross-appealed the denial of his motion for sanctions. Lokhova v. Halper, 2021 WL 1418848 (4th Cir. April 15, 2021). The Fourth Circuit affirmed on all issues. Id. In discussing the decision not to sanction Lokhova and Biss, the Fourth Circuit observed that "this is not the first time attorney Biss's litigation conduct has earned reprimand. His history of unprofessional conduct is long." Id. at *9 (collecting cases). Although the Fourth Circuit "agree[d] with the district court's observations" of Biss's misconduct and "endorse[d] the court's reprimands concerning inappropriate ad hominem attacks," it also "le[ft] to the district court whether it will ultimately join the chorus in sanctioning attorney Biss." Id.

In this second civil action, Lokhova seeks $5,000,000 in compensatory damages and $350,000 in punitive damages for defamation (Count I) and tortious interference with contract (Count II). Specifically, Lokhova alleges that she had written a book titled "THE SPIDER: STEFAN A. HALPER AND THE DARK WEB OF A COUP" and had entered into an author profit participation agreement with Post Hill Press, LLC ("PHP") on December 23, 2019, and that PHP had entered an agreement with Simon & Schuster ("S&S") under which S&S would distribute Lokhova's book. [Dkt. No. 1] ¶¶ 1–2.

In various pre-publication advertisements, PHP represented that the book would be released on August 25, 2020 and solicited preorders from customers on Amazon.com and

BarnesandNoble.com, and S&S similarly promoted the book in marketing materials on its

website. Id. ¶¶ 2–3. The marketing material posted by PHP and S&S on the internet stated that:

> There was a spy, an evil spider at work within and around the Trump presidential
> campaign. This spy earned a huge payday from a contract signed by James Baker of the
> Defense Department. Stefan A. Halper began his work in September of 2015, just as
> Trump's campaign began to roll. He initially targeted the important Trump advisor, Lt.
> General Michael T. Flynn. During the 2016 Trump campaign, Halper—the spy also
> known as The Spider—schemed, lied, and ensnared members of the Trump team into his
> web, including the future president. He fabricated and sustained the fantastical narrative
> of the Russia hoax. In 2017, he collaborated with the intelligence establishment to take
> the "kill shot on Flynn," leaking classified information to his associates in the press.

[Dkt. No. 7-3], Def. Ex. 3.

On February 28, 2020, the Order dismissing Lokhova I and denying defendant's motion

for sanctions was entered. In letters dated March 13, 2020 to S&S, [Dkt. No. 7-4], Def. Ex. 4,

and April 2, 2020 to PHP, [Dkt. No. 7-5], Def. Ex. 5, Halper's counsel objected to false

allegations in the marketing material and asked S&S and PHP to cease publication, to enter into

settlement negotiations, and to put a litigation hold on relevant documents. Specifically, the

March 13, 2020 letter to S&S stated in pertinent part:

> I am writing on behalf of my client, Professor Stefan Halper, to give notice to
> Simon & Shuster that it has defamed the Professor, and to demand that it cease and desist
> from doing so and issue a public, written retraction of the defamation. Specifically, I refer
> to the marketing material published on the Simon & Shuster website
> (www.simonandshuster.com/books/The-Spider/SvetlanaLokhova/9781642935981) for
> the soon-to-be-published book of Svetlana Lokhova entitled: The Spider: Stefan A.
> Halper and the Dark Web of a Coup. . . .
>    . . .
> Make no mistake. The marketing materials on your web site have caused, and will
> continue to cause, Professor Halper personal disgrace, reputational harm, and risk to the
> personal safety of himself and his family. I trust, however, that upon further review, you
> will take appropriate steps to mitigate the harm that Simon & Schuster has already caused
> and limit the damage that would follow from the publication of Ms. Lokhova's book.
>    . . .
> . . . Ms. Lokhova previously made such claims against Professor Halper in a $25
> million federal lawsuit in the United States District Court for the Eastern District of
> Virginia (Lokhova v. Halper, et al. No. 1 :19-cv-632 (LMB/JF A), which was dismissed
> with prejudice by a federal trial judge on numerous grounds, including the failure of Ms.

Lokhova and her counsel to plead facts to support her claims against Professor Halper, and for making baseless claims for defamation. Id. (Docket Entry 90). This federal judgment places you on notice that Ms. Lokhova has previously failed to plead or to prove in a court of law the very same allegations for which she is now using Simon & Shuster to continue to defame Professor Halper.

. . .

Simon & Schuster's publication of such malicious defamation about Professor Halper has and will continue to damage to [sic] his reputation in this country and abroad. These damages are not limited to financial injuries. The false statements of Ms. Lokhova have been used to foment hatred and threats against the Professor and his family, including death threats. Simon & Schuster's distribution, publication, and republication of such inciteful false statements by Ms. Lokhova pose a direct threat to the safety of Professor Halper and his family, for which it will be held responsible.

Because it may be relevant to your liability, versus that of the author, I am hereby asking you to put a litigation hold on:

- All documents, files, or communications, whether digital or paper, relating to the aforementioned marketing material or to the publication of the book it markets;
- All documents, files, or communications, whether digital or paper, relating to the factual allegations made by Svetlana Lokhova made in her Amended Complaint (Docket Entry 52) in Lokhova v. Halper, et al. No. 1:19-cv-632 (LMB/JFA);
- All documents, files, or communications, whether digital or paper, relating to Professor Halper, Svetlana Lokhova, General Michael Flynn, Department of Defense contracts with Professor Halper;
- All documents, files, or communications, whether digital or paper, relating to Steven Biss, Barbara Ledeen, Michael Ledeen, Charles Ross, Devin Nunes, Derek Harvey, or Margot Cleveland;
- All documents, files, or communications, whether digital or paper, relating to any communication with or about an American intelligence representative;
- All documents, files, or communications, whether digital or paper, relating to any communication with or about a Russian intelligence representative, and,
- All documents, files or communications, whether digital or paper, relating to any communication with or about a journalist and Ms. Lokhova.

Please also advise me within two weeks how you propose to proceed. We expect that Simon & Schuster will immediately cease to publish the defamatory statements on its website and agree to discuss an appropriate retraction, apology, and settlement.

[Dkt. No. 7-4]. A very similar letter was sent to PHP on April 2, 2020, warning PHP that it had

published defamatory statements about Halper that had put him and his family at risk. [Dkt. No.

7-5]. The letter warned that PHP would be "responsible" for damages, asked PHP to put a

litigation hold on multiple documents, and provided a two-week deadline in which PHP had to

let Halper's counsel know whether it had "ceased and desisted publishing the marketing material," and whether it "agree[d] to undertake settlement negotiations for the damages inflicted." Id. Additionally, the letter estimated the damages suffered by Halper to be "multiples of Ms. Lokhova's estimation of [$25 million as] her own self-worth" in Lokhova I. Id. After S&S received Halper's counsel's letter, it advised PHP that unless PHP canceled plaintiff's book contract, S&S would refuse to distribute any of PHP's books. [Dkt. No. 1] ¶ 21. PHP responded by cancelling the book contract with plaintiff, who nevertheless went on to self-publish the book after renaming it as "SPYGATE EXPOSED: THE CONSPIRACY TO TOPPLE PRESIDENT TRUMP." Id. ¶¶ 22–23.

On April 10, 2020, Biss sent a letter to Halper's counsel in response to his demand letters to S&S and PHP, demanding that he retract the letters, and seeking damages, settlement negotiations, a litigation hold, and a response.[3] [Dkt. No. 7] at 13. Halper's counsel responded with another letter to Biss pointing out that the demand letters he had sent to the publishers were privileged, thereby precluding suit over them, and promising to renew Halper's claims of bad faith litigation from Lokhova I if Biss filed a lawsuit over the letters defense counsel sent to S&S and PHP.[4] [Dkt. No. 7] at 13.

---

[3] In his Motion for Sanctions, defendant stated that the letter from Biss to defense counsel asserted: "Your threats of litigation and your request for a 'litigation hold' are idle and toothless because Halper knows the truth." [Dkt. No. 7] at 13. No party has provided a copy of this letter, and it is not in the record; however, neither plaintiff nor Biss has challenged defendant's description of the contents of the letter or that quotation.

[4] This letter is similarly not in the record, but neither plaintiff nor Biss has challenged the asserted contents of this letter.

**B. Procedural History**

On December 31, 2020, Lokhova and Biss filed the instant lawsuit alleging that defense counsel's letters to S&S and PHP constituted defamation and tortious interference with contract.[5] On February 12, 2021, defense counsel sent Biss a letter citing Fed. R. Civ. P. 11 and a draft motion for sanctions, in which he advised plaintiff that her claims were frivolous because the demand letters were not actionable as they were protected by the absolute litigation privilege. The letter demanded that plaintiff withdraw and dismiss this action, and warned that if the complaint were not dismissed within 21 days, defendant would seek sanctions, including those available under Rule 11.[6] [Dkt. No. 17-1]. Under the safe harbor provision in Rule 11, a plaintiff who files a groundless complaint has 21 days in which to dismiss it without being exposed to a sanction. The safe harbor period for plaintiff expired on March 5, 2021. [Dkt. No. 17-2], Reed Decl. ¶ 12. Plaintiff not only failed to dismiss the action, but also served the complaint on the defendant on March 9, 2021. On March 26, 2021, defendant filed his Motion for Sanctions [Dkt. No. 6] against Lokhova and Biss, in which he sought dismissal of the complaint and an award of his attorneys' fees. After full briefing and oral argument, the Court orally granted defendant's Motion for Sanctions, dismissed this civil action with prejudice, and ordered defendant to file a

---

[5] Because Lokhova and Biss did not indicate that this new complaint was related to Lokhova I when they filed it despite the clear linkage between the two cases, this civil action was originally assigned to Judge Anthony J. Trenga. Recognizing the overlapping nature of this civil action with Lokhova I, Judge Trenga had it reassigned to the undersigned judge on April 7, 2021.

[6] Specifically, the cover letter stated:

> I am writing on behalf of Stefan Halper to give you notice under Fed. R. Civ. P. 11(c) that Defendant Halper intends to file the accompanying sanctions motion unless Plaintiff agrees, within the next twenty-one days, to dismiss the above-captioned lawsuit against Defendant Halper. The reasons for this request are set forth in the accompanying memorandum of law, which is incorporate [sic] herein by reference.

[Dkt. No. 17-1].

petition to recover the reasonable attorneys' fees that he incurred after the issuance of his counsel's Rule 11 letter to Biss. [Dkt. No. 16]. Defendant timely filed his Petition, which has been fully briefed by the parties.[7]

## II. DISCUSSION

### A. **Standard of Review**

The authority of federal courts to impose sanctions arises both from specific rules such as Fed. R. Civ. P. 11, as well as courts' "certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Six v. Generations Fed. Credit Union, 891 F.3d 508, 519 (4th Cir. 2018) (quoting Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017)). "[T]he filing of a frivolous lawsuit may demonstrate bad faith where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass the defendants rather than to obtain a favorable judgment." Raya v. NPAS, Inc., 2020 WL 3550002, *3 (E.D. Va. May 11, 2020) (quoting Hick v. Keonig, 766 F.3d 265, 270 (7th Cir. 1985)). "Rule 11 mandates that every pleading, motion, or other paper filed with the court be the product of a 'reasonable inquiry' on the part of the attorney or party signing the document, and that the document be 'well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it . . . not [be] interposed for any improper

---

[7] On June 4, 2021, plaintiff filed a notice of appeal in which she stated that

> In accordance with FRAP Rule 4(a)(4)(B)(i), if applicable, this Notice of Appeal is being filed after the District Court announced and entered a judgment, but before the Court has ruled on the monetary amount, if any, sought by Halper in his petition for fees. This Notice shall become effective to appeal the Court's award of fees when the Court rules on the amount of fees, if any, that it awards Halper.

[Dkt. No. 19].

purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" Blue v. U.S. Dep't of Army, 914 F.2d 525, 533 (4th Cir. 1990) (quoting Fed. R. Civ. P. 11).

## B. Analysis

### 1. Absolute Privilege[8]

In the May 5, 2021 hearing on defendant's Motion for Sanctions, the Court found that Halper's counsel's letters were protected by the absolute litigation privilege, making the filing of the pending lawsuit by Lokhova and Biss frivolous and without merit. In her opposition to the Motion for Sanctions, plaintiff conceded that "[i]n Virginia, it is firmly established that a party or witness enjoys absolute immunity for statements made (written or spoken) during a judicial proceeding, provided those statements are relevant to the subject matter of the proceeding." [Dkt. No. 12] at 6. The Virginia Supreme Court has clearly held that demand letters sent to counsel preliminary to litigation are also absolutely privileged. Mansfield v. Bernabei, 284 Va. 116 (2012). In Bernabei, the Virginia Supreme Court affirmed a demurrer in a defamation case predicated upon an attorney's pre-suit written settlement demand and adopted the Restatement (Second) of Torts' approach to the judicial proceedings privilege.[9] Id. The Virginia Supreme Court also explained that "[n]umerous jurisdictions apply an approach in accord with the

---

[8] Because the Court resolved the Motion for Sanctions on Virginia common law grounds, it need not address the application of the First Amendment Noerr Pennington doctrine.

[9] As quoted in the Bernabei opinion, section 586 of the Restatement (Second) of Torts, states:

> [§ 586] An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Bernabei, 284 Va. at 123–24.

Restatement, holding that absolute privilege may bar defamation claims on the basis of pre-filing, litigation-related communications." Id. at 124 (collecting cases).

Instead of acknowledging this clear precedent, plaintiff relied extensively on the Virginia Supreme Court's concern expressed in Lindeman v. Lesnick, a case that preceded Bernabei by eight years, that extension of the absolute privilege to pre-filing communications may allow "defamatory communications to be made with impunity merely upon an assertion that litigation might be subsequently initiated." 268 Va. 532, 537–38 (2004). Plaintiff's reliance on Lindeman ignores that the Virginia Supreme Court specifically answered the Lindeman court's concerns by explaining that the privilege applies only if three requirements are satisfied: "(1) the statement was made preliminary to a proposed proceeding; (2) the statement was related to a proceeding contemplated in good faith and under serious consideration, and (3) the communication was disclosed to interested persons." Bernabei, 284 Va. at 125. The third element is not in dispute here, as the letters were sent only to interested parties, the publishers of the allegedly defamatory marketing material.

As to the first and second elements, the parties disputed whether letters sent by Halper's counsel were preliminary to a potential defamation claim against the publishers and were related in good faith to legal proceedings under serious consideration. The Virginia Supreme Court has held that:

> As to the degree of relevancy or pertinency necessary to bring the alleged defamatory matter within the privilege, the courts favor a liberal rule. Thus, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety.

Massey v. Jones, 182 Va. 200, 208 (1944).

In her opposition to the Motion for Sanctions, plaintiff quoted extensively from a California Court of Appeal case, Dickinson v. Cosby, to argue that defendant's letters were not

sent in relation to litigation "contemplated in good faith and under serious consideration." 225 Cal. Rptr. 3d 430, 454 (Cal. Ct. App. 2017). In Cosby, the court held that because demand letters were sent only to media outlets that had not yet run the story of plaintiff's allegations of rape by defendant, and defendant never sued any media outlet that ran the story, the letters were "a bluff intended to frighten the media outlets into silence (at a time when they could still be silenced), but with no intention to go through with the threat of litigation if they were uncowed." 225 Cal. Rptr. 3d at 456. Although she did not add any explanation to her pages-long quotation from this case, presumably plaintiff meant to compare the facts of that case to the fact that Halper never filed suit against plaintiff after she self-published her book. See [Dkt. No. 1] ¶ 23 ("After PHP canceled the Book Contract, Plaintiff self-published the Book. . . . Plaintiff marketed the Book on her website, on Amazon and on Twitter, using the same statements previously employed by S&S and PHP in the marketing materials.") (internal links omitted).

Plaintiff did not cite to any authority in Virginia supporting her argument that defendant's demand letters were not privileged because he did not file a defamation action against her. Moreover, the demand letters served their intended purpose of avoiding litigation between defendant and S&S and PHP. See Bernabei, 284 Va. at 124 ("The importance of encouraging compromise and settlement is unquestioned in our jurisprudence.").[10] To the extent plaintiff argued that defendant's demand letters were "hollow threats of litigation" because defendant did not send demand letters or file suit against Lokhova directly, Cosby, 225 Cal. Rptr. 3d at 456, plaintiff has not alleged that defendant was even aware of plaintiff's plan to self-publish her

---

[10] Defendant's demand letters also resulted in plaintiff changing the title of the book she ultimately self-published, from the original title that focused attention on Halper ("THE SPIDER: STEFAN A. HALPER AND THE DARK WEB OF A COUP") to a title focusing on former president Donald Trump ("SPYGATE EXPOSED: THE CONSPIRACY TO TOPPLE PRESIDENT TRUMP").

book. Even if he had been aware of her plan, it would have been reasonable for Halper to be satisfied by the major publishers ceasing publication of the allegedly defamatory marketing materials and to make the strategic choice not to pursue the more limited reach of Lokhova's self-published materials. On this record, the Court found that litigation against S&S and PHP was contemplated in good faith.

Additionally, in her opposition to the Motion for Sanctions, plaintiff argued that because defendant's letters were not marked "For Settlement Purposes Only," did not attach or reference a draft complaint or other pleading, did not include a specific settlement demand or offer, and did not explicitly state that if no response was received Halper would initiate a formal legal action, Bernabei was not applicable. Bernabei's holding is far broader than the narrow facts to which plaintiff wants to limit the privilege. Moreover, plaintiff mischaracterizes the letters, which warned that Halper intended to hold the publishers liable for harm caused by death threats to Halper and his family, demanded that S&S and PHP "immediately cease to publish the defamatory statements on [their] website[s] and agree to discuss an appropriate retraction, apology, and settlement," and requested a litigation hold on numerous documents, all of which would be relevant in a future lawsuit against S&S and PHP. [Dkt. No. 7-4]; [Dkt. No. 7-5] (similar). These letters satisfy the Bernabei requirements, and plaintiff's arguments as to their failure to satisfy these requirements amount to an absurdly narrow focus on form over substance. Additionally, there is no requirement in Bernabei or the Restatement that defendant's letters include a draft complaint to qualify for the absolute litigation privilege. See Bernabei, 284 Va. at 124 ("The Fourth Circuit likewise applied absolute privilege in a case involving a pre-filing letter, finding it 'probable that Virginia would follow the lead of the Restatement [ (First) ] of Torts, § 587 (1938).'") (quoting West v. Marjorie's Gifts, Inc., 529 F.2d 518, 518 (4th Cir. 1975)

(unpublished)) (emphasis added)); accord Messina v. Krakower, 439 F.3d 755, 760 (D.C. Cir. 2006) (Garland, J.) (applying the same Restatement principle under D.C. law).

In his memoranda in support of his Motion for Sanctions, defendant correctly argued that there are compelling reasons not to mark pre-litigation demand letters as "For Settlement Purposes Only," as many jurisdictions require a pre-filing demand for retraction before a party may file a defamation suit. See, e.g., Nunes v. Cable News Network, Inc., 2021 WL 665003, *7 (S.D.N.Y. Feb. 19, 2021) (dismissing a lawsuit filed by Biss for failure to satisfy California's pre-filing notice and retraction demand requirement). In other jurisdictions, such pre-filing letters provide evidence of a defendant's malice if the defendant continued to publish defamatory statements after being put on notice of their defamatory nature,[11] and serve as proof of efforts to mitigate the harm caused by ongoing defamation. See, e.g., News Leader Co. v. Kocen, 173 Va. 95, 105–06 (1939) (prompt apology or retraction may mitigate damages). Accordingly, characterizing pre-filing demand letters as "confidential" or "for settlement purposes only" could jeopardize their use in later defamation litigation regarding essential elements of proof.

The rest of plaintiff's arguments in her opposition to the Motion for Sanctions amounted to another defamatory attack on Halper and attempts to relitigate Lokhova I, including her attachment of redacted FBI papers purportedly showing Halper lying to the FBI. See [Dkt. No. 12-1]. As defendant pointed out, the applicability of the litigation privilege does not depend upon whether the demand letter is defamatory. See, e.g., Messina, 439 F.3d at 761 ("But the fact that

---

[11] In Nunes v. Lizza, Biss argued actual malice in a defamation case on behalf of Devin Nunes's family by alleging that "[p]rior to filing this action, Plaintiff gave notice to Defendants and made a demand for retraction[s]." 486 F. Supp. 3d 1267, 1298 (N.D. Iowa 2020) (alterations in original); see also Restatement (Second) of Torts § 580A and comment d (1977) ("Under certain circumstances evidence [of refusal to retract] might be relevant in showing recklessness at the time the statement was published.").

the letter was defamatory (if it was) cannot determine the applicability of the privilege, since the

very purpose of the privilege is to protect against liability for defamation."); see also

Restatement (Second) of Torts § 586, comment a ("Therefore the privilege is absolute. It protects

the attorney from liability in an action for defamation irrespective of his purpose in publishing

the defamatory matter, his belief in its truth, or even his knowledge of its falsity."). Accordingly,

the Court found that Halper's counsel's demand letters were clearly subject to the absolute

litigation privilege, that plaintiff was on explicit notice that the privilege was being invoked, and

that plaintiff was warned about the consequences of filing a lawsuit based on those privileged

letters. By filing this lawsuit and failing to withdraw it within the Rule 11 safe harbor period,

plaintiff and her counsel violated both Rule 11 and the Court's admonition in Lokhova I. For all

these reasons, defendant's Motion for Sanctions was granted, leaving as the only issue the

amount of attorneys' fees to be awarded.

    2. Sanctions

In considering litigation sanctions, the Fourth Circuit has directed that courts may:

> consider factors such as the offending party's history, experience, and ability, the severity
> of the violation, the degree to which malice or bad faith contributed to the violation, the
> risk of chilling the type of litigation involved, and other factors as deemed appropriate in
> individual circumstances.

In re Kunstler, 914 F.2d 505, 524–25 (4th Cir. 1990) (quoting ABA, Standards and Guidelines

for Practice Under Rule 11 of the Federal Rules of Civil Procedure (1988)). Sanctions may be

imposed "on any attorney, law firm, or party who violated the rule or is responsible for the

violation." Fed. R. Civ. P. 11(c)(1).

Although inherent authority sanctions can rest upon bad faith alone, Rule 11 sanctions

also require an objective finding of improper purpose. Raya, 2020 WL 3550002, at *3 (citing

Blue, 914 F.2d at 533). "[T]o determine 'improper purpose,' a district court must judge the

conduct of counsel under an objective standard of reasonableness rather than assessing subjective intent." Kunstler, 914 F.2d at 518. "If counsel wilfully [sic] files a baseless complaint, a court may properly infer that it was filed either for purposes of harassment, or some purpose other than to vindicate rights through the judicial process." Id. at 519. Where a complaint has many allegations that lack a basis in law or fact and counsel are not clearly inexperienced, that strongly supports a finding of improper purpose. Id. Other instances of misconduct are directly relevant to a court's determination of whether to impose sanctions. See, e.g., id. at 524–25 ("A court might also increase a sanction if one attorney has been previously sanctioned, because such conduct might indicate that the previous sanction was not enough to deter the repetition of the offense.").

As defendant highlighted in his Motion for Sanctions, Biss has asserted that he is "an experienced trial lawyer, with a national practice focused on complex business tort litigation," who has "successfully litigated to verdict/judgment hundreds of cases involving claims of defamation, false light, malicious prosecution, conspiracy, fraud, tortious interference with contract, and similar legal issues." [Dkt. No. 7-6] Exhibit 6, Nunes v. Cable News Network, Inc., 1:20-cv-03976 (LTS)(OTW) (S.D.N.Y.) D.E. 41.2 (Biss Pro Hac Vice Corrected Affidavit).

Biss also has an extensive history of being admonished and sanctioned by courts around the country. In this district, Biss was warned not to engage in ad hominem attacks. Steele v. Goodman, 2019 WL 3367983, *3 (E.D. Va. July 25, 2019). Another judge admonished Biss for conduct unbefitting an officer of the Court. Nunes v. WP Co., LLC, No. 3:20-CV-146, 2020 WL 2616707, at *2 (E.D. Va. May 22, 2020). Biss was sanctioned and required to pay the opposing party's attorneys' fees under Rule 11 for making "objections contrary to settled law":

> Counsel for Plaintiff's objections contrary to settled law are particularly troubling given this Court's previous admonishment, in its May 29, 2020 Memorandum Opinion, that Mr. Biss "ensure that all positions, including those in briefing and in support of discovery, 'are warranted by existing law or by a nonfrivolous argument for extending, modifying,

or reversing existing law or for establishing new law'. . . [f]ailure to do so could result in sanctions."

Anderson v. Sch. Bd. of Gloucester Cty., 2020 WL 4719091, at *6 (E.D. Va. Aug. 13, 2020) (citing Anderson v. Sch. Bd. of Gloucester Cty., 2020 WL 2832475, at *8 n.16 (E.D. Va. May 29, 2020) (quoting Fed. R. Civ. P. 11(b)(2)). In dismissing a RICO suit for its "conclusory allegations," yet another judge in the Eastern District of Virginia admonished Biss that any amended complaints must comply with Fed. R. Civ. P. 11. Nunes v. Fusion GPS, 2020 WL 8225339, at *1 (E.D. Va. Feb. 21, 2020). Biss has also been sanctioned in other districts, including in an Iowa federal district court, where the judge described Biss's personal attacks in a complaint as "immaterial, impertinent, and scandalous," with "no bearing on this case," and "prejudicial to [defendant]" with "criminal overtones," Nunes v. Lizza, 476 F. Supp. 3d 824, 861–62 (N.D. Iowa 2020); and by a district judge in the Southern District of Florida who imposed sanctions on Biss under the Florida anti-SLAPP statute because his lawsuit "was without merit" and arose out of free speech in connection with a public issue. Bongino v. Daily Beast Co., LLC, 477 F. Supp. 3d 1310, 1322 (S.D. Fla. 2020). Recently, Biss was sanctioned in the District of Maryland and required to pay defendant $21,437.50 to reimburse it for its attorneys' fees after Biss filed a meritless amended complaint. Harvey v. Cable News Network, Inc., 2021 WL 1751121 (D. Md. May 4, 2021).

Although plaintiff argues in her opposition that the dismissal of her action with prejudice is a "tremendous penalty" and should alone be an adequate sanction under Rule 11, the Court has already held that defendant is entitled to his reasonable attorneys' fees incurred in responding to this frivolous litigation. Additionally, the Fourth Circuit has held that "[a] court might also increase a sanction if one attorney has been previously sanctioned, because such conduct might

indicate that the previous sanction was not enough to deter the repetition of the offense."[12] In re Kunstler, 914 F.2d 505, 525 (4th Cir. 1990). Considering Biss's experience as an attorney, long history of sanctionable conduct, this Court's specific warnings in Lokhova I that further frivolous actions against Halper could result in sanctions, the Fourth Circuit's comment about joining the chorus of other courts that have sanctioned Biss, defendant placing Biss on explicit Fed. R. Civ. P. 11 warning, and the frivolousness of this complaint, the Court infers an improper purpose for bringing this civil action. Accordingly, sanctions in the form of dismissal of the complaint are not sufficient to deter Biss from continued improper litigation practices, and an award of defendant's reasonable attorneys' fees for work done in this civil action after defense counsel issued his Rule 11 letter is appropriate. In the words of the Fourth Circuit, this Court has "join[ed] the chorus in sanctioning attorney Biss." Lokhova, 2021 WL 1418848 at *9.

      3. Attorneys' Fees

Left for evaluation is the reasonableness of defendant's requested attorneys' fees. In granting an award of attorneys' fees, the Court must determine the lodestar figure by multiplying the reasonable number of hours counsel and staff expended on the litigation times the reasonable hourly rates of the personnel involved. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009); Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). Deciding what is

---

[12] In Lokhova I, this Court warned plaintiff and her counsel against filing "further inappropriate pleadings or pursu[ing] frivolous post-judgment litigation against any of these defendants." Lokhova, 441 F. Supp. 3d at 267, aff'd, 995 F.3d at 149 (agreeing with this Court's chastisement of "attorney Biss for 'directing unprofessional ad hominem attacks at [Appellee] Halper and others'"). As the Fourth Circuit observed in the appeal of Lokhova I, "[o]f note, this is not the first time attorney Biss's litigation conduct has earned reprimand. His history of unprofessional conduct is long." Lokhova, 995 F.3d at 149 (citing other cases in which Biss was reprimanded or sanctioned).

"reasonable" is within the district court's discretion, but must be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243-44.

Under the widely used Vienna Metro decision, a reasonable hourly rate for lawyers in this district with a minimum of 20 or more years of legal experience would fall within the range of $505 to $820 per hour. Vienna Metro LLC v. Pulte Home Corp., 2011 WL 13369780, *6 (E.D. Va. Aug. 24, 2011). Defendant seeks attorneys' fees at an hourly rate of $500 for the work of Terrance G. Reed ("Reed"), who has approximately 36 years of litigation experience, and Robert K. Moir ("Moir"), who has 23 years of litigation experience. See [Dkt. No. 17-2] Reed Decl. ¶ 13; [Dkt. No. 17-3] Moir Decl. ¶ 9. Both hourly rates are below the Vienna Metro range and are reasonable given the years of experience of each attorney.

Plaintiff and her counsel nevertheless argue that the hourly rates charged by defense counsel are unreasonable because counsel lack experience in this particular area of law based on their mainly white-collar practice. This argument is meritless. Litigation privilege is a recurring issue in both criminal and civil litigation, and it was a doctrine with which defense counsel were clearly familiar because they were able to warn plaintiff of its applicability before she filed this

litigation.[13] Moreover, Reed has submitted an affidavit in which he states that in 2003, he was elected to membership in the American Law Institute, where he is currently a member of the Members Consultative Group on a Restatement of Defamation. [Dkt. No. 17-2] ¶ 6. Accordingly, contrary to plaintiff's argument, defense counsel, especially Reed, have extensive experience in this area of law and their hourly rates are reasonable.

Defendant states that the total attorney time expended between February 12, 2021 and May 5, 2021 was 67.75 hours,[14] consisting of 49 hours for Reed and 18.75 hours for Moir.[15] [Dkt. No. 17-2] Reed Decl. ¶ 14; [Dkt. No. 17-3] Moir Decl. ¶ 8. Plaintiff and her counsel argue that the time defense counsel spent securing the complaint's dismissal was unreasonable and the descriptions in the billing statement were excessively vague. For example, they complain:

> After the motion was filed Counsel for Halper claims that they continued to do "Research on Sanctions". The nature and purpose of the "Research" is unidentified and unknown. After filing the reply, they continued to perform "Rule 11 research on supplemental authority".

[Dkt. No. 18] at 4. Although the descriptions in the billing statement could have provided more detail, the descriptions are sufficient to satisfy the Court that the time spent securing the dismissal of the complaint was reasonable. For example, in Harvey, a sanction of $21,437.50 was imposed on Biss after he filed an amended complaint in a defamation case which the court had dismissed. 2021 WL 1751121, at *3. The amended complaint was substantially the same as

---

[13] In response to Biss's April 10, 2020 letter to Halper's counsel in which Biss demanded that defense counsel retract the letters to Lokhova's publishers, defense counsel responded by pointing out that the demand letters sent on behalf of Halper were privileged, and that any suit over them would, therefore, be without merit. [Dkt. No. 7] at 13.

[14] Although defendant misstates the total number of hours as 69 hours in his reply, the attorney hours submitted by defendant add up to 67.75 hours. [Dkt. No. 17-3].

[15] Defendant states that "[a]nother counsel of record for Professor Halper, Mr. Robert Luskin, contributed substantially to the sanction motion, but the Defendant is not seeking a fee award for his time. Mr. Luskin has more years of litigation experience than Mr. Reed." [Dkt. No. 21] at 5.

the dismissed complaint. Id. That court held that 67.6 hours spent by three attorneys and a paralegal to draft and file two briefs (a 13-page memorandum, and a 10-page reply), in support of a motion to dismiss the amended complaint was reasonable. Id. Here, defense counsel filed a 27-page memorandum in support of their Motion for Sanctions, along with over 50 pages of attachments, and an 18-page reply, both of which were significantly longer than the briefs in Harvey, without the benefit of any prior opinion as defense counsel had in Harvey, and they appeared in court to argue that motion. Accordingly, the 67.75 hours that defense counsel spent on this civil action, as compared to the 67 hours spent in Harvey, were reasonable.

Plaintiff and her counsel also argue that the number of hours defense counsel spent on this civil action was inappropriate because this civil action involved a simple, "not difficult or complex" application of the litigation privilege. That characterization of the issue is contradicted by the multiple arguments plaintiff raised in her 15-page opposition to defendant's Motion for Sanctions. [Dkt. No. 12]. Additionally, the time spent on briefing the Motion for Sanctions to secure dismissal of the lawsuit was reasonable given the plaintiff's demand for $5.35 million in damages against defendant. [Dkt. No. 1] at A–B.

Plaintiff also argues that time spent on unsuccessful or ineligible claims should be excluded. This argument is frivolous, as there were no issues on which defendant did not prevail. Defendant's only "claims" were that plaintiff's complaint was meritless and vexatious because defendant's actions were privileged, and that plaintiff pursued the litigation in bad faith after receiving a clear Rule 11 warning and for the improper purpose of continuing to harass Halper. Defendant prevailed on all those claims.

Plaintiff and her counsel argue that the billing statement demonstrates that both Reed and Moir billed time for working on the same tasks. "When a task or issue does not require the use of

multiple attorneys, the Court should award fees for the time of one attorney." Faircloth v. Colvin, No. 2:13-cv-156, 2014 WL 5488809, at *9 (E.D. Va. Oct. 29, 2014) (internal quotations omitted). Plaintiff and her counsel point to billing entries where both Reed and Moir drafted the Motion for Sanctions, reviewed plaintiff's objections to the motion, and drafted the reply. In general, the Court does not award attorneys' fees for double billing; however, in this case, given plaintiff's vexatious litigation tactics that included seeking over $5 million in damages and sanctions, assigning two attorneys to defend against this complaint was not unreasonable.

The Court has also considered the history of litigation practices by Biss as well as the plaintiff's animosity toward Halper and the need to impose a sanction that will deter further frivolous lawsuits by Lokhova and Biss against Halper. As discussed above, plaintiff and Biss were already warned by this Court and clearly put on notice by the Fourth Circuit that their behavior risked sanction, yet they have been undeterred. Accordingly, a sanction of $33,875, which reflects only a portion of defendant's attorneys' fees,[16] in addition to dismissal of the complaint with prejudice are appropriate sanctions.

Lastly, the Court has considered whether the monetary sanction should be imposed solely on Biss or jointly and severally on plaintiff and Biss. Lokhova obviously chose Biss to represent her in Lokhova I, must have been aware of the rhetoric he used in that complaint, and was in court when this Court admonished Biss, yet chose to retain Biss and authorize him to file this groundless new lawsuit. She is, therefore, also properly subject to this sanction. The Court gave plaintiff and her counsel notice to raise any relevant issues of financial capacity to satisfy the requested fee application. In re Kunstler, 914 F.2d 505, 524 (4th Cir. 1990) ("[T]he burden is

---

[16] For example, the Court limited the recovery of attorneys' fees to time spent after counsel sent the Rule 11 warning, and the attorneys' fees do not reflect the time defense counsel spent on their 7-page fee petition and 15-page reply to plaintiff's opposition to the petition.

upon the parties being sanctioned to come forward with evidence of their financial status."). No evidence or contention of inability to pay has been offered by either plaintiff or Biss in their opposition brief.

III. CONCLUSION

Accordingly, for the reasons stated in open court and in this Memorandum Opinion, the sanction of $33,875.00 will be imposed jointly and severally on Lokhova and Biss by an Order to be issued with this Memorandum Opinion.

Entered this 9ᵗʰ day of July, 2021.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge