**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1655

SVETLANA LOKHOVA,

Plaintiff - Appellant,

v.

STEFAN A. HALPER,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:20-cv-01603-LMB-MSN)

Argued:  January 26, 2022                                  Decided:  April 5, 2022

Before NIEMEYER, AGEE, and DIAZ, Circuit Judges.

Reversed and remanded by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Diaz joined.

**ARGUED:**  Steven Scott Biss, LAW OFFICE OF STEVEN S. BISS, Charlottesville, Virginia, for Appellant.  Terrance Gilroy Reed, LANKFORD & REED, PLLC, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Robert D. Luskin, PAUL HASTINGS LLP, Washington, D.C.; Robert K. Moir, LANKFORD & REED, PLLC, Alexandria, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

This appeal arises from the imposition of sanctions under Federal Rule of Civil Procedure 11 for the filing of a complaint alleging state law torts of defamation and tortious interference with contract that the district court found to be frivolous.

Svetlana Lokhova, a Russian-born author and academic, first sued Stefan A. Halper and others in May 2019, alleging acrimoniously and unprofessionally in an excessively long complaint that Halper was the source for news stories accusing her of being a Russian spy and of having an affair with General Michael Flynn in furtherance of her mission. On Halper's motion, the district court dismissed the action, primarily because it was facially untimely. Halper also filed a motion for sanctions, asserting that Lokhova and her attorney, Steven Biss, had brought the action in bad faith. The court denied that motion but warned Biss that should he "file further inappropriate pleadings or pursue frivolous post-judgment litigation against any of these defendants, sanctions might well be justified."

Roughly ten months later, Lokhova, again with Biss as her attorney, commenced this action based on facts that arose after the district court's warning, alleging that Halper and his attorney contacted the publishers of Lokhova's then-forthcoming book with the sole purpose of causing her book contract to be cancelled. The complaint alleged that in doing so, Halper and his counsel defamed Lokhova and tortiously interfered with her contract, causing its cancellation. She demanded $5 million in compensatory damages.

Before filing a motion to dismiss, motion for summary judgment, or any other response to the complaint, Halper filed a motion for sanctions. The district court granted the motion and imposed sanctions on Lokhova and Biss, jointly and severally, dismissing

2

the action and awarding Halper attorney's fees.  The court found that two letters that Halper had sent to the publishers were protected by an absolute litigation privilege under Virginia law, rendering the complaint "frivolous and without merit."  Accordingly, it concluded that Lokhova and Biss "violated both Rule 11 [of the Federal Rules of Civil Procedure] and the Court's admonition in [the earlier litigation]" in commencing this action.

While the exchanges between the parties over the course of the two lawsuits have been heated, we conclude that the complaint filed in this action was not frivolous and therefore its filing did not justify the imposition of sanctions.  Accordingly, we reverse and remand for further proceedings.

I

In May 2019, Lokhova, by her counsel Biss, commenced the earlier action against Halper and several news organizations in the district court.  The complaint alleged that Halper was a veteran political operative and the source of untrue defamatory statements, published by the defendant news organizations, that Lokhova was a Russian spy who was involved in alleged collusion between Russia and the campaign of former President Donald Trump, and that she had had an affair with General Michael Flynn on the orders of Russian intelligence, thereby compromising him.  In this earlier complaint, she stated claims, among others, for defamation and tortious interference with prospective advantage.  The 73-page complaint also included *ad hominem* attacks and unprofessional language.

On Halper's motion, the district court dismissed the complaint by an order dated February 27, 2020, concluding that, on its face, the complaint showed that most of the

defamation claims were barred by the applicable statute of limitations.  As to the remaining claims, it found that the allegations were insufficient to state a claim.  The court also denied Halper's separate motion for sanctions against Lokhova and Biss based on his claim of their inappropriate conduct and bad-faith litigation.  Nonetheless, the court admonished:

> Although the Court does not condone the tactics employed by Biss and Lokhova in this action, their conduct is not sufficient to warrant the draconian measure of imposing sanctions at this time.  The allegations of improper behavior by Biss are undoubtedly more severe than those by Lokhova, and should Biss file further inappropriate pleadings or pursue frivolous post-judgment litigation against any of these defendants, sanctions might well be justified.

*Lokhova v. Halper*, 441 F. Supp. 3d 238, 267 (E.D. Va. 2020).  On Lokhova's appeal of the district court's dismissal of her tort claims and Halper's cross-appeal of the court's denial of sanctions, we affirmed.  In doing so, we "endorse[d]" the district court's criticism of Biss's unprofessional conduct.  *Lokhova v. Halper*, 995 F.3d 134, 149 (4th Cir. 2021).

In December 2020 — while that appeal was still pending — Lokhova, by her attorney Biss, commenced this action in the district court against Halper, again alleging claims of defamation and tortious interference with contract and seeking $5 million in compensatory damages.  This complaint, however, was based on facts that developed after Lokhova's earlier complaint had been dismissed, and it did not contain similar *ad hominem* attacks and unprofessional language.  Specifically, it alleged that Lokhova had entered into a contract with a publisher to print her book entitled, "*The Spider:  Stefan A. Halper and the Dark Web of a Coup*"; that that publisher in turn engaged another publisher to market and distribute the book; and that, beginning on March 13, 2020, Halper and his counsel contacted the publishers with "the sole purpose" of causing Lokhova's book contract to be

cancelled.  The complaint alleged that in pursuing that purpose, Halper and his counsel made "numerous false factual statements" about Lokhova.  And it alleged that Halper succeeded — the publishers cancelled the book contract, despite the fact that there had already been "[t]housands" of online preorders.  It also alleged that Lokhova "reasonably expected to sell over 500,000 copies of the Book."  The complaint purported to state two causes of action — one that Halper defamed Lokhova when contacting the publishers and the other that Halper tortiously interfered with her book contract by purposefully causing it to be cancelled.

In response to the complaint, Halper — before filing any other motion or an answer — filed a motion for sanctions, attaching to his supporting memorandum copies of two letters that he acknowledged having sent to the publishers.  He claimed that the letters were "absolutely privileged" and therefore that Lokhova's complaint based on them was frivolous.  He further asserted that Lokhova and Biss pursued the action "for improper purposes, including the continued harassment of [Halper] in violation of Fed. R. Civ. P. 11(b)."  In support of his motion, Halper also attached non-case-related materials purportedly showing Biss's unprofessional conduct in other cases.  Halper sought "dismissal of this suit" and a monetary award for the "costs of responding to it."

Following a hearing on Halper's motion on May 5, 2021, the district court granted the motion in full, entering an order dismissing the complaint and directing Halper to file a petition for attorney's fees.  And by a subsequent order dated July 9, 2021, the court imposed the "additional sanction" of $33,875, "for which Svetlana Lokhova and Steven Biss are jointly and severally liable."

5

Lokhova and Biss filed a notice of appeal from the court's May 5, 2021 order and an amended notice of appeal from its July 9, 2021 order.  After the appeal was filed and docketed, Halper filed a motion in this court for sanctions on the ground that the appeal is frivolous, and Lokhova and Biss filed a cross-motion for sanctions on the ground that Halper's motion for sanctions is itself frivolous.

## II

As a threshold matter, Halper contends that Biss "has not secured the jurisdiction of this Court to review the sanctions judgment against him" or, alternatively, has waived his arguments by not making them in the opening brief on appeal.  (Cleaned up).

As to the first argument, Halper recognizes that the district court entered judgment "against both [Lokhova and Biss], jointly and severally."  But he claims that only Lokhova appealed and that "Biss did not take any step to make it objectively clear that he was perfecting an appeal in his own right."  In support of this argument, he notes, *inter alia*, that Biss "did not file . . . a docketing statement on his own behalf," that the notices of appeal did not list Biss as an appellant in their captions, and that the notices identified him "only as counsel for Appellant."

We do not find this argument persuasive.  While Biss is not explicitly identified as an appellant in the caption of either the notice of appeal or the amended notice of appeal, the substance of each notice made it objectively clear that both he and Lokhova were appealing.  Each notice stated:

> Plaintiff/Appellant, Svetlana Lokhova, *and* her Counsel, Steven S. Biss,
> pursuant to Title 28 U.S.C. § 1291 and Rules 3 and 4 of the Federal Rules of

Appellate Procedure ("FRAP"), hereby note *their* Appeal to the United States Court of Appeals for the Fourth Circuit.

(Emphasis added).  This language satisfies Federal Rule of Appellate Procedure 3, which requires that "[t]he notice of appeal must . . . specify the *party or parties* taking the appeal by naming each one in the caption *or body of the notice*."  Fed. R. App. P. 3(c)(1)(A) (emphasis added).  The rule's use of the disjunctive confirms the efficacy of naming the parties in either the notice's caption *or* its body, and the bodies of the notices at issue here clearly name both parties and refer to "their" appeal.

We also do not find persuasive Halper's argument that Biss waived the arguments he seeks to make on appeal by failing to assert them *in the opening brief*.  *See United States v. Cohen*, 888 F.3d 667, 685 (4th Cir. 2018) (noting that "an issue not presented fairly in an appellant's opening appellate brief is thereby waived").  The opening brief in this case begins by stating that "[Lokhova] *and* her counsel, Steven S. Biss, timely filed notice of appeal"; that "Lokhova appeals the District Court's Order" imposing sanctions under Rule 11 and dismissing her complaint; and that "Lokhova *and* her Counsel further appeal the District Court's decision to award fees and costs."  (Emphasis added).  Further, in the statement of the case, the brief reiterates that "Lokhova and her Counsel appeal."  The substance of the brief then addresses first the sufficiency of the complaint and whether it was frivolous and thereafter addresses sanctions as they applied to both Lokhova *and to Biss*.  Indeed, the brief devotes roughly two pages to the factual circumstances involving Biss in particular.  Finally, the brief concludes by stating that "Lokhova *and her Counsel* respectfully request oral argument."  (Emphasis added).

We thus reject both Halper's jurisdiction and waiver arguments as to Biss.

III

The core issue on appeal is whether the district court abused its discretion in imposing sanctions on Lokhova and Biss for their filing of the complaint in this case. In imposing those sanctions, the court held first that Lokhova and Biss had violated Federal Rule of Civil Procedure 11, concluding that by "filing a lawsuit based on [two] privileged letters" sent by Halper and "failing to withdraw [the lawsuit] within the Rule 11 safe harbor period," Lokhova and Biss had commenced an action that was "frivolous and without merit." The court reasoned that under Virginia law, Halper's letters were "clearly subject to the absolute litigation privilege" and that Lokhova "was on explicit notice that the privilege was being invoked." The court also relied on what it characterized as Lokhova and Biss's violation of its "admonition" in the earlier litigation that *should Biss file* further "frivolous" actions against Halper, "sanctions might well be justified." Based on these two violations, the court concluded that this action was brought in bad faith and for an improper purpose, and it dismissed the complaint and awarded Halper his attorney's fees.

While the district court relied on violations of both Rule 11 and its earlier admonition, because the latter warned against "further *frivolous* actions against Halper" (emphasis added), our review of that violation will be resolved by our discussion of Rule 11, which was similarly invoked by the district court because of its conclusion that the action was "frivolous and without merit." We note, in addition, that the court's earlier

admonition extended only to Biss and not Lokhova so as to put her on notice of potential sanctions.

In essence, Rule 11 imposes a duty on attorneys to certify, on the basis of a reasonable inquiry, that any pleading or paper they file with a district court (1) is not filed "for any improper purpose"; (2) is "warranted by existing law"; and (3) alleges facts that "have evidentiary support." Fed. R. Civ. P. 11(b); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (summarizing pre-1993 version of Rule 11 that was not, in respects relevant here, distinct from the current rule); *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). And courts have discretion to impose sanctions for violations of Rule 11. *See* Fed. R. Civ. P. 11(c). But in exercising that discretion to impose sanctions for a pleading or paper's lack of legal support, the court must apply an objective standard, inquiring whether "a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (citation omitted); *see also In re Kunstler*, 914 F.2d 505, 514, 517–18 (4th Cir. 1990) (noting that an alleged Rule 11 violation must be assessed under an objective reasonableness standard). In short, a sanctionable legal argument must have "absolutely no chance of success under the existing precedent." *Hunter*, 281 F.3d at 153 (citation omitted); *see also id.* (stating that "only the lack of *any* legal . . . basis is sanctionable" (emphasis added)).

As relevant to this case, we also note that a court's Rule 11 assessment of a complaint's legal basis may include consideration of available defenses, even if they are not apparent from the face of the complaint. *See Brubaker*, 943 F.2d at 1385. Here, this

9

principle supports the scope of the district court's assessment of the frivolousness of Lokhova's complaint, which went beyond the face of the complaint to consider the two letters attached by Halper to his motion for sanctions.

The current complaint, relying on facts that occurred subsequent to the dismissal of the earlier litigation, alleged that Halper, after learning of Lokhova's forthcoming book, undertook conduct intended to cause her book contract to be cancelled.  The book's marketing materials aggressively and provocatively (but allegedly truthfully) stated that Halper functioned as a political operative who targeted Donald Trump's advisor General Michael Flynn and "collaborated with the intelligence establishment to take the 'kill shot on Flynn.'"  The marketing materials also maintained that Halper pulled Lokhova into the narrative "through dishonest accusations . . . that she was General Flynn's paramour and a Russian spy."  The complaint set forth details of Lokhova's book contract with Post Hill Press, who in turn engaged Simon & Schuster for the book's marketing and distribution. It further asserted that Post Hill Press and Simon & Schuster vetted the book for accuracy and promoted it "heavily," receiving thousands of prepublication orders online.  The complaint stated that the book was to be released on August 25, 2020, and that Lokhova "reasonably expected to sell over 500,000 copies."

The complaint's core allegations stated that in March 2020, when Halper learned of the book, he directed his counsel, Terry Reed, to contact Post Hill Press and Simon & Schuster solely for the purposes of "quash[ing] publication and cancel[ling] the Book Contract."  It alleged that Reed then "contacted [Simon & Schuster] and [Post Hill Press] and falsely accused [them] of defaming Halper in the marketing materials."  The complaint

stated that "Halper requested that [the publishers] issue a public, written retraction of the defamation."  Furthermore, it alleged that through the letters, Halper also "defamed and disparaged" Lokhova to the publishers, falsely accusing her of "knowingly publishing" statements that were "false" and "inciteful" and that generated "hatred and threats" against Halper and his family.  The complaint also alleged that "Halper escalated the threats and intimidation to [Simon & Schuster's] parent company, CBS Corporation."  The complaint concluded that Halper's accusations were untrue and that "[t]he sole purpose of Halper's actions was to interfere with [Lokhova's] Book Contract and induce [Post Hill Press] to terminate the Contract," which it ultimately did after facing irresistible pressure from Simon & Schuster.

The complaint contained two counts.  In Count I, it alleged that Halper defamed Lokhova by making knowingly false statements to Simon & Schuster and Post Hill Press for "one unlawful purpose:  to induce [Post Hill Press] to terminate the Book Contract." And in Count II, it alleged that Halper "intentionally interfered with [Lokhova's] property rights and business expectations" by, among other things, "intentionally lying to [Simon & Schuster] and [Post Hill Press]" for the purpose of causing the book contract to be cancelled.

In response to this complaint — and before filing a motion to dismiss under Rule 12(b)(6), a motion for summary judgment under Rule 56, or an answer — Halper filed a motion for sanctions, stating in his supporting memorandum:

> Plaintiff and her counsel seek to transform a clearly privileged act — pre-litigation settlement demand letters to third parties about their defamation of Defendant Halper — into another excuse for a lawsuit.  Prelitigation demand

11

> letters are absolutely privileged under the common law, are constitutionally protected under the First Amendment, and are immune under Virginia statute. The filing of this suit, therefore, is not warranted under existing law and is being pursued for improper purposes, including the continued harassment of Defendant in violation of Fed. R. Civ. P. 11(b).

He attached to his memorandum two letters that he acknowledged sending to Simon & Schuster and Post Hill Press, which he does not dispute are the letters referred to in Lokhova's complaint. And he also attached materials relating to Biss's improper conduct in other cases to show his bad faith in this case.

Thus, when the district court ruled on Halper's motion for sanctions, the relevant materials it had before it were the complaint and the two letters that Halper acknowledged sending to Simon & Schuster and Post Hill Press, as well as the materials relating to non-case conduct by Biss.

It is not disputed that the complaint adequately stated claims under Virginia law for defamation and tortious interference with contract. *See Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013) (setting forth the elements for a defamation claim); *Schaecher v. Bouffault*, 772 S.E.2d 589, 602 (Va. 2015) (setting forth the elements for a claim for tortious interference with contractual relations). Rather, the district court focused on the two Halper letters and concluded that "clearly" they "were protected by the absolute litigation privilege, making the filing of the pending lawsuit by Lokhova and Biss frivolous and without merit."

Lokhova and Biss make several challenges to the district court's ruling. *First*, they note that under Virginia law, the absolute privilege invoked by Halper applies only with respect to defamation claims and not tortious interference claims. *Second*, they argue that

12

the requirements set forth in *Mansfield v. Bernabei*, 727 S.E.2d 69, 75 (Va. 2012), for finding such letters absolutely privileged were not satisfied in this case.  And *third*, they maintain that, inasmuch as the privilege depends on Halper's intent, it becomes a question of fact that cannot be resolved without discovery.  For these reasons, they argue, "the District Court erred in applying the absolute litigation privilege to the facts of this case" and "in dismissing Lokhova's complaint and imposing sanctions upon Lokhova and her Counsel."

With respect to the first argument, Virginia law supports Lokhova and Biss's assertion that the absolute privilege defense applies only to defamation claims and not tortious interference claims.  To be sure, the Supreme Court of Virginia only recently held explicitly that "[a]bsolute privilege does not apply to non-defamation torts in Virginia, specifically including . . . tortious interference with contractual relations."  *Givago Growth, LLC v. iTech AG, LLC,* 863 S.E.2d 684, 688 (Va. 2021).  But even though that case was decided after the district court granted Halper's motion for sanctions, the *Givago Growth* court nonetheless explained that it was affirming *preexisting principles* that had already been articulated in past decisions.  *See id.* (stating that "[t]his Court *has never extended* [the absolute privilege] defense to non-defamation torts" and "[t]oday, we confirm what the . . . reasoning [in *Donohoe Construction Co. v. Mount Vernon Associates*, 369 S.E.2d 857 (Va. 1988)] implied" (emphasis added)).

Thus, at the outset, it would appear that the absolute privilege on which the district court relied to find the complaint frivolous could, at most, extend only to Lokhova's

13

defamation claim and not her tortious interference claim.  For that reason alone, the district court could not correctly find the Rule 11 standard satisfied.

Halper seeks to avoid this conclusion by arguing that the defamation claim and tortious interference claim have a "shared basis" and that the tortious interference claim was "inextricably tied" to the defamation claim, such that the privilege attaching to the latter would also apply to the former.  This argument, however, fails to recognize the distinct elements for the two torts under Virginia law, which make clear that pre-litigation demand letters, even if not defamatory, could constitute tortious interference.  *See Schaecher*, 772 S.E.2d at 602.

For their second argument, Lokhova and Biss contend that, in any event, the applicability of the absolute privilege under Virginia law to pre-litigation letters depends on several factors related to the nature of the letters and that those factors were not satisfied in this case so as to permit the court to conclude that the letters were "clearly" absolutely privileged.  For example, they note that such letters must genuinely contemplate the filing of a lawsuit, a requirement they claim was not satisfied here.  They also argue that any such letter must share the essential attributes of the letter before the court in *Mansfield*, which, they maintain, were not shown for the letters in this case.  For both arguments, they point to *Mansfield*, which addressed the attachment of the absolute privilege to pre-litigation communications.  The *Mansfield* court recognized that, "[f]or absolute privilege to attach, the communication must be 'material, relevant or pertinent' to the judicial process." 727 S.E.2d at 75 (quoting *Penick v. Ratcliffe*, 140 S.E. 664, 669 (Va. 1927)).  And it articulated a three-element test for determining whether that requirement was satisfied with

14

respect to pre-litigation communications, relying on the Restatement (Second) of Torts. *See id.* at 74–75 (citing Restatement (Second) of Torts §§ 586, 587). Specifically, it held that to qualify for the absolute privilege, a pre-litigation communication must (1) be "made preliminary to a proposed proceeding," (2) be "related to a proceeding contemplated in good faith and under serious consideration," and (3) be "disclosed to interested persons." *Id.* at 75.

Lokhova and Biss argue mainly that when the letters were sent, Halper did not genuinely contemplate the filing of a lawsuit. They argue that Halper's intent in this regard was, in part, revealed by the fact that after he succeeded in inducing the cancellation of Lokhova's book contract, he did not file a lawsuit in response to her subsequent self-publication of the book. Therefore, they claim that the letters were designed *solely to interfere* with her book contract. They also note that Halper's letters did not threaten legal action and did not include a draft complaint, as was the case with respect to the letter at issue in *Mansfield*.

These arguments about the nature of the letters lead to Lokhova and Biss's last argument, which logically follows as an alternative argument if Halper's intent was not adequately shown in the limited record before the court — namely, that intent is a question of fact best resolved on a more fully developed record.

While Lokhova and Biss make several plausible contentions about the genuine purpose behind the letters, Halper's intent in sending the letters is ultimately a question of fact and one that neither the district court nor we are in a position to resolve based on the thin record before us. Only after discovery and the development of a fuller record can it

be determined whether Halper is able to show that the letters qualify for absolute privilege under Virginia law as (1) "made preliminary to a proposed proceeding," (2) "related to a proceeding contemplated in good faith and under serious consideration," and (3) "disclosed to interested persons." *Mansfield*, 727 S.E.2d at 75. Because the district court's conclusion that the complaint was frivolous depended on Halper's proving these elements to show the applicability to the letters of the absolute privilege as an affirmative defense, *see Givago Growth*, 863 S.E.2d at 687, the court erred in reaching that conclusion, as it should not have determined that the intent element of the privilege was satisfied on the basis of such a limited record. *See Koolvent Aluminum Prods., Inc. v. Azrael, Gann & Franz*, No. 94-1906, 1995 WL 227351, at *4 (4th Cir. Apr. 18, 1995) (per curiam) (holding that "additional discovery [was] necessary" before a claim that a letter was privileged "because it was sent in preparation for litigation" could be "properly considered").

At bottom, it is clear that the district court could not have concluded, based on the record before it, that Lokhova's complaint had "*no* chance of success." *Hunter*, 281 F.3d at 153 (emphasis added) (citation omitted). As such, the district court incorrectly held that the complaint was frivolous and that Rule 11 was therefore violated.

## IV

On a final but narrower issue, we note that to the extent the court imposed monetary sanctions on Lokhova for filing a frivolous complaint, such sanctions likely violated Rule 11(c)(5)(A). That rule forbids the imposition of monetary sanctions "against a represented party for violating Rule 11(b)(2)," which prohibits pleadings based on frivolous legal

arguments.   Fed. R. Civ. P. 11(c)(5)(A); *see also Mitchel v. City of Santa Rosa*, 601 F. App'x 466, 469 (9th Cir. 2015) (noting that a party "may not be held personally responsible for a sanctions award based on his counsel's violation of Rule 11(b)(2)"); *Tacoronte v. Cohen*, 654 F. App'x 445, 451 (11th Cir. 2016) (per curiam) (holding that sanctions imposed on the plaintiff "in significant part [because] Plaintiff's legal theories were not supported by existing law . . . plainly violate[] Rule 11(c)(5)(A)").   Thus, apart from any sanctions imposed on Biss, the imposition of a monetary sanction against Lokhova for the frivolousness of her complaint appears to violate Rule 11(c)(5)(A).

V

We recognize that, in evaluating Lokhova's complaint in this case, the district court was cognizant of the parties' contentious litigation history, of which the instant complaint was only a part.   And while some of that history was legitimately considered by the court, much of it was not determinative.

The district court witnessed that Lokhova and Biss had been locked in a heated and emotional ongoing dispute with Halper, and it was rightly perturbed by Biss's use of *ad hominem* attacks and unprofessional language in the first litigation's complaint.   The court was also aware that Biss had been cited for unprofessional conduct in other cases.   Thus, after the court dismissed Lokhova's first complaint, concluding that "Biss and Lokhova had to have known that most of [its] claims were time-barred," the substantial detritus of that litigation remained with the court, as reflected in its admonition to Biss.   Subsequently, when the same cast of characters, accusing each other of making defamatory statements

about some of the same historical events, came before the district court in this case, the parties' litigation history appears to have played a significant role in the court's reaction, causing the court to devalue the fact that Lokhova's second complaint presented claims based on new, distinct facts.  And this led to the court's erroneous application of Rule 11. Rule 11 demands that its standards be applied to the litigation at issue *in this case*.  And heeding that demand here, we conclude that the court could not have properly concluded that Lokhova's complaint, even when taken in light of the Halper letters, had absolutely no chance of success.

## VI

At bottom, we conclude that the district court abused its discretion in finding Lokhova's complaint frivolous and concluding on that basis that its filing violated Rule 11. The judgment of the district court — as reflected in its orders of May 5, 2021 and July 9, 2021 — is therefore reversed and the case remanded for further proceedings.  We also deny the parties' cross-motions for sanctions filed in this appeal.

IT IS SO ORDERED.