**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Svetlana Lokhova, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1603 (LMB)(TCB) |
| | ) | |
| Stefan A. Halper, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT HALPER'S MEMORANDUM IN SUPPORT OF

## DEFENDANT'S MOTION TO DISMISS

Respectfully submitted,

By: _____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone) : 703-299-5000
(Facsimile) : 703-299-8876
tgreed@lrfirm.net


Robert D. Luskin (*pro hac vice*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com


*Counsel for Defendant*
*Stefan A. Halper*

Table of Contents

Introduction..................................................................................................................1

Procedural Background................................................................................................ ..3

    A. Lokhova Brings Her First Suit Against Defendant Halper..........................................3
    B. Three Presidents Declare National Emergencies Because of Russian Interference with the
        2016 Presidential Election..................................................................................5
    C. Lokhova II.......................................................................................................8

Argument....................................................................................................................12

    I.      The Complaint Fails to State a Defamation Claim............................................12
          1.  The Complaint Fails to Allege Statements with a Defamatory Sting...................13
          2.  The Complaint Fails to Allege a False Statement.........................................14
          3.  The Statements Are Not of or Concerning Lokhova......................................16
          4.  The Alleged False Statements are Non-Actionable Opinions............................16
          5.  The Complaint Fails to Allege Actual Malice.............................................19
          6.  The Complaint Fails to Allege Publication................................................21

    II.     The Complaint Fails to Allege Tortious Interference with Contract........................22

    III.    The Complaint is Barred by First Amendment and Statutory Immunity and Common Law
          Privilege.....................................................................................................23
          1.  The Common Law Privilege of Self-Defense Applies....................................24
          2.  Statutory Immunity Applies................................................................26
          3.  First Amendment Immunity Applies.......................................................26

    IV.    The Complaint is Barred Under Res Judicata................................................29

Conclusion.................................................................................................................30

Defendant Stefan A. Halper moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint.  The Complaint should be dismissed for failure to state a defamation or a tortious interference with contract claim.  In addition, the Complaint should be dismissed because the conduct alleged is privileged, is subject to statutory and First Amendment immunity, and also is precluded under principles of *res judicata* based upon the prior judgment in *Lokhova v. Halper*, 441 F.Supp.3d, 238 (E.D. Va. 2020), *aff'd*, *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021) (hereinafter "*Lokhova I*" or "*LI*").

## Introduction

As with her first Complaint, Lokhova displays a powerful impulse to take personally statements that are not about her and are certainly not defamatory as a matter of law.  What the Court concluded in *Lokhova I*—"Lokhova has not alleged how a statement that clearly focuses on Flynn behaving inappropriately harms her own reputation or makes her appear 'odious, infamous, or ridiculous'"—applies equally here, with Lokhova suing again over Halper's defense of his own reputation. *Lokhova I*, at 263, *aff'd*, 995 F.3d at 145.

This is the second suit filed by Plaintiff Lokhova against Professor Halper ("*Lokhova II*" or *L2*") claiming that he masterminded an FBI conspiracy to "overthrow" the Trump Administration by using Plaintiff to fabricate the "hoax" of Russian interference with the 2016 Presidential election. *Compare Lokhova I* Amended Complaint (*LI*) ¶¶ 6 ("hoax"), 80 ("wholly fabricated and fictitious 'Russian collusion' narrative,")145 ("overthrow"), 192 *with Lokhova* II Complaint ("Complaint'. ¶¶ 4, 16, 23 ("Russia hoax") and id. ¶ 18 ("overthrow"). As in the prior suit, *Lokhova II* claims again that Plaintiff was falsely accused by Halper of being a Russian spy and paramour of Lt. General Michael Flynn in order to fabricate the "hoax" of Russian election

interference to foment a Presidential "coup." LI, ¶ 145 ("coup"); Complaint ¶¶ 1, 2, 16, 23 (same). The same timeline and plot driving this case were rejected in *Lokhova I*.

Undaunted, the complaint in *Lokhova II* contends that Halper's post-judgment reply contesting the accuracy of defamatory internet marketing material repeating the same "Russian hoax" claims against Halper defamed her which tortiously interfered with her publishing contract. The Complaint lacks six necessary defamation elements (defamatory sting, falsity, concern of plaintiff, non-opinion statements, actual malice, and publication), any one of which is fatal to the defamation claim and also bars the tortious interference claim. These same elements were necessary to Plaintiff's claims in *Lokhova I*, and their failure therein precludes their renewal in this case. The failure of Plaintiff's defamation claim is also based upon the unassailable truth that, in the wake of three successive Presidentially declared national emergencies due to Russian election interference, Plaintiff cannot sustain her burden of proving the contrary is substantially true.

In the unlikely event that a tort claim is adequately alleged, Defendant's alleged conduct is privileged or immune from liability under common, statutory, and constitutional law. Under the applicable laws,[1] Plaintiff's tort claims are barred: (1) under the common law right of self-defense (*Foretich v. Capital Cities/ABC, Inc.,* 37 F.3d 1541, 1559 & n.19 (4th Cir. 1994): (2) under Virginia statutory protection of speech on matters of public concern (Va. Code § 801.223.2); and (3) under the First Amendment because: (i) Plaintiff's claim relates to the ongoing *Lokhova I* case and is otherwise preliminary to future litigation; and (ii) Plaintiff relies upon Halper's alleged law enforcement role as an FBI informant.

_____

[1] *See Ashwander v. TVA,* 297 U.S. 288, 346–47 (1936)(Brandeis, J., concurring) (recommending addressing constitutional grounds last).

The legal standards applicable to a motion to dismiss are well-established and were accurately summarized and applied by this Court in *Lokhova I,* at 252-53. Non-conclusory allegations in the Complaint are assumed to be accurate for this motion, but not admitted.

## Procedural Background

### A. Lokhova Brings Her First Suit Against Defendant Halper

In May 2019, Plaintiff sued Defendant Halper, and five media companies in a 191-paragraph Complaint alleging that he orchestrated an "FBI conspiracy" with the CIA, the Defense Department (DOD), Cambridge University "operatives," Halper's "media stooges," and others to "topple President Trump" by means of smearing Plaintiff with false published reports that she was a Russian spy and paramour of General Michael Flynn. In addition to being an alleged FBI informant regarding Russian election interference (¶¶ 13 & n.4, 62, 76 & n.11, 164), Halper was the alleged source of these allegedly defamatory publications about Lokhova. *LI* Complaint ¶¶ 110, 120, 126, 127,147, 157, 162, 164, 166.

According to Lokhova, Professor Halper left Cambridge "to assist the FBI in its covert investigation of the Trump campaign," as "a spy in an FBI counterintelligence operation," and in that capacity "concealed the fact that he was aiding and abetting agents of the FBI in their efforts to create the false narrative (the 'insurance policy') of 'collusion' between the Trump campaign and the Russian government." *LI* Complaint ¶ 77 *n.11. Halper allegedly financed this FBI conspiracy ("counterintelligence operation") by funneling money from Defense Department contracts. *Id*. ¶¶ 13, 67. *LII* Complaint, ¶ 23.

The *Lokhova I* Complaints aver that Halper was a "spy" who masterminded "a conspiracy to undo the 2016 Presidential election and topple the President of the United States of America." Complaint, ¶1; Amended Complaint, ¶1. The crux of the complaint's conspiracy

3

claim was that, beginning in 2016, the FBI used Halper in a "counterintelligence operation" (AC,

¶ 152) to fabricate "a massive fraudulent hoax about 'Russian collusion,'" (AC, ¶6). *See id.* ¶

151 ("a counterintelligence hoax"). The FBI plan was "to advance the wholly fabricated and

fictitious 'Russian collusion narrative," ¶ 80, to achieve the "true goal of the FBI

counterintelligence operation: to overthrow President Trump in a soft coup." *Id.* ¶ 145.[2] Plaintiff

claimed that these alleged false publications brought her to contemplate suicide, AC, ¶ 6

("Plaintiff has contemplated suicide to end the suffering caused by. . . Halper's international

conspiracy and scandal."). Plaintiff claimed she suffered "lost book contracts." Opinion, at 13.

Defendant Halper moved to dismiss the Amended Complaint on several grounds, and in

October 2019 pointed out that Plaintiff had recently announced:

> that she will be publishing a new book entitled "Honeytrap: The True Story of Spygate."
> Exhibit 2. This book is scheduled for publication on October 31, 2019 and is available in
> three languages since September 2019. *Id.*[3]

The book content, however, was only described as "My quest for accountability and justice." *Id.*

On February 27, 2021, this Court issued a judgment dismissing the Amended Complaint

for failure to state a claim against Defendant Halper. The dismissal was based upon the Court's

conclusion that the Amended Complaint failed plausibly to plead:

1. That Halper was a "source" of any of the allegedly offending publications;[4]
2. That Halper was a member of the alleged conspiracy to topple the Trump
   Administration (the FBI conspiracy);[5] and

---

[2] *See Lokhova,* at 245 (describing *LI* Amended Complaint).

[3] D.E.#79 at 16 (Defendant Reply Brief in Support of Motion to Dismiss the Amended
Complaint) (citing D.E. 79.2, marketing material dated September 17, 2019 describing upcoming
book as "My quest for accountability and justice.").

[4] *Lokhova I,* at 259 (source allegations insufficient to satisfy Rule 8").

[5] *Lokhova I,* at 266 ("her conspiracy allegations are too conclusory to survive a motion to
dismiss").

3. That the alleged statements had defamatory sting as to Lokhova because they "clearly focus[] on Flynn behaving inappropriately [which does not] harm [Lokhova's] own reputation or makes her appear 'odious, infamous, or ridiculous.'"[6]

After this Court's February 2020 adverse judgment, Lokhova's book marketing material expanded to a summary of allegations from the just-dismissed complaint, including:

> There was a spy, an evil spider at work within and around the Trump presidential campaign. This spy earned a huge payday from a contract signed by James Baker of the Defense Department. . . . He initially targeted the important Trump advisor, Lt. General Flynn.
>
> During the 2016 Trump campaign, Halper-the spy also known as The Spider—schemed, lied, and ensnared members of the Trump team into his web, including the future president. He fabricated and sustained the fantastical narrative of the Russian hoax. In 2017, he collaborated with the intelligence establishment to take the 'kill shot on Flynn,' leaking classified information to his associated in the press.
>
> *An innocent Cambridge historian, Svetlana Lokhova was pulled into this fabricated narrative through dishonest accusations—for instance, that she was General Flynn's paramour and a Russian spy.*

Complaint, ¶ 2 (marketing material) (emphasis added). *See also id.* at ¶23 (repeating these same allegations). The emphasized language is the nucleus of operative facts upon which *Lokhova I* was brought and rejected. Further, this language provides Plaintiff's justification of her accusations about the "Russia hoax" and Halper's alleged "evil" spider" role therein.

On March 30, 2020, Halper, through his counsel, sent a letter to the General Counsel of Simon & Shuster demanding that it cease and desist from this defamation of Halper, citing this Court's opinion. DE#79.2. On April 15, 2021, the Fourth Circuit upheld this Court's dismissal in its entirety. *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021).

## B. Three Presidents Declare National Emergencies Because of Russian Interference with the 2016 Presidential Election

---

[6] *Lokhova I*, at 263 (citing *Chapin*, F.2d at 1092).

Beginning in December 2016, three successive Presidents (Obama, Trump, and Biden) have made findings that a national emergency exists under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 et seq., as result of Russian interference in the 2016 Presidential election.   See E.O. 13757 (2016); E.O. 13849 (2018), E.O. 14024 (2021), and E.O. 14068 (2022).[7] *See United States v. Arch Trading Co*., 987 F.2d 1087, 1093 (4th Cir. 1993) (upholding Presidential IEEPA authority).[8]

National emergency Presidential findings under § 1701 of IEEPA are classified as political questions that are not subject to judicial review.  *See, e.g., Chang v. United States*, 859 F.2d 893, 896 n.3 (Fed. Cir. 1988) (citing cases); *In re 650 Fifth Ave. and Related Properties*, 777 F.Supp.2d 529, 575 n.16 (S.D.N.Y. 2011); *Beacon Products Corp. v. Reagan*, 633 F. Supp. 1191, 1194 (D. Mass. 1986), *aff'd on other grounds*, 814 F.2d 1 (1st Cir. 1987).

"The valid exercise of the President's constitutional power in the sphere of foreign relations has the force of law and is to be applied by the courts as the law of the land." *Unidyne Corp. v. Government of Iran*, 512 F. Supp. 705, 710 (E.D. Va. 1981) (Bryan, J.) (enforcing IEEPA order arising from Iran hostage emergency) (quoted with approval in *United States v. Lindh*, 212 F. Supp.2d 541, 571 (E.D. Va. 2002)).   This Presidentially declared national emergency should especially apply here, where Plaintiff's citizenship in the United Kingdom (Complaint, ¶8) casts doubt upon her standing.   In turn, these Executive Orders have resulted in numerous implementing Treasury sanction regulations, designations, and enforcement.[9]

---

[8] The most recent EO, EO 14024 again found that Russia has engaged in "efforts to undermine the conduct of free and fair democratic elections and democratic institutions in the United States and its allies and partners."  86 Fed. Reg. 20249 (April 15, 2021).

[9] *See, e.g*., 31 C.F.R. Part 587 ("*Russian Harmful Foreign Activities Sanctions Regulations*"); *Treasury Sanctions Russian Cyber Actors for Interference with the 2016 U.S. Elections and*

6

In 2018, Congress overwhelmingly[10] enacted the *Countering America's Adversaries Through Sanctions Act* ("CAATSA"), H.R. 3364, Pub. L. 115-44, §§ 211(5 & (6), 222(a), 131 Stat. 886 (1st Sess. 2017) (22 U.S.C. §§ 9501, 9522 note).  Among the material citied by Congress in making its CAATSA findings about Russia, was EO 13757 issued by President Obama and the January 6, 2017 Intelligence Community Assessment on Russian interference with the 2016 Presidential election.  §§ 211(5 & (6). President's Trump's Executive Order 13849 implemented both EO 13757, and CAATSA. 83 Fed. Reg. 48195 (Sept. 20, 2018).

There have been two successive Intelligence Community Assessments finding that the Russian interference was conducted under orders from Vladimir Putin, with the first being cited as a basis for enactment of CAATSA.[11]  The Senate Select Committee on Intelligence  confirmed these assessments in five Reports on "*Russian Active Measures Campaigns and Interference in the 2016 Election,*" finding the 2016 "campaign was approved by President Putin."[12]

The upshot of these political branch conclusions is that Russian interference with the 2016 Presidential election is the law applicable to this case (*Unidyne Corp*), is not justiciable

---

*Malicious Cyber-Attacks*, 2018 WL 1325320 (Dept. Treas., March 15, 2018); 84 Fed. Reg. 17950-1, 2019 WL 1880291 (April 29, 2019) (adopting the *Foreign Interference in U.S. Elections Sanctions Regulations*, 31 CFR Part 579 (the "Regulations" implementing E.O. 13848); *Treasury Sanctions Russian-Linked Election Interference Actors*, (Dept. Treas. Press Release Sept. 10, 2020), https://home.treasury.gov/news/press-releases/sm1118; 87 Fed. Reg, 11133 (Feb. 28, 2022) (designations under E.O. 14024).

[10] The Senate vote was 98-2; the House vote was 419-3.
[11] *See* Report, *Assessing Russian Activities and Intentions in Recent U.S. Elections,* at *i* (January 2017) (declassified assessment of the FBI, CIA, NSA, and Office of the Director of National Intelligence); Report, *Foreign Threats to the 2020 US Federal Elections*, at *i*. (March 10, 2021).
[12] *See* Senate Select Committee on Intelligence Report, Rep. No. 116-XX, *Russian Active Measures Campaigns and Interference in the 2016 U.S. Election*, Volume 1: Review of the Intelligence Community Assessment, 3-7 (2018) (agreeing with ICA assessment including Putin approval of the election interference campaign); Report, "Counterintelligence Threats and Vulnerabilities," reaffirmed the prior counterintelligence findings.  *Id.* at *iv*, 1 (2020).

(*Chang*), and is therefore substantially true for purposes of a defamation claim. *Page v. Oath, Inc.*, 270 A.3d 833, 847 (Del. 2022), *cert denied*, 2022 WL 1528435 (May 16, 2022).   An investigation into Putin-ordered election interference is in the national interest.  Vilifying those who answer the call is not.

In a recent Russian hoax conspiracy defamation case, the *Carter Page* case, the Delaware Supreme Court upheld dismissal of the complaint because of the substantial truth of a reference to "a substantial federal investigation into Carter Page and the Trump campaign's Russian ties." *Page,* 270 A.3d at 848.   This legal conclusion was based upon a DOJ Inspector General Report confirming the legitimate predication of this FBI investigation. *Id*. at 847 (citing Report, at ii; *see also id*. at 351-52). The truth of this investigation was confirmed by the Report and by the allegations of the Complaint. *Id.*, at 849. The same is true in this case.  This Court also has the benefit of multiple national emergency findings and responsive government actions since 2016.

Plaintiff disputes this and seeks to embroil this Court into adjudicating the merits of the "Russian hoax" conspiracy by affording her discovery of the FBI's files.  Complaint, ¶¶ 19, 36 (seeking discovery of FBI files and those of *Lokhova I* defendants or co-conspirators).   The "Russian hoax" trope is nothing more than a shibboleth for those who believe Putin's false denials versus those who accept the contrary judgments of three Presidents and Congress.

Lokhova's "Russian hoax" "conspiracy"/"narrative" is immaterial to Plaintiff, a dual Russian-British citizen, and to her reputation.  But it has a specific relevance to this case—its repetition in *Lokhova I & II* constitutes an admission by Plaintiff that Defendant participated in the FBI's investigation of the actual Russian electoral interference.

**C.  Lokhova II**

8

Despite this Court's February 2020 adverse judgment, on December 31, 2020, Plaintiff brought a second suit against Defendant Halper while *Lokhova I* was pending before the Fourth Circuit, sounding again in defamation and tortious interference. The Complaint complained of efforts by Halper to enforce the *Lokhova I* judgment by sending demand letters to publishers concerning marketing material that repeated Plaintiff's failed conspiracy allegations. Without identifying any specific "false statement" by Halper,[13] the Complaint vaguely alleges that the marketing material is "true," which makes Halper's characterization of them as "false" somehow defamatory to Plaintiff. Complaint, ¶¶ 3 & 6.

The mere assertion that the marketing material statements about Halper's conduct are untrue is not defamatory as to Plaintiff. Plaintiff seeks to derive a defamatory inference by assuming that a denial of Halper misconduct necessarily accuses Plaintiff of being a liar, a Russian spy, or a Flynn paramour. Complaint, ¶¶ 28, 30b. But the demand letters do not contain the statements from *Lokhova I* upon which Plaintiff had therein rested her defamation claim and resulting injury—i.e., that she was falsely alleged to be a Russian spy and paramour of General Flynn. Exhibits 1 & 2.[14] The letters allege that the publisher's marketing material contained "false and defamatory statements about Professor Halper," including that he was an FBI spy

---

[13] Halper's statements to the publishers assert: Their marketing material was false; it was rejected in *Lokhova I;* and is defamatory as to Halper. *See* Exhibits 1 & 2 (D.E.#79.1 & .2).

[14] The Complaint alleges that the defamation occurred on March 13, 2020 when Halper counsel "contacted S&S and PHP" and allegedly defamed Plaintiff in quoted material. Id. ¶ 6. This is a reference to the attorney demand letters, its authenticity has not been challenged, and they can be considered under Rule 12(b)(6) as "documents integral to and relied upon in the complaint." *Fairfax v. CBS*, 2 F.4th 286, 292 (4th Cir. 2021).

within the Trump campaign hired by the FBI to fabricate the Russian hoax and earn "a huge payday from a contract" with the Defense Department to overthrow the Trump Presidency. *Id.* [15]

The demand letters to S&S and PHP asserted that this Court's judgment "places you on notice that Ms. Lokhova has previously failed to plead or to provide in a court of law the very same allegations for which she is now using Simon & Shuster to continue to defame Professor Halper." *Id*. The *Lokhova II* Complaint is also devoted to repeating the previously dismissed conspiracy allegations of *Lokhova I*.   Complaint, ¶¶ 2, 4, 13, 14, 16, 18, 19, 23.   In addition to linking this demand with both *Lokhova I* and a potential related suit against S&S and PHP, this communication contained Halper's denials of their defamatory accusations, which he unquestionably was privileged to deny. *See* Section III.1 *infra*.

The *Lokhova II* Complaint defends the marketing statements by repeating her rejected claims from Lokhova I:  the marketing statements "were true," because "Halper did, in fact, manufacture and publish to third parties 'dishonest accusations . . . that [Plaintiff] was General Flynn's paramour and a Russian spy.'"   Complaint, ¶ 3, at page 4 & n.1 (quoting marketing materials).  The Complaint thus echoes the *Lokhova I* Complaint, allegations:

> Halper conspired with political operatives at Cambridge University, including Richard Dearlove and Christopher Andrew, and agents employed by the Wall Street Journal, the Guardian, the New York Times and the Washington Post, to leak false statements about Plaintiff as part of a nefarious effort to smear General Flynn and fuel Russa collusion hoax.

---

[15] Specifically, the S&S marketing materials (Complaint, ¶ 2) allege that; (i) Halper was a "spy" within the Trump campaign; (ii) for which he "earned a huge payday from a contract signed" with the Defense Department; (iii) for "fabricat[ing] and sustain[ing] the fantastical narrative of the Russia hoax;"  (iv) that he implemented by "leaking classified information to his associates in the press." *Id*.

Complaint, ¶ 16. These are the very same allegations made by Lokhova in her first suit claiming Halper was the "source" of these defamatory statements made through "Halper's media stooges." *See Lokhova I* AC, ¶¶ 3, 13 n.4, 20, 21.

Like the S&S marketing materials themselves, the Complaint fails to address whatsoever the multiple contradictory rulings of this Court in *Lokhova 1*. Picking up where *Lokhova I* ended, however, the *Lokhova II* Complaint invokes two documents allegedly declassified in April and May 2020 (¶ 4 n.1) but dating from 2016 and 2017, to renew the exact same conspiracy claim. Complaint, ¶ 3 n.1.[16] Miscited, [17] Lokhova's opportunity to plead these allegedly defamation statements expired with the *Lokhova I* judgment in February 2020, and they would be manifestly untimely in a second December 2021 Complaint.

Changing direction, the Complaint also alleges that the individual statements in the marketing materials are non-actionable as defamation because they are all "pure opinions, rhetorical hyperbole, and fair reporting." Complaint, ¶ 5. "Pure opinions" are non-actionable when they are incapable of being proven true or false, or merely offer a subjective perspective. *WJLA-TV v. Levin*, 264 Va. 140, 156 (2002); *Yeagle v. Collegiate Times*, 255 Va. 293, 295-96

---

[16] This Court would, in its sanction ruling of July 2021, describe Plaintiff's citation of this new material as "attempts to relegate *Lokhova 1*." 2021 WL 2903237, *7 (E.D. Va. July 9, 2021), *rev'd on other grounds*, 30 F.4th 349 (4th Cir. 2022).

[17] Neither declassified document supports that Halper was a conspiratorial source of the charged defamation about Plaintiff. One document relates to an account by someone of a cab ride by Plaintiff in 2014; the other about legislative testimony by a third party (Mr. Kramer) about Plaintiff's relationship with General Flynn. Complaint ¶ 4 n.1, 16; neither are defamatory. As to the latter, Plaintiff again resorts to conclusory guesswork that "Halper was the source of Steele's misinformation to Kramer." *Id.* Having failed to allege any factual support for her "source" accusation in *Lokhova 1*, Plaintiff offers even less factual support for her "new" source accusation in *Lokhova II*

11

(1998).  Plaintiff's defamation is literally based upon Halper's claiming "pure opinion" marketing material is false by invoking this Court's rulings in *Lokhova I*.

The Complaint alleges that Defendant Halper acted with "actual malice" in making his assertions to the publishers.  Complaint, ¶ 30.  Specifically, the Complaint alleges that Defendant knew that his "statements about the marketing materials on the S&S and PHP websites were false," because "Halper manufactured the claim that Plaintiff and Flynn had an affair."  *Id.* ¶30b.  That claim ended in *Lokhova I*.  Plaintiff incorporated Count One's defamation claim into Count Two's claim for tortious interference with contract.  Complaint, ¶¶ 32.  In Count Two, the identified "improper method of interference" is identified as actionable defamation.  *Id.*, ¶ 35.

## ARGUMENT

### I. The Complaint Fails to State a Defamation Claim

The Complaint fails to plead six elements needed for an actionable defamation claim: (i) a defamatory sting (*i.e.*, "odious"); (ii) false statements;[18] (iii) a nexus concerning Plaintiff; (iv) that are not opinions;[19] (v) with actual malice; (vi) not published by Plaintiff.   Furthermore, because Plaintiff previously failed to prove these same necessary elements in *Lokhova I,* she is also precluded doing so again in this case.  *See* Section IV *infra.*

Whether a statement is actionable is a legal issue "'to be determined by the court.'" *Lokhova I*, at 261 (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).  Plaintiff bears the burden of proving these elements.  *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *Page*, 270 A.3d at 843.

---

[18] 'To be actionable, the statement must be both false and defamatory.' " *Lokhova I*, at 261 (quoting *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203 (2005))

[19] *See, e.g.*, *WJLA-TV*, 264 Va. at, 156; *Jenkins v. Snyder*, 2001 WL 755818, *3 (E.D. Va. Feb. 6. 2001) ("For a statement of opinion to be actionable, it must contain provably true or false factual connotations . . . .").

*1. The Complaint Fails to Allege Statements with a Defamatory Sting*

The "key" issue in defamation claims is whether the allegedly false statements carry a defamatory sting, that is, whether they "'make the plaintiff appear odious, infamous, or ridiculous.'" *Lokhova* I, at 262 (quoting *Chapin*, 993 F.2d at 1092). "The falsity of a statement and the defamatory "sting" of the publication must coincide—that is, where the alleged defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *Chapin*, 993 F.2d at 1092.

Here, the allegedly offending statements are about Halper, not Plaintiff, and consist of Halper's denials of the marketing material statements—statements as to which he has a right of reply. *See* § III.3 *infra*. Specially, Halper defended himself by informing S&S and PHP that their statement: (i) are false, (ii) were rejected by *Lokhova I*, and (iii) are defamatory of Halper. Complaint, ¶¶ 6, 30. These statements addressing Halper and the false statements of S&S and PHP are about Halper. They are not directed at Lokhova and carry no defamatory sting as to Plaintiff. Further, Defendant's statements characterizing the judgment in *Lokhova I*, are not even disputed in the Complaint in this case, which wholly ignores *Lokhova I*.

The defamatory sting claimed in *Lokhova 1*—inaccurate claims that Halper spread false accusations that Plaintiff was a Russian spy and Flynn paramour—was not the subject of the publisher demand letters. Instead, Halper's denials are derived from substantially true facts about what was determined in *Lokhova I* wherein this Court held that Plaintiff did not suffer any defamatory sting from the sprawling alleged conspiracy about Michael Flynn which Plaintiff also failed to prove. *Lokhova I,* at 262 (no defamatory sting to Plaintiff from allegations about General Flynn).

13

In this case, the marketing material repeats these same rejected conspiracy allegations in the marketing materials. *See, e.g.,* Complaint, ¶¶ 2, 14, 16, 23 ("An innocent Cambridge historian, Svetlana Lokhova was pulled into this fabricated narrative through dishonest accusations—that she was General Flynn's paramour and a Russian spy."). Linking Plaintiff to this Court's judgment against her, and its rejection of her legal claims, does not carry a defamatory sting—it is adhering to this Court's rulings. That is, holding Plaintiff to the judgment in *Lokhova I* is lawful and fails to make Plaintiff "appear odious, infamous, or ridiculous." *Lokhova* I, at 262.

### 2. The Complaint Fails to Allege a False Statement

To satisfy the element of falsity, Plaintiff must prove that the Defendant's statements are not even substantially true. *Gazette v. Harris*, 299 Va. 1, 15 (1985) ("the plaintiff must prove falsity"); *Page*, 270 A.3d at 844 (citing *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 513 (1991). No "false statements" are alleged in the Complaint other than Halper's denial of his own alleged misconduct. *Id.* ¶ 6. There is no Complaint claim that Halper published an accusation that Lokhova was a liar, a Russian spy, or a Flynn paramour. The Complaint's failure to identify any specific false statement makes the falsity claim conclusory, and legally insufficient. *LI,* at 261 (citing *Edwards v. Schwartz*, 378 F. Supp.3d 468, 522 (E.D. Va. 2019)).

This Court's February 2020 judgment took immediate effect. *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015). Accordingly, "beginning on March 13, 2020" (Complaint ¶6), Halper's denials of *Lokhova I's* rejected allegations were substantially true, not false Nonetheless, Plaintiff doubles down on her Russian hoax argument, and even though she lacks a reputational interest in U.S. elections, contends that Halper's refusal to accept *Lokhova I*'s conspiracy

14

allegations about Halper is somehow false and defamatory to her.  Conforming to this Court's

judgment is neither "false" nor lacking in substantial truth.

Halper has a right to defend himself against false accusations. *see* Section IIA *infra*. But

the falsity of Plaintiff's accusations against Halper has already been adjudicated, and Plaintiff

lost. The "false" factual allegations alluded to in the Complaint are Plaintiff's same grievances

that were adjudicated and rejected in *Lokhova 1*—that Halper fabricated the "Russian hoax" to

overthrow the Trump Presidency and that "*Svetlana Lokhova was pulled into this fabricated*

*narrative through dishonest accusations—for instance, that she was General Flynn's paramour*

*and a Russian spy."* Complaint, ¶¶ 2 (quoting marketing material), 4, 13, 14, 16, 18, 19, 23.

*Lokhova, I* rejected this sprawling conspiracy claim, including that Halper was a "source"

of false information about Plaintiff, *Lokhova I*, at 259, and that Plaintiff suffered reputational

injury from the alleged smear of General Flynn. *Id*. at 263. This renders Halper's grievances

with the marketing material substantially true.

The gist of Plaintiff's claims—that Halper fabricated a Russian hoax of interference in

the 2016 election—is also contradicted by three Presidential national emergency orders, the

enactment of CAATSA, and a plethora of government enforcement actions. *Compare Page*, 270

A.3d at 846 (dismissing because "true or substantially true" that law enforcement investigating

Page for Russian contacts, as described by subsequent DOJ Inspector General Report concluding

proper predication for FBI investigation of Russian interference).

The defamatory nature of the marketing material is self-evident. It accuses Halper of

criminal conduct-- the "spy" Halper--masterminded a Presidential coup by fabricating a national

security hoax financed by his government contract fraud and implemented by him leaking

classified material to his "media stooges." *See, e.g.,* 18 U.S.C. § 1031) (contract fraud); 18

U.S.C. § 793 (leaking classified information), 18 U.S.C. § 2385 (conspiracy to overthrow the government).  False allegations of criminal conduct are defamatory.  *Shupe v. Rose's Stores, Inc.*, 213 Va. 374, 376 (1972).  This Court has described plaintiff's allegations in this suit as "another defamatory attack on Halper and attempts to relitigate *Lokhova I*."  D.E#23, at *7.  Plaintiff herself claims being labeled a "spy" is defamatory.[20]

3. *The Statements Are Not of or Concerning Lokhova*

Defamatory statements must be "of and concerning" the plaintiff.  *Va. Citizens Defense League v. Couric*, 910 F.3d 780. 783 (4th Cir. 2018).  This element was missing in *Lokhova I* because the allegedly defamatory statements concerned General Flynn, not Plaintiff.  *Lokhova I*, at 262-63.  The same is true here.  Halper's statements about the marketing material being "false" relate to Defendant Halper, and the false factual assertions made about Halper's therein.

The marketing material statements themselves are about Halper, not Lokhova, with the only arguable exception being a repetition of *Lokhova I's* "fabricated narrative . . . that [Lokhova] was General Flynn's paramour and a Russian spy." Complaint, ¶ 2 (marketing material).  This same fabricated narrative claim was rejected in *Lokhova I* as concerning Flynn conduct, posing no reputational injury to Lokhova.  *Lokhova I*, at 263 (statements do not "harm [Lokhova's] own reputation or makes her appear 'odious, infamous, or ridiculous.'") (quoting *Chapin*, 993 F.2d at 1092).  If Plaintiff suffered no reputational injury from the conduct alleged in *Lokhova I*, she did not begin to do so in March 2020.

4.*The Alleged False Statements are Non-Actionable Opinions*

---

[20] To establish the falsity of Defendant's statements, Plaintiff would also have to resort to extrinsic facts (i.e., explain how her position comports with the *Lokhova I* judgment but Halper's does not).  "[S]tatements cannot be slanderous *per se* if reference to extrinsic facts is necessary to give them a defamatory import."  *Aronson v. Wiersma*, 65 N.Y.2d 592, 594-95 (1985).

Opinions are not actionable in defamation because they are "constitutionally protected." *Potomac Valve and Fitting Inc. v. Crawford Fitting Co.*, 829 F.3d 1280, 1285 (4th Cir. 1987) (Wisdom, J.).  Whether a statement is an opinion is context specific.[21]  Opinions include statements that (i) are not subject to proof as to their truth or falsity, or (ii) are "relative in nature and depends largely on a speaker's viewpoint." *Padula-Wilson v. Landry*, 298 Va. 565, 581 (2020).  *See Potomac Valve*, 829 F.2d at 1288.[22]  Provability is a "minimum threshold" for a defamation claim, but even if a statement is verifiable, "it may still be protected if it can best be understood from its language and context to represent the personal view of the author or speaker who made it." *Potomac*, 829 F.3d at 1288. Whether Halper has a legal claim are "opinions and legal conclusions, not facts." *Advanced Steel Recovery LLC v. X-Body Equip., Inc.,* 2022 WL 398645, *6 (E.D. Cal. Feb. 9, 2022).

Initially, courts "generally find parties' statements regarding the probable outcome of a litigation to be non-actionable opinion." *Moya v. United Airlines, Inc.,*2019 WL 351904, *4 (D.N.J. Jan. 29, 2019) (accusation that claim "without merit" is non-defamatory opinion about probable outcome).[23]  "Similarly, a statement condemning an opponent's legal claims as 'baseless' is mere opinion and is not defamatory." *Alzheimer's Foundation of America, Inc. v.*

---

[21] The Fourth Circuit standard is more than satisfied here: "a trial judge should (1) consider the author or speaker's choice of words; (2) decide whether the challenged statement is 'capable of being objectively characterized as true or false'; (3) examine the context of the challenged statement within the writing or speech as a whole; and (4) consider 'the broader social context into which the statement fits'" *Potomac*, 829 F.2d at 1287-88 (citing and quoting *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) (*en banc*)).

[22] These are questions of law for a court, *Dragulescu v. Virginia Union University*, 223 F.Supp.3d 499, 507 (E.D. Va. 2016), and are often determined early by courts acting as gatekeepers. *Handberg*, 297 Va. at 706.

[23] *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F.Supp.3d 952, 969 (D. Minn. 2018), *aff'd on other grounds*, 971 F.3d 747 (8th Cir. 2020).

17

*Alzheimer's Disease Ass'n Inc.,* 796 F.Supp.2d 458, 471 (S.D.N.Y. 2011) ("baseless," "absurd," "ridiculous," and "meritless" are non-actionable opinion). "A reasonable reader would not consider statements made in the context of discussing an ongoing litigation to be facts." *Marquez v. Hoffman*, 2021 WL 1226981, *31 (S.D.N.Y. March 31, 2021).   The Complaint's grievance with Halper's description of the *Lokhova I* claims (then-pending on appeal) as "false," or that the marketing material justified defamation claims by Halper, are non-actionable opinions. Finally, given the three Presidential national emergency declarations, Plaintiff's claims about a Russian "hoax" are not provable facts. *Unidyne,* 512 F. Supp. at 710.

The Complaint itself admits that the marketing material is comprised solely of non-actionable "pure opinions, rhetorical hyperbole and/or fair reporting," Complaint, ¶¶ 4, 30b. *See also* DE#12, at ¶5 (same).  Plaintiff thereby admits that the marketing material has the legal characteristics of pure opinions, that is, they are incapable of being proven true or false. *WJLA-TV*, 264 Va. at 156.[24]  According to Plaintiff, therefore, this suit is over pure opinions, as summarized in the marketing material and denied by Halper.[25]  If the marketing material is unprovable (*i.e.*, it is purely opinion as posited in ¶ 4 of the Complaint), then Halper's denials of these opinions cannot be proven true or false.  Plaintiff thus admits that Halper's denials are non-actionable opinions about opinions.

Non-actionable opinions also include those which are based upon a speaker's subjective view. *Handberg v. Goldberg*, 297 Va. 600, 666-67, (August 22, 2019). This is frequently the case in partisan disputes over matters of public concern wherein the label "false" signifies

---

[24] "Opinions cannot be false." *Motsinger v. Kelly*, 9 Va. Cir. 9, 0085 WL 1163054, *2 (Danville Cir. Ct 1985).

[25] Statements in pleadings constitute judicial admissions. *Jessup v. Barnes Group, Inc.*, 23 F.4th 360, 365 (4th Cir. 2022).

opposition.   In particular, the use of the term "false" to characterize statements is often considered pure opinion when, as here, it reflects strenuous disagreement between adversaries regarding a public concern.   In *Edwards*, a professor brought a defamation claim over accusations that he had lied and was "dishonest, paternalistic, and exploitive" in his commentary on the Flint water crisis.   The defamation claim was dismissed as non-actionable because the dispute was between partisan opponents such that "a reasonable reader would recognize that the authors are merely labelling positions with which they vehemently disagree as lies, and would recognize the use of the term "lie" in paragraph 13(d) as expressions of dissent rather than as assertions that Edwards made a specific claim knowing it to be false."  378 F.Supp.3d at 529.   Labeling positions rejected in a federal judgment as "false" falls within partisan opposition.

Factual assertions offered to support opinions can be defamatory. *WJLA-TV*, 264 Va. at 140.  But here the demand letters fully disclose the factual basis for their claims—this Court's *Lokhova I* opinion—and therefore they are non-actionable subjective opinions.  "'[O]pinions fully disclosing their factual bases constitute a subjective view and are not actionable.' " *Padula-Wilson*, 298 Va. at 581 (quoting *Biospherics, Inc. v. Forbes Inc.*, 151 F.3d 180, 184-85 (4th Cir. 1998)).

*5. The Complaint Fails to Allege Actual Malice.*

Actual malice is required here because the subject is a defamation claim about a matter of public concern as to which Plaintiff has made herself  a limited-purpose public person since 2017 *Snyder v. Phelps*, 580 F.3d 206, 217-18 (4th Cir. 2009) (matter of public concern "occupies the

highest rung of the hierarchy of First Amendment values"), *aff'd*, 562 U.S. 443 (2011); *Edwards*, 378 F. Supp.3d at 506 (professor "at a minimum" limited-purpose public person).[26]

Plaintiff is a limited purpose public person who voluntarily injected herself into a public controversy "'in order to influence the resolution of the issues involved.'" *Reuber v. Food Chem. News, Inc*. 925 F.2d 703, 708 (4ᵗʰ Cir. 1991) (*en banc*) (quoting *Gertz v. Welch*, 418 U.S. 323, 345 (1974)).[27] Plaintiff boasts she is the "only" historian telling the "entire truth about Halper's efforts to overthrow the fully-elected President of the United States." Complaint, ¶ 18.

A failure adequately to plead actual malice justifies dismissal of a defamation claim. *Fairfax*, 2 F.4ᵗʰ at 296. The burden on Plaintiff is to prove malice by clear and convincing evidence. *Jordan*, 269 Va. at 577. Malice is determined "at the time of publication"—here, after this Court had granted judgment against Plaintiff's claims. *Flanagan v. Pittsylvania County, Va.*, 2020 WL 2754754, * (W.D. Va. May 27, 2020). Conclusory allegations of malice fail. *Mayfield v. Nat. Assn. for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4ᵗʰ Cir. 2012) (conclusory malice allegations are "precisely the sort of allegations that *Twombly* and *Iqbal* rejected");[28]

Plaintiff's malice allegations include a conclusory suggestion that Halper engaged in "pretextual dirty tricks." *Id*., ¶30a. Ill will, or political animus, is insufficient. *Reuber*, 925 F.2d at715. ("'the actual malice standard is not satisfied merely through a showing of ill will or

---

[26] All factors relevant to the limited-purpose public person determination support finding Plaintiff such here: "'(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in a public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statements; and (5) the plaintiff retained public figure status at the time of the alleged defamation.'" *Edwards*, 378 F. Supp.3d at 506.

[27] *Compare Page*, 2021 WL 528472, *4 (Del. Sup. Ct. Feb 11, 2011) (Carter Page a limited purpose public purpose because gave Bloomberg interview), *aff'd*, 270 A32d 833 (Del. 2021) *with Lokhova 1* Amended Complaint, ¶¶ 135, 137, 167 (describing Plaintiff interviews with media)

'malice' in the ordinary sense of the term'") (quoting *Harte-Hanks v. Connaughton*, 491 U.S. 657, 666 (1989)); *Dershowitz v. CNN*, 541 F.Supp. 1354, 1370 (S.D. Fl. 2021).

The only other malice allegations are that: (i) Halper knew of the falsity of his statements about Plaintiff from "the evidence that Halper manufactured the claim that Plaintiff and General Flynn had an affair" (¶30b) ; (ii) Halper had the purpose of inducing PHP to terminate the book contract (30a); and (iii)  Halper "refused to correct, retract or apologize" upon demand. ¶30f.

Plaintiff's grievance that Halper "manufactured the claim that Plaintiff and General Flynn had an affair," was the gist of the three claims Plaintiff brought in *Lokhova I*.  They all failed.   It is not remotely malicious for a judgment holder (Halper) to rely upon this Court's judgment for accuracy. The demand letters had the declared purpose of causing the termination of the offending existing marketing materials; whether and how the publisher chose to respond with respect to any future publication was its own decision.  The publishers could have exercised their editorial prerogatives and confined any book to non-defamatory material.

Further, the substantial truth of the statements labelled as defamation by Plaintiffs—*i.e.*, that the marketing material recycled Plaintiff's conspiracy claims the were rejected in *Lokhova I*—undermines any claim of actual malice.  *Page*, 270 A.2d at 845 ("The substantial truth of the statement bears on whether the person responsible for publishing the statement had actual malice."). Likewise, it is not malicious for a prevailing party to decline to "correct, retract, or apologize" for descriptions of that judgment while the case is pending upon appeal.[29]

6. *The Complaint Fails to Allege Publication*

---

[29] There is no affirmative duty to retract publications. *National Police Ass'n Inc.v. Gannett Co.*, 2022 WL 594918, *5 (S.D. Ind. Feb. 28, 2022) (citing cases).

Publication to a third party is an essential element of defamation. *Lokhova I*, at 261 n.22. Courts hold that where a plaintiff is the source of the defamatory material, defamation will not lie. *Hickey v. St. Martin's Press, Inc.*, 978 F.Supp. 230, 237 (D.Md. 1997) ("The general rule is that, if a person claiming to be defamed communicates the allegedly defamatory statements to another, no liability for any resulting damages is incurred by the originator of the statements."). Here, Plaintiff has repeatedly published the alleged defamatory material on her own, including: (i) in the two complaints filed in her prior lawsuit (*Lokhova 1,* D.E.#1 & 52)); (ii) in her contemporaneous internet marketing of the allegations of her prior suit to raise money by repeating the same alleged defamation (*LI,* D.E#.67, at 1-2 & 67.7; 73.2; (iii) in the book marketing materials to which Halper responded (Complaint ¶ 2) and (iv) in her "self-published" new book, which she claims reused the same marketing materials.  Complaint ¶ 23.  This does not include Plaintiff's admitted interviews and publications to U.K and U.S. media since 2017. *See* LI AC ¶¶ 135(May 12, 2017), 137, 169 (May 27, 2018),

In *Hickey*, a defamatory claim was rejected because: "By filing his amended complaint in this Court, plaintiff has voluntarily communicated to others the allegedly defamatory statements." 978 F.Supp. at 237 (citing *Mendoza v. SSC & B Lintas*, N.Y., 799 F.Supp. 1502, 1512 (S.D.N.Y. 1992)).  Lokhova filed two complaints in 2019 broadcasting the alleged defamation, and then raised money off them. This Court held in 2020 that Plaintiff had failed to state a claim that Halper was the source of this defamation, making Plaintiff an indisputable prior source of this defamation through her unsuccessful lawsuit.   The subsequent alleged defamation by Halper in 2020 was responsive to Lokhova's marketing material repeating and advertising the defamation she had been broadcasting since at least 2019.   In fact, the book marketing material of 2020 (Complaint ¶ 2) repeats almost verbatim the lawsuit fundraising material of 2019.

22

Exhibit 3 (*LI*, DE#73.5).  Under *Lokhova I*, Halper was not an originator of the alleged

defamation, while Plaintiff had a two-year head start publishing the defamation.  Under these

circumstances, factually and legally Plaintiff is the publisher of this alleged defamation, not

Halper.

### II. The Complaint Fails to Allege Tortious Interference with Contract

Count Two's claim of tortious interference with contract is dependent upon Count One's

defamation claim.  *See* Complaint, ¶¶ 32, 35.  Specifically, the defamation claim is incorporated

into Count Two by reference (¶32) and is identified as the "improper method of interference"

used by Halper to commit the interference. *Id*. ¶ 35.[30] Where, as here, a tortious interference

claim is "inextricably intertwined" with a failed defamation claim, the interference claim

likewise fails.  *Lokhova v. Halper*, 441 F.Supp.3d at 265 (citing *Edwards*, 378 F.Supp.3d at

538), *aff'd on this ground*, 995 F.3d at 148 ("Because the defamation claims fail, the tortious

interference with contract claim fails.") (citing *Edwards,* 378 F.Supp.3d at 538).

In the appeal from this Court's sanction ruling, the Fourth Circuit did not address this

ruling or its affirmance by a prior panel of that Court, but it did indicate that, for litigation

privilege purposes, defamation and tortious interference had different elements. *LII*, 30 F.4th at

357.  The fact of difference tort elements does not alter the *Lokhova I* holding that a tortious

interference claim will not lie if based upon injury from a defective defamation claim. In any

event, "when published panel opinions are in direct conflict on a given issue, the earliest opinion

controls."  *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (*en banc*).

---

[30] The other improper methods are simply legal conclusions without any supporting facts, which is legally insufficient. *Twombly*, 550 U.S. at 540, 550 (2007) (rejecting "formulaic recitation"). *See* ¶ 35 ("Halper's improper methods of interference were, inter alia, independently actionable, defamatory, unethical, oppressive, over-reaching, fraudulent, hostile, and sharp.").

23

In addition, under the single-action rule, even if a defamation claim is adequately pled, plaintiff cannot bring a separate tortious interference claim for the same injury. *See, e.g., Kesner v. DOW Jones & Co.*, 515 F. Supp.3d 149, 189n.13 (S.D.N.Y. 2021) (citing cases); *Klayman v. Judicial Watch*, Inc. 22 F. Supp. 3d 1240, 1256 (S.D.Fl. 2014).

### III. The Complaint is Barred by First Amendment and Statutory Immunity and Common Law Privilege

Even if the Complaint alleges a tort, the conduct alleged is protected by common law self-defense privilege, and statutory and constitutional immunities.

#### 1. The Common Law Privilege of Self-Defense Applies

Under longstanding Virginia common law, the right of self-defense to defamation is protected by a qualified privilege to make a reasonable response to accusations. *Foretich v. Capital Cities/ABC, Inc.* 37 F.3d 1541, 1562 (4th Cir 1994) (citing *Chaffin v. Lynch*, 83 Va. 106 (1887)). "Turning to the common law, we observe a person under attack may properly allege, in Dean Prosser's words, 'that his accuser is an unmitigated liar and the truth is not in him.'" *Id.*[31] The existence of a privilege is a legal question for the Court. *Baylor v. Comprehensive Pain Management Centers, Inc.*, 2011 WL 1327396, *11(W.D. Va. April 6, 2011); *Motsinger*, 0085 WL 1163054, at *3 (citing *Chaffin*, 83 Va. at 117).

Here, there is no plausible allegation that Halper accused Lokhova of being a liar, including as to the only reputational interest she claimed in *Lokhova I* (being accused of being a Russian spy paramour of Flynn). But even denial of the *Lokhova I* complaint questions its

---

[31] *Foretich*, 37 F.3d at 1559 ("'If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me.'") (quoting *Chaffin*).

truthfulness, that issue was conclusively adjudicated in *Lokhova I.* Granted, the privilege of reply may be lost through abuse,[32] but it is not even pled here.[33]  Because "a plaintiff bears the burden of proving the privilege was lost or abused, there is a presumption that" it was not.  *Doe,* 295 F.Supp.3d at 677.

Recognized types of abuse are when a reply: (i) is unresponsive to the attack; (ii) is disproportionate to the attack; or (iii) is excessively published. *Foretich,* 37 F.3d at 1559-60.  Here, the Complaint merely alleges that Halper asserted to the publishers that their marketing material statements about him are "'false.'" Complaint, ¶ 6 (quoting demand letter).  Substantially stronger words have been protected as responsive and privileged.  *Foretich,* at 1561 (noting that "Virginia's highest court countenanced a reply that labeled an accusation 'a contemptible, cowardly, malicious lie'") (quoting *Chaffin,* 83 Va. at122).[34] Proportionality is measured against the gravity of the accusation. *Foretich,* at 1562.  Here, the marketing material attack upon Defendant includes accusations of criminal conduct by Halper, with Halper's reply being far more restrained than Plaintiff's attack.  Further, the reply is not excessively published.  It is directed at an audience that heard the attack—its publishers. *Foretich,* at 1563.

Whether Defendant's conduct is restricted to the Complaint's vague allegations about making "false statements" (¶ 6), or includes the language of the quoted demand letters, the reply is responsive, proportionate, and narrowly published to the appropriate audience.  As a qualified

---

[32] *Doe v. Roe,* 295 F.Supp.3d 664, 676-77 (E.D. Va. 2018); *Ridgeway v. Safeway Stores,* 139 F.Supp.290, 293 (E.D. Va. 1948).

[33] The Complaint makes a conclusory allegation that the statement was "without privilege of any kind," (¶ 27), but fails to make any claim of privilege abuse, either generally or specifically.
[34] *Foretich,* at 1562 ("'Honest indignation and strong words,' 'colorful verbiage,' and even hyperbole and 'exaggerated statements' of fact all may be uttered in self-defense without stepping over the line into unreasonable behavior.") (quoting and citing cases)

25

privilege, self-defense may be overcome by actual malice, but Plaintiff bears the burden of proving such malice by clear and convincing evidence. *Cashion v. Smith*, 286 Va. 327, 338 (2013). Again, the Complaint makes no effort to allege, much less marshal compelling facts, that Halper's self-defense is unresponsive, disproportionate, or excessive. *See, e.g., Jones v. Lowe's Companies, Inc.* 845 Fed. Appx. 205 (4th Cir. 2021) ("The privilege of reply enables the party whose reputation is sullied to 'publish, in an appropriate manner, anything which reasonably appears to be necessary to defend his own reputation against the defamation of another.'") (quoting *Foretich,* at 1559 n.19). An allegation of malice cannot be presumed if a statement is privileged. *Isle of Wight County v. Nogiec*, 281 Va. 140, 152 (2011).

### 2. Statutory Immunity Applies.

Under Virginia Code § 8.01-223.2, immunity applies to statements "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party." Opinion is constitutionally protected under the First Amendment. *Potomac*, 829 F.3d at 1285. A national emergency declared by three successive Presidents constitutes "speech concerning the legitimacy of the political process." *Philadelphia Newspapers,* 475 U.S. at 778.

Statutory immunity can be lost if statements are made "with actual or constructive knowledge that they are false or with reckless disregard for whether they are false." § 8.01-223.2. For the reasons previously explained, Plaintiff has failed to plead actual malice, and therefore cannot overcome statutory immunity. Further, opinions about opinions are not malicious, especially in a partisan controversy over matters of public concern.

### 3. First Amendment Immunity Applies

First Amendment immunity from liability was recognized in 1961 for "attempts to influence the passage or *enforcement of laws"* in *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961) (emphasis added).   The applicability of First Amendment immunity (named *Noerr-Pennington* immunity)[35] "is a question of law."  *IGEN Int'l, Inc. v. Roche Diagnostics GmbH,* 335 F.3d 303, 310-13 (4th Cir. 2003).   Once *Noerr-Pennington* immunity is invoked, Plaintiff shoulders the burden of overcoming it. *IGEN,* 335 F.3d at 312.   As an affirmative defense, this immunity is ordinarily not amenable to resolution on a motion to dismiss unless the Complaint furnishes all facts necessary to the defense.  *Navient Solutions LLC v. Law Offices of Jeffrey Lohman*, 2020 WL 1867939 (E.D. Va. April 14, 2020).

Here, the facts necessary to this defense are pled over, and over, again.  The First Amendment protects petitioning the government and immunizes from liability "for engaging in conduct (including litigation) aimed at influencing decision making by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014). The immunity applies to ongoing litigation,[36] and to matters preliminary to litigation, including settlement demand letters. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933-35 (9th Cir. 2006).

In addition, the immunity applies to law enforcement conduct, including communications with law enforcement.  *Ottensmeyer v. C&P Tel. Co.* of Md., 756 F.2d 986, 993 (4th Cir. 1985) (following *Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1060 (9th Cir. 1982)); *Venetian Casino Resort, LLC. v. NLRB*, 793 F.3d 85, 90 (D.C. Cir. 2015) (summoning police "is a direct petition to government subject to protection under the *Noerr–Pennington* doctrine") (quoting *Forro,*

---

[35]  First Amendment immunity applies to tort claims. *Titan America LLC v. Riverton Inv. Corp,* 264 Va. 292, 302 (2002).

[36]  *Adidas America, Inc. v. TRB Acquisitions LLC*, 2017 WL 337983, *4 (D. Or. January 23, 2017) (because allegations "arise in the context of the present litigation, they too are subject to protection by *Noerr-Pennington*").

immunity's purposes "served by ensuring the free flow of information to the police;" "It would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information.")).

Here, the conduct of which Plaintiff complains is based upon four independent and cumulative petitioning categories of conduct: (i) the parties' ongoing *Lokhova I* litigation (including its appeal, and judgment enforcement); (ii) the steps preliminary to litigation against S&S and PHP through a demand letter (Complaint, ¶ 6); (iii) Plaintiff's *Lokhova I and II* claims that Halper was an FBI informant communicating with law enforcement to investigate Russian interference;[37] and (iv) Plaintiff's pled claims that Halper was involved in a conspiracy to influence the government by fabricating the "Russian hoax"

Plaintiff's serial claims that Halper was an "FBI informant" communicating information regarding Russian election interference triggers First Amendment immunity for law enforcement conduct. *See, e.g.*, *Ottensmeyer,* 756 F.2d at 993; *JM v. Parlier Unified School District*, 2021 WL 5234770, *7-8 (E.D. Cal. Nov. 10, 2021) (police communications). For immunity, all this Court need do is credit Plaintiff's claim that Halper's conduct was part of a Russian election interference investigation by and for the FBI. Such allegations permeate both the *Lokhova I* Amended Complaint, and the *Lokhova II* complaint. These pleadings also constitute an admission that Halper was "engaging in conduct (including litigation) aimed at influencing decision-making by the government." *Octane Fitness,* 572 U.S. at 556.

The nexus to litigation required for *Noerr-Pennington* immunity is also satisfied here based upon two lawsuits—Plaintiff's pending appeal of *Lohova I,* and Defendant's proposed litigation involving the marketing material authors. The pendency of related litigation creates a

---

[37] Complaint, ¶¶ 14, 16, 23.

28

"rebuttable presumption of *Noerr-Pennington* immunity." *IGEN*, 335 F.3d at 311.   Plaintiff's

*Lokhova I* appeal was pending litigation by Plaintiff seeking to relitigate these same issues.

*IGEN*, 335 F.3d at 310 (*Noerr-Pennington* applies to "the pursuit of litigation," and immunizes

such activity against business tort claims); *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237

F.3d 394, 399 (4th Cir. 2001).   The letters were incidental to the enforcement of *Lokhova I*.

 In addition, because the demand letters were preliminary to litigation against S&S, they

involve petitioning the Government and hence fall under the immunity for such communications

under the First Amendment.  *Sosa,* 437 F.3d at 929-30; *Coastal States Mktg., Inc. v. Hunt*, 694

F.2d 1358, 1367 (5th Cir. 1983).

 While a sham exception can apply to First Amendment immunity, it is neither pled nor

available here as to either Plaintiff's pending appeal or the threatened litigation.   Plaintiff cannot

claim that her own appeal was "objectively baseless," which is necessary to sustain a sham

litigation claim.  *Professional Real Estate Investors v. Columbia Pictures Industries, Inc.*, 508

U.S. 49, 60 (1993); *Titan America LLC*, 264 Va. at 303. The threatened litigation was not

objectively baseless given that law applicable is that Russia interfered with the 2016 Presidential

election which spawned a responsive FBI investigation (*Page*).

### IV.  The Complaint is Barred Under Res Judicata

 Issue preclusion justified dismissal under Rule 12(b)(6) if there are no disputed issues of

fact. *Barrett v. PAE, Inc.*, 2022 WL 479097, \*4 (E.D. Va. March 22, 2022) (citing cases).   It

applies because: (i) the claim that Halper was a "source" of Plaintiff defamation starting in 2016

was rejected; (ii) the same six essential defamation elements were adjudicated in *Lokhova I*.

 Issue preclusion bars a new suit when: (i) the issue is identical to one previously litigated;

(ii) the issue was actually determined in the prior suit; (iii) the prior determination was a

necessary part of the prior proceeding; (iv) the prior judgment is final; and (v) the party against whom preclusion is sought had a full and fair opportunity to litigate the issue. *Lewin v. Cooke*, 95 F.Supp.2d 513, 522 (E.D. Va. 2000) (citing cases), *aff'd*, 28 Fed. Appx. 186 (4th Cir. 2002). Preclusion doctrines assume the correctness of a prior judgment. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Preclusion only requires that an issue be necessary to the judgment, regardless of the court's reasoning. *Yamaha Corp. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("Furthermore, once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case.")

The February 2020 dismissal in *Lokhova I* is a judgment on the merits for preclusion purposes, *Moitie*, 452 U.S. at 399 n. 3, with immediate preclusive effect notwithstanding Plaintiff's appeal. *Coleman*, 575 U.S. at 539. This appeal was pending when the allegedly defamatory statements were made. Complaint, ¶ 6. The parties are also the same, and Plaintiff had a prior fair opportunity to litigate her reputational claims. The scope of preclusion in this case is driven by the sprawling conspiracy rejected in *Lokhova 1*.

The preclusion requirement that the issue must have been actually and necessarily litigated in the earlier action is established by this Court's dismissal of *Lokhova 1*'s defamation claim. Plaintiff's reputational defamation claim against Halper arising out of the alleged Russian hoax was actually and necessarily litigated in *Lokhova I and* is now precluded. Complaint. ¶¶ 2, 4, 13, 14, 16, 18, 19, 23. Repeat defamation suits are precluded under issue preclusion. *Corsi v. Newsmax Media, Inc*., 519 F.Supp.3d 1100, 1126 (S.D. Fl. 2021); *Arpaio v. Robillard,* 459 F.Supp.3d 62 at 67.

## Conclusion

For the foregoing reasons, the motion to dismiss should be granted.

Respectfully submitted,

By:  ____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone) : 703-299-5000
(Facsimile) : 703-299-8876
tgreed@lrfirm.net


Robert D. Luskin (*pro hac vice.*
*granted April 1, 2021*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com


*Counsel for Defendant*
*Stefan A. Halper*


## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2022, I electronically filed the foregoing

Notice using the CM/ECF system which will then send a notification of such filing (NEF) to all

interested parties.

By:  ____/s/_____

Terrance G. Reed (VA Bar No. 46076)