**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| SVETLANA LOKHOVA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1603(LMB)(TCB) |
| | ) | |
| STEFAN A. HALPER | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Defendant Halper's Reply Brief in Support of Halper's Motion to Dismiss**

Plaintiff's Opposition Brief, just like the Amended and original Complaints, ignores entirely Plaintiff's failed allegations in the prior *Lokhova 1* litigation that were rejected as nonactionable by this Court and the Fourth Circuit.  If anything, the Amended Complaint (Docket Entry("D.E.") 52)) descends into even more conclusory allegations than the original, and this descent is continued in the Opposition Brief, D.E. 52.   Labels and conclusions do not state a legal claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Motion to Dismiss should be granted.

Plaintiff elects, once again, to ignore the judgment of the Fourth Circuit in *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021) ("*Lokhova I*"), by renewing her rejected claims from that lawsuit to justify this one.   Instead, the Opposition Brief (D.E. 55) repeatedly invokes the subsequent Fourth Circuit opinion in this case which deferred resolution of the issue of Rule 11 sanctions on the defense of litigation privilege.  *Lokhova v. Halper*, 30 F.4th 349 (4th Cir. 2022) ("*Lokhova II*").  The privilege sanctions ruling in *Lokhova II* did not address, and could not have

1

addressed, the sufficiency of Plaintiff's original or amended pleadings under Rule 12.

Moreover, *Lokhova II* did not purport to reverse the *Lokhova I* judgment, nor could it have.

When subjected to the same pleading standard applied by the Fourth Circuit in *Lokhova I*,

Plaintiff has once again failed to state a claim.

For example, paragraph 48 of the Amended Complaint repeats the *Lokhova I* allegations

that Halper was a source of "false allegations about Plaintiff and General Flynn to various

members of the media," including the same defendant media companies accused of being

Halper's "media stooges" in *Lokhova I*—the Wall Street Journal, the Guardian, the New York

Times, and the Washington Post.  AC (D.E.52), ¶¶ 48-49.  The Amended Complaint repeats the

*Lokhova I* accusation that these alleged false allegations about Plaintiff were reported to the FBI

and "then shared with the media."  *Id.* at ¶ 53.[1]  Despite the failure of these allegations in

*Lokhova I*, Plaintiff seeks to renew them here, claiming that Defendant attaching any preclusive

effect to *Lokhova I* would be "manifestly frivolous."  Opposition (D.E. 55), at 9.

The Opposition claims that the Fourth Circuit has already decided the Complaint should

not be dismissed because it states a claim.   The only issue before that Court, however, was the

question of sanctions based upon litigation privilege, not whether the complaint should be

dismissed on other grounds.  Plaintiff mischaracterizes the observations of that Court about

whether the original complaint pled defamation.  As this Court accurately held, litigation

privilege applies to defamatory statements, and therefore whether a statement is defamatory, or

not, is immaterial to its privileged status.  *Lokhova II*, 2021 WL 29033237, at *7 (citing *Messina

v. Krakower*, 439 F.3d 755 (D.C. Cir. 2006)).

---

[1]  *Compare Lokhova I* Amended Complaint (D.E. 52), ¶¶ 3, 13, 70, 74 with *Lokhova II* Amended
Complaint (D.E. 52), ¶¶ 31-33, 48

**I.       None of the Six Necessary Elements of a Defamation Claim Are Pled**

The Opposition Brief does not dispute the legal contention of the Motion to Dismiss that

at least six elements are necessary to plead defamation, and that the failure of any one is fatal

to the claim. MTD (D.E. 47.5), at 2.  Instead, the Opposition offers conclusory claims that

each element is present in the Amended Complaint, D.E. 55, at 3-5, but without offering a

single citation to that document.  *Id*. If Plaintiff cannot locate by citation any of these

elements in its Amended Complaint, this Court should not be required to find them for

Plaintiff.

In addition to failing to identify any required element in the language of the Amended

Compliant, the Opposition Brief largely avoids confronting the legal grounds identified in the

Motion to Dismiss as to why the Amended Complaint fails to state each of these essential

elements.  These arguments, unanswered or not, are compelling.  Moreover, none of these six

defamation elements were the subject of the Fourth Circuit *Lokhova II* opinion, and hence

they are before this Court *de novo.*

**1.   There is No Pled Defamatory Sting**

As demonstrated in the Motion to Dismiss, the original complaint failed to allege any

statement by Halper with a defamatory sting, *i.e.*, a statement that makes Plaintiff appear odious,

infamous, or ridiculous. D.E. 47.5, at 13-24.  In part that is because the Halper statements at

issue are his denials of Plaintiff's accusations about misconduct by Halper.  The Amended

Complaint similarly offers no specific false statement by Halper inflicting a "sting" upon

Plaintiff.   To the contrary, the bulk of the "false statements" of which it complains are those that

were at the center of the failed complaints in *Lokhova I*—that she was falsely accused of being a

Russian spy and Flynn paramour.  Amended Complaint (D.E. 52), ¶¶ 17-56 ("The False Allegations About Plaintiff").

Plaintiff seeks to squeeze a defamatory sting from two letters of Halper's counsel asserting that her publisher's marketing materials were defamatory as to Halper.  AC, ¶¶ 80-89.  But neither the Amended Complaint nor the Opposition identify any false statement therein.  The Amended Complaint questions a characterization of the marketing material as defamatory, arguing instead that they are not defamatory because they are "lawful opinions about the conclusions to be drawn from certain facts."  AC, ¶ 86.  If anything, this argument by Plaintiff consigns Halper's opinions about Lokhova's opinions into the non-actionable category of pure opinion.

As the Motion to Dismiss explains, without challenge from the Opposition Brief, Halper's belief that he has legal claims are "opinions and legal conclusions, not fact."  *Advanced Steel Recovery LLC v. X-Body Equip. Inc*, 2022 WL 398645, *6 (E.D. Cal. Feb. 9, 2022).  Linking Plaintiff to this Court's judgment against her, and its rejection of her legal claims, does not carry a defamatory sting—it is adhering to this Court's rulings, which does not make Plaintiff appear "odious, infamous, or ridiculous."  If losing a judgment is odious, then every case will foment another case.

### 2.  *Substantial Truth Precludes the Claim of Falsity*

The motion to dismiss points out that the Complaint fails to identify specific "false statements," rendering this allegation conclusory and legally insufficient. D.E. 47.5, at 14 (citing *Lokhova I*, 441 F. Supp. at 261 (citing *Edwards v. Schwartz*, 378 F.Supp.3d 468, 522 (W.D. Va. 2019)).   The Opposition Brief devotes one sentence to the issue, but still fails to identify a single false statement.  Opposition Brief, at 3.   In addition to compounding the conclusory nature of the

false statement allegations, the Opposition Brief fails to answer the indisputable fact that Plaintiff's roving narrative is barred by the substantial truth as upheld in *Lokhova I*, as confirmed by an Inspector General Report, and as reinforced by successive national emergency declarations.

The Amended Complaint (D.E. 52) repeats the allegations in *Lokhova I*, and the original Complaint, about Plaintiff being "falsely cast in the role of femme fatale in a manufactured 21st century spy scandal at the onset of the U.S. Presidential administration of Donald J. Trump." AC, ¶ 1.  According to the quoted internet marketing material, Halper "fabricated and sustained the fantastical narrative of the Russian hoax." AC, ¶72 (quoting marketing material).

The Amended Complaint thus recycles the same set of "False Statements About Plaintiff," that animated *Lokhova I*.  AC, ¶¶ 17-56.  In order to extend her prior claims to this case, Lokhova demands blind acceptance of the rejected allegations of *Lokhova I*, claiming:

> 7. Having secured a book contract and American publishers, Plaintiff's work was set to be released by them in 2020, but it was not, because the subject of her book—the man who falsely accused her of being a Russian spy who had an illicit relationship with General Flynn—intervened and intimidated the publishers into dropping the book project through bogus claims that Plaintiff's truthful recounting of events defamed him.

AC, ¶ 7.

The "defamation" claimed is Halper defending himself by disputing the very same allegations previously directed at him but rejected as a matter of law in *Lokhova I*.   Halper's reliance upon this Court's affirmed rulings in *Lokhova 1* cannot be "false."

The entire premise of Lokhova's defamation grievance---that she was used by an international conspiracy to fabricate the "Russian hoax" of election interference in the 2016 election to mount a Presidential coup—is also belied by the uniform, successive national emergencies declared since December 2016 based upon the fact of such Russian interference. *See, e.g.*, E.O. 13757, 13849, 14024, 14068.  A denial of the "Russian hoax" is not only

substantially true, it is a denial that Halper is free to make without incurring a second defamation suit from Lokhova. *Accord, Page v. Oath*, 270 A.3d 833, 847 (Del. 2022) (rejecting defamation claim based upon substantial truth of proper investigation of Russian election interference confirmed by DOJ Inspector General), *cert. denied*, 2022 WL 1528435 (May 16, 2022).

The Delaware Supreme Court dismissed Carter Page's defamation claim, in which he claimed to be the victim of a "contrived set-up" of a law enforcement investigation into Russian election interference. The *Page* Court did so because of the substantial truth confirmed in the DOJ Inspector General's Report—that there was a need for serious law enforcement investigation into Russian election interference. *Page*, 270 A.3d at 845. 847 ("These details are confirmed by the Inspector General Report").

As if on cue, the Amended Complaint now adds to the original Complaint multiple citations to this same DOJ internal investigation, which it dubs the Horowitz Report. AC, ¶¶ 4, 38. 39, 41, 43, 92, 102. *See Lokhova I*, 441 F.Supp.3d at 252 (on motion to dismiss, court can consider documents incorporated by reference in the complaint). The Opposition, however, makes no mention of the DOJ Report, or its dispositive role in the *Page* opinion, even though this was raised as a ground for dismissal in the Motion to Dismiss. D.E. 47.5, at 8, 15. This Court can, and should reach, the same conclusion as the *Page* Court, and dismiss Lokhova's defamation claim equally predicated upon a "hoax" Russian investigation because of the substantial truth of the actual investigation confirmed in the Horowitz Report.[2] The Opposition also ignores the national emergency declared by successive Presidents since December 2019

---

[2] The Amended Complaint's addition of the Report to the pleadings was filed after Halper's Motion to Dismiss relied upon it and the *Page* opinion for dismissal. MTD (D.E. 47.5), at 8, 15.

based upon Russian interference in the 2016 Presidential election, and makes no effort to reconcile this with Lokhova's core defamation claim that this is all a "Russian hoax."

Accordingly, as the *Page* opinion held, these undisputed facts render Plaintiff's accusation that defendant fabricated these events as a "hoax" to 'topple' the Trump Administration are false.  That is the gist of the marketing material accusations against Halper, and they are therefore indisputably false, making his denials of them substantially true. Because of the substantial truth of the law enforcement investigation into Russian election interference, as opposed to Plaintiff's allegation that it was all fabricated by Halper using her, "there is no basis to consider whether [such statements] were defamatory *per se*." *Gaebel v. U.S. Polo Association*, 2022 WL 1509120, *5 (E.D. Va. May 12, 2022) (citing *Dangerfield v. WAVY Broadcasting*, 228 F.Supp.2d 696 (E.D. Va. 2017)).

Even when focusing upon Plaintiff alone, it is indisputable that Plaintiff raised her kitchen sink conspiracy claims against Halper in *Lokhova 1* and lost them all.  That fact makes Halper's subsequent denial of those same conspiracy claims substantially true.  *Lokhova II* reaps what *Lokhova I* has sowed.

### 3.   The Allegedly False Statements Are Not Of or Concerning Plaintiff

The Motion to Dismiss points out that the internet marketing material is about Halper, not Plaintiff, with the exception of its claim that Lokhova "was pulled into this fabricated narrative through dishonest accusations—for instance, that she was General Flynn's paramour and a Russian spy."  AC (D.E. 52), ¶ 72.  That claim was debunked in *Lokhova I* as to Halper specifically because his alleged communications were not directed at Plaintiff and because the focus of the numerous media articles she invoked was General Flynn, not plaintiff. *Lokhova I*, at 262-63.

7

The Amended Complaint makes the same conspiracy claim pled in *Lokhova I* which was also repeated in the marketing material—that Halper "fabricated and sustained the fantastical narrative of the Russian hoax" by allegedly smearing Plaintiff to target General Flynn (for the international coup conspiracy). AC (D.E. 52), ¶¶ 31-36, 72 (marketing material).

 The "new" material offered by the Amended Complaint, a claimed cab ride with Flynn after a 2014 Cambridge dinner as allegedly detailed in an FBI electronic communication (AC, ¶31-36) actually supports this Court's prior rejection of Plaintiff's claims in *Lokhova I*. *Lokhova I*, at 262-63. A cab ride, whether it happened or not, does not suggest or make Lokhova either a Russian spy or a Flynn paramour. *Id*. ("At most, the second statement suggests there were concerns about Flynn's behavior towards Lokhova, without stating or implying that Lokhova herself did anything improper.").

The Opposition Brief makes the peculiar claim that the demand letters from Halper counsel were not about Halper. Opposition, at 4. But the communication context (a legal demand letter) and the letters' subject (denials of the marketing material accusations against Halper) would lead a reasonable reader to conclude that they were of and concerning Halper.

In fact, the demand letters do not themselves make, or repeat, the defamation that Plaintiff unsuccessfully claimed for herself in *Lokhova I*—that she was a Russian spy or Flynn paramour.

4. ***Non-actionable Opinions***.

Non-actionable opinions include statement that are incapable of being proven true or false, and those which offer a subjective perspective. *Yeagle v. Collegiate Times*, 255 Va. 293, 295-96 (1998). Whether statements are nonactionable opinions is a question of law for the court. *Dragulescu v. Virginia Union Univ*., 223 F.Supp.3d 499, 507 (E.D. Va. 2016); *Jordan v.*

*Kollman*, 269 Va. 569, 576 (2005).  Opinions are constitutionally protected speech.  *Potomac Valve and Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 (4ᵗʰ Cir. 1987).

The Amended Complaint virtually admits that Halper's denials of Plaintiff's allegations about him are "certainly a matter of opinion."  AC (D.E. 52), ¶ 88 ("he takes issue with the characterization of his role in the Crossfire Hurricane investigation, but that is certainly a matter of opinion.").  The original Complaint alleges that the marketing materials are "on their face" "pure opinions," (Complaint, ¶ 4), with the Amended Complaint claiming they "are lawful opinions about the conclusions to be drawn from certain facts." (AC, ¶86; *see also* ¶¶ 73, 107).  Nonetheless, Plaintiff claims that Halper's denials of her "pure opinions" about him is somehow not itself an opinion.  *See* Orwell, Animal Farm ("All animals are equal but some are more equal than others.").

The Opposition Brief also fails to respond to any of the legal grounds cited by the Motion to Dismiss that make communications of the type in the demand letters to be opinions, including:

- A demand letter is a legal opinion, and would be considered so by a reader.  *See, e.g.*, *Marquez v. Hoffman,* 2021 WL 1226981, *31 (S.D.N.Y. March 31, 2021) ("A reasonable reader would not consider statements made in the context of an ongoing litigation to be facts.")
- Statements about having a legal claim are "opinions and legal claims, not facts." *Advanced Steel Recovery LLC v. X-Body Equip., Inc.* 2022 WL 398645, *6 (E.D. Cal. Feb. 9, 2022);
- Statements about the probable outcome of litigation are also "non-actionable opinion."  *Moya v. United Airlines, Inc.*, 2019 WL 351904, *4 (D.N.J. Jan. 29, 2019).
- A characterization of a litigation opponent's position as baseless, absurd, ridiculous, and meritless is a nonactionable opinion. *Alzheimer's Foundation of America, Inc. v.  Alzheimer's Disease Ass'n, Inc.*, 796 F.Supp.2d 458, 471 (S.D.N.Y. 2011).

Plaintiff's grievance over her statement's being labeled "false" also ignores the context in which they are being contested—ongoing litigation (*Lokhova 1*, then on appeal).   In such a

partisan context, "a reasonable reader would recognize that the authors are merely labelling positions with which they vehemently disagree as lies." *Edwards*, 378 F.Supp.3d at 529.   In short, these are just labels attached to a speaker's subjective views about a partisan dispute. *Id.* The context of the allegedly offending remarks is an important factor in any determination of whether they are opinions or alleged facts.  Here, the communication context is demand letters from Halper counsel to publisher counsel raising the prospect of defamation litigation.  It occurred while Lokhova's appeal was pending.

The best evidence of this is the Amended Complaint's characterization of the internet marketing material as not defamatory because they were "opinions." AC (D.E. 52), ¶ 107(c).   As pointed out in the Motion to Dismiss, and unanswered in the Opposition, if Lokhova's statements about Halper are nonactionable opinions, then his characterization of these same opinions as false must also be an opinion.  MTD (D.E. 47.5), at 18 (Plaintiff admits marketing opinion is opinion, making Halper denial of it non-actionable "opinions about opinions").

Instead of confronting any of these grounds for concluding that the letters are opinions, or discussing any of this cited authority, the Opposition offers only a conclusory claim that Halper's statements are not opinions.  *Id.* at 4.

### 5.  Actual Malice

The Opposition Brief does not challenge Plaintiff's status as a limited-purpose public person who must allege and prove actual malice to have a defamation claim.  *Compare* MTD (D.E. 47.5), at 19 *with* Opposition (D.E. 55), at 5.   Plaintiff nonetheless argues that if she uses the conclusory term "actual malice" in a complaint she has pled actual malice.  Opposition, at 5.  *But*

*see Mayfield v. NASCAR, Inc*., 674 F.3d 369, 378 (4th Cir. 2012) (conclusory malice allegations are "precisely the sort of allegations that *Twombly* and *Iqbal* rejected").

The Amended Complaint alleges malice based upon Halper's alleged knowledge that the demand letters "contained false statements and defamatory statements about Plaintiff." AC, ¶ 133. Given the Opposition Brief's failure to identify any false and defamatory statement in these letters, such conclusory statements preclude an allegation of malice. *Falwell v. Penthouse Int'l, Ltd*., 521 F. Supp. 1204, 1209 (W.D. Va. 1981) (dismissing defamation claim because accurate account cannot sustain actual malice burden).

In addition to being deficient as conclusory, the malice allegations do not survive the remaining holes in Plaintiff's defamation claims. Halper cannot be accused of actual malice by reliance upon the substantial truth of the judgment in *Lokhova I.* Even though Plaintiffs fails to identify a false statement by Halper, Lokhova's admissions that her assertions are just "opinions" (AC, ¶¶ 73, 86, 87, 88, 107, 132) makes them incapable of being proven true or false (*Jordan, 2*69 Va. at 576*),* which is a prerequisite for malice. *Ryan v. Brooks*, 634 F.2d 726, 732 (4th Cir. 1980) (high degree of awareness of actual falsity necessary for malice); *Jordan*, 269 Va. at 580.

### 6. Publication

The Opposition Brief chooses to ignore the publication challenge made by the Motion to Dismiss (D.E. 47.5, at 21), and it is therefore now uncontested. The Opposition Brief ignores the immovable obstacle to Plaintiff's claim of publication—Plaintiff. Since at least 2017, plaintiff has repeatedly, incessantly, published her claims of being falsely accused of being a Russian spy Flynn paramour by Halper or his co-conspirators. These publications by Plaintiff were cited in the *Lokhova I* complaints. *Lokhova 1*, D.E. 1, ¶¶ 130, 132, 158; D.E. 52, ¶¶ 135, 137, 167. The *Lokhova I* complaints themselves broadcast these claims, which were rebroadcast

on a GoFundMe site wherein Plaintiff solicited monies, claiming that Halper misrepresented that Plaintiff was a Russian spy and Flynn paramour. Lokhova I, D.E. 73.2.   Plaintiff further published these claims from her Twitter account, and in multiple media events.  The marketing material at issue is a recycling of the years of prior publications by Plaintiff.  The only difference between the marketing publication and the innumerable prior publications is that, by then, this Court had rejected Plaintiff's claims in *Lokhova 1*.

The Motion to Dismiss cites these numerous prior publications by Lokhova of the very material she considers defamatory, including in her prior Complaints.  MTD (D.E. 47.5), at 22-23.  The Opposition does not confront or deny Plaintiff's voluntary broadcasts of the alleged defamation, nor the precedent that a plaintiff's voluntarily communication of alleged defamation precludes a finding of defendant publication—Plaintiff is the publisher. *Id*., citing *Hickey v. St. Martin's Press, Inc*., 978 F. Supp. 230, 237 (D. Md. 1997) ("By filing his amended complaint in this Court, plaintiff has voluntarily communicated to others the allegedly defamatory statements.").   The two complaints in *Lokhova I*, including the broadcast of the first complaint to raise monies in 2019, should be sufficient for Plaintiff to earn publication credit.  As of this Court's judgment in *Lokhova I* in 2020, Lokhova herself was actively promoting this defamation since at least 2017. *Lokhova I* Complaint (D.E. 1) ¶ 130 (describing and linking to March 12, 2017 BBC "detailed interview" of Lokhova) (publicly filed on May 23, 2019).

## II. Tortious Interference Is Not Pled

Plaintiff sought dismissal of the tortious interference claim on the same ground that the Fourth Circuit had dismissed the *Lokhova I* claim—that the tortious interference claim was inextricably intertwined with the defamation claim.  MTD (D.E. 47.5), at 23 (citing *Lokhova I*,

441 F.Supp.3d at 265, *aff'd on this ground*, 995 F.3d at 148 (4ᵗʰ Cir. 2021)).   The Opposition

Brief fails to question its application here, and this justifies dismissal (again).

Instead, the Opposition Brief defends the tortious interference claim by claiming: (i) it is

based upon a proper defamation claim, but (ii) if the defamatory claim fails, other "improper

methods" are sufficiently pled.  Opposition, at 5.   The alleged interference here is the "tortious"

demand letters. AC, ¶ 78.  Accordingly, the failure of the Complaint to pled any of the six

defamation elements is sufficient to preclude reliance upon defamation as the "improper method"

of interference.

The Opposition also offers alternate potential candidates for a non-defamation improper

method ("deceit, unfounded litigation, threats, and even unethical conduct"), but makes no effort

to pick, claim, or plead one.  And while the Opposition Brief claims that such other improper

means are "alleged in the Amended Complaint," it cites to none. D.E. 55 (Opp. Brief), at 5.

The Amended Complaint does contain a conclusory section on "improper means," (AC,

¶¶ 121-32), but none of the improper means candidates cited therein have anything to do with

"deceit, unfounded litigation, threats and even unethical conduct" claimed in the Opposition

Brief.   Instead, the Complaint's improper means consist of Halper's alleged failures to sue

Lokhova or her publishers within a limitation period, or using "his lawyers and family members,

to carry out his campaign of intimidation through the use or threatened use of legal process."

AC, ¶ 127.  One cited example of the latter is Halper initiating "retaliatory criminal charges

against a writer who attempted to interview him." AC, ¶ 125.

The incident in question was the recent Fairfax County Circuit Court conviction of the

book editor of The Federalist (Mark Hemingway) for his trespass on the Halper's property on

February 23rd, 2022, despite posted and personal warnings to leave given by Ms. Halper. Criminal misconduct by a Federalist reporter in 2022 directed at the Halpers has no connection to any improper means associated with the two attorney demand letters directed to publishers in 2020, unless The Federalist is now seeking to appear as Plaintiff.

### III. Privilege and Immunity Preclude Suit

The Opposition Brief claims that statutory and First Amendment immunity are inapplicable, with the latter being "frivolous," and argues that the common law self-defense privilege is a factual issue for a jury. *Id*. at 6-8. None of these arguments have merit.

### A. First Amendment Immunity is Not Frivolous And is Dispositive

The Opposition Brief claims that Defendant's invocation of First Amendment immunity is "frivolous" because that defense—commonly known as *Noerr-Pennington* immunity—is applicable only to antitrust cases. Opposition Brief, at 8. Defendant concedes that this is not an antitrust case, but rejects entirely Plaintiff's argument that First Amendment immunity is limited to antitrust cases. Because *Noerr-Pennington* immunity has been invoked, Plaintiff shoulders the burden of overcoming it. *IGEN Int'l, Inc. v. Roche Diagnostics,* 335 F.3d 303, 312 (4th Cir. 2003).

It is true that the *Noerr-Pennington* immunity doctrine began in two antitrust cases—from which the doctrine is named[3]. But the First Amendment immunity it recognized has been extended well outside of the antitrust arena, and includes tort claims and even communications

---

[3] *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127, 135 (1961). *Noerr-Pennington* immunity is a question of law for the Court to decide. *IGEN*, 335 F. 3d at 310.

with law enforcement.[4]  If Plaintiff had bothered to read the Fourth Circuit precedent cited in the Motion to Dismiss, this would have been obvious.  *See IGEN,* 335 F.3d at 312 ("although originally developed in the antitrust context, the doctrine has now universally been applied to business torts") (citing tortious interference precedent); *Ottensmeyer v. C&P Tel. Co.*, 756 F.2d 986, 993 (4th Cir. 1985) (law enforcement communications).  The immunity also applies to the pursuit of litigation,[5] including demand letters. *Sosa v. DIRECTTV, Inc*. 437 F.3d 923, 933-35 (9th Cir. 2006).  Here, the demand letters are based upon the *Lokhova I* judgment which was then pending upon Plaintiff's appeal.[6]

Twenty years ago, Judge Ellis explained about First Amendment immunity: "No longer is it limited to conferring antitrust immunity for concerted efforts to influence legislators and administrators. It is now clear that the doctrine has been extended to confer immunity from a variety of tort claims, including claims of tortious interference and abuse of process." *Eurotech v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp.2d 385, 392 (E.D. Va. 2002). *Accord, Titan America, LLC v. Riverton Investment Corp*., 264 Va, 292, 302 (2002).  Plaintiff has limited its opposition to *Noerr-Pennington* immunity to a misguided claim that it is restricted to antitrust claims.  Opposition, at 8.   Plaintiff has made no claim that any exception to First Amendment immunity (i.e., a sham exception) precludes immunity. *Id*. (mentioning, but not claiming sham exception).[7]

---

[4]  Some courts call application of the doctrine outside of antitrust as Petition Clause Immunity.  *See CSMN* Invs.LLC *v. Cordillera Metro Dist*., 956 F.3d 1276, 1283 (10th Cir. 2020).

[5]  *IGEN*, 335 F.3d at 310.

[6]  *See Adidas America, Inc. v. TRB Acquisitions LLC*, 2017 WL 337983, *4 (D. Or. January 23, 2017) (allegations "arise in the context of the present litigation, they too are subject to protection by *Noerr-Pennington*").

[7]  For the reasons set forth in the Motion to Dismiss, the sham exception in inapplicable.  D.E. 47.5, at 29.

The Opposition Brief also fails to address or to deny any of the four reasons cited by the Motion to Dismiss as to why Halper's conduct is protected under First Amendment immunity. The following unquestionably trigger protected First Amendment protections: (i) the ongoing *Lokhova I* litigation; (ii) the steps preliminary to new litigation against the publishers; (iii) plaintiff's claim that Halper was communicating with law enforcement in an investigation of Russian election interference; and (iv) plaintiff's claim that Halper was involved in influencing a government response to Russian election interference.  MTD, at 28.

### B.  Statutory Immunity Applies

The Opposition Brief claims that statutory immunity does not apply under Va. Code § 8.01-223.2 because: (i) she has pled actual malice for her defamation claim; and (ii) Halper's statements are not about a matter of "public concern."  Opposition Brief, at 7.   If, as this Motion to Dismiss contends, Plaintiff has failed to allege actual malice, then statutory immunity applies because Plaintiff has herself claimed that this dispute is a matter of public concern.

Plaintiff's claim that Halper's defense of his conduct from accusations of fabricating the "Russian hoax" are not matters of public concern is, at best, a makeweight claim.   "Speech involves a matter of public concern when it involves an issue social, political, or other interest to a community." *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (*en banc*)[8].  The obvious grounds satisfying this standard include: (i) the national emergency findings by the last three Presidents over Russian election interference in the U.S.; (ii) the Congressional adoption of this

---

[8] Whether speech involves a public concern is a question of law for the Court. *Snyder v. Phelps*, 580 F. 3d 206, 219-20 (4th Cir. 2009), *aff'd,* 562 U.S. 443 (2011).

national emergency by enacting CAATSA by overwhelming margins;[9] (iii) the five volumes of Senate Select Intelligence Committee Reports;[10] and (iv) the federal law enforcement investigation of these matters, as confirmed in the DOJ Inspector General Report in 2020, and relied upon in *Page*.   In fact, the Southern District Court of New York found a sufficient matter of public concern under the First Amendment to bar requested injunctive relief demanded by Mr. Page. *Page v. Oath*, 2018 WL 1474620, *2 (S.D.N.Y. March 26, 2018) ("The speech Plaintiff would have the Court enjoin directly implicates matters of public concern, including Russian interference in and the legitimacy of the 2016 presidential election"), *appeal dismissed*, 797 Fed. Appx. 550 (2d Cir. 2019).[11]

A British-Russian author of a book originally entitled The Spider: Stefan A. Halper and the Dark Web of a Coup" which she renamed "Spygate Exposed: The Conspiracy to Topple President Trump,"[12] is not the most credible source of a claim that its subject is not a matter of public concern in the United States.  Even the Amended Complaint alleges that there was "a considerable and lucrative market for books about the Crossfire Hurricane investigation and the people involved in and subject to it." AC, ¶ 61.

---

[9] Countering America's Adversaries Through Sanctions Act, H.R. 3364, Public L. No. 115-44, §§ 211(5&6), 222(a) ("Codification of Sanctions Relating to the Russian Federation," codifying EO 13575), 131 Stat. 886 (2017) (codified at 22 U.S.C. § 9501, 9522 note) (enacted by a Senate vote of 98-2, House vote of 419-3).

[10] *See, e.g.*, Report, *Assessing Russian Activities and Intentions in Recent U.S. Elections*, S. Rep. No. 116-XX (2017); Report, *Russian Active Measures Campaigns and Interference in the 2016 U.S. Election*, S. Rep. No. 116-XX (2018).

[11] Similarly, the D.C. Circuit has held that the investigative decisional documents of the Mueller investigation into Russian election interference are of sufficient public interest to justify their public disclosure under FOIA. *Electronic Privacy Information Center v. United States Department of Justice*, 18 F.4th 712 (D.C. Cir. 2021).

[12] AC, ¶¶ 57, 118.

### C.  Common Law Self-Defense Privilege Applies

The Opposition Brief does not dispute that a self-defense privilege is available, or that it is only subject to loss through abuse.  Nonetheless, Plaintiff argues that these are questions for the jury.  This is in error. Whether such a privilege exists is a question of law for the Court. *Baylor v. Comprehensive Pain Management Centers, Inc.*, 2011 WL 1327396, *11 (W.D. Va. April 6, 2011). Because Plaintiff "bears the burden of proving the privilege was lost or abused, there is a presumption that" it was not.  *Doe v. Roe,* 295 F.Supp.3d 664, 676-77 (E.D. Va. 2018).  The Motion to Dismiss set forth the types of assertions of self-defense that Virginia courts have held to be protected as privileged assertions of self-defense as a matter of law.  MTD (D.E. 47.5), at 24 (calling accuser an "unmitigated liar" is privileged).  *Foretich v. Capital Cities/ABC, Inc*., 37 F.3d 1541, 1562 (4th Cir. 1994) (citing *Chaffin v. Lynch*, 83 Va. 106 (1887)); *Baylor*, 2011 WL 1327396 at *1.  The Opposition Brief does not address this self-defense precedent.  Nor does the Opposition Brief allege that Halper's letter demands fall outside of his common law privilege of self-defense.

Instead, the Opposition Brief makes the conclusory assertion that Halper abused "any" privilege.  Opposition, at 6 (citing AC ¶ 137).   The Opposition Brief's roster of reasons courts consider abusive, id. at 6, are not plead at all in the Amended Complaint.  The burden of proving abuse, however, falls upon Plaintiff, with the presumption being that it was not abused.  *Doe*, 295 F.Supp.3d at 677.  Despite this burden, the Amended Complaint and the Opposition Brief, completely fail to explain how or why Halper abused this particular privilege.   Given that the Motion to Dismiss on this ground preceded the Amended Complaint, Plaintiff's refusal to support its abuse accusation warrants its rejection.  *Compare* MTD, at 25 (describing necessary showings for abuse).

**IV. Res Judicata Applies and It is Not "Manifestly Frivolous"**

Citing only the Fourth Circuit opinion in *Lokhova II,* Plaintiff alleges that the Motion to

Dismiss' claim of issue preclusion is "manifestly frivolous."  Opposition Brief, at 9.  But, as

explained herein, literally all of Plaintiff's legal claims about her being a victim of the "Russian

hoax" engineered by the "source" Halper through his co-conspirators in the media, the federal

government, and Cambridge University were rejected in *Lohkova I*.   The Fourth Circuit opinion

in *Lokhova II* obviously did not address either a motion to dismiss or a preclusion defense.

Plaintiff is silent on the criteria for issue preclusion, and they clearly apply here: (i) the

same issues were previously litigated in *Lokhova I*; (ii) these issues were actually and necessarily

determined; (iii) the *Lokhova I* judgment is final; and (iv) Plaintiff had a full and fair opportunity

to litigate the issue.  *Lewin v. Cooke*, 95 F.Supp.2d 513, 522 (E.D. Va. 2000), *aff'd*, 28 Fed.

Appx. 186 (4th Cir. 2002).

Plaintiff chooses not to address any of these issues. Among other things, *Lokhova I*

established that Halper was neither the source, nor a conspirator, in the alleged campaign to

defame Lokhova, including as a means to smear General Flynn and "topple" the Trump

Administration.  All of these claims reappear in this case. *See, e.g.*, AC, ¶¶ 1, 2, 5-8, 17-53, This

Court has already characterized Plaintiff's new allegations about Halper lying to the FBI—first

made in her sanctions opposition brief (D.E. 12, at 3-4), and now pled in the Amended

Complaint at paragraphs 46 through 53—as amounting "to another defamatory attack on

Halper and attempts to relitigate *Lokhova I*, including her attachment of redacted FBI papers

purportedly showing Halper lying to the FBI." *Lokhova II*, at *7 (referring to D.E. 12.1).

Just as the marketing material mimicked the *Lokhova I* claims, Plaintiff makes no effort here to distinguish her second defamation suit allegations from the first. As described herein, they are the same.  Likewise, there is no Opposition Brief contention that these claims were unnecessary to, or undecided in, *Lokhova I*, or that Lokhova lacked a full and fair opportunity to litigate them then.

An adverse judgment in a defamation claim is preclusive as to a second case based upon the same type of defamation.  *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 792 (D. Md. 2011); *Arpaio v. Robillard*, 459 F.Supp.3d 62, 67 (D.D.C. 2020); *Swanson v. Baker & McKenzie, LLP*, 2016 WL 7231610, *3 (N.D. Ill. Dec. 14, 2016), *aff'd*, 682 Fed. Appx 490 (7th Cir. Apr. 03, 2017).

### Conclusion

For the foregoing reasons, the Motion to Dismiss should be granted.

Respectfully submitted,

By: _____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone): 703-299-5000
(Facsimile): 703-299-8876
tgreed@lrfirm.net

Robert D. Luskin (*pro hac vice*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
robertluskin@paulhastings.com
*Counsel for Defendant*
*Stefan A. Halper*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July, 2022, I electronically filed the foregoing

Defendant's Reply Brief using the CM/ECF system which will then send a notification of such

filing (NEF) to all interested parties.

By: _____/s/_____

Terrance G. Reed (VA Bar No. 46076)