IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SVETLANA LOKHOVA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-1603((LMB)(WEF) |
| ) | |
| STEFAN A. HALPER ) | |
| ) | |
| ) | |
| Defendant ) | |
| ) | |

## Defendant Stefan Halper's Opposition to Plaintiff's Motion for a Protective Order Against the Court Scheduling Order

Plaintiff asks (i) to be excused from her failure to comply with the Local Rule 26(C) deadline for serving written objections to discovery, in order to preserve the opportunity to offer unidentified objections in the future; (ii) to obtain 15 to 30 day extensions on all prospective discovery deadlines; and (iii) to quash her second noticed deposition. Plaintiff has not claimed, much less proven, the excusable neglect required to overcome her failure to comply with Local Rule 26(C). She also offers no justification either for granting 15 or 30 days extensions of all discovery deadlines for her benefit, or for failing, a second time, to appear at her noticed deposition.

Plaintiff also asks for issuance of this general protective order in order to facilitate filing a more precise protective order motion later. Docket Entry (D.E.) 68, at 3 n.3. On August 19th, the same day Plaintiff filed her protective order motion seeking to further delay her first discovery production, she filed a motion for summary judgment against Defendant's

1

counterclaims. D.E. 70.  Plaintiff asks to continue her complete avoidance of discovery while she pursues a dispositive motion against Defendant's counterclaims, on the ground that she has not had the time to comply with any discovery deadline to date.  Good cause has not been shown under Rule 26(c), and the protective order motion should be denied.

## Procedural History

Plaintiff Svetlana Lokhova has filed two suits against defendant Halper seeking more than $30 million dollars. The first, filed in May 2019, sought $25 million in damages. *Lokhova v. Halper*, 1:19-cv-632 (LMB/JFA) (E.D. Va.) ("*Lokhova I*").  In *Lokhova I*, Plaintiff alleged that an international conspiracy was formed among Stefan Halper, the FBI, the CIA, the Defense Department, Cambridge University professors, and 8 media companies to topple the Trump Presidency by defaming General Flynn and Plaintiff, an alleged Cambridge PhD student. Defendant Halper's alleged role was to be a "ratfucker and a spy"[1] to mastermind this coup conspiracy, in concert with his co-defendant "media stooges,"[2] by fabricating the claim of Russian interference with the 2016 Presidential election (the "Russian hoax") to oust President Trump from office.  *See Lokhova I* Complaint and Amended Complaint, D.E. 1 & 52.  The *Lokhova I* complaints specified that Plaintiff would be seeking "substantial additional evidentiary support, which is in the exclusive possession of the Defendants, the FBI, Cambridge University, and their agents." D.E 1, at p. 65; D.E. 52, at p.72.

*Lokhova I* was dismissed in February 2020. *See Lokhova v. Halper*, 441 F.Supp.3d 238 (E.D. Va. 2020) (dismissing suit), *aff'd*, 995 F.3d 134 (4th Cir. 2021).  Upon the District Court's dismissal of *Lokhova I*, however, Plaintiff began recycling the same rejected conspiracy claims in marketing materials for her prospective new book detailing this alleged coup conspiracy.

---

[1]  Lokhova I Complaint, D.E. 1, at ¶1; Lokhova I Amended Complaint, D.E. 52, at ¶1.
[2] Lokhova I Complaint, D.E. 1, at ¶ 19; Lokhova I Amended Complaint, D.E. 53, at ¶ 21.

Lokhova then placed her manuscript on her website in June 2020, which she describes as self-publishing her "Book,"[3] with it repeating her coup conspiracy claims against Halper and the government agencies, albeit without mentioning her failed suit in this Court. *See* Lokhova *Spygate Exposed, The Conspiracy to Topple President Trump* 335 (2020).

Plaintiff's "Book" repeats all of the defamation claims that had been rejected by this Court as implausible (and later affirmed by the Fourth Circuit), including copying verbatim the language of the *Lokhova I* Complaints about the exact same media articles to recycle the court-rejected claim that Halper was their conspiratorial source. For example, the book claims that the same coup conspiracy was promoted by the "source" Halper through an article dated June 18, 2018 in the Washington Post in language taken whole cloth from the *Lokhova I* Amended Complaint (D.E. 52, ¶ 171) that was rejected by this Court in *Lokhova I*, 441 F.Supp.3d at 262-63. *Compare* Lokhova, *Spygate Exposed, The Conspiracy to Topple President Trump* 335 (June 2020) (quoting two statements from ¶ 171 without attribution). Despite cutting and pasting extensively from language of the *Lokhova I* Complaints, the "Book" is silent about Plaintiff's suit, and this Court's rejection of these same claims.

In December 2020, Plaintiff filed this second suit seeking $5 million dollars and alleging that attorney demand letters sent to publishers of marketing material for her unpublished potential book notifying them of this Court's ruling were defamatory and caused the cancellation of a book contract necessitating her self-publication of the book on her website in June 2020. *Lokhova v. Halper*, No. 1:20-cv-1603 (LMB)(WEF) ("*Lokhova II*"). The District Court initially dismissed *Lokhova II* as a sanction under Rule 11 in May 2021, but the 4th Circuit reversed, indicating that

---

[3] D.E. 70-1 (Lokhova Declaration, ¶ 5) ("5. The Book was originally published on my website in June 2020.").

3

addressing Rule 11 sanctions was premature until the completion of discovery.[4] *Lokhova v. Halper*, 30 F.4th 349 (4th Cir. 2022).

Upon remand from the Fourth Circuit, this Court denied Defendant's motion to dismiss on July 15, 2022, and issued a scheduling order the same day directing that discovery begin that day and end by November 11th, and that Defendant respond to the Complaint by July 29th. D.E. 61. On July 29, 2022, Defendant filed his answer and added counterclaims. D.E. 65. On August 3rd, the Court issued a new pretrial scheduling order requiring any new answer be filed by August 23, 2022, and extending the discovery cut off until December 9th. This was consistent with the Court's comment at the July 15th motion to dismiss hearing that discovery would be completed without delay.

On Friday, August 20, 2022, Plaintiff filed this protective order motion to delay discovery deadlines (D.E. 68), but also filed a motion to dismiss the counterclaims and for summary judgment upon them. D.E. 70. Under the revised scheduling order, such a response to the counterclaims was not due until August 23rd.

The summary judgment motion contends that this Court lacks personal jurisdiction over Plaintiff to adjudicate the counterclaims, but also seeks judgment on the counterclaims. D.E. 70, at 2. Plaintiff argues that because she is a British citizen, she cannot be haled into a Virginia court to answer for her alleged defamation in Britain because "Virginia 'is not the world's defamation court.'" *Id.* at 7 (quoting *Mireskandari v. Daily Mail & General Trust PLC.*, 105 Va. Cir. 370 (Fairfax Cir. Ct. 2020)). *But see Lokhova I* Amended Complaint (D.E. 52) at ¶¶ 23, 124-32) (plaintiff bringing defamation claim in this Court for articles in the Daily Mail and

---

[4] Prior to her appeal, Lokhova had refused to provide requested discovery on the issue of sanctions on the ground that discovery was premature under Rule 26(d) until the pretrial conference, only to complain on appeal that she needed discovery that she never propounded. D.E. 7, at 17; D.E. 12, at 15.

4

Telegraph in Britain, and articles in other British publications, pursuant to Virginia long arm statute).

Significantly, the only evidence offered by Plaintiff to support her summary judgment motion is an alleged declaration from Plaintiff. D.E. 70, at 2-3 (Statement of Material Facts, ¶¶ 3, 6, 7, 8) citing D.E. 70-1 (Lokhova Declaration). Plaintiff's exclusive reliance upon her own alleged declaration to seek summary judgment, of course, makes even more urgent the need to take the deposition of Plaintiff as noticed on September 6th. *See* Fed. R. Civ. P. 56(d) (authorizing deferring summary judgment when facts unavailable)

### Discovery History

**A. Plaintiff Consistently Has Failed to Comply with Discovery in the Past**

On August 10, 2021, Defendant propounded written document requests and interrogatories upon Plaintiff, served by email (a mode of service as to which no objection was made). These discovery requests have yet to be answered. Defendant filed a motion to compel compliance with these discovery requests (D.E. 30), to which Plaintiff never filed a response. *See id.* (describing failures to respond to this discovery, including the failure to serve timely written objections). To this day, Plaintiff has failed to respond to Defendant's discovery requests of August 2021 with any objections, written responses, or discovery. *Id.*

On October 29, 2021, Defendant served by hand upon Plaintiff's then-counsel (Mr. Steven Biss) the first notice of deposition for Plaintiff for November 23, 2021. McLaughlin Declaration (Exhibit 1) ¶ 2; Exhibit 2 (notice of deposition). In addition, Defendant served a document and testimony subpoena and deposition notice for Mr. Biss scheduled for November 22, 2021.

On November 17, 2021, Plaintiff counsel Biss served written responses and objections to his personal subpoena.   Generally, and in response to requests for documents concerning the book revenues or contracts of Plaintiff, Mr. Biss took the position the Plaintiff had exclusive possession of such documents,[5] and he had no responsive documents to produce.[6]   A year into this case, and Plaintiff counsel had no documents about the alleged contracts and revenues that are its subject.

On November 16, 2021, defense counsel (Mr. Biss) disclosed that Plaintiff was not in communication with him, and he claimed that he was not authorized to accept a deposition notice on her behalf.   Exhibit 3 (Biss email).   Plaintiff failed to appear for her first noticed deposition in November 2021.

---

[5]  Objection 5 states:
> Mr. Biss objects to the Discovery Requests on the ground and to the extent that the information requested is not in Mr. Biss's possession or control, but is in the possession and control of others, including, without limitation, Ms. Lokhova, the United States Government and its agencies, John Durham, Special Counsel appointed pursuant to ORDER NO. 4878-2020, Michael E. Horowitz, Inspector General of the United States, and others.

Exhibit 4.

[6] *See, e.g*., Document Request 4:
> 4. All documents relating to any revenue from *Spygate Exposed: the Conspiracy to Topple President Trump*, including but not limited to any contract providing entitlement to such revenues.

> Answer: Mr. Biss has no documents.

Exhibit 4.

### B. Plaintiff's Avoidance of Discovery Continues Today

The Fourth Circuit's remand of this case from its Rule 11 dismissal was based, at least in part, upon Plaintiff's contention on appeal that discovery was necessary to resolve the Rule 11 issues. Upon remand, the District Court denied Defendant's motion to dismiss (D.E. 60) but instructed the parties to complete discovery without delay. The District Court's July 15, 2021 Scheduling Order (D.E. 61) commenced discovery immediately (*i.e.*, prior to the pretrial conference).

On July 25, 2022, Defense counsel sent a set of document requests and Interrogatories to Plaintiff counsel by email. The only response received from Plaintiff up to this date was an email from defense counsel on July 30th, acknowledging prior receipt of the discovery, but refusing to accept service by email, citing Fed. R. Civ. P 5.

Defense counsel then re-served the same discovery by hand and by email on the next business day, August 1st. *See* Kenefick Declaration. (Exhibit 5) ¶2. Three weeks later, in the protective order motion filed on August 19th (D.E. 68), Plaintiff counsel claims, implausibly, that, notwithstanding repeated receipt of emailed (July 25th), hand-delivered (August 1st), and mailed (August 1st) copies of these discovery requests, she first looked at them on August 17, 2022, twenty-three days later, when she claims she first looked at her mail. D.E. 68, at 4. By then, of course, the Local Rule 26(C) fifteen-day deadline for written objections had expired as early as August 9th or as late as August 15th. No such objections have yet been served. Plaintiff's discovery derelictions are nothing new; rather it is just a repeat of Plaintiff's chronic discovery failures in this case.

In a footnote, Plaintiff promises a second protective order motion over defendant's previously propounded discovery as "improper" in the future, "if Plaintiff's counsel is

7

unsuccessful in efforts to get Defendant's counsel to substantially modify/withdraw them." D.E. 68 at 3 n.3   No objections have been provided to defense counsel, much less has Plaintiff undertaken any effort to seek modification.

When Defendant later timely filed his Answer and Counterclaims on July 29, 2022 (D.E. 65), the Court issued a new pretrial order on August 3, 2022, directing an answer be filed in twenty days (by August 23rd), and extending the discovery period until December 9, 2022. D.E. 66.

On July 25, 2022, Defense counsel emailed a set of document requests and interrogatories to new counsel for Plaintiff (Ms. Leslie Gordon).  On July 30, 2022, Plaintiff counsel responded by email and acknowledges her receipt of the discovery but, invoking Fed. R. Civ. P. 5, refused to consent to electronic service of the document she possessed,[7] thereby requiring duplicative hand or mail service upon plaintiff counsel.  Defendant promptly re-served the discovery by hand and by mail on Monday, August 1st.  They were labeled Amended discovery requests, with the only difference being the certificates of service.  On August 2, 2022, Defense counsel served by mail a second notice of deposition upon Plaintiff for September 6, 2022.

Since receipt by Plaintiff counsel on July 25, 2022, Plaintiff has tendered no objections to this outstanding discovery (by any means of service). The time to file objections expired no later than on August 15, 2022.

Anticipating that this Court would want to address the pending motion to compel, on August 8th, Defendant served a draft renewed motion to compel production consisting of a

---

[7] D.E. 68-2 ("I see that your office emailed me some discovery documents this week.  Delivery by email is not effective service under the rules unless the party has previously consented to it in writing, see FRCP 5(b)(2)(E), which I have not done and will not do.").

subset of 5 document requests involving publication financial information central to defamation damages that former Plaintiff counsel had represented in November 2021 that he did not possess, with any responsive document being in the exclusive possession of Plaintiff.[8]

On August 5th, defense counsel asked Plaintiff's successor counsel to confirm that these responsive documents would be produced so as to avoid having to renew the original (pending) motion to compel. No such response has been received from Plaintiff counsel, including in the protective order motion Plaintiff filed on Friday, August 19th. D.E. 68.

Plaintiff has now filed a protective order motion seeking court assistance because plaintiff counsel claims to have first looked at the discovery requests on August 17th, even though they were served electronically on July 25th, receipt of which was acknowledged by plaintiff counsel on July 29th, and they were re-served on August 1st by hand at the insistence of plaintiff counsel. Moreover, the August 8th service upon Plaintiff counsel of a draft renewed

---

[8] Request 5. All documents relating to any revenue from *Spygate Exposed,* including but not limited to any contract providing entitlement to such revenues.
Answer: Mr. Biss has no documents.
Request 6. All documents relating to any revenue from the *Spider: Stefan A. halper and the Dark Web of a Coup.*
Answer: Mr. Biss has no documents.
Request 7. All documents relating to any revenue from GOFUNDME for the benefit of Svetlana or Steven Biss.
Answer: Mr. Biss has no documents.
Request 8: All documents relating to any third party financing you have obtained for the Litigation.
Answer: Mr. Biss has no documents.

Exhibit 4.

9

motion to compel gave further notice to Plaintiff that her continuing disregard of all discovery obligations was unacceptable.

## The Protective Order Motion

Despite all this, on the evening of August 18th, plaintiff counsel announced she would be filing a protective order the next day, August 19th. To expedite matters, Defense counsel agreed that any such motion could be noticed for the scheduled August 23rd initial pretrial conference.

Plaintiff's protective order motion was filed on August 19th, but it fails to identify any objection to any of the outstanding discovery requests. Instead, it asks to quash the noticed deposition of Plaintiff and seeks the right to make discovery objections in the future. Also on August 19th, Plaintiff filed a motion seeking summary judgment upon Defendant's counterclaims, a filing which Plaintiff apparently had sufficient time to compile, although she did not have time to review, much less respond to or timely object to the discovery requests pending since July 25th. Plaintiff's summary judgment motion contends that this Court lacks personal jurisdiction over her to litigate Defendant's counterclaims, despite having submitted to the jurisdiction of this Court by bringing this case in 2020, and its predecessor (*Lokhova I*) in 2019. In bringing these suits,[9] Plaintiff consented to the personal jurisdiction of this Court over her,[10] including for purposes of litigating compulsory or permissive counterclaims. *AbCellera*

---

[9] Bringing multiple suits in the same forum, justifies personal jurisdiction over a plaintiff, *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991), as does using court procedures such as perfecting an appeal. *Corporacion Mexicana De Mantenimiento Integral v. Pemex-Exploration Y Produccion,* 832 F.3d 92, 101 (2d Cir. 2016), *cert. dismissed*, 137 S. Ct. 1622 (2017).

[10] *See, e.g., Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) (having "submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence"); *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 239-40 (1932) (by bringing suit, plaintiff "submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants"). "A court may lack personal jurisdiction over a

*Biologics Inc. v. Berkeley Lights, Inc,* 2021 WL 2719264, *4 (N.D. Cal. July 1, 2021) (citing 6 Wright & Miller, Federal Practice & Procedures: Civil § 1424 & nn.1, 6-7 (3d ed. Apr. 2021) (collecting cases)).  Plaintiff's alleged status as a British resident is simply immaterial to this Court's jurisdiction over the case(s) she brought here.

Plaintiff's refusal to recognize the jurisdiction of the Court over her to adjudicate the counterclaims is consistent with her continuing avoidance of her discovery obligations.  When Plaintiff had to address this Court's financial sanctions in this case, she declined to respond to discovery or to appear for her noticed deposition.  Especially now, because Plaintiff has filed a summary judgment motion to avoid Defendant's counterclaims, the need for her testimony is ripe.  Delaying discovery deadlines and Plaintiff's deposition would prejudice Defendant's ability to confront Plaintiff's summary judgment motion.

Plaintiff, as the Movant, bears the burden of proving good cause exists to justify a protective order.  Fed. R. Civ. P. 26(c); *U.S. ex rel. Davis v. Prince,* 753 F.Supp.2d 561, 565 (E.D. Va. 2010) (cited in *Jarrell v. Kroger Limited Partnership*, 2014 WL 12770216, *3 (E.D. Va. July 17, 2014)).  Plaintiff has not established the requisite good cause; indeed, her motion fails even to mention the term, much less furnish facts sufficient to support it.

**I.     Plaintiff Has Not Alleged or Proven Excusable Neglect to Justify Her Failures to Comply with Local Rule 26(C)**

Leaving aside the Plaintiff's prior discovery failures, the fifteen-day period for making written discovery objections under Local Rule 26(C) has expired for the written discovery propounded electronically on July 25th and hand-served on August 1st.  No objections have been

---

defendant, but never over a plaintiff, who consents to such jurisdiction by filing suit." *Viron Int'l v. Boland Corp.*, 237 F.Supp.2d 812, 818 (W.D. Mich. 2002).

11

served. Noncompliance with this Rule justifies an order compelling responsive discovery without objection. *Montoya v. Daisy Fresh Cleaning Co. Inc.*, 2020 WL 6930513, *2 (E.D. Va. April 22, 2020) (Buchanan, J.) ((because time for objection and responses has passed, "Defendant must therefore provide answers to Plaintiff's interrogatories and requests for production, without objection, within ten (10) days of the date of this Order"). In *Vivos Acquisitions, LLC v. Health Care Resource Network*, LLC, 2020 WL 3269135 (E.D. Va. June 16, 2020), for example, Magistrate Buchanan ruled that failure to submit timely written objections justified an order that responses be filed "without objection." *Id.* at *2. In short, the failure to make timely written objections is construed as a waiver of objections. *Id.*[11]

"The Court has discretion to grant additional time 'if the party failed to act because of excusable neglect.'" *Jarrell v. Kroger Limited Partnership*, 2014 WL 12770216, *3 (E.D. Va. July 17, 2014) (quoting Fed.R.Civ.P. 6(b)(1)(B) and denying objection extension for failure to prove excusable neglect.). *Accord*, *Humphries v. JLG Industries, Inc.*, 2017 WL 11507177, *1 (E.D. Va. June 7, 2017) (excusable neglect not established to justify extending fifteen-day deadline of Local Rule 26(C)).

Excusable neglect "is not easily demonstrated, nor was it intended to be," and "a district court should find 'excusable neglect' only in the 'extraordinary cases where injustice would otherwise result.' " *Thompson v. E.I. DuPont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir.1996). Here, Plaintiff has not even claimed excusable neglect, much less sustained her burden of proving it. Plaintiff's admission that Plaintiff counsel did not read the discovery until after the expiration of the Rule 26(C) deadline establishes neglect, but not excusable neglect.

---

[11] *Accord, Certain Underwriters at Lloyd's v. Advanfort Co.,* 2019 WL 3366103, *5 (E.D. Va. July 25, 2019) ("this Court already ruled Defendant waived all of its objections as untimely made) (citing Local Rule 26(C).

12

Instead, Plaintiff lobs attacks on the civility and reasonableness of defense counsel while failing to explain why plaintiff counsel failed to read the discovery until August 17, 2022, after the expiration of the deadline under any construction of the service rules. Rather than defend Plaintiff's conduct, Plaintiff counsel chooses to accuse defense counsel of engaging in "incendiary, hyper-aggressive, and sometimes unprofessional," litigation practices, urging this Court to find that defense counsel's conduct "plainly violates of the code of conduct expected in this Court." Motion, at 2, 7. These unfounded allegations are themselves incendiary and uncalled for, but appear to boil down to the refusal by Defendant's counsel, in the context of a compressed discovery schedule direct by the Court, to accommodate other demands upon the time, priorities, and attention of Plaintiff's counsel. As the Court is well-aware, Defense counsel's primary duty is to his client; and, as here, where the requests of Plaintiff's counsel cannot be accommodated without subordinating the interests of the Defendant, it is not unprofessional or hyper-aggressive to say no.

Defendant's refusal to agree to Plaintiff's open-ended request for an extension of discovery deadlines also does not constitute excusable neglect. The factors relevant to an excusable neglect determination include "'the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Humphries*, 2017 WL 11507177, \*1 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)).

Here, the prejudice to Defendant is the lack of any discovery on a Complaint filed in December 2020, including the lack of any discovery on counterclaims that Defendant had to file

13

on July 29, 2022 under this Court's scheduling order of July 15th. Under the Rules of this Court, failure to adhere to discovery deadlines is disfavored, to put it mildly.

Plaintiff compounded this prejudice by filing a motion for summary judgment on the merits of these counterclaims on August 19th. Plaintiff is seeking judgment on the counterclaims as to which it has refused any discovery, and now asks this Court to delay any such discovery indefinitely while it litigates its summary judgment motion.

In *Humphries*, this Court rejected an excusable neglect claim for untimely objections under Local Rule 26(c) for reasons equally applicable here: (i) interposing objection would likely necessitate a motion to compel; (ii) delayed objections would "unnecessarily delay discovery for several weeks as the parties litigated the merits of the objections" and (iii) "most importantly, Plaintiff lacks a sufficient reason for the delay, merely arguing that it was because of an 'extremely heavy work load and oversight.'" 2017 WL 11507177, *1.

Here, Plaintiff virtually promises the Court that it will be bringing a second protective order motion over the unidentified, but allegedly "improper," discovery it claims to have read on August 17th. D.E. 68 at 3 n.3. The proper response to such promises of future discovery disputes is that provided by Judge Buchanan in *Montoya*: "provide answers to Plaintiff's interrogatories and requests for production, without objection, within ten (10) days of the date of this Order." 2020 WL 6930513, *2 (E.D. Va. April 22, 2020).

II. **Plaintiff Has Not Established Good Cause for Extending All Plaintiff Discovery Deadlines by 15 or 30 Days.**

Without any justification, Plaintiff asks this Court to delay all prospective discovery deadlines. Specifically, Plaintiff asks this Court to:

> extend[] the deadline for objections and responses to all discovery requests propounded by the Defendant to the later of:
>   (a) 15 days from their stated respective deadlines, or

14

      (b) 15 days after the entry of the order granting this Motion for objections and 30 days after the entry of the order granting this Motion for responses.

D.E. 68, at 9.

  In short, Plaintiff wants a 15 to 30 day extension on any deadline applicable to a Defendant discovery request, with a specific preference for a 30 day extension on all discovery responses. Plaintiff is currently obligated to respond to the pending discovery no later than September 1st (eight days from now).

  Plaintiff asks this Court essentially to re-write and extend all Federal and Local discovery deadlines for the exclusive benefit of Plaintiff by 15 to 30 days. Certainly an ambitious goal in this District; if it had been asked of defense counsel, it would have been denied.

  Moreover, the proposed automatic extension of Plaintiff's discovery objection and discovery deadlines would conflict with the existing pretrial scheduling order which provides a definite discovery cut-off date, from which all prior deadlines are fixed by rule. Altering a scheduling order also requires good cause, *see* Fed. R. Civ. P. 16(b)(4). Under the Rules of this Court: "Mere failure on the part of counsel to proceed promptly with the normal processes of discovery shall not constitute good cause for an extension or continuance." E.D. Va. Local Rule 16(B).

  Plaintiff does not offer any good cause why she, and she alone, should be exempt from the discovery deadlines of the Federal Civil Rules, the Local Rules of this Court, and the existing pretrial scheduling order. Nor, for that matter, has Plaintiff explained why she needs an additional 15 or 30 days to respond to the Defendant's discovery it received on July 25th, other than to suggest that plaintiff counsel's decision to delay looking at it until August 17th is good cause for an extension.

Good cause requires a showing of due diligence. *Carderelli v. Duruttya*, 2015 WL 5430252, * (W.D. Va. Sept. 14, 2015). "[T]he primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty.,* 182 F. App'x 156, 162 (4th Cir.2006). There is no explanation from Plaintiff about how avoiding reading discovery from July 25th to August 17th reflects due diligence. Even as to future discovery deadlines, there is no claim or showing that Plaintiff lacks the ability to comply with all of them. Complying with discovery deadlines is expected and is not a sign of incivility by defense counsel. Hence, this request should be denied.

### III.    Plaintiff Has Not Established Good Cause for Quashing Her Deposition

Plaintiff asks this Court to quash the deposition notice of Plaintiff scheduled for September 6, 2022. Plaintiff failed to appear for her first noticed deposition in this case in November 2021, explained only by her then-counsel's inability to communicate with her. Her request to quash her second notice deposition comes on the same day she asks this Court to grant summary judgment against Defendant's counterclaims based solely upon Plaintiff's declaration.

Under Local Rule 30(H), noticing a deposition within 11 days is reasonable. The (second) notice here afforded 36 days' advance notice and was served in exact accordance with Plaintiff counsel's demands as to the method of service. Plaintiff identifies no specific reason why such notice is insufficient; nor does she identify any scheduling conflict. There is simply no good cause for a protective order on the basis of the scheduling of the deposition.
Under the court's scheduling order, Defendant has an absolute right to depose her promptly. Given the breadth of her allegations of a global conspiracy led by Defendant, and the short time allotted for discovery, finding out what facts support her implausible claims makes a deposition a priority. Her election to file a summary judgment motion, supported exclusively by her own

16

declaration, reaffirms the urgent need to depose Lokhova now, before the Court is faced with the prospect of ruling on a summary judgment motion without *any* relevant discovery, whether by Plaintiff's deposition or by delaying the deadlines on her discovery responses. *See* Fed. R. Civ. P. 56(d). "A Rule 56(d) motion must be granted 'where the moving party has not had the opportunity to discover information that is essential to his opposition.'" *McRay v. Md. Dep't of Transportation*, 741 F.3d 480, 483-84 (4th Cir. 2014). Rule 56(d) motions are "broadly favored and should be liberally granted in order to protect nonmoving parties from premature summary judgment motions." *Id*. at 484 (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. May & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)).

The remaining arguments offered to quash the deposition are makeweight. Plaintiff's claim that she is "a UK citizen living in the UK," which remains to be verified, is immaterial. She brought this suit and its predecessor in this forum, demanding an aggregate of $30 million in damages from Defendant. Having availed herself of this forum, she is simply not free to treat her obligations as a litigant like attending a breakfast buffet, picking and choosing those aspects of her litigation obligations that she wishes to select.

Plaintiff's desire to attend the deposition of Defendant does not justify a second failure to appear for her noticed deposition.

The alleged "early stage of discovery" of this case (Motion, at 5) is immaterial. In our view, Plaintiff's claims of a conspiracy involving the FBI-CIA-Defense Department, Cambridge Professors, and Defendant's numerous alleged "media stooges" in Britain and the United States to topple the Trump Administration are, to put it mildly, audacious, and they have previously been found to be implausible by this Court and the Fourth Circuit. *Lokhova I*, Amended Complaint (D.E. 52), ¶¶ 3, 21.

In light of the Court's decision to permit this case to move forward into discovery, albeit in a compressed period, the burden falls to Defendant to begin the task of assembling evidence to disprove this implausible conspiracy theory. And, given the short period of time set for discovery, the burden Defendant faces is substantial. It is entirely reasonable to assume Plaintiff's testimony will provide valuable leads for further discovery of this vast alleged trail of evidence about an international conspiracy. Indeed, this Court dismissed Plaintiff's first manifestation of this alleged conspiracy substantially for lack of plausible corroborating factual details, despite an Amended Complaint spanning 73 pages. *Lokhova I*, D.E. 52.

Having persisted in, and repeated, these far-flung conspiracy claims in this case, after they were rejected in *Lokhova I*, Plaintiff is in a unique position to supply evidence where this alleged conspiracy can be corroborated. There is nothing unfair or unreasonable about asking her to testify in deposition about what facts—if there are any—support her claims. Nor is there anything unreasonable about learning these facts at the earliest possible time in an abbreviated discovery schedule.

Plaintiff argues that "Plaintiff's counsel has given the Defense absolutely no indication that Plaintiff will decline to participate in appropriate discovery in this matter." Motion, at 6. To the contrary, prior defense counsel has confirmed that Plaintiff was not in communication with him, and he lacked access to the core financial and contractual documents upon which the case is allegedly based. When current Plaintiff counsel was asked on August 8th to confirm that this would not be the case with new counsel, no response has been given by successor plaintiff counsel.

## Conclusion

For the foregoing reasons, the motion for a protective order should be denied.

18

Respectfully submitted,

By: ____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone) : 703-299-5000
(Facsimile) : 703-299-8876
tgreed@lrfirm.net
rkmoir@lrfirm.net

Robert D. Luskin (*pro hac vice*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com

*Counsel for Defendant*
*Stefan A. Halper*