UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| SVETLANA LOKHOVA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No: 1:20−cv−01603−LMB−WEF |
| v. ) | |
| ) | |
| STEFAN A. HALPER, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MOTION TO DISQUALIFY
## TERRANCE G. REED AND ROBERT D. LUSKIN
## AS DEFENDANT'S TRIAL COUNSEL

COMES NOW, the Plaintiff, by and through undersigned counsel, and moves to disqualify Terrance G. Reed and Robert D. Luskin as Defendant's counsel under Virginia Rule of Professional Conduct 3.7(a) because they both will be necessary witnesses in this case.[1]

## BACKGROUND

Plaintiff Lokhova asserts claims against defendant Halper for defamation and tortious interference with contract. The Fourth Circuit has summarized the gist of these claims as follows:

> The complaint's core allegations stated that in March 2020, when [defendant] Halper learned of [plaintiff Lokhova's] book, he directed

---

[1] Undersigned counsel inquired by email on Monday, August 22, 2022 as to whether Messrs. Reed and Luskin would voluntarily agreed to step down as trial counsel in this matter in light of their obvious positions as fact witnesses to Plaintiff's claims, and was advised by Mr. Reed by email of Tuesday, August 23, 2022 that he and Mr. Luskin would not agree to withdraw as trial counsel at this time.

his counsel, Terry Reed, to contact Post Hill Press and Simon & Schuster solely for the purposes of "quash[ing] publication and cancel[ling] the Book Contract." It alleged that Reed then "contacted [Simon & Schuster] and [Post Hill Press] and falsely accused [them] of defaming Halper in the marketing materials." The complaint stated that "Halper requested that [the publishers] issue a public, written retraction of the defamation." Furthermore, it alleged that through the letters, Halper also "defamed and disparaged" Lokhova to the publishers, falsely accusing her of "knowingly publishing" statements that were "false" and "inciteful" and that generated "hatred and threats" against Halper and his family. The complaint also alleged that "Halper escalated the threats and intimidation to [Simon & Schuster's] parent company, CBS Corporation." The complaint concluded that Halper's accusations were untrue and that "[t]he sole purpose of Halper's actions was to interfere with [Lokhova's] Book Contract and induce [Post Hill Press] to terminate the Contract," which it ultimately did after facing irresistible pressure from Simon & Schuster.

*Lokhova v. Halper*, 30 F.4th 349, 355 (4th Cir. 2022).

### A. Mr. Reed's Involvement In The Claims At Issue

The centerpiece of this case is the two letters that Mr. Reed wrote on Halper's behalf to Post Hill Press (PHP) and Simon & Schuster (S&S).[2] The Amended Complaint, (Dkt. #52), alleges that:

> 79. The defamatory statements at issue in this action are contained in these two letters, dated March 13, 2020 and April 3, 2020, which are incorporated by reference and attached hereto.
>
> 80. On March 13, 2020, Halper's attorney, Terry Reed ("Reed"), wrote a letter to S&S that falsely accused it of defaming Halper in the marketing materials for the Book.
>
> 81. On behalf of Halper, Reed requested that S&S cease and desist publishing the marketing materials and issue a public, written retraction.
>
> 82. Further, as Halper's agent, Reed defamed and disparaged Plaintiff to S&S by falsely accusing Plaintiff of knowingly publishing "false statements" about Halper.
>
> \* \* \*

---

[2] The two letters written by Mr. Reed are appended as Exhibit 1.

94. The false and improper assertions in the letter are cloaked in language that lawyers legitimately use to try to resolve defamation claims out of court while preparing for litigation if necessary. Thus, the letter demands that S&S place a "litigation hold" on documents related to the book and to certain persons who had expressed an interest in the false accusations about Plaintiff, including Member of Congress Devin Nunes and certain writers.

95. On April 2, 2020, Mr. Reed wrote a comparable letter to PHP, with a copy to S&S, making the same allegations and demanding that PHP put in place the same "litigation hold."

\* \* \*

97. Halper's purpose in having Reed write the two letters was to interfere with Plaintiff's Book Contract and induce PHP to terminate the Contract, thereby halting publication of the book and its widespread marketing because it was going to cast him and his conduct in an unfavorable light, not because it was defamatory.

\* \* \*

99. At the time Halper (through Reed) misrepresented to S&S and PHP that they had defamed him in the marketing materials, he had no intention of engaging in any litigation.

100. Halper knew that truth was a defense to his defamation allegations and that, by filing suit, he would expose himself to full discovery into his conduct.

101. Rather than actually pursuing a genuine legal claim, Halper's goal was to intimidate and coerce S&S not to distribute the book and PHP to terminate the Book Contract in order to prevent unfavorable information from being published about him by reputable, significant publishing houses.

B.   **Mr. Luskin's Involvement In The Claims At Issue**

Mr. Luskin also authored a communication that is at issue in this action. He and Mr. Reed have jointly represented Defendant Halper at least since August 2019, when both of them entered appearances on Mr. Halper's behalf with respect

to the previous defamation action that Ms. Lokhova filed against Halper in this Court. *Lokhova v. Halper*, Civil Action No. 1:19-cv-632.

The Amended Complaint alleges that:

> 127. Halper utilizes agents and surrogates, including his lawyers and his family members, to carry out his campaign of intimidation through the use or threatened use of legal process.
>
> 128. Plaintiff is aware of at least two other instances in which Halper has used these methods to try to intimidate smaller media outlets into not publishing stories about him, regardless of their accuracy, and to retaliate against them in order to discourage them from doing so again.

One of the "two other instances" referenced in paragraph 128 is an email written by Mr. Luskin.[3]

In November 2019, Margot Cleveland, who is a senior legal correspondent for The Federalist, was preparing an article about Halper and Ms. Lokhova. On November 22, 2019, she sent an email to Messrs. Luskin and Reed that stated:

> I am preparing a story for Monday that reports that your client, Stefan Halper, asked Cambridge Professor Bill Foster, to spy on Svetlana Lokhova. I would like to offer your client an opportunity to explain why had had [sic] asked Foster to do so. Also, what information, if any, did Halper, relay to the IC which originated with Foster? Did Halper pay Foster or arrange for Foster to obtain a contract to write a CIA book in exchange for this week [sic]?

---

[3]The third instance of improper means via intimidation, lies, and baseless threats of unfounded litigation referenced in paragraph 128 also involves Mr. Reed. That incident involves another set of letters threatening defamation litigation that was never actually filed and also the bringing of retaliatory criminal trespass charges against a journalist who wrote about Halper.

Several hours later, Mr. Luskin responded to Ms. Cleveland that: "The story you are preparing to run is false and defamatory. Publish at your peril. Professor Halper is prepared to hold you and your publication accountable if you proceed." (A copy of this email exchange is attached as Exhibit 2).

However, the allegation in Ms. Cleveland's email that Halper asked Professor Foster to spy on Ms. Lokhova was <u>not</u> false. Nor, in any event, was it defamatory. The word "spy" -- when used as a verb as it was here -- means "to watch secretly usually for hostile purposes."[4] It does not carry the requisite "sting" to be defamatory. *See Kebaish v. Inova Health Care Servs.*, 85 Va. Cir. 92, 95 (Fairfax 2012) (statement that defendant doctor "made racial comments concerning Dr. Kebaish's accent and they ridiculed Dr. Kebaish behind his back" not defamatory); *Hutchins v. Institutional Commc'ns Co.*, 19 Va. Cir. 264, 265 (Fairfax 1990) (statement that plaintiff worker had been terminated "for cause" not defamatory).

Moreover, the letters written by Mr. Reed on Defendant Halper's behalf only a few months later indicate that Halper considered it a "public service" to the nation to be suspicious of Ms. Lokhova and to "participate[ ] on behalf of the FBI in counter-intelligence operations" against her. *See* Exhibit 1. Mr. Halper certainly could not therefore have considered it to be defamatory to have a story published about him spying on Ms. Lokhova or asking others to do so on his behalf. Thus,

---

[4] *See* "Spy," Merriam-Webster, https://www.merriam-webster.com/dictionary/spy (last visited Aug. 23, 2022).

5

Mr. Luskin's email rather is another example of Defendant Halper making baseless threats that he will sue for "defamation" in order to try to kill the publication of a story about him - regardless of its truth. This conduct is the gravamen of the "improper means" that Plaintiff alleges Defendant Halper used to tortiously interfere with her book contract in Count II of the Amended Complaint.

Discovery in this case may well uncover other instances in which Messrs. Reed or Luskin has threatened unfounded litigation against persons whom Halper does not wish to author books, stories, or articles about him. Plaintiff is entitled to take discovery on that issue and Messrs. Reed and Luskin, in addition to Defendant Halper, are the persons in possession of that information. "Where an attorney is a fact witness, … his or her deposition may be both necessary and appropriate." *Buyer's Direct, Inc. v. Belk, Inc.*, 2012 WL 3278928, at *2 (E.D.N.C. 2012) (internal quotation marks and citations omitted).

## ARGUMENT

Virginia Rule of Professional Conduct 3.7(a), often referred to as the witness-advocate rule, states: "A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness." Va. R. Prof. Conduct 3.7(a). The Rule "is mandatory and may not be waived." *Premium Prods., Inc. v. Pro Performance Sports,* LLC, 997 F. Supp. 2d 433, 436 (E.D. Va. 2014).

This is a "prophylactic rule designed to protect the interests of the client, the adverse party, and the institutional integrity of the legal system as a whole." *Estate of Andrews by Andrews v. United States*, 804 F. Supp. 820, 823 (E.D. Va.

1992). "These interests become imperiled when an advocate testifies because a lawyer's role of arguing causes and a witness's role of reciting facts are fundamentally inconsistent." *Premium Prods.*, 997 F. Supp. 2d at 436. "Jury confusion is likely to result, and in its confusion, the jury is likely to accord the witness-advocate either undue weight or undue discredit." *Id.* "Ultimately, a testifying advocate threatens the interests of the judicial system as a whole because of the 'public perception that a testifying advocate has distorted the truth on the stand in order to advance his or her client's cause and prevail in the litigation.'" *Id.* (quoting *Andrews*, 804 F. Supp. at 824).

Pursuant to Rule 3.7, the Court must determine whether the attorney is a necessary witness. "[A] court is 'not to weigh the circumstances with hair-splitting nicety but, in proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety, it is to resolve all doubts in favor of disqualification.'" *Premium Prods.*, 997 F. Supp. 2d at 438 (quoting *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977)).

In this case, it is patent that Mr. Reed is a necessary witness because he is the author of the two key letters at issue in this litigation. He will need to be deposed and if the case proceeds to trial, he will be called to testify as a necessary witness. Given that Mr. Reed is a key witness, he cannot also serve as trial counsel to defendant Halper.

Likewise, Mr. Luskin is also a necessary witness. Months before Mr. Reed wrote the letters to Ms. Lokhova's publisher and distributor, Mr. Luskin wrote an

email to another author who was preparing to publish an article about Halper and Ms. Lokhova threatening a defamation action against that author if she published. Halper's use of baseless threats of defamation actions are the specific "improper means" that Ms. Lokhova alleges as tortious in Count II of her Amended Complaint. Accordingly, Mr. Luskin also will need to be deposed and is likely to testify as a witness at trial. This precludes him also from acting as trial counsel to Halper.

In similar circumstances, courts have disqualified attorneys who have authored communications that may be relevant to the litigation even when they are less central than the communications at issue here. For example, in *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714 (S.D. Tex. 1999), a doctor/limited partner brought an action against the general partner for breach of contract and fraud, alleging that the defendant had launched a campaign to find fault with his work and create a pretext for firing him and avoiding its contractual obligation to him. An attorney for the defendant had prepared several letters to the doctor outlining the accusations against him, based on information provided by the defendant. The court disqualified this attorney, ruling that he had "'involved himself in the facts of this case' such that he may ultimately become a necessary witness which would place him in the awkward position of acting as both an advocate and witness before the jury." *Id.* at 717.

Likewise, in *Healthcrest, Inc. v. American Medical Intern., Inc.*, 605 F. Supp. 1507, 1511 (N.D. Ga. 1985), the court disqualified "the attorneys who drafted the documents that triggered this litigation."

8

In *Dorchester Financial Holdings Corp. v. Banco BRJ, S.A.*, 2014 WL 3579809 (S.D.N.Y. July 18, 2014), the court disqualified an attorney who had served as plaintiff's counsel with respect to the transaction at issue in the litigation because he would likely be called as a fact witness.  The court noted that "the test is whether [the attorney] is likely to be a witness on a significant issue of fact, regardless of which party intends to call him as a witness." *Id.* at *6.  "An attorney who is likely to be a witness on a significant issue of fact cannot perform, simultaneously, an advocate's role at a proceeding because performing those two roles witness and advocate creates a conflict." *Id.*

And, in *Quality Plus Services*, another member of this Court disqualified one of plaintiff's counsel because, prior to the litigation, she had served as the primary point of contact between plaintiff and the defendant insurance company on the issues central to the coverage dispute.  The court concluded that the attorney had information relevant to a disputed issue that went to the heart of the dispute and so could not serve as trial counsel.  2020 WL 239598, at *18.

These decisions and the facts in this case make it plain that Messrs. Reed and Luskin simply cannot serve as trial counsel in this case.  They are necessary witnesses and Plaintiff is entitled to conduct discovery from them.  Messrs. Reed and Luskin can, of course, continue to represent Mr. Halper otherwise, including by assisting in this case as non-trial counsel.  "If an attorney is disqualified, he or she may assist in the preparation of the case or assist at trial in a non-advocacy role." *Quality Plus Services, Inc. v. National U. Fire Ins. Co. of Pittsburgh*, 2020 WL

9

239598, at *18 (E.D. Va. Jan 15, 2020).

WHEREFORE, it is respectfully submitted that this motion should be granted and that Terrance G. Reed and Robert D. Luskin be disqualified from serving as trial counsel for Defendant Halper in this matter.

Dated: August 23, 2022                Respectfully submitted,


_____/s/_____
Leslie McAdoo Gordon (VA Bar #41692)
McAdoo Gordon & Associates, P.C.
1629 K Street, N.W.
Suite 300
Washington, DC  20006
(202) 704-7388
leslie.mcadoo@mcadoolaw.com

10

## CERTIFICATE OF SERVICE

   I hereby certify that, on August 23, 2022, I electronically filed the foregoing Plaintiff's Motion to Disqualify Terrance G. Reed and Robert D. Luskin as Defendant's Trial Counsel, using the CM/ECF system, which will send a notification of such filing (NEF) to all properly designated parties and counsel.

                 _____/s/_____
                  Leslie McAdoo Gordon