# EXHIBIT A

```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3    ---------------------------x
      SVETLANA LOKHOVA,          :    Civil Action No.:
 4                               :    1:20-cv-1603
                 Plaintiff,      :
 5        versus                 :    Friday, July 15, 2022
                                 :
 6    STEFAN A. HALPER,          :
                                 :
 7               Defendant.      :
      ---------------------------x
 8
              The above-entitled motion to dismiss was heard
 9    before the Honorable Leonie M. Brinkema, United States
      District Judge.  This proceeding commenced at 10:40 a.m.
10
                      A P P E A R A N C E S:
11
      FOR THE PLAINTIFF:     LESLIE MCADOO GORDON, ESQUIRE
12                           MCADOO GORDON & ASSOCIATES, PC
                             1140 19th Street, NW
13                           Suite 602
                             Washington, D.C.  20036
14                           (202) 293-0534

15    FOR THE DEFENDANT:     TERRANCE REED, ESQUIRE
                             LANKFORD & REED PLLC
16                           120 N Saint Asaph Street
                             Alexandria, Virginia  22314
17                           (703) 299-5000

18    COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                             Official Court Reporter
19                           United States District Court
                             401 Courthouse Square
20                           Alexandria, Virginia  22314
                             (571) 298-1649
21                           S.AustinReporting@gmail.com

22         COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

23

24

25
                                                                   1
```

```
 1                    P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Civil Action 20-1603,
 3   Svetlana Lokhova versus Stefan A. Halper.
 4            Would counsel please note their appearances for
 5   the record.
 6            MS. MCADOO GORDON:  Good morning, Your Honor.
 7   Leslie McAdoo Gordon on behalf of Ms. Lokhova.
 8            THE COURT:  Good morning, Ms. Gordon.
 9            MR. REED:  Good morning, Your Honor.
10   Terrance Reed on behalf of the defendant, Stefan Halper.
11            THE COURT:  All right.  This matter is before the
12   Court on the defendant's motion to dismiss.
13            And, you know, Mr. Reed, I recognize we gave you
14   the opportunity to withdraw your motion to dismiss in light
15   of the filing of the amended complaint, and you chose to
16   proceed, as I recall, with the existent motion to dismiss.
17            But I must tell you that I think the amended
18   complaint was a much stronger complaint than the original
19   one.  There's new counsel on the case, the case is now being
20   formulated in a more professional manner, and I think that
21   has made a difference in how the Court is approaching this
22   litigation.
23            In particular, you know, the revelation that there
24   are now a fair number of documentations that do, in fact,
25   link your client to being this source, and more specific
```

                                                                2

1   information that the description about the meeting in
2   England with Mr. Flynn, that this witness that Mr. Halper
3   was, in fact, not present and therefore may have made clear
4   misstatements to the FBI at the pleading stage would seem to
5   be enough to suggest that there may, in fact, be some
6   falsehoods going on here on your client's behalf.
7            MR. REED:  May I respond?
8            THE COURT:  Go ahead.  Yeah.
9            MR. REED:  With all due respect, we agree with the
10  Court that the amended complaint is less --
11           THE COURT:  Incendiary?
12           MR. REED:  -- incendiary than the original
13  complaint, but it has all the same errors in it.
14           With respect to -- specifically our motion asks
15  this Court to dismiss on 12 different grounds.  The --
16           THE COURT:  That's, by the way, already a sign of
17  a weak motion.
18           Good lawyers -- good lawyering, in my view, hits
19  the main points.  Many of the arguments you make, like
20  Noerr-Pennington, absolutely not under this case.  This is
21  not a Government issue.  I mean, no.  I think you weaken a
22  client's position when you throw that many issues.  That
23  suggests you don't have a good strong one.
24           MR. REED:  Well, Your Honor --
25           THE COURT:  I'm not going to hear argument on 12;

3

1  all right?
2            MR. REED:  I wasn't proposing to argue 12.
3            THE COURT:  Okay.
4            MR. REED:  I was proposing to argue three.  And
5  they are, on the defamation claim, we have raised the issue
6  of falsity, or, more precisely, lack of falsity, also known
7  as substantial truth.  And, here, the evidence is
8  unrebutted, quite frankly, that the allegation of the
9  plaintiff, which is that there was this Russian hoax whereby
10 she was somehow ensnared in this Russian hoax and used by
11 Mr. Halper and others, including the FBI, to create a false
12 impression and a justification for toppling President Trump
13 through smearing General Flynn.
14           That was the same issue that was raised in the
15 initial case, in *Lokhova I*.  We raised, in response to that,
16 the fact that the three successive presidents have issued
17 national emergencies reinforcing each other that there was,
18 in fact, interference by Russia with the 26 [sic] election.
19 Congress has intervened.  They enacted CAATSA, the
20 Countering America's Adversaries Act, where they also
21 codified the national emergency --
22           THE COURT:  But this case -- wait.
23           If this does go forward, it's not going to go
24 forward on the Russian hoax.  It's a much narrower approach.
25 And that is simply you have a woman who claims that she was

4

1   improperly alleged to have been a Russian spy, and that part
2   of her job was to compromise Flynn.  That's it.
3           MR. REED:  Yes.
4           THE COURT:  The context as to what it has to do
5   with Trump, what it has to do with the Russia hoax is way
6   beyond the scope of this case.
7           Then -- to some degree, that's *Lokhova I*.  The
8   problem is, this is not *Lokhova I*; this is *Lokhova II*.  And,
9   in this case, what the plaintiff is claiming is that the
10  letters that were sent to the two publishers included
11  statements that she was a liar when she says that she never
12  had this inappropriate relationship with Flynn, and that
13  your client improperly made that up in order to damage
14  Flynn.  As I understand it, that's the essence of this new
15  case.  And the problem is, as I looked at -- I'm not sure if
16  I brought them with me or not, but the letters that you
17  sent, although they -- yes, I do have them.
18          You do have -- if you had maybe written the
19  letters differently, you might not be here.  But you mention
20  her name multiple times in the letters to the publishers.
21  You don't just say to the publishers, you're about to
22  publish a book, and the book has these statements about my
23  client, and these statements are false.  I think if that's
24  how those statements were written, I'm not at all sure the
25  plaintiff could survive.  But the problem is, you keep

5

1  saying "Ms. Lokhova's book."  And then a couple of times you
2  say that Lokhova -- "the false statements" -- I'm looking at
3  page 3 of the letter to Simon & Schuster.
4          But on page 3 you say:  "The false statements of
5  Ms. Lokhova have been used to foment hatred and threats
6  against the professor and his family, including death
7  threats."  And then it goes on to say:  "Simon & Schuster's
8  distribution, publication and republication of such
9  inciteful false statements by Ms. Lokhova pose a direct
10 threat to the safety."
11         So, I mean, at least in those two sentences,
12 you're saying that she's making false statements.  And
13 you're also --
14         MR. REED:  She's making --
15         THE COURT:  Yeah.
16         MR. REED:  -- false statements about Mr. Halper.
17         THE COURT:  Right.
18         MR. REED:  The focus of those comments and the
19 dispute is the marketing material that was being published
20 by those recipients which falsely accused Mr. Halper of
21 being the fabricator of the Russian hoax, of being the -- a
22 Government contract defrauder, of leaking classified
23 information.  Those are crimes.  And Mr. Halper has a right
24 to defend himself against false allegations like that.  And
25 so those -- those are, indeed, false allegations.  So I'm

6

```
 1   not sure I understand how those can turn into a denial of --
 2             THE COURT:  Well, it's one thing to deny an
 3   allegation; it's another thing to call somebody a liar.
 4             MR. REED:  Well, actually, in the privilege of
 5   self-defense, you are entitled to call someone a liar who
 6   accuses you of something.
 7             THE COURT:  That is true.
 8             MR. REED:  Okay.
 9             THE COURT:  But part of a privilege defense does
10   require, in my view, unfortunately, factual development.
11             In other words, we're at the motion to dismiss
12   stage; we're not at the -- summary judgment is a completely
13   different standard.  With summary judgment, the Court then
14   has a factually-developed record.  And it may very well be
15   that when those facts are developed, your use of the
16   privilege may absolutely work.
17             I do think it's an interesting argument that the
18   plaintiff makes, that after Ms. Lokhova went ahead and
19   published this book -- because the book was eventually
20   published, she self-published it.
21             MR. REED:  Self-published, yes.
22             THE COURT:  -- there was no action to have it --
23   no defamation action or libel action filed against her for
24   publishing the book.
25             MR. REED:  But she was being --
```

7

1          THE COURT:  Which is strange.
2          MR. REED:  Mr. Halper was being sued.
3          THE COURT:  Well, there's such a thing as
4    countersuing.  There are counterclaims.
5          MR. REED:  I understand that.
6          THE COURT:  All right.  So I'm just -- all I'm
7    saying is we are at the very early stages of this case.
8          My biggest concern about this case is making sure
9    that it remains focused and that the discovery is not a
10   ridiculously broad discovery.  I'm not going to permit that.
11   But I am going to allow the case to go forward, because I am
12   satisfied, at the pleading stage -- and, as you know, the
13   Fourth Circuit has said at the pleading stage you have to
14   accept the representations that are in the complaint as
15   true.  It doesn't mean that they are true, but you have to
16   accept them.
17         MR. REED:  So accepting the allegations of the
18   amended complaint, as well as the original, that the
19   statements made in the marketing material that is at the
20   core of this dispute, are the opinions of Ms. Lokhova.
21   Mr. Halper's opinion -- because they're opinions, that means
22   they can't be true or they can't be false as a matter of
23   law; correct?
24         So, here, Mr. Halper's opinions about her opinions
25   are still opinions.  And so him saying your opinions are

8

1  false cannot be defamatory because opinions, by definition
2  under the defamation law, are things that cannot be proven
3  true or false largely because they depend on the subjective
4  view of the parties.
5       If I were to say Trump was a bad president, that
6  would be an opinion.  Why?  Because you can't prove it one
7  way or the other.  It's simply a reflection of my subjective
8  belief.  That's why the First Amendment to promote opinions
9  says you cannot bring a defamation action which is
10 predicated on an opinion.  And, here, they've admitted in
11 the amendment complaint, as well as the original complaint,
12 that the statements at issue, the statements that they are
13 suing over, are opinions.
14      And, again, Mr. Halper's opinions about opinions
15 are, by definition, still opinions.  And, therefore, the
16 defamation claim cannot lie based on the language of the
17 complaint.
18      THE COURT:  All right.  Ms. Gordon, do you want to
19 respond to that?
20      MS. MCADOO GORDON:  Thank you, Your Honor.
21      The difficulty here is that the defendant is
22 misconstruing the claims at issue.  As Your Honor has
23 correctly said, this is not *Lokhova I*; this is *Lokhova II*.
24 We are not suing Mr. Halper for the things he said to the
25 FBI.  We are suing Mr. Halper for the things that he said to

9

```
 1   the publishers through Mr. Reed's letter.
 2           Mr. Reed's letter says that Ms. Lokhova's
 3   marketing materials are false.  He, himself, has just
 4   admitted that that claim, his claim that the marketing
 5   materials were false and defamatory, is incorrect.
 6           The simplest way to understand the claim here is I
 7   am saying the claim of defamation in the letters to the
 8   publishers is defamatory, and they knew it was defamatory.
 9   Mr. Reed certainly knows it's defamatory.  He's just told
10   Your Honor that I've admitted that the statements in the
11   marketing materials are opinion.  If he knew they were
12   opinion also, then how can he claim in the letter to the
13   publishers that they're defamatory?  If they're opinions,
14   they're not defamatory.  They may be false, but not
15   defamatory.
16           Most of the statements that Mr. Halper is
17   complaining about through Mr. Reed's letter are also
18   opinions.  They are true, they are not -- they don't bring
19   the person into disrepute.  They haven't even been published
20   yet.  It's clear from the letter, they know that the claim
21   that she's defaming him is false.  Because they're not
22   actually making a defamation claim through those letters;
23   they're actually trying to interfere wrongfully with her
24   contract.
25           Mr. Halper doesn't care whether the statements in
```

10

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

1   the marketing materials or the book are true or not.  He
2   just doesn't want articles and books published about him for
3   his own reasons.  He's entitled to think that, but he's not
4   entitled to falsely claim defamation.
5           If he thought the marketing materials and the book
6   were defamatory, actually defamatory of him, he could have
7   sued her for defamation.  But he's never done so, and he's
8   never going to do so.  Because, as far as I can tell,
9   Mr. Halper, although he threatens a lot of people with
10  defamation, has never sued anyone for any purpose for
11  defamation.  The claim here is that they knew the statements
12  in the marketing materials were not defamatory.  I'll give
13  Your Honor an example.
14          One of the things they object to is calling
15  Mr. Halper a spy.  Now, we can debate whether or not
16  Mr. Halper is or is not a spy, but that might turn out to be
17  a matter of opinion.  If it's a matter of opinion, then how
18  is Mr. Reed telling the publishers that it defames
19  Mr. Halper?  And to call Mr. Halper a spy for our country,
20  for our nation, is certainly not defamatory.  It certainly
21  doesn't bring him into disrepute.  James Bond is the hero of
22  the story; not the villan.
23          If he were accusing Ms. Lokhova of being a Russian
24  spy, which he has, that would be defamatory.  That's why she
25  sued him in the first place.  Unfortunately her prior

11

1   counsel waited too long to bring those suits.  But the claim
2   that a British or an American academic is a Russian spy is
3   defamatory; the claim that a British or an American academic
4   is a counterspy for us, is not.
5          Mr. Reed and Mr. Halper certainly must have known
6   when they sent this letter that the things that they're
7   claiming are defaming him are not defaming him.  He just
8   doesn't want the book published no matter what.  And if he
9   can intimidate people into not publishing, then he'll do it.
10  But if they stand their ground and actually publish, then he
11  doesn't actually follow through on the defamation suit,
12  which is how we know it's a sham, it's false, it's fake.
13  There is no defamation except by Mr. Halper.
14         THE COURT:  All right.  I'm denying the motion to
15  dismiss.  I'm going to direct that an answer be filed within
16  14 days.  We're going to issue a scheduling order.
17         But I'm putting both counsel on notice, because I
18  recognize that -- frankly, the animosity between the
19  parties, that I expect this case to be properly litigated by
20  counsel, that I want the rhetoric kept cool, both in terms
21  of the pleadings, the written pleadings, and oral argument.
22  I don't want to see ad hominems, and I am going to make sure
23  that -- we're going to have to reassign the magistrate judge
24  because Judge Buchanan is about to retire.  So there will be
25  a new magistrate judge appearing on the case.  Don't be

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

1   surprised about that.  That's the reason why that's going to
2   happen.
3            But hopefully you can perhaps even work this
4   matter out.  We're always in favor of parties trying to work
5   things out.  There is a good mediation program here at the
6   courthouse.  Whoever the magistrate judge is who will be
7   reassigned to the case will be the first person you would go
8   to if you want the Court assistance with settlement.  In
9   lieu of that, there are private mediators out there as well.
10           If you don't settle, then we'll start the
11  discovery, it will start very soon, and we will see you in a
12  few months then for further motions.  But that's the Court's
13  ruling.
14           All right.  We'll recess court for the day.
15           (Proceedings adjourned at 10:57 a.m.)
16           -----------------------------------
17  I certify that the foregoing is a true and accurate
18  transcription of my stenographic notes.
19
20                       *Stephanie Austin*
                         _____
21                       Stephanie M. Austin, RPR, CRR
22
23
24
25

13