# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SVETLANA LOKHOVA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No: 1:20–cv–01603–LMB–WEF |
| v. ) | |
| ) | |
| STEFAN A. HALPER, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S DISCOVERY

COMES NOW, the Plaintiff, by and through undersigned counsel, and presents her objections to the discovery requests (Interrogatories and Requests for Production of Documents) propounded by Defendant, pursuant to the order of the Magistrate Judge at the hearing conducted on Wednesday, August 24, 2022.

## STATEMENT OF THE CASE

In this case, which is *Lokhova II*, Plaintiff Lokhova asserts claims against defendant Halper for two counts only: defamation and tortious interference with contract, both concerning the scotching of her book deal in 2020.

Ms. Lokhova is not suing Mr. Halper for defamation for statements he made to the U.S. Government or to the media. There is no conspiracy count in this case and no "sprawling conspiracy" is alleged as the factual basis for the counts alleged.

The Fourth Circuit has summarized the gist of Ms. Lokhova's claims in this case as follows:

> The complaint's core allegations stated that in March 2020, when [defendant] Halper learned of [plaintiff Lokhova's] book, he directed his counsel, Terry Reed, to contact Post Hill Press and Simon & Schuster solely for the purposes of "quash[ing] publication and cancel[ling] the Book Contract." It alleged that Reed then "contacted [Simon & Schuster] and [Post Hill Press] and falsely accused [them] of defaming Halper in the marketing materials." The complaint stated that "Halper requested that [the publishers] issue a public, written retraction of the defamation." Furthermore, it alleged that through the letters, Halper also "defamed and disparaged" Lokhova to the publishers, falsely accusing her of "knowingly publishing" statements that were "false" and "inciteful" and that generated "hatred and threats" against Halper and his family. The complaint also alleged that "Halper escalated the threats and intimidation to [Simon & Schuster's] parent company, CBS Corporation." The complaint concluded that Halper's accusations were untrue and that "[t]he sole purpose of Halper's actions was to interfere with [Lokhova's] Book Contract and induce [Post Hill Press] to terminate the Contract," which it ultimately did after facing irresistible pressure from Simon & Schuster.

*Lokhova v. Halper*, 30 F.4th 349, 355 (4th Cir. 2022).

The centerpiece of Plaintiff's case is thus the two letters that Mr. Reed wrote on Halper's behalf to Post Hill Press (PHP) and Simon & Schuster (S&S), which are appended to the Amended Complaint.

After remand by the Fourth Circuit, the Defendant moved to dismiss the Complaint in this case, which was filed in 2020 by Plaintiff's prior counsel. Rather than opposing the Motion to Dismiss, Plaintiff's new counsel, undersigned, amended the Complaint to clarify it and narrow its focus. Defendant then moved to dismiss the Amended Complaint. Among other things, he argued that the case was barred by the doctrine of *res judicata* based on *Lokhova I*.

2

*Lokhova I* was filed in 2019 and in it, Ms. Lokhova's prior counsel had sued Defendant Halper and a number of media companies for various alleged defamatory statements with first a Complaint and later an Amended Complaint. *Lokhova I* articulated a sprawling theory that involved Defendant Halper, the Crossfire Hurricane Investigation by the Federal Bureau of Investigation (FBI), the various media outlets sued, and claims of interference with the 2016 Presidential election, etc.

One factual issue raised was whether Defendant Halper was the person used by the FBI as a Confidential Human Source (CHS), who had provided information to the FBI that Ms. Lokhova, who in actuality is a British academic, was potentially a suspicious character, with implications that she might be a foreign spy and/or an improper paramour for the former Director of the Defense Intelligence Agency, General Michael Flynn (ret.). Defendant Halper strongly denied being the CHS for the FBI. Ms. Lokhova vehemently denied being a foreign spy or having any improper romantic entanglement with the married DIA Director, and was outraged to be so accused.

The District Court dismissed the *Lokhova I* case based primarily on statute of limitations grounds, but did find that one statement that was not time-barred was also not defamatory. The Fourth Circuit upheld the dismissal of *Lokhova I.*

While *Lokhova I* was pending in the Court of Appeals, Ms. Lokhova's prior counsel filed the Complaint in this case - *Lokhova II.* The Complaint in *Lokhova II,*

while stating distinct claims from those brought in *Lokhova I*, nevertheless contained expansive language that appeared reminiscent of *Lokhova I*.

The Defendant sought dismissal of the *Lokhova II* case as a sanction for filing a frivolous case, which the District Court granted.  The Fourth Circuit reversed that decision, concluding that the Complaint in *Lokhova II* sets forth a different claim, based on facts that had not yet occurred at the time *Lokhova I* was filed, and thus was not a frivolous case.

After *Lokhova II* was remanded back to the District Court, Ms. Lokhova discharged her prior counsel and engaged undersigned counsel, who, as noted, filed an Amended Complaint to clarify and narrow the case to its proper scope.  At the hearing on the Motion to Dismiss,[1] the District Court rejected all of the Defendant's arguments, including the claim of *res judicata*, saying:

> And, here, the evidence is unrebutted, quite frankly, that the allegation of the plaintiff, which is that there was this Russian hoax whereby she was somehow ensnared in this Russian hoax and used by Mr. Halper and others, including the FBI, to create a false impression and a justification for toppling President Trump through smearing General Flynn. That was the same issue that was raised in the initial case, in *Lokhova I*.  We raised, in response to that, the fact that the three successive presidents have issued national emergencies reinforcing each other that there was, in fact, interference by Russia with the 26 [sic] election.  Congress has intervened.  They enacted CAATSA, the Countering America's Adversaries Act, where they also codified the national emergency –

The District Court interrupted the Defendant's argument at that point, saying:

---

[1]Transcript of Hearing on Motion to Dismiss, July 15, 2022, attached as Exhibit A.

But this case -- wait.  If this does go forward, it's not going to go forward on the Russian hoax.  It's a much narrower approach.

. . .

The context as to what it has to do with Trump, what it has to do with the Russia hoax is way beyond the scope of this case.  Then -- to some degree, that's *Lokhova I*.  <u>The problem is, this is not *Lokhova I*; this is *Lokhova II*.</u>

Tr. at p. 4, 5. (Emphasis added.)

Plaintiff's counsel in her turn agreed with the Court, saying:

The difficulty here is that the defendant is misconstruing the claims at issue.  As Your Honor has correctly said, this is not *Lokhova I*; this is *Lokhova II*.  We are not suing Mr. Halper for the things he said to the FBI.  We are suing Mr. Halper for the things that he said to the publishers through Mr. Reed's letter.

Tr. at p. 9-10.

Because of the fraught history and the formerly expansive nature of *Lokhova I* and arguably the original Complaint in this case, after deciding to deny the Motion to Dismiss, the District Court was rightly concerned that this case might devolve into improper discovery tactics.  The Court commented:

All right.  So I'm just -- all I'm saying is we are at the very early stages of this case.  My biggest concern about this case is making sure that it remains focused and that the discovery is not a ridiculously broad discovery.  I'm not going to permit that.

But I'm putting both counsel on notice, because I recognize that -- frankly, the animosity between the parties, that I expect this case to be properly litigated by counsel, that I want the rhetoric kept cool, both in terms of the pleadings, the written pleadings, and oral argument. I don't want to see ad hominems, . . .

Unfortunately, the Defense Counsel keeps arguing that this case is a reprise of *Lokhova I* It is not.  It is Defendant who is trying to resurrect Lokhova I through his counterclaims that Plaintiff seeks to dismiss.

Events leading up to writing of Plaintiff's book are background information that help put into context and make understandable the issues surrounding the writing and the killing of her book and the alleged defamation.  But at this point, that is all those events are – background and context.  That is why the Amended Complaint makes clear in paragraph 8, with the heading between paragraphs 77 and 78 of the Amended Complaint ("<u>Defendant Defames Plaintiff and Interferes with the Book Contract</u>"), and in the paragraphs after that heading that the *claims* in this case are about the scotched book deal and the two letters written by Mr. Reed; the other matters are factual background.

More off the point still, is Defendant Halper's vigorous efforts to seek discovery about whether Ms. Lokhova is  a Russian spy and Mata Hari as he implied to the FBI.  The District Court recognized this at the hearing on the Motion to Dismiss, saying to the Defense Counsel:

> In particular, you know, the revelation that there are now a fair number of documentations that do, in fact, link your client to being this source, and more specific information that the description about the meeting in England with Mr. Flynn, that this witness that Mr. Halper was, in fact, not present and therefore may have made clear misstatements to the FBI at the pleading stage would seem to be enough to suggest that there may, in fact, be some falsehoods going on here on your client's behalf.

Tr. at p. 2-3.

While Mr. Halper may believe it will help his reputation in this regard if he were to somehow be able to "prove" that Ms. Lokhova is what he implied to the FBI, such matters are entirely irrelevant to this lawsuit.  Mr. Halper cannot defend a defamation case by asserting that the person accusing him of defamation is in his opinion somehow a bad person (which Ms. Lokhova is not).  The rules of evidence and logic do not permit that.  The other purpose of those discovery requests is to embarrass and annoy the Plaintiff – an impermissible basis for discovery requests.

In sum, there are three principal types of objections to the discovery requests made by the Defendant:

1. They seek to litigate that case as if it were *Lokhova I* when it is *Lokhova II.*

2. They seek to expand the scope of discovery by reference to Defendant's meritless Counterclaims, and via grossly overbroad requests.

3. They seek to embarrass and harass Ms. Lokhova about issues that are irrelevant to this action.

The specific objections as to each discovery request in this regard, as to both Interrogatories and Requests for Production of Documents are reflected on the Objections as to each, attached respectively as Exhibit B and Exhibit C.

Dated: August 26, 2022                    Respectfully submitted,


                                         _____/s/_____
                                         Leslie McAdoo Gordon (VA Bar #41692)
                                         McAdoo Gordon & Associates, P.C.
                                         1629 K Street, N.W.
                                         Suite 300
                                         Washington, DC  20006
                                         (202) 704-7388
                                         leslie.mcadoo@mcadoolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2022, I electronically filed the foregoing Plaintiff's Objections Defendant's Discovery, using the CM/ECF system, which will send a notification of such filing (NEF) to all properly designated parties and counsel.

_____/s/_____
Leslie McAdoo Gordon