**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Svetlana Lokhova, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1603 (LMB)(WEF) |
| | ) | |
| Stefan A. Halper, | ) | |
| | ) | |
| Defendant | ) | |

**Defendant Halper's General Response to Plaintiff's Discovery Objections**

Defendant Halper submits his response to the Objections filed by Plaintiff to his outstanding document and interrogatory discovery filed on Friday, August 26, 2022 (Docket Entry (D.E.) 80, 80-1, 2 & 3).   For clarity's sake, Defendant will follow that same format. Defendant will provide this general response, followed by Exhibit 1 containing interrogatory objection responses (corresponding to 80-2), and Exhibit 2 containing document request objection responses (corresponding to 80-3).

1

**COUNTERSTATEMENT OF THE CASE**

This is Plaintiff Svetlana Lokhova's second defamation lawsuit against Defendant Stefan

Halper since 2019.   Plaintiff Lokhova lost her first suit, as this Court and the Fourth rejected her

sprawling claims that she was the target of an international conspiracy of federal agencies,

Cambridge University, and eight media companies, run by Professor Halper, to accomplish an

illegal coup of the Trump Administration by maligning General Michael Flynn.  This suit was

filed in the wake of this Court's dismissal of Plaintiff's conspiracy claim.  After the dismissal in

February 2020,[1] Plaintiff persisted with the same complaint allegations, but now in the form of

announcing a future book to be named *The SPIDER*: S*tefan A. Halper and the Dark Web of a*

*Coup.*  Plaintiff's subsequently issued book confirms that Plaintiff chose the title "Spider" to

label Halper as a liar.[2]   The "Book" recycles all of the conspiracy allegations against Halper of

the *Lokhova I* complaints, down to copying her filed complaint language to describe the eight

same allegedly defamatory media articles.  *See* Exhibit 3 (comparing duplicative language of

*Lokhova I* complaint and Book allegations about the same media articles).

**Procedural History**

Plaintiff's new suit against Halper seeking $5 million, was filed in December 2020, while

Plaintiff was unsuccessfully appealing the dismissal of her first lawsuit.   It alleges that Halper

defamed Plaintiff by alerting her potential book publisher of this Court's dismissal of the same

conspiracy claims being repeated in their marketing material, and demanding that they not

---

[1] *See Lokhova v. Halper*, 441 F.Supp.3d 238 (E.D. Va. 2020) (dismissing suit), *aff'd*, 995 F.3d 134 (4th Cir. 2021).

[2] *Spygate,* at 2 n.4 ("I call him the Spider referencing a line from a poem by Sir Walter Scott."); 28 ("a spy, perhaps best described as an evil spider, was at work weaving a dark web in and around [Trump's] presidential campaign"); 33 ("I describe him as 'The Spider' based on the famous quote of Sir Walter Scott who in 1808 wrote in his epic poem "Marmion: A Tale of Flodden Field': "Oh, what a tangled web we weave, when first we practice to deceive!").

defame Halper further.   These potential publishers did not further publish Plaintiff's mischaracterizations.

In August 2021, Defendant propounded discovery upon Plaintiff in an effort to get Plaintiff and her counsel to comply with this Court's financial sanction judgment against them of May 2021.   Plaintiff failed to respond to Defendant's document requests and interrogatories, failed to respond to Defendant's motion to compel compliance (Docket Entry 30), and failed to appear for her noticed deposition in November 2021.   For his part, Plaintiff counsel Biss responded that he had no responsive documents in his possession, and claimed the Plaintiff had exclusive possession of them, but that she was not communicating with him.   A year into this case, there was no evidence available in the United States.

Plaintiff appealed this Court's sanction dismissal to the Fourth Circuit and contended that addressing sanction was premature because Plaintiff did not have any discovery.   In this Court, of course, Plaintiff had objected to sanctions discovery (claiming discovery must await the pretrial conference), and provided no discovery to Defendant while the appeal was pending.

Upon remand from the Fourth Circuit, this Court authorized discovery to begin on July 15, 2022 (in advance of the pretrial conference), and set a November 11th discovery deadline. D.E. 61.   Defendant timely files his Answer and Counterclaims on July 29, 2022 (D.E. 65).   The counterclaims alleged that Plaintiff had defamed Defendant, including in her book marketing materials, by accusing him of having "'fabricated and sustained the fantastical narrative of the Russian hoax" of 2016 election inference, engaging in government contract fraud, leaking classified information to the press, and participating in an illegal coup conspiracy.   D.E. 65, at ¶47.   Each of these defamatory statements would be repeated and embellished in Plaintiff's book which rehearsed the *Lokhova I* conspiracy claims by labeling Halper "delusional," "a liar," "a

3

deceiver," "amoral," "unscrupulous," a "fantasist," a "fraud," and a "spider "weaving his web of deceit." *Id.*, at ¶ 69.  In the book, Halper is the alleged secret manager of the conspiracy headed by former CIA Director Brennan to topple the Trump Administration by smearing Plaintiff and General Flynn.

On July 25th, Defendant emailed a first set of document requests and interrogatories.  On July 29th, new Plaintiff counsel Gordon emailed back refusing to consent to email service of discovery documents.  On August 1st, Defendant re-served the same discovery as Amended Discovery by hand and by email. The next day, Defendant served a second notice for Plaintiff's deposition set for September 6, 2022.  On August 5th, defense counsel sent Plaintiff a draft renewed motion to compel based upon former counsel's denial of possessing any responsive documents about the case because Plaintiff had them, and asked whether that would be new counsel's position.   No answer has been received to date.

On August 19, 2022, Plaintiff filed a motion for a protective order seeking to (i) extend her time to supply overdue written discovery objections to the interrogatories and document requests because she had first looked at them on August 17th; (ii) to continue all of her discovery deadlines by 15 to 30 days; and (iii) to quash her deposition notice.  Plaintiff counsel accused defense counsel of being unprofessional and uncivil in seeking this discovery.  On the same day, Plaintiff filed a summary judgment motion against the counterclaims, relying solely upon a declaration from Plaintiff, claiming that this Court lacked personal jurisdiction over her, and that she had never defamed Halper.

On Wednesday, August 24th, the Magistrate conducted the initial pretrial conference and granted Plaintiff an extension of time until Friday, August 26th to file objections, with Defendant responding on Monday, August 29th, and a hearing on Wednesday afternoon on the 31st.   The

4

intent of this scheduling was to permit the September 6th deposition of Plaintiff to go forward, with Plaintiff providing the approved discovery in advance.  At the hearing, counsel agreed to this expedited discovery schedule.

### The Discovery Appeal

Two days later, on Friday, August 26th, however, Plaintiff filed an appeal (objections) to the Magistrate's Wednesday rulings.  D.E. 78 ("Plaintiff's Objections to Magistrate's Ruling Regarding Discovery Production and Deposition Notice').   The Magistrate's discovery rulings are reversible only if clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A).   In her appeal, Plaintiffs ask the District Court to reverse the Magistrate's discovery rulings, and asks it to stay the Lokhova deposition until completion of her pending summary judgment motion against the counterclaims, and to delay Plaintiff's discovery obligations until September 15th. D.E. 68.  Plaintiff suggested the Magistrate's errors may be because he is "not as thoroughly familiar with the backgrounds of this case as is the District Court."  Id. at 2.  The appeal claims that dismissal of Defendant's "specious" counterclaims should come before she is obligated to comply with the Magistrate's discovery rulings.  This objection is pervasive throughout Plaintiff's individual discovery objections:

> This request improperly seeks to expand the scope of discovery in this case; it relates exclusively to Defendant's Counterclaims, which are specious - they are time-barred, fail to state a claim as a matter of law, and are non-existent claims - and thus are not the subject of proper discovery. Plaintiff has moved to dismiss/for summary judgment on the counterclaims and the District Court is set to hear and decide that Motion on Friday, September 9, 2022.  Defendant has interposed specious Counterclaims purely for the purpose of trying to impose onerous discovery on the Plaintiff.

D.E. 80-3 Plaintiff Objection to Document Request 5.

Plaintiff counsel repeats her accusations that defense counsel's discovery "tactics" are "unprofessional behavior" and abusive, and urges that the Magistrate's tolerating it "was a mistake that should be corrected by this Court."  D.E. 80, at 13.

Plaintiff has not only filed a Rule 72 appeal on Friday, August 26th, she has asked therein for a stay of the discovery permitted by the Magistrate (including the September 6th deposition of Plaintiff), and she unilaterally set her appeal for hearing on Friday September 2nd.   This, of course, displaces Defendant's right to submit an opposition to the stay application within 14 days, and is a transparent effort to use a scheduling device to obtain a stay hearing in advance of the deposition discovery approved by the Magistrate.

For present purposes, however, the fact that Plaintiff is appealing the Magistrate's discovery rulings, and is seeking a stay of them, makes them the current law of the case until reversed.  As a result, Plaintiff's General Objection 5, which contends that Plaintiff will not provide interrogatory responses under the existing deadlines, has already been denied.

**Plaintiff's Discovery Objections**

Plaintiff's objections are largely boilerplate, which are improper and should be ignored. *State Farm Fire & Casualty Co. v. Admiralty Insurance Co.,* 225 F.Supp.3d 474, 485 (D.S.C. 2016) (citing *Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 358–59, 364 (D. Md. 2008)); *Eshelman v. Puma Biotechology, Inc*., 2018 WL 1702773, * (E.D.N.C. April 6, 2018).

Plaintiff also makes a procedural objection to having to produce discovery until after Defendant's "meritless" counterclaims get dismissed.  D.E. 80, at 7.  This is basically the same legal argument made by Plaintiff in her pending appeal which claims that the Magistrate's

6

contrary ruling is an "error" to be corrected by the District Court. D.E. 78, at 14.   By agreement of counsel and the Magistrate, however, Plaintiff's tardy objections will be ruled upon at a hearing on Wednesday, August 31st, and therefore, absent an intervening stay, this objection has already been overruled.

The same can be said with respect to Plaintiff's general objection to providing discovery relating to the *Lokhova I* case.   That objection was raised by Plaintiff counsel at the Wednesday hearing, and is now featured in Plaintiff's appeal to overturn the Magistrate's discovery rulings. D.E. 78, at 9.   Even taken at face value, this objection is meritless.

Initially, the Plaintiff's pervasive objection to discovery about *Lokhova I*,[3] is based upon the false premise that this case is not about *Lokhova I*.   The first page of the Amended Complaint proves this assumption wrong, as it paints the picture of this case with Plaintiff's own brush:

> 1. Plaintiff, a British historian and author with a specialty in the topic of 20th century Russian intelligence, found herself falsely cast in the role of femme fatale in a manufactured 21st century spy scandal at the onset of the U.S. Presidential administration of Donald J. Trump.
>
> 2. In February 2017, a month after the birth of her first child, she was inundated by the media and others over false allegations that had suddenly surfaced that she had supposedly conducted a clandestine romantic affair with General Michael Flynn, an American military and intelligence official whom she had met once at an academic dinner over two years earlier and had never seen or spoken to again.
>
> 3. The media scrutiny, social media scrum, and violent threats against her because of these false allegations, forced her to flee her home, cost her the academic position she held and her PhD, tarnished her reputation, and have prevented her from re-gaining employment in her chosen field.

---

[3]   *See, e.g*. Plaintiff's Interrogatory Objections to Interrogatories (D.E. 80-2) (interrogatories 9, 13, 14) ("Any interrogatory seeking information concerning *Lokhova I* is also completely irrelevant and improperly seeks to expand the discovery in this case.").

4. She spent the next two and a half years piecing together what had happened to her . . . . She learned the false allegations about her and General Flynn were a part of an FBI investigation called Crossfire Hurricane. . . .

6. Central to this story would be naming the person who had made the false allegations about her and General Flynn, describing why he had done so, and scrutinizing his other activities, particularly as they related to the Crossfire Hurricane investigation, which had become an issue of national interest and concern.

. . .

48. Defendant Halper also repeated his false allegations about Plaintiff and General Flynn to various members of the media who, upon information and belief, include, among others, journalists working for the Wall Street Journal, the Guardian, the New York Times, and the Washington Post.

. . . .

98 [P]laintiff was a credible academic and historian who sought to publish an entire book discussing Halper's efforts to smear a Presidential candidate and his National Security Advisor by falsely tying them and Plaintiff, an innocent third-party, to Russia, his clandestine operations in spying on the Presidential campaign, and his questionable contracts with the Pentagon.

D.E. 52, ¶¶ 1-4, 6, 48, 98.

The Amended Complaint is Plaintiff's fourth retelling of the same story. *Compare with* Lokhova I, D.E. 1 & 52 (complaints); *Lokhova II*, D.E. 1 (complaint). King Canute has a better chance of holding back the tides than a court of holding back Lokhova's retelling of her story.

"It is axiomatic that the scope of discovery is guided by the allegations in the Complaint." *Doma Title Ins., Inc. v. Avance Title, LLC*, 2022 WL 2668530, *6 (D. Md. July 11, 2022). Indeed, "'pleadings are the starting point from which relevancy and discovery are determined.'" *Liberato v. Amcor Corr. Health Servs., Inc.,* 2022 2564681, *4 (W.D. Va. May 20, 2020) (quoting *Kidwilder v. Progressive Ins. Co*., 192 F.R.D. 193, 199 (N.D. W. Va. 2000)). This is particularly the case in a defamation action in which Plaintiff has repeatedly made factual claims that she must now prove for the first time.

Discovery "is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir.2003). "The burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *Capital One Bank (USA) N.A. v. Hess Kennedy Chartered, LLC, Capitol One Bank*, 2008 WL 4467160, *2 (E.D Va. Sept. 30, 2008) (overruling objection to discovery about other lawsuits by party); *Clean Earth of Maryland, Inc. v. Total Safety, Inc*., 2011 WL 4832381,*6 (N.D. W. Va. Oct. 12, 2011) (citing *Capital One Bank*, overruling objection to interrogatory asking about other suits by party).

Plaintiff cannot replead the same story from the failed *Lokhova I* case in her Amended Complaint and then demand to be excused from discovery about it.   Indeed, Plaintiff's recent insistence that this case is meaningfully different from *Lokhova I* only makes a comparison of the cases more ripe for discovery.  This is the Plaintiff's second lawsuit alleging that she has been defamed by allegedly being labeled a Russian spy, but she objects to any discovery on the topic. *See* Objections to RFPs 40-42.

In addition, the *Lokhova I* suit was brought by Plaintiff and is relevant to her credibility regarding her accusations about Defendant.  Discovery may be used to discovery impeachment evidence. *Capital One Bank (USA) N.A*., 2008 WL 4467160, at *3 (discovery permissible for impeachment purposes).   While filing this suit alone placed Plaintiff's credibility at issue, she anchors her claims upon her "sterling reputation for credibility:"

> 55. As a UK citizen, a Western academic, a professional historian, researcher, and author, a woman involved in a committed romantic relationship (which later turned into marriage), and a mother, these allegations and their implications damaged Plaintiff's reputation, including her until-then sterling reputation for credibility, trustworthiness, and patriotism, as well as her employability as a legitimate academic.  She has remained unemployable in her chosen field ever since.

9

Amended Complaint, ¶ 55.

Lokhova I is also relevant to the counterclaims, which allege that Plaintiff brought a meritless suit against Halper and then recycled the same untrue defamatory allegations in her marketing materials and book. Lokhova I is also relevant to the defense of res judicata in this case.

Plaintiff's historical, continuing, and broad dissemination to media companies of Halper's alleged defamation of her remains relevant in this case after Lokhova I because it makes Plaintiff the author of her own defamation. Plaintiff's persistent self-publication of defamatory material about herself is a defense to her claim of publication by Defendant. Hickey v. St. Martin's Press, Inc., 978 F. Supp. 230, 237 (D.Md. 1997) ("The general rule is that, if a person claiming to be defamed communicates the allegedly defamatory statements to another, no liability for any resulting damages is incurred by the originator of the statements.").

 In its introduction to its objections (D.E. 80), however, Plaintiff misdirects the Court about what happened in Lokhova 1. Plaintiff admits that Lokhova I "articulated a sprawling theory" involving Halper, the FBI, and various media outlets (labeled therein as the tort of "conspiracy"), but incorrectly contends that in Lokhova I "Defendant Halper strongly denied being the CHS for the FBI." D.E. 80, at 3. The Lokhova I complaint alleged that Halper was a confidential informant for the FBI. Lokhova I, D.E. 1, ¶¶ 12, 146, 150. Under the applicable procedural rules, Halper could not, and did not, challenge this allegation for purposes of seeking dismissal. D.E. 32, at 4 (crediting complaint solely for Rule 12 motion purposes).

Accordingly, Halper never had the opportunity or need to deny any relationship with the FBI, and the court likewise assumed the Complaint's allegation about his alleged informant status, Lokhova I, 441 F.Supp.3d at 247-49 (citing complaint), before dismissing the conspiracy

claim, *id*. at 266 (citing *Twombly*, 550 U.S. at 556), and its Halper-as-source claims.  *Id*. at 259 ("she has not provided sufficient information about his alleged defamatory statements to the various media outlets to satisfy Rule 8").  These same conspiracy contentions reappear in the marketing material and Book which are the focus of the claims and counterclaims in this case.

Plaintiff objects to discovery seeking her communications about Halper with members of the media and media organizations.  Such communications are relevant to Defendant's defense of plaintiff self-publication (i.e., plaintiff publishing her own defamation, *Hickey* 978 F. Supp. at 237), to Defendant's counterclaims, and to Plaintiff's claim of lack of personal jurisdiction over the counterclaims (subject to the pending summary judgment motion).  The listed media organizations include those who Plaintiff has labeled Halper's "media stooges," and those with whom she has interviewed on multiple occasion.  The marketing material at issue in this case touts that her allegations are "As heard on the Don Bongino Show!." D.E. 1, ¶ 2.  For example, Plaintiff appeared on the Jon Batchelor show to repeat her story 28 times over this year and last.[4] The Federalist published an article on Svetlana's first lawsuit in days after it was filed, and has not slackened since, with two articles last week, including one on these objections by Plaintiff to discovery published within minutes of their filing. Plaintiff's appearances before, and communications with, these media organizations have been made relevant by her own lawsuit.

---

[4] In 2022, on August 28, August 7, July 23rd, July 17, July 9, June 5, May 28, May 21, May 15, June 5, June 19, Feb 19, August 28, August 7, July 23rd, July 17, July 9, June 5, May 28, May 21, May 15, June 5, June 19, Feb 19.  In 2021, on March 17, August 8, August 14, August 22, August 29, Sept 5, September 18, October 3, October 9, October 16, November 6, November 20, December 21, December 26.

Plaintiff objects to discovery directed to her communications with Russians, Russian government officials, or Russian intelligence persons.   Plaintiff has made these communications relevant by repeatedly and adamantly denying any such connections in both *Lokhova I* and *II*, and her book.

### Legal Standards

District judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion.[5]   This burden is not met by boilerplate objections.[6]   In particular, burdensomeness objection require specific showings of burden with

---

[5] *See, e.g., Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 424-25 (N.D.W. 2006) ("[C]ourts have long held that the burden is on the objecting party to show why an interrogatory is improper and while the burden is on the moving party to seek court action, the burden of persuasion remains at all times with the objecting party" (internal quotation marks omitted)); *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005) ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules. This includes, of course, where the resisting party asserts that the discovery is irrelevant.");); *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984) ("[T]he burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery."); *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("[T]he burden of showing that the requested discovery is not relevant to the issues in the case is on the party resisting discovery.").

[6] *See, e.g., Barb v. Brown's Buick, Inc.*, 2010 WL 446638, at *1 (E.D. Va. Feb. 2, 2010) ("Defendant's objections to plaintiff's Request for Production of Documents are, again, nothing more than boilerplate and are stricken, except with regard to any legitimate privilege objections for which a privilege log is submitted along with discovery responses."); *Hy-Ko Prods. Co. v. Hillman Group, Inc.*, 2009 WL 3258603, at *2 (E.D.N.C. Oct. 8, 2009) (unpublished) ("In the usual instance, objections to discovery which simply recite stock phrases are not colorable. Generally, the mere cry of burdensomeness or irrelevance without any statement in support of these objections is disfavored by the court." (internal citation omitted)); *Mills v. East Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("Objections to Rule 34 requests must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Cappetta v. GC Servs. Ltd. P'shipP'ship*, 2008 WL 5377934,

proof and general objections should be rejected outright.  *See, e.g., McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP,* 243 F.R.D. 1, 11 (D.D.C. 2007) (Facciola, M.J.) ("I join every other member of the federal judiciary who has considered the question of burdensomeness and refuse to consider an objection of burdensomeness without a specific showing, usually made by affidavit, of why the demand is unreasonably burdensome.").

Whether discovery is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Plaintiff's objections do not address any of these factors.   Here, of course, Plaintiff seeks a judgment of $5 million, an amount which warrants some effort on her part.

Under Fed. R. Civ. P. 34(b)(2)(C), objections to document requests must state whether responsive documents exist.  Plaintiff's Rule 34 responses do not disclose whether any responsive documents are being withheld based upon any objection, although about ten objections reserve the right to produce some responsive documents later.  *See, e.g.,* Objections to Requests 2, 6, 9, 10, 25, 26, 28, 29, 34, 50.   One of the reasons for this objection requirement is

---

at \*3 (E.D. Va. Dec. 24, 2008) ("Just as with relevance objections, merely stating that a discovery request is 'overbroad' or 'unduly burdensome' will not suffice to state a proper objection."); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 364 (D. Md. 2008) ("[B]oilerplate objections that a request for discovery is 'overbroad and unduly burdensome' . . . are improper unless based on particularized facts." (internal citation omitted)); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528 (S.D. W. Va. 2007) ("There is abundant caselaw to the effect that boilerplate objections to Rule 34 document requests are inappropriate."); *Sabol v. Brooks*, 469 F. Supp. 2d 324, 329 (D. Md. 2006) ("[The non-party served with a subpoena containing document requests] did not particularize its objections to these requests, and instead used the boilerplate objections that this Court repeatedly has warned against, thereby waiving its objections.").

to inform the requesting party, and the Court, whether responsive documents exist to justify the efforts of resolving related objections.   That is, indeed, the purpose of the Magistrate's scheduling of a hearing on Wednesday, August 31st, to resolve Plaintiff's objections.  In the absence of compliance with this Rule, Defendant suggests that this Court either assume that Plaintiff is withholding responsive documents or reject Plaintiff's objections for failure to justify their consideration by either Defendant or the Court.

### Defendant's Responses to Plaintiff's General Objections

General Objection 1. Plaintiff objects to the discovery requests, including the definitions and instructions, to the extent they (a) contain requests that exceed the scope and requirements of the applicable federal and local rules and (b) purport to require discovery not provided for by these rules, including but not limited to discovery on subjects not at issue in this case.

For example, Defendant purports to define "'You,' 'Your,' or 'Plaintiff' [to] mean[] Svetlana Lokhova and her agents, including but not limited to her current and prior litigation counsel, Leslie Gordon and Steven Biss, her bankruptcy trustee, her publishing agents, and all other persons or entities acting on behalf of, at the direction of, or for the benefit of Plaintiff."  This absurdly broad definition invades attorney-client privilege, includes persons over whom Plaintiff does not have control and/or who are irrelevant to this dispute.  Its sole purpose is to expand the scope of discovery in this case far beyond what is reasonable and proportionate to the matter and thereby inflict "litigation punishment" on the Plaintiff.  Such tactics constitute abusive discovery.

**RESPONSE:**  This is a boilerplate objection that violates Rule 34(b)(2)(C) and is waived. To the extent that this general objection includes an objection to the definition of "You," Defendant maintains that the definition of her is inappropriate because it defines "You" to be "Svetlana and her agents," and then lists some potential agents, including her current and former litigation counsel, her bankruptcy trustee, and her publishing agents.  This definition is based in part upon the objections of prior counsel, which have not been disavowed by current counsel despite written request, that Ms. Lohova has exclusive possession of all documents to the exclusion of her counsel, and that her counsel lacks authority over her for discovery purposes. *See, e.g.*, D.E. 71-4, at Objection 5 ("5. Mr. Biss objects to the Discovery Requests on the ground and to the extent that the information requested is not in Mr. Biss's possession or control, but is in the possession or control of others, including, without limitation, Ms. Lokhova . . . .").
     In any event, discovery from a party's agents is subject to discovery unless privileged. *Smithfield Business Park LLC v. SLR Int'l Co.*,  2013 WL 5705601, *3 (E.D.N.C. Oct. 18, 2013). "Moreover, there are numerous cases that hold that 'control,' for purposes of document discovery under the Federal Rules of Civil Procedure, may be established by the existence of a

principal-agent relationship.'). <u>St. Jude Medical SC v. Janssen-Counette,</u> 104 F.Supp.3d 1150, 1159 (D. Or. 2015) (quoting *Rosie v. Romney,* 256 F.Supp.2d 115, 119 (D.Mass.2003); citing *Allen v. Woodford,* 2007 WL 309945, at *2 (E.D.Cal.2007) ("Control' may be established by the existence of a principal-agent relationship."), and stating: "This is also entirely consistent with the common law governing the principal-agent relationship. *See* RESTATEMENT (THIRD) OF AGENCY § 8.09(2) (2005) ("An agent has a duty to comply with all lawful instructions received from the principal and persons designated by the principal concerning the agent's actions on behalf of the principal.")).  Application of agency law is not "litigation punishment," as Plaintiff contends.

General Objection 2.  Plaintiff objects to the discovery requests to the extent they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other rule of privilege or confidentiality provided by law.

**RESPONSE**: Defendant does not object to invocations of privilege when appropriate.

General Objection 3.  Plaintiff objects to the discovery requests to the extent they seek information relating to Defendant's counterclaims in advance of the ruling on Plaintiff's pending motion to dismiss those counterclaims, which are specious because they are: time-barred, fail to state a claim, and are not claims as a matter of law.  Defendant has interposed specious Counterclaims purely for the purpose of trying to impose onerous discovery on the Plaintiff.

**RESPONSE**:   Plaintiff made the same argument, unsuccessfully, in support of her protective order motion, and that is the law of this case pending the outcome of her appeal.  One of the reasons for denying the protective order motion was the pending summary judgment motion, as to which Defendant wanted discovery with which to respond.   Moreover, Defendant has invoked, and will file a motion pursuant to Fed. R. Civ. P. 56(d) to defer or deny the summary judgment motion based upon the complete failure of Plaintiff to produce any discovery to date, including failing to appear for her first notice deposition.    Finally, Plaintiff's contentions in support of summary judgment are meritless, including the contention that this Court now lacks personal jurisdiction over her three years after commencing litigation in this forum.

General Objection 4. Plaintiff objects to the discovery requests to the extent they seek any information prior to 2015 as unduly burdensome, onerous, propounded purely to harass and annoy the Plaintiff, and unlikely to lead to the discovery of relevant, admissible information.

**RESPONSE:** Plaintiff objects to discovery for the period prior to 2015.  Only a few of the discovery requests relate to time periods prior to 2015, and they involve the prior Russian bank or Cambridge employment of Plaintiff that she has alleged or denied in her complaint and which is the subject of the counterclaims.  Plaintiff has previously contended that the Wall Street Journal "falsely stated that Lokhova worked for 'Russian state-controlled Sberbank.'" *Lokhova I,* D.E. 1, ¶ 29, 106.   She has pled that "Lokhova has never worked for an entity associated with the Russian State." The counterclaims contest this by pointing out that since 2008 Plaintiff was employed by a Russian bank (Troika) that was acquired by Sberbank, which is owned by the

Russian government.  She filed and settled an employment lawsuit against Sberbank for millions of dollars before declaring personal bankruptcy.

Plaintiff has systematically misrepresented her status as a PhD student at Cambridge since 2004. *Lokhova I*, D.E. 1, ¶ 27. She also alleges that at the 2014 Cambridge University dinner from which her claims originate.  Judge Brinkema identified this contradiction in Plaintiff's dinner story.  *Lokhova I*, 441 F.Supp.3d at 246 n.5 (noting that Plaintiff denied being a graduate student to the media while claiming to be one in her complaint).  In ¶ 21 of her Amended Complaint, plaintiff again alleges that "She was then a graduate student and researcher at Cambridge. . . ." The fact that this was then, and is now, untrue is, accordingly, relevant to her credibility.

*General Objection 5*. As many of the Defendant's discovery requests are objectionable in some form, Plaintiff will not response to Defendant's Interrogatories until her Objections have been ruled on by the Court, and will only do so according to the time schedule ordered by the Court in response to Plaintiff's Motion for Protective Order.


**RESPONSE**: Plaintiff announces that because she deems the discovery "objectionable," she refuses to answer any interrogatory when answers are due on August 31st (even though on August 24th the Magistrate denied her prior protective order motion to extend her discovery response deadlines).  Plaintiff is aware of this because she is now appealing that adverse ruling. Notwithstanding the Magistrate's denial of her protective order motion seeking a delay of her response obligations, Plaintiff "will only do so according to the time schedule ordered by the Court in response to Plaintiff's Motion for a Protective Order."  That Magistrate Order, however, denied Plaintiff's motion for an extension of her discovery deadlines, and hence Plaintiff cannot violate that order.

**Conclusion**

For the foregoing reasons, and those provided in Exhibit 1 & 2, Plaintiff's objections should be overruled.

August 29, 2022,                                              Respectfully submitted,


By: _____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone) : 703-299-5000
(Facsimile) : 703-299-8876
tgreed@lrfirm.net

Robert D. Luskin (*pro hac vice*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com


*Counsel for Defendant*
*Stefan A. Halper*

17

18