IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Svetlana Lokhova, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-1603 (LMB)(WEF) |
| ) | |
| Stefan A. Halper, ) | |
| ) | |
| Defendant ) | |

## Defendant Halper's Opposition to Plaintiff's Motion to Dismiss and For Summary Judgment on Defendant's Counterclaims

Defendant/Counterplaintiff Stefan Halper opposes the motion of Plaintiff Svetlana Lokhova to dismiss or for summary judgment on his counterclaims. Docket Entry (D.E. 70). Plaintiff seeks to dismiss the counterclaims on four grounds: (i) that this Court lacks personal jurisdiction over Plaintiff to adjudicate the counterclaims; (ii) the counterclaims are time-barred; (iii) the defamation and tortious interference claims are invalid; and (iv) the claim for immunity is not a claim.  While none of these arguments have merit, this Court should not address them because Plaintiff refuses to comply with the Magistrate's discovery order, an order this Court affirmed today.

Defendant/Counterplaintiff Halper has previously filed a motion pursuant to Fed. R. Civ. P. 56(d) to defer or dismiss the summary judgment motion until he is provided information through discovery previously ordered by the Magistrate Judge.  That motion contemplated that Plaintiff would comply with the Magistrate's outstanding discovery, which directed that

1

substantial discovery be produced by noon Saturday September 3, 2022. This discovery order was reaffirmed at a four hour hearing on Wednesday, August 31st, at which Plaintiff counsel purported to disavow portions of the Amended Complaint for purposes of avoiding discovery on them. The Magistrate presided over this hearing in part to insure that Defendant have the opportunity to obtain court-ordered discovery in advance of the September 6th deposition of Plaintiff.

On Friday morning, September 2nd, however, Plaintiff counsel informed the Court and defense counsel that she had not been in communication with her client for at least two weeks. She asserted that she did not have authority from her client to comply with the discovery orders, and that her client was unwilling to produce discovery or appear at her deposition. As a result, Plaintiff counsel was ethically required to withdraw from representing Lokhova. None of this was raised in the Wednesday hearing two days before over Plaintiff's discovery objections. In the prior two weeks, however, plaintiff counsel filed a protective order motion to block discovery by defendant (D.E. 68) and the instant motion for summary judgment (D.E. 70). Defendant respectfully objects to proceeding under a motion filed by withdrawing counsel who is not in communication with the Plaintiff.

Lacking a client-approved plaintiff counsel and with no prospect of plaintiff compliance with the existing court discovery orders, there is little point in addressing the motion filed with withdrawing counsel. Defendant respectfully submits that this Court should grant the pending Rule 56(d) motion and defer or deny proceedings on this Motion until discovery has been provided by Plaintiff as ordered by this Court and the Magistrate, or Plaintiff appears through authorized counsel.

## The Counterclaims

Defendant Halper has counterclaimed the Amended Complaint seeking recovery for defamation, tortious interference with contract and business expectancy, and statutory immunity. D.E. 65. In particular, Halper contends that Plaintiff's book marketing material and her book defame Halper by making false and defamatory statements in service of her false allegations that Halper conspired with others in a coup to topple the Trump Administration by fraud, leaking classified information, and other misconduct.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendant Halper filed his Counterclaim sounding in Defamation on July 29, 2022. Answer and Counterclaims, {ECF #65.}
   **Response**: Admitted.

2. The Defamation Counterclaim does not allege the dates of any of the allegedly defamatory statements constituting the claimed defamation, including the date of the publication of Plaintiff's books. *Id.* At ¶¶ 1 to 73, inclusive.
   **Response:** Disputed but immaterial. The counterclaim identified Plaintiff's marketing material and her book as being published after she lost *Lokhova 1*. Counterclaim, ¶ 45.

3. Plaintiff's book was published on her personal website in June 2020 and on Amazon.com for sale to the public on November 23, 2020. Amended Complaint ¶ 81 and footnote 3 {ECF #52}; Lokhova Declaration, attached as Exhibit 1, at ¶¶ 5, 6.
   **Response**: Disputed and immaterial. Defendant invokes Rule 56(d) because he has not been provided court-ordered discovery relevant to this allegation, and it is uniquely within the knowledge and access of Plaintiff.

4. Paragraph 70 of the Answer and Counterclaims alleges that in addition to the book, Plaintiff defamed Defendant by publishing remarks to specified and unspecified persons at Cambridge University, England. Answer and Counterclaims, {ECF #65}, ¶ 70.
   **Response:** Disputed and immaterial. Paragraph 70 continues a running list of defamation published in Plaintiff's Book starting with paragraph 69. The defamation in paragraph 70 is listed in the book, which was published in 2020.

5. Paragraph 70 does not specify when these allegedly defamatory remarks were made. *Id.*

**Response**: Disputed and immaterial. Paragraph 70 alleges that defamatory remarks made in Plaintiff's Book, whether these are initial publications or republications, and therefore they took place in 2020. Defendant invokes Rule 56(d) because he has not been provided court-ordered discovery relevant to this allegation, and it is uniquely within the knowledge and access of Plaintiff.

6. Any statements of the nature described by Defendant in paragraph 70 of his Counterclaims, including to the persons listed or described in that paragraph, were made in the year 2018. Lokhova Declaration, at ¶ 9.
**Response**: Disputed and immaterial. Paragraph 70 alleges that defamatory remarks were made in Plaintiff's Book, whether these are initial publications or republications, and therefore they took place in 2020.

7. Plaintiff Lokhova gave an interview to the London Sunday Times that was published on May 27, 2018 describing some of the interactions referenced or described in paragraph 70 of the Answer and Counterclaims, which had taken place prior to the Sunday Times interview. Lokhova Declaration, at ¶ 10.
**Response**: Disputed and immaterial. Paragraph 70 alleges that defamatory remarks made in Plaintiff's Book, whether these are initial publications or republications, and therefore they took place in 2020. Defendant invokes Rule 56(d) because he has not been provided court-ordered discovery relevant to this allegation, and it is uniquely within the knowledge and access of Plaintiff.

8. Plaintiff has not made any remarks of the kind described in Paragraph 70 of the Answer and Counterclaims or to the person described in paragraph 70 in the one-year period preceding the filing of the Defamation Counterclaim, or indeed for some time before that. Lokhova Declaration, at ¶ 11.
**Response**: Disputed and immaterial. The relative date for the defamation counterclaim is December 31, 2020, with the limitations period tolled for all defamation going back to December 31, 2019. D.E. 52; *Kirkpatrick v. Lenoir County Bd. of Education*, 216 F.3d 380, 388 (4th Cir. 2000). Hence, defamation occurring within the year prior to the filing of the Defamation counterclaim would be timely, including republications. Whether Plaintiff republished "any remarks of the kind described in Paragraph 70," in the year prior to the filing of the counterclaim would be timely. Defendant invokes Rule 56(d) because he has not been provided court-ordered discovery relevant to this allegation, and it is uniquely within the knowledge and access of Plaintiff.

# ARGUMENT

## I.   *This Court Has Personal Jurisdiction Over Plaintiff*

Plaintiff contends that this Court lacks personal jurisdiction over her because "Halper's counterclaim is premised on allegedly defamatory statements that Ms. Lokhova, a British citizen and resident, made to persons in England."  D.E. 70, at 6.  Plaintiff alleges that Virginia's long-arm statute does not extend to "Ms. Lokhova allegedly defaming Halper through communications in England." *Id.* at 7.

To the contrary, under well established precedent, Plaintiff is subject to the personal jurisdiction of this Court by virtue of the consent and waiver doctrines applicable to counterclaims.

### A. By Bringing Two Lawsuits Against Defendant in this Court, Plaintiff has Conferred Personal Jurisdiction Over Her Upon The Counterclaims.

It has long been settled by the Supreme Court that a plaintiff who brings claims in a court submits to the personal jurisdiction of that court. *See, e.g., Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) (having "submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence"); *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 239-40 (1932) (by bringing suit, plaintiff "submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants").

"A court may lack personal jurisdiction over a defendant, but never over a plaintiff, who consents to such jurisdiction by filing suit."  *Viron Int'l v. Boland Corp.*, 237 F.Supp.2d 812, 818 (W.D. Mich. 2002).

Courts recognize personal jurisdiction over a plaintiff for purposes of adjudicating counterclaims regardless of whether the counterclaim is permissive or compulsory. *AbCellera Biologics Inc. v. Berkeley Lights, Inc,* 2021 WL 2719264, *4 (N.D. Cal. July 1, 2021) (citing 6 Wright & Miller, Federal Practice & Procedures: Civil § 1424 & nn.1, 6-7 (3d ed. Apr. 2021) (collecting cases)).

The Fourth Circuit considers defamation counterclaims logically related to original claims to constitute compulsory counterclaims. *Painter v. Harvey*, 863 F.2d 329, 334 (4th Cir. 1988). Because compulsory counterclaims must be brought, "if plaintiff could successfully assert lack of personal jurisdiction as a defense to the counterclaim, defendant, while still required to defend in the original action, would have to forfeit their claims arising from the same transaction." *Grupke v. Lina Lori Sportswear, Inc.*, 174 F.R.D. 15, 18 (E.D.N.Y. 1997).

Personal jurisdiction over counterclaims is justified under principles of consent, waiver, and forfeiture. *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 22-23 (1st Cir. 1991); *Fuld v. PLO*, 2022 WL 62088, *6 (S.D.N.Y. Jan. 6, 2022) (citing consent cases). "If a party consents to appeal in a particular forum, whether explicitly or implicitly, it follows that 'maintenance of the suit' in that forum does 'not offend traditional notions of fair play and substantial justice.'" *Fuld*, at *6 (quoting Ins. Corp. of Ireland v. Companies des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). "Indeed, appearing and seeking affirmative relief from the court 'is the paradigm of a waiver to the court's *in personam* jurisdiction.'" *Grupke*, 174 F.R.D. at 18.

Here, Plaintiff originally brought this suit in this forum claiming that she is a citizen of the United Kingdom, and the conduct at issue is subject to Virginia's long-arm statute, Va. Code § 8.01-328.1(A)(1), (2), & (3). D.E. 1, at ¶¶ 8, 11. She previously brought the related *Lokhova I*

6

case in this forum in May of 2019 by also alleging therein that she is a U.K. citizen and the conduct at issue is subject to Virginia's long-arm statute. *Lokhova I*, D.E. 1 ¶¶ 11, 21 (citing Va. Code § 8.01-328.1(A)(1), (2), & (3)). In the *Lokhova I* lawsuit, a majority of the media organization articles for which she sought $25 million in damages were British publications. *See Lokhova I*, D.E. 1, at ¶¶ 79 (Financial Times); 90 (Sunday Times of London); 114 (Manchester Guardian); 120 (Daily Mail, Daily Telegraph). These same articles are featured again in the Book using the same language falsely alleging that they were the coupcraft of Halper. *See* D.E. 82-3 (comparison of *Lokhova I* media articles with same language in the Book).

In addition, Plaintiff has since perfected two appeals from this Court to the Fourth Circuit, including one in this very case. Bringing multiple suits in the same forum, justifies personal jurisdiction over a plaintiff, *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991), as does using court procedures such as perfecting an appeal. *Corporacion Mexicana De Mantenimiento Integral v. Pemex-Exploration Y Produccion,* 832 F.3d 92, 101 (2d Cir. 2016). Here, Plaintiff has perfected an appeal in this case, as she did in *Lokhova I*.

Plaintiff argues that her British conduct falls outside of this Court's jurisdiction because Virginia "'is not the world's defamation court.'" *Id.* at 7 (quoting *Mirekandari v. Daily Mail & General Trust PLC.*, 2020 WL 88376630 (Fairfax Cir. Ct. July 27, 2020)). But in her *Lokhova I* lawsuit, many of the media organization articles for which she sought $25 million in damages were British publications. *See Lokhova I*, D.E. 1, at ¶¶ 79 (Financial Times); 90 (Sunday Times of London); 114 (Manchester Guardian); 120 (Daily Mail, Daily Telegraph). These same British articles are featured in Plaintiff's "Book" which is the subject of Plaintiff's Complaint, and of Defendant's counterclaims, in this case.

Courts also consider a plaintiff's submission to personal jurisdiction by engaging in conduct during litigation as operating a waiver of personal jurisdiction, and in Virginia this is codified in Va. Code § 8.01-277.1(A) ("a person waives any objection to personal jurisdiction or defective process if he engages in conduct related to adjudicating the merits of the case"). *See, e.g, Bel-Ray Co. v. Chemrite (Pyt) Ltd*, 181 F.3d 435 (3rd Cir. 1999) (seeking judicial relief, including summary judgment, works a waiver), Here, the conduct which supports waiver includes: (i) filing and perfecting an appeal to reinstate this lawsuit; (ii) filing the instant motion for summary judgment on the counterclaims; (iii) submitting an alleged declaration from Plaintiff in support of her summary judgment motion; and (iv) seeking judicial relief from discovery, including discovery delays, the quashing of Plaintiff's deposition, and the appeal of Magistrate rulings to this Court (*see* D.E. 68, 78).

Plaintiff does not make a Due Process challenge to the personal jurisdiction of this Court over her. The Virginia long-arm statute extends jurisdiction to the limits of Due Process. *Singh v. Haas*, 2010 WL 1506973, * (E.D. Va. March 30, 2010) (citing *Young New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)).

## II. The Defamation Claim Is Not Time-Barred

Plaintiff alleges that because her "Book" was published in 2020, a defamation claim based upon it is time-barred under Virginia's one-year limitations period for defamation claims. D.E. 70, at 4 (citing Lokhova Declaration, ¶ 6). For additional authority, Plaintiff cites her own contention in her Amended Complaint that the "statute of limitations for filing such a suit has now passed." D.E. 70, at 5 (quoting D.E. 52, ¶ 124). In further support, Plaintiff submits a declaration stating: "Any statements of the nature described by the

8

Defendant in paragraph 70 of his Counterclaims, including to the persons listed or described in that paragraph, were made in the year 2018." D.E. 70-1, ¶ 9, listed as Undisputed Material Fact 6. D.E. 70, at 3.

Plaintiff's time-bar argument is factually disputed, and legally incorrect. First, Plaintiff admits that her book was initially published in June 2020 and was later published in November 2020. D.E. 70-1, ¶¶ 5 & 6. Paragraphs 67 to 69 of the counterclaim include Plaintiff's defamatory statements about Halper that were made in the 2020 book marketing material and the Book that is the subject of her claims.

In the Fourth Circuit, "a compulsory counterclaims relates back to the time of the filing of the plaintiff's complaint." *Kirkpatrick v. Lenoir County Bd. of Education*, 216 F.3d 380, 388 (4th Cir. 2000) (citing *Burlington Indus. v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir.1982) (holding that "the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim"); *Koppers Performance Chemicals, Inc. v. Travelers Indemnity Co.*, 2021 WL 4060453, *5 (D.S.C. Sept. 3, 2021) (citing and following *Kirkpatrick* and *Burlington*). Here, the complaint was filed on December 31, 2020 (D.E. 1), making a defamation claim based upon a defamatory statement first published, or one republished, in 2020 timely. The Book and marketing material defamation alone make the counterclaim timely.

The Fourth Circuit recognizes that a defamation claim logically related to an original claim is a compulsory claim. *Painter v. Harvey*, 863 F.2d 329, 332 (4th Cir. 1988). Here, the defamation counterclaims are logically related to the Book and its marketing material. Indeed, this Court need look no farther than the Amended Complaint's insistence that Defendant bring a defamation claim in response to the marketing material and Book. *See, e.g.*, D.E. 52, at ¶¶ 122 ("Halper never took any action against Plaintiff for the publication of the Book"); ¶ 123 ("He

never initiated any case for defamation against Plaintiff event though she used the same marketing language . . . .").

### III. The Tortious Interference Claim States a Claim

Plaintiff has challenged the pleading sufficient of Defendant's counterclaim for tortious interference with contract and business expectancy. The contract and business expectancy at issue is the longstanding issuance of research awards by the Department of Defense to Professor Halper starting in 2005. In Plaintiff's marketing material, in her Book, and previously on her website, Plaintiff alleges that these contracts were fraudulent and phony vehicles to divert money from the CIA or the FBI to fund illegal coup operations. In Plaintiff's parlance, Halper's DOD contract funds were a "CIA slush fund" or "Pentagon" slush fund to finance the coup conspiracy to overthrow the Trump Presidency. Exhibit 1 (Lokhova tweets). This would be government contract fraud.

Plaintiff's allegations of contract fraud by Halper were published in her May 2019 Complaint in which she alleged Halper received over a million dollars in Defense Department monies from 2012 to 2018 and, "Over half of the sum paid to Halper for his counterintelligence was for his counterintelligence efforts surrounding the 2016 Presidential campaign." *Lokhova I*, D.E. 1, ¶12. Plaintiff similarly published numerous tweets making the same false claims. Exhibit 2. Likewise, in this case, Plaintiff's Amended Complaint alleges that: "Between 2012 and 2018, Halper's contract was funded through annual awards paid out of the Pentagon's Office of Net Assessment." D.E. 52, ¶14. Thus, Plaintiff has pled that these are annual contracts since at least 2012. Accordingly, Plaintiff is on notice of the specific contract, that it was annual, and that Plaintiff had a legitimate expectancy of continuing these contracts and business expectancies.

10

The Amended Complaint further notes that Halper's "contracts with the Department of Defense's Office of Net Assessments, which have allegedly paid him approximately $1 million, is one of the topics covered in Plaintiff's Book and referenced in S&S's marketing materials." D.E. 52, at ¶ 76.  Plaintiff's 2020 book confirms Plaintiff's knowledge of Halper's longstanding contracts and business expectancy of continuing them with the Defense Department:

- In 2005, "at the request" of the US Secretary of Defense, Halper started his apparently lucrative relationship with the Pentagon. (page 92).

- Halper employed a veritable industry of Cambridge academics on his string of lucrative contracts for the Department of Defense and his books. He had a couple of graduate students full-time doing the heavy lifting on his studies. Several senior academics got used to receiving a regular payday from him. Otherwise he ghosted around the world giving leaden speeches at the taxpayers' expense. (page 91)

-  Nothing in the description particularly fits dirty operative Halper's bag of tricks. . . Halper had a long-term relationship with the Office of Net Assessment and the Department of Defense with known contracts dating back as far as 2005. In just the four years to 2016, Halper, described as a shadowy "academic," was paid more than $1 million for research papers of dubious, if any, value. . . .The money came in 2015 and 2016 from somewhere during the Obama administration. There are reports that it might have come from the CIA. (page 132).

- The Office of Net Assessments cannot explain why Halper's actual travels had apparently nothing to do with studying Russia-China relations but everything to do with Spygate (page 134)
- The Department of Defense Inspectors started asking questions when they suspected corruption. What they have uncovered is potentially something far more sinister than just defrauding the taxpayer. (page 139)
- Potentially there is a much, much bigger issue.  Could it be that with this potential swindle at the taxpayers' expense Halper has demonstrated that he is a fraudster?  Is he untrustworthy, unreliable, and does he fabricate important information? It is important because Halper is also a confidential human source on the front line of the nation's counterintelligence operation tackling a grave crisis. (page 139)
- As the Washington Post reported in June 2018, he used his association with the elite University of Cambridge to provide cover for his espionage activities including his notorious Department of Defense (ONA) "studies," allowing him to claim he paid taxpayers' money to sources based abroad for information. . . . Halper swanned around the world at the taxpayers' expense gathering "gossip" and manufacturing lies for the CIA and FBI. (pages 178-79).

Under Virginia tortious interference law, both defamation and the filing of unfounded litigation fall within the category of improper methods of interference. "Methods of interference considered improper are those means that are illegal or independently tortious, such as . . . . unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, . . . .'" *Compassionate Care Pediatrics LLC v. Children's Medical Center, Ltd.*, 100 Va. Cir. 6, *4 (Henry County Cir. Court 2018) (quoting *Duggin v. Adams*, 234 Va. 221, 226-27 (1987), "in alleging that the defendants made numerous defamatory statements, the plaintiffs have clearly alleged that the defendants utilized improper methods").

### IV. The Immunity Claim Should Not Be Dismissed

Plaintiff challenges whether a claim exists under Virginia's immunity statute, Va. Code § 8.01-223.2. That statute provides that, if a claim subject to the immunity provided is dismissed, the Court may award legal fees. *Id*. ("B. Any person who has a suit against him dismissed or a witness subpoena or subpoena duces tecum quashed pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs.")

Plaintiff does not contest that the immunity is warranted under the statute, and this would be assumed anyway under Rule 12(b)(6). The sole case cited by Plaintiff, *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021), does not address or question whether a claim for fee recovery based upon statutory immunity exists.

There can be little doubt that, if statutory immunity applies, an attorney fee award is statutorily authorized. Under these circumstances, a fee recovery is a valid statutory claim against Plaintiff.

**Conclusion**

For the foregoing reasons, the motion to dismiss and for summary judgment should be denied.

`Respectfully submitted,

By: ____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone) : 703-299-5000
(Facsimile) : 703-299-8876
tgreed@lrfirm.net

Robert D. Luskin (*pro hac vice*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com


*Counsel for Defendant
Stefan A. Halper*