**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Svetlana Lokhova, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1603 (LMB)(WEF) |
| | ) | |
| Stefan A. Halper, | ) | |
| | ) | |
| Defendant | ) | |

**Defendant's Opposition to the Motion to Disqualify Trial Counsel**

Defendant Stefan Halper opposes the motion of Plaintiff to disqualify defense counsel Terrance Reed and Robert Luskin ("Counsel") from participating as trial counsel in this case. Docket Entry ("D.E.") 73 Initially, Defendant respectfully objects to a motion from plaintiff counsel because she claims that she has been terminated by Plaintiff as her counsel and is withdrawing from the case because of this, among other things.  Second, the motion is especially premature in this case because Plaintiff is in open noncompliance with multiple recent Court orders, thereby highlighting the likelihood that a trial will not happen in this case. Specifically, Plaintiff is in contempt of the discovery orders of Magistrate Fitzpatrick and this Court to produce document and interrogatory discovery on September 3rd, and to appear for her deposition by ZOOM in London on September 6, 2022.  D.E. 87, 92.  Third, there is a substantial prospect that summary judgment will prevent any trial.  On the merits, however, the motion should be denied because there is an insufficient showing of a need for trial disqualification.

1

The disqualification motion is based upon the position that defending a client from defamation by issuing attorney demand letters renders counsel a necessary trial witness to any subsequent related, or unrelated, defamation case requiring disqualification from serving as trial counsel for their client.  Here, Mr. Reed was the author of two demand letters addressing internet marketing material (one to distributor Simon and Schuster, and one to alleged publisher Post Hill Press).  It now appears that Plaintiff did not have a contract with any publisher, including Post Hill Press, to publish her manuscript "Spygate Exposed."

Mr. Luskin was the author of a demand letter to Margot Cleveland of the Federalist about her communications concerning Mr. Halper.  There is no allegation that Mr. Luskin's communication with Ms. Cleveland has any relationship to the publication of Plaintiff's book.

**Background**

In this case, Plaintiff's second suit against Stefan Halper, she claims that she was defamed by two attorney demand letters regarding her marketing material for a proposed book, one made to her alleged book publisher Post Hill Press, and another to one of its potential distributors, Simon and Schuster. D.E. 52, ¶ 70.  The demand letters have previously been construed by this Court to be attorney demand letters subject to the absolute privilege adopted by the Virginia Supreme Court the Restatement (Second) of Torts.  See *Mansfield v. Bernabei*, 284 Va. 116, 123 (2012) (adopting the position of the Restatement (Second) of Torts §§ 586 & 587 recognizing absolute privilege applies to "communications preliminary to a proposed judicial proceeding").  That sanction ruling was considered premature by the Fourth Circuit based upon Plaintiff's claims, made initially on appeal, that discovery was needed to address sanctions.  Plaintiff is now in open defiance of this Court's subsequent discovery orders.

According to Plaintiff, "[a]fter Halper contacted S&S and CBS, S&S advised PHP that *unless PHP canceled Plaintiff's Book Contract, S&S would refuse to distribute any of PHP's books.*" D.E. 52. ¶ 109 (emphasis added). "PHP then canceled the Book Contract as a result of Halper's wrongful and defamatory conduct." *Id*. ¶ 110. There is no allegation that Halper asked Simon and Schuster to refuse distribution of any of PHP's books. Moreover, Plaintiff's agreement with Post Hill Press (first disclosed on September 3, 2022), expressly disavows any promise to publish Plaintiff's manuscript, and reserves to itself the unilateral discretion to accept the manuscript or not.

In short, Plaintiff did not have a "Book Contract" with Post Hill Press. Unlike the Amended Complaint, Plaintiff's self-published book confirms this by stating:

> Every time there was an incident, which was blamed on Russia, such as the Brexit referendum result, I became the subject of renewed and unwanted press attention. The tension led to the cancellation of my UK publishing contract as I was considered too controversial and damaging the brand. As for my American publisher, they ran a mile. They would not even acknowledge the receipt of my completed manuscript they had commissioned.

Svetlana Lokhova *Spygate Exposed* 347 (2020).

Thus, rather than have a "Book Contract," Plaintiff could not get her alleged publisher to accept her manuscript. Plaintiff did not have a publishing contract to lose.

It is increasingly clear that Plaintiff self-published her manuscript because she could not convince any publisher to do so. Instead, she has sued Halper, again. A much more likely cause of Plaintiff's publisher's decision is the defamatory quality of Plaintiff's manuscript, to which Halper and his counsel lacked access, even to this day.

Almost all of this, of course, has not been subjected to the rigors of discovery, which Plaintiff has steadfastly refused. Instead, we are now dependent upon Plaintiff's pled characterization of these events about which only she has firsthand experience but as to which she is withholding discovery. Accepting for present purposes Plaintiff's own allegations as to the cause of her publication disappointment, there is no necessity for the testimony of Halper's lawyers about the distribution business relations between Simon & Schuster and Post Hill Press.

Turning to the demand letters themselves, they literally speak for themselves. The testimony of Mr. Reed (their author) is not necessary to their admissibility. Mr. Luskin is not even mentioned in these documents, and his testimony about defamation by others plays no role in Plaintiff's publication woes. Accordingly, their testimony is not necessary to determine the publishing decisions based upon a manuscript that did not exist at the time of the demand letters, and which has been withheld from discovery to this day. Instead, the decision to publish, or not, Plaintiff's manuscript belonged to her publisher, whom Plaintiff has also not sued.

Finally, Plaintiff has willfully refused to comply with successive discovery orders of the Magistrate and this Court. See D.E. 87 (Magistrate Order); D.E. 91 (Court Order). This Court has ordered Plaintiff to produce responsive documents and interrogatory answers by September 3rd. D.E. 87 & 91. She has not complied with these discovery orders. *See* D.E. 96 (notice of non-compliance). The Magistrate spent four-hours at a hearing on August 31st patiently addressing Plaintiff's multiple discovery objections, and ordered Plaintiff to produce specific responsive discovery by September 3rd. But she has not complied. *Id*. This Court then enforced the Magistrate's order for Plaintiff to appear at her noticed deposition on September 6th, and attempted to make it more convenient for Plaintiff by scheduling it to take place at a specific

4

location in London on the 6th.  Plaintiff failed to appear, and her counsel confirmed at the deposition that she had been previously terminated by Plaintiff.

In this Court's September 2nd Order compelling Plaintiff's attendance, this Court admonished again, as it had previously done in open court:

> Plaintiff is advised that failure to appear for the deposition may result in the dismissal of her complaint and being held in default as to defendant's counterclaims.

D.E. 91.

In the face of these warnings, Plaintiff elected not to appear in London for her deposition.

### Plaintiff Has Not Established a Basis for Disqualification of Counsel

Disqualification of chosen counsel is disfavored, and the party seeking to do so "bears a 'high standard of proof,'" *MO v. Fairfax County School Board*, 2022 WL 264456, *2 (E.D. Va. Jan. 27, 2022) (quoting *Tessler v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)).  *Accord*, *John Wiley and Sons, Inc. v. Book Dog Books, LLC*, 126 F.Supp.3d 413, 419 (S.D.N.Y. 2014).  "'[T]he drastic nature of disqualification requires that courts . . . always remain mindful of the . . . possibility of misuse of disqualification motions for strategic reasons.'" MO, at *2 (quoting *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992)). *Accord, John Wiley*, 126 F.Supp.3d at 419.

Plaintiff invokes the advocate-witness rule as the justification for trial disqualification.  That rule is set forth as Rule 3.7 of the Virginia Rules of Professional Conduct, which requires proof that the attorney is a necessary trial witness, and that the express exceptions are inapplicable. *MO,* at *3-4 (quoting rule, noting exceptions when (i) the testimony is on an uncontested issue, or (ii) is about the nature or value of legal services, or (iii) disqualification would not work a substantial hardship on the client.  Substantial hardship is present when, as

5

here, Counsel have been involved in a "case from the start." *GD v. Utica Community Schools*, 2022 WL 2975821, *3n.3 (E.D. Mich. July 27, 2022). The fundamental issue is the balance between a party's choice of counsel and the applicable ethical standards. *MO*, at *2. *Accord, John Wiley,* 126 F.Supp.3d at 419-20.

The advocate-witness rule applies "when an attorney is 'likely to be a necessary witness' *on behalf of their client*." *MO*, at *4 (emphasis in the original) (quoting *United States v. Perry*, 30 F. Supp.3d 514, 537-39 (E.D. Va. 2014)). No such claim is made here—i.e., that Counsel will be a witness on behalf of Defendant.

Here, Defendant does not intend to call its counsel as trial witnesses. Plaintiff has not asserted that it intends to call Counsel as its trial witnesses, and hence the advocate-witness rule is inapplicable at this point.

Moreover, "where only the moving party intends to call the adversary's attorney as a witness, 'the movant must demonstrate both that the lawyer's testimony is 'necessary' and that there exists a 'substantial likelihood that the testimony would be prejudicial to the witness-advocate's client.'" *John Wiley*, 126 F.Supp.3d at 419 (quoting *Acker v. Wilger*, 2013 WL 1285435, at *1 (S.D.N.Y. March 29, 2013) (quoting *Finkel v. Frattarelli Bros., Inc*, 740 F.Supp.2d 368, 373 (E.D.N.Y. 2010) and citing cases).

No such showing has been made or claimed here. Plaintiff has not demonstrated that Counsel's trial testimony is necessary for their case, and she has not remotely alleged or established that such testimony would be prejudicial to Defendant Halper.

Thus, the advocate-witness rule could apply only if Plaintiff claims that it will call Counsel as her trial witness. It has not done so, and indeed has objected to identification of its

trial witnesses at this stage in the proceedings. Accordingly, it is premature to address any trial disqualification motion based upon the advocate-witness rule.

In determining the necessity showing for disqualification:

> "'[a] court should examine factors such as the significance of the matters, weight of the testimony, and availability of other evidence.'" *Finkel*, 740 F.Supp.2d at 373 (quoting *Kubin v. Miller*, 801 F.Supp. 1101, 1113 (S.D.N.Y.1992)) (alteration in original). "For purposes of considering a disqualification motion, the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact require his testimony." *Wachovia Bank, Nat'l Ass'n v. Focus Kyle Grp., LLC*, 896 F.Supp.2d 330, 332 (S.D.N.Y.2012)(citations omitted); *see also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994) ("Disqualification may be required only when it is likely that the testimony to be given by [counsel] is necessary.")(citation and internal quotation marks omitted) (alteration in original); *Fenn & Fenn, Inc. v. MacQueen*, 1989 WL 58041, at *8 (S.D.N.Y. May 19, 1989) ("[N]o disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary.") (citation omitted).

*John Wiley*, 126 F.Supp.3d at 421-22.

Plaintiff's motion does not even identify what trial testimony from Counsel is necessary to their case, much less prove that it would be both admissible and prejudicial to Mr. Halper. Attorney testimony is not necessary if the proposed testimony is available from other sources. *John Wiley*, 126 F. Supp.3d at 422 ("But the availability of other witnesses is essentially fatal to the "necessity" prong of the disqualification inquiry."). "'The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue.'" *Id*. (quoting *Solow v. Conseco, Inc*. 2007 WL 1599151, *4 (S.D.N.Y. June 4, 2007)); *Reyes v. Golden Crust Caribbean Bakery, Inc*., 2016 WL 4708953, *11 (S.D.N.Y. September 1, 2016) ("Where an attorney's testimony would be cumulative or corroborative of that provided by other witnesses, the testimony cannot be said to be necessary, and disqualification is inappropriate.").

Plaintiff has not met her burden of proving "there is an absence of other available evidence, such that it would be necessary to obtain testimony from" Counsel. *Reyes,* at *11. Defendant can testify as to his intent, and the documents are otherwise admissible. Because Plaintiff has not identified any unique or necessary testimony of Counsel that she needs at trial, the Court cannot begin to assess whether other sources are available. Likewise, merely because an attorney has provided pretrial testimony, including deposition testimony, in a case does not make him a necessary trial witness.  *John Wiley*, 126 F.Supp.3d at 422 (citing cases).

Given Plaintiff's discovery defaults, her claims that Simon & Schuster's distribution business is directly responsible for the breach of her "book Contract," and her lack of an actual Book Contract, the relevancy of a demand letter addressed to prior marketing material is remote. Further, even assuming it becomes more likely that the demand letters play an evidentiary role at a trial, the testimony of Mr. Reed is unnecessary.  The letters literally speak for themselves, and Defendant can testify as to his own intent.

Finally, in the unlikely event that it becomes apparent that Counsel will be called by Plaintiff to give testimony adverse to their client, they can be replaced by standby or substitute counsel at trial.

## Conclusion

For the foregoing reasons, the motion for disqualification of Counsel should be denied.

Respectfully submitted,

By: ____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314

8

(Phone) : 703-299-5000
(Facsimile) : 703-299-8876
tgreed@lrfirm.net


Robert D. Luskin (*pro hac vice.
granted April 1, 2021*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com


*Counsel for Defendant
Stefan A. Halper*