**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| SVETLANA LOKHOVA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-1603(LMB)(WEF) |
| | ) | |
| STEFAN A. HALPER | ) | |
| | ) | |
| | ) | |
| Defendant/Counterclaimant | ) | |
| | ) | |

**Defendant/Counterclaimant Halper's Application for Judgment Remedies**

Defendant/Counterclaimant Stefan Halper ("Defendant") applies to this

Court for appropriate remedies based upon; (i) Plaintiff's violations of discovery

orders (Fed. R. Civ. P. 37(d)(3)), (ii) Plaintiff's failure to prosecute (Fed. R. Civ. P.

41(b), and (iii) related defaults under Fed. R. Civ. P. 55(b)(2).    The remedies

sought are responsive to this Court's order of October 7, 2022 (Docket Entry

("D.E.") 116) dismissing with prejudice the Amended Complaint (D.E. 52), and

granting judgment on Defendant's Counterclaims (D.E. 65).    That Order also

granted Defendant's motion (D.E. 103) to dismiss Plaintiff's claims and for default

on the counterclaims under Rules 37 and 41.  D.E. 116.  *See generally Home Port*

1

*Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (affirming default judgment for Rule 37 discovery violations and Rule 55 failure to defend). Defendant Halper hereby requests a narrow injunction and limited damages.

Plaintiff's claims in this suit against Halper (*Lokhova II*), were related to her prior claims against Halper in *Lokhova I* filed in May 2019.[1]  In *Lokhova 1*, Lokhova sought damages of $25 million, allegedly based upon Halper leading an international conspiracy of the FBI, CIA, numerous media companies here and in Britain, and Cambridge University "operatives" to topple the Trump Presidency. Notwithstanding the rejection of her claims in *Lokhova I,* she recycled them in *Lokhova II*, seeking damages of $5 million in compensatory damages and the statutory limit for punitive damages ($350,000) for a lost book contract about the same conspiracy ██████████████████████████████████████████ ████████████████████████████. Both suits have been vehicles for Plaintiff's running defamation of Halper, which she has promoted on her Twitter site and in the media.   Having spent three years in this litigation, Defendant's primary objective is to prevent *Lokhova III*.

---

[1] *Compare Lokhova I* Amended Complaint, D.E. 52 *with Lohova II* Amended Complaint, D.E. 52 ¶1-6, 48, 98.

In this case, Plaintiff brought claims for defamation and tortious interference with an alleged "Book Contract."  D.E. 1, ¶ 1,6; D.E. 52, ¶ 7, 57.   Defendant brought counterclaims for defamation, tortious interference with business expectancies, and statutory immunity under Va. Code § 8.01-223.2B.  D.E. 65. The counterclaims focused upon Plaintiff's defamation of Halper in marketing and publishing her book "SPYGATE EXPOSED: THE CONSPIRACY TO TOPPLE PRESIDENT TRUMP."   That book was self-published in 2020, after this Court's dismissal of the same allegations when first made by Plaintiff in *Lokhova I*, and it largely repeats the same dismissed *Lokhova I* allegations against Halper. *See* D.E. 82-3 (chart comparing pled allegations about media articles in *Lokhova I* with verbatim republication in Spygate Exposed).

██████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████. This suit, like the last one, was premised upon misrepresentations to further Plaintiff's true objective of "competing with le Carré in telling the most excellent spy story." Spygate Exposed, at 26.  Reed Declaration (Ex. 1), ¶ 6.  The need to deter Plaintiff's penchant for using courts for self-promotion is palpable.

## Applicable Legal Standards

Under federal default standards, a defaulting party admits the well-pleaded allegations of fact, other than those pertaining to remedies, and *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *Helema Agri-Enterprises, LLC*, 2022 WL 22287417, *2 (W.D. Va. June 23, 2022);  Fed. R. Civ. P 8(b)(6)).  The Court has previously denied Plaintiff's motion to dismiss the counterclaims for failure to state a claim. D.E.  107.  Here, the factual allegations of the counterclaims (D.E. 65) have not been denied by Plaintiff, and this Court has also entered a default upon them under Rules 37 and 41(b) for violations of court orders.

Further, Defendant has filed an Answer with affirmative defenses, D.E. 65, Plaintiff has not.  Reed Declaration (Ex. 1), ¶ 3.  As a result, Plaintiff has waived any affirmative defenses, including the statute of limitations.  *Eriline Co. v. Johnson*, 440 F.3d 648, 657 & n.13 (4th Cir. 2006) (upon default, court cannot *sua sponte* raise waived affirmative limitations defense).  *Accord, Malouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019).  As a practical matter, this means that Plaintiff no longer has any defense, including a limitations defense, to the counterclaims.

4

The Answer alleges a counterclaim for defamation *per se*, that is, false statements about Halper which: (1) impute the commission of a crime of moral turpitude by Halper for which a party may be convicted; (2) impute his unfitness to perform the duties of a job or lack of integrity in the performance of duties; and (3) prejudice Halper . . . in his profession as a professor, author, and national security analyst and consultant." D.E. 65 ¶ 64.  Among other accusations, the counterclaim alleges that Plaintiff accused Halper of government contract fraud and leaking classified information, both of which are crimes, [2] to implement a coup conspiracy. D.E. 65 ¶ 47.  Plaintiff has alleged that Halper was paid by the Defense Department "$1 million for research papers of dubious, if any, value," which money was a "slush fund" for an intelligence operation to "steal your vote and then to overturn the presidency of" Donald Trump.  Reed Declaration (Ex. 1) ¶ 7 (Exhibit 5, Spygate Exposed excerpts, 130, 132, 133); *Id.* ¶ 11.  Spygate Exposed declares that these Defense Department payments to Halper were "of no apparent value." *Id.* at 133.  The counterclaim also alleges that Plaintiff defamed Halper

---

[2] Leaking classified information is an offense under 18 U.S.C. § 793. *See United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017) (affirming conviction in this Court).  Defrauding the federal government in contracting is an offense under 18 U.S.C. § 1031, and presenting a fraudulent claim to the government is an offense under 18 U.S.C. § 287.  *See United States v. Whyte*, 918 F.3d 339 (4th Cir. 2019) (affirming government contract fraud conviction).

with the leadership of, and Halper's colleagues at Cambridge University.  D.E. 65 ¶ 70.

A defamation claim requires "the publication of an actionable statement." *Lokhova v. Halper*, 441 F.Supp.3d 238, 261 (E.D. Va. 2020), *aff'd*, 995 F.3d 134 (4th Cir. 2021). Any remaining doubt about Plaintiff's defamation *per se* of Halper is dispelled by the list of defamatory statements listed in Exhibit 5 which are taken verbatim from Plaintiff's Spygate Exposed Book attached as Exhibit 6 which constitute Plaintiff's Fed. R. Evid. 801(d)(2) admissions.  Even the original title of Plaintiff's book, as listed in the marketing material, was intended to defame Halper by labeling him as "THE SPIDER," which the book explains cast Halper as a lying literary figure.[3]

"Under Virginia law, a defamation *per se* claim "presumes that the plaintiff suffered actual damage to its reputation and, therefore [a prevailing party] does not have to present proof of such damages."  *Swengler v. ITT Corp.*, 993 F.2d 1063, 1071 (4th Cir. 1993); *Jth Tax, Inc. v. Grabert*, 8 F.Supp.3d 731, 741 (E.D. Va. 2014). This applies to defamation default judgments, and can justify punitive damages even without a showing of actual damages. *Swengler,* 993 F.2d at 1071.

---

[3] Spygate Exposed 33 ("I describe him as "The Spider" based on the famous quote of Sir Walter Scott who in 1808 wrote in his epic poem "Marmion: A Tale of Flodden Field": "Oh, what a tangled web we weave, when first we practice to deceive!").

*Jth Tax, Inc.*, 8 F.Supp.3d at 741.  Plaintiff's identified defamatory material about Halper is defamatory *per se,* D.E. 65, ¶¶ 64, 69, and was published with actual malice. *Id*. ¶¶ 68 & 69.[4]

The  now undisputed evidence of malice includes: Plaintiff published defamatory marketing material and self-published an entire book devoted to defaming Halper notwithstanding: (i) this Court's rejection of Plaintiff's claims in *Lokhova I*, including as affirmed by the Fourth Circuit; (ii) the subsequent notices provided to Plaintiff's publishers about the defamatory nature of the marketing material (Counterclaim, ¶¶ 55a, 68b); (iii) the demand of her Post Hill Press "to change facts and alter metadata" on her manuscript and her refusal to do so (¶ 55d); (iv) the  refusal of Plaintiff's alleged publisher Post Hill Press to publish her manuscript (D.E. 52, ¶ 110); (v) the refusal of her own agent to continue with efforts to publish the book (D.E. 52, ¶¶ 55c, 111); and (vi) the refusal of Plaintiff's alleged British publisher to publish her book (Spygate Exposed, at 347).  Reed Declaration (Ex. 1), ¶ 6, 8, 10.

Actual malice for defamation and for punitive damages is satisfied by publication "with 'knowledge that it was false or with reckless disregard of

---

[4] The Fourth Circuit has indicated that actual malice is not required for a defamation per se claim against a non-media defendant.  *Swengler*, 993 F.3d at 1071 n.5.  Because Halper is seeking punitive damages, however, an actual malice finding is appropriate, and it must be by clear and convincing evidence.  *Id*.

whether or not it was false.'" *Swengler,* 993 F.3d at 1071 (quoting *Newspaper Publishing Corp. v. Burke*, 216 Va. 800. 224 S.E.2d 132, 136 (1976)).   The counterclaims repeatedly allege that the false statements published by Plaintiff about Halper are false and defamatory.  D.E. 65, ¶¶ 20, 40, 46, 47, 48, 54, 63, 67-72.

Malice sufficient for defamation punitive damages is "'conduct which is in conscious disregard of the rights of others and is wanton and oppressive.'" *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 440 (4th Cir. 2004) (quoting *Nat'l Carloading Corp. v. Astro Van Lines, Inc*., 593 F.3d 559, 565 (4th Cir. 1979)).   It must be established by clear and convincing evidence.  *Id*.   Here, the undisputed counterclaim alleges that Plaintiff went ahead with her defamation campaign against Halper since 2019 notwithstanding her receipt of adverse notices from this Court and the Fourth Circuit (*Lokhova I*), from Plaintiff's publishers and agent (refusing to publish), and from attorney cease and desist letters warning of the threats to Halper.

**Introduction**

This Court has indicated that it is inclined to use injunctive relief in a final judgment to promote the Court's interests in finality, and to protect Defendant against further relitigation by Plaintiff.   Defendant agrees that the principal

objective should be protecting this Court and Defendant from further relitigation by Plaintiff.    As explained below, there are three types of injunctive relief used by courts in this context: (i) injunctions against relitigation; (ii) injunctions against defamatory speech; and (iii) pre-filing injunctions.  Defendant respectfully suggests that the first type of injunctive relief is most appropriate.

Second, this Court has asked Defendant to specify the financial remedies he seeks in a final judgment.   Defendant views financial remedies as serving primarily as a financial deterrent against further litigation.  In 2021, Plaintiff previously refused discovery, failing to appear for deposition, and claimed an inability to pay the Court's prior financial sanction of $33,000.   Reed Declaration (Ex.1), ¶ 8 (Exhibit 7).  Since then, Plaintiff has refused all discovery (including court-ordered discovery) and has refused to comply with this Court's September 8th Order to "immediately provide" an address to which court and defense notices could be sent. D.E. 108.

As a result, the prospect of recovering any substantial sums from Plaintiff who refuses to provide an address to this Court, and who told this Court that she was "unable to fly to the UK," the country of her alleged residence, is dim.  D.E. 110. Nonetheless, Defendant submits that this Court should enter a financial judgment in order to make clear that misuse of this Court has a price.   Accordingly, Defendant is requesting a defamation award of $75,000, representing presumed

damages of $37,500 for the cumulative defamation in the marketing material and in her book, and an equivalent punitive damage award of $37,500, for a defamation damage total of $75,000.   In addition, this Court should impose the attorney fee and costs under Rule 37(d)(3) and the statutory immunity counterclaim provisions (Va. Code § 8.01-223.2), which amount to $98,250.0 (legal fees of $95,250 plus costs of $3,015.99).

### I. Attorney Fees and Costs Are Justified Under Rule 37 and Virginia's Immunity Statute.

Recovery of attorney fees incurred since the commencement of discovery in July 15, 2022, and associated litigation costs are justified under Rule 37(d)(3) and Va. Code § § 8.01-223.2.

### A. Rule 37

Under Rule 37(d)(3), a party's failure to appear for deposition, to answer interrogatories or to respond to document requests justifies an award of reasonable attorney fees and costs.   This Court has already determined that Plaintiff violated each of the three discovery violations for which sanctions can be imposed under Rule 37(d)—failure to attend her own deposition, serve interrogatory answers, or respond to document requests.   This Rule authorizes this Court "in addition to" the sanctions of dismissal and default to "require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, cause by the failure, unless the failure was substantially justified or other circumstances make an award of

10

expenses unjust." Rule 37(d)(3). *See Plant v. Merrifield Town Center Ltd.*

*Partnership*, 2009 WL 6082878, *8 (E.D. Va. Dec. 23, 2009) (recommending fees

in addition to dismissal under Rule 37(d)(3), *aff'd on relevant grounds*, 711

F.Supp.2d 576, 588 (E.D.Va. 2010).

This Court issued a show cause order to Plaintiff to justify her multiple

violations of this Court's discovery orders. She failed to provide a substantial

justification for her discovery violations, including essentially refusing to

participate in any of the discovery authorized by this Court's scheduling order as of

July 15, 2022. D.E. 61.

The most relevant time period under Rule 37, therefore, it the time period in

which this Court authorized discovery, but Plaintiff refused to participate—i.e.,

from July 15, 2022 until dismissal on October 7, 2022. As the accompanying

declaration of Halper counsel Reed specifies, in that limited period, Halper defense

counsel spent 190.5 hours, which would equal $95,250.00 at an hourly rate of $500

per hour. Reed Declaration (Ex. 1), ¶¶ 4 & 5. In addition, Defendant has been

charged $3,015.99 for the Zoom deposition of Plaintiff which she declined to

attend. Reed Declaration (Ex. 1) ¶ 5 (Exhibit 4). Within this timeframe (114

days), 43.25 hours of defense counsel time was spent preparing for the deposition

of Plaintiff, or $21,625.00. This does not include the time spent by defense

counsel in defending this suit during the 19-month period from December 2020

until July 15, 2022. Reed Declaration (Ex. 1), ¶ 4.  Nor does it include the time

spent by defense counsel other than Terrance Reed. *Id.*

### B. Statutory Immunity Fees and Costs

The same result is also available under Virginia's immunity statute, Va.

Code § 8.01-223.2, speech on matters of public concern protected by the First

Amendment is immune from defamation and tortious interference liability, and a

"person who has a suit against him dismissed. . .  pursuant to the immunity

provided by this section may be awarded reasonable attorney fees and costs." *Id.*

Va. Code § 8.01-223.2B.[5]  Plaintiff's defamation and tortious interference claims

were dismissed and this Court granted judgment upon Halper's immunity claim.

D.E. 116.

"Speech involves a matter of public concern when it involves an issue social,

political, or other interest to a community." *Urofsky v. Gilmore*, 216 F.3d 401, 406

(4th Cir. 2000) (*en banc*).  The counterclaims identify matters of public concern

protected by the First Amendment over which Plaintiff has sued Halper.  D.E. 65,

¶¶ 81-83.  The obvious grounds satisfying this standard include: (i) the national

emergency findings by the last three Presidents over Russian election interference

in the U.S.; (ii) the Congressional adoption of this national emergency by enacting

---

[5] The statutory term "may" has been construed as making a fee award discretionary with the court. *Fairfax v. CBS Corporation*, 2 F.4th 286, 297 (4th Cir. 2021).

CAATSA by overwhelming margins;[6] (iii) the five volumes of Senate Select Intelligence Committee Reports;[7] and (iv) the federal law enforcement investigation of these matters, as confirmed in the DOJ Inspector General Report in 2020, and relied upon in *Page v. Oath*, 270 A.3d 833, 847 (Del. 2022) (rejecting defamation claim based upon substantial truth of proper investigation of Russian election interference confirmed by DOJ Inspector General), *cert. denied*, 2022 WL 1528435 (May 16, 2022).

The Presidential emergency declarations of Russian interference in the 2016 Presidential U.S. elections under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 *et seq*., have "the force of law and is to be applied by the courts as the law of the land." *Unidyne Corp. v. Government of Iran*, 512 F. Supp. 705, 710 (E.D. Va. 1981) (Bryan, J.) (enforcing IEEPA order arising from Iran hostage emergency) (quoted with approval in *United States v. Lindh*, 212 F. Supp.2d 541, 571 (E.D. Va. 2002)).

---

[6] Countering America's Adversaries Through Sanctions Act, H.R. 3364, Public L. No. 115-44, §§ 211(5&6), 222(a) ("Codification of Sanctions Relating to the Russian Federation," codifying EO 13575), 131 Stat. 886 (2017) (codified at 22 U.S.C. § 9501, 9522 note) (enacted by a Senate vote of 98-2, House vote of 419-3).

[7] *See, e.g.*, Report, *Assessing Russian Activities and Intentions in Recent U.S. Elections*, S. Rep. No. 116-XX (2017); Report, *Russian Active Measures Campaigns and Interference in the 2016 U.S. Election*, S. Rep. No. 116-XX (2018).

To the extent that there is any remaining factual issue associated with these Presidential emergency findings, Plaintiff has just admitted these facts because they are pled in the unanswered counterclaims. D.E. 65, ¶¶ A1-6, 9 ("The Russian government interfered in the 2016 U.S. Presidential election"). 10 ("Russian government interference in the 2016 Presidential election is not a 'hoax.").   These are now default admissions, and they establish the knowing falsity of Plaintiff's lawsuits alleging that Halper fabricated the Russian hoax, was a media source of false information about Plaintiff, committed government contract fraud, and orchestrated an unlawful coup conspiracy.  *Id*., ¶¶ 46, 54.

## C. Defamation Damages

General Damages are presumed when defamation per se is established, and as such "'even in the absence of any evidence of pecuniary loss, the damages which the injury party is entitled to recover may be substantial.'" *Cretella v. Kuzminski*, 640 F.Supp.2d 741, 757 (E.D. Va. 2009) (quoting *Poulston v. Rock*, 251 Va. 254, 261 (1996)).   Damages also may include recovery for emotional harm and embarrassment. *Cretella*, 640 F.Supp.2d at 757.  But a "plaintiff who proves the publication of words actionable *per se* is simply relieved of the necessity of proving the quantum of his damages for injury to reputation, humiliation, and embarrassment." *Poulston*, 251 Va. at 261 (quoting *Great Coastal Express, Inc. v. Ellington*, 30 Va. 142, 151, 334 S.E.2d 846, 853 (1985)).

14

Defendant has listed more than two dozen defamatory statements taken from the 1,150 references to Defendant Halper in Plaintiff's Spygate Exposed Book. Reed Declaration (Ex. 1), ¶ 12. Defendant submits that this would justify a defamation award in the amount of presumed damages of $37,500 plus a like amount in punitive damages. *Compare Poulston v. Rock*, 251 Va. 254, 261 (1996) (overruling remittitur because it "ignores the longstanding principle that, even in the absence of any evidence of pecuniary loss, the damages which the injured party is entitled to recover may be substantial.").

The same amount would equally be justified as punitive damages, which are awardable in the absence of any compensatory damages. *Cretella*, 640 F.Supp.2d at 758. Here, punitive damages are justified by the Plaintiff's actual malice, as alleged in the Answer (D.E. 65, ¶¶ 68 & 69), but ███████████████████ ████████████████████████████████████████ ███████████████████████████████████.

A 1:1 ratio of compensatory to punitive damages is well within the range considered constitutionally acceptable. *Hughston v. New Home Media*, 552 F.Supp.2d 559, 569 (E.D. Va. 2008) (3.75 ratio reasonable); *Clehm v. BAE Systems Ordnance Systems, Inc*., 2018 WL 6594612 (W.D. Va. Dec. 14, 2018) (2:1 ratio constitutionally reasonable). In *Fasusi v. Washington Motorcars, Inc*, 2018 WL 4896722 (E.D. Va. Oct. 8, 2018), this Court adopted the default judgment findings

15

of Magistrate Anderson (2018 WL 6184787 (E.D. Va. Aug 31, 2018), of a punitive

damage award of $10,000 because it fell within the acceptable due process

limitations of a single digit ratio. 2018 WL 6184787, *9.  Given Defendant's

modest prayer for compensatory damages, a 1:1 ratio for punitive damages would

be reasonable.

Whether classified as presumed general damages, or a parallel amount of

punitive damages, imposing a discrete financial consequence on Plaintiff's

individual defamatory statements will provide an important financial deterrent to

republications of the same defamation.

## II. Injunctive Relief is Justified.

Courts have issued at least three types of injunctions to prevent relitigation:

relitigation injunctions, speech injunctions, and pre-filing injunctions.  All are

justified here. The general standards for an injunction are well settled: (i)

irreparable injury; (ii) no adequate remedy at law; (iii) the balance of hardships

favor movant; and (iv) the public interest. *B2Gold Corp.*, at *7.   Here, these

factors favor an injunction.

### A.  A Relitigation Injunction is Justified

First, courts have issued injunctions to prohibit relitigation that is subject to

preclusion doctrines in order to protect both the court's jurisdiction and the other

16

parties from the burdens of further lawsuit.  *See, e.g., Del Pino v. AT&T Information Systems, Inc.*, 921 F. Supp. 761, 766 (S.D. Fl. 1996); *Zagano v. Fordham University*, 720 F. Supp. 266, 268 (1989).  Authority for such an injunction stem from the All Writs Acts authority to protect a court's jurisdiction to enforce its judgments, and from this Court's inherent authority.  *Zagano*, at 267 (citing 28 U.S.C. § 1651); *Del Pino*, 921 F. Supp. at 766.  "'Federal Courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.'" *Laosebikan v. Coca-Cola Co*., 2010 WL 11506384, at *5 (N.D. Ga. Feb. 10, 2010) (quoting *Procup v. Strickland*, 792 F.2d 1069, 1072 (11th Cir. 1986)).

Here, as explained below, both the *Lokhova I* and *Lokhova II* judgments are final judgments entitled to preclusive effect under claim and issue preclusion doctrine.  Default judgments are typically considered final judgments subject to *res judicata*.  *Aghaeepour v. Northern Leasing Systems, Inc*., 378 F.Supp.3d 254, 265 (S.D.N.Y. 2019) (New York law); *In re Cassidy*, 595 B.R. 507, 515 (W.D. Va. 2019) (citing *TransDulles*, 472 S.E.2d at 276).  They are also pled as the affirmative defense of *res judicata* in the Answer, D.E. 65, at 15 (Ninth Affirmative Defense), which has not been answered by plaintiff.  Reed Declaration

(Ex. 1) ¶ 3.  Defendant respectfully requests that this Court make sufficient findings of preclusion to support any injunctive relief it may issue.

The lack of an adequate remedy at law is established by the fact that Plaintiff filed this suit (*Lokhova II*) relying extensively upon the claims and allegations that were rejected by this Court in *Lokhova I*.  D.E. 1 & D.E. 52, ¶¶ 1-6, 48, 98.  In *Lokhova I*, this Court held, and the Fourth Circuit affirmed, that that Halper was not a member of the alleged coup conspiracy, *Lokhova I* at 266, Halper was not a "source" of the allegedly defamatory media articles, *id*. at 259, and that the cited articles were untimely, lacked defamatory sting, or were not defamatory. *Id*. at 263.

Generally, an adverse defamation judgment creates an incentive not to repeat claim already rejected by a judge or jury.  *Saadi*, 2009 WL 3617788, at *2. This Court's February 2022 judgment in *Lokhova I* did not deter, or daunt, Plaintiff from recycling and expanding upon the same defamatory allegations about Halper in her self-published book Spygate Exposed, and bringing a second suit upon them. Thus, even before Plaintiff flouted this Court's Show Cause Order, Plaintiff was not responding to this Court's adverse rulings over the last three years.   Where, as here, an adverse defamation judgment fails to deter a party's further defamation, a "judgment is not providing [defendant] with a complete remedy, and as such, an injunction is appropriate."  *Saadi*, 2009 WL 3617788, at *2.

Since the beginning of the *Lokhova I* litigation, Plaintiff has maintained a Twitter account that regularly promotes her lawsuits against Halper and publishes almost daily grievances with the U.S. political system and with Halper.  As of today, her last Twitter entry was September 7, 2022, the day after she failed to appear for her deposition, in which she promises: "I have not given up, and will continue pursuing justice."

Because Plaintiff's second lawsuit has been dismissed under Rule 41(b) "on the merits" for failure to prosecute, a relitigation injunction is justified to protect the Court and to prevent irreparable injury to the Defendant from similar disregard of court orders.  *Zagano*, 720 F. Supp. at 268.  Irreparable injury is met because when "'the federal litigation [was] unusually burdensome or protracted . . .further injury may cause irreparable harm to the prevailing party, already denied long awaited repose.'" *Del Pino*, 921 F. Supp. at 766 (quoting *Zagano*, 720 F. Supp. at 268).

Here, the same dispute has been the subject of two lawsuits in this Court, and two appeals, spanning more than three years.   Enough is enough. The balance of equities favors an injunction because, absent an injunction, Defendant will be denied the protections of *res judicata* and will suffer the burdens of a third lawsuit over the same proven deficient allegations.   An injunction against a party is a private matter that is not considered to conflict with the public interest.

19

*Laossebikan v. Coca-Cola, Co.*, 1010 WL 11506384, *6 (N.D. Ga. Feb. 10, 2010) (citing *Pino*, 921 F. Supp. at 767).   Further, the public interest favors not imposing such relitigation burdens upon this, or any, court.

### B. A Speech Injunction is Justified

Second, some courts have issued injunctions directly against defamatory speech (speech injunctions), *B2Gold Corp. v. Philip Bryson Christopher*, 2020 WL 2846633 (E.D. Va. May 2020).   Narrowly tailored speech injunctions are remedies available in defamation default cases.   In *BEGold Corp.*, Judge Ellis issued a permanent injunction as a defamation default judgment remedy barring defendant from repeating defamatory speech.   In so holding, Judge Ellis explained that a contrary rule "'would make an impecunious defamer undeterrable.'"   *Id*. at *7 (quoting *McCarthy v. Fuller*, 810 F.3d 456, 462 (7th Cir. 2015)).   That is equally a risk in this case.

In *B2Gold*, Judge Ellis found that the broad dissemination of the alleged defamation established irreparable injury.   Here, Plaintiff has disseminated here defamatory publications about Halper through two lawsuits (Lokhova I & II), in a book (Spygate Exposed), on the internet through her Twitter account (D.E. 65 ¶ 72), and through innumerable media communications (D.E.52 ¶¶ 72).

20

Judge Ellis found that monetary damages are not an adequate remedy at law because, if the defamation continued, the plaintiff "'would be required to bring a succession of lawsuits if an award of damages was insufficient to deter the defendant from continuing' to defame plaintiffs." *B2Gold*, at *7 (quoting *Balboa Island Village Inn, Inc*., 40 Cal.4th at 1160). The balance of equities favored plaintiff because, even with the injunction, defendant could engage in nondefamatory speech. *Id*. Finally, the public interest would be served by an injunction because the public would still have the benefit of nondefamatory speech. *Id*. The same conclusions apply here, and would justify the issuance of a speech injunction.

Judge Ellis acknowledged, however, that an injunction "against the repetition of defamatory speech must be no 'broader than necessary to provide relief to plaintiff while minimizing the restriction of expression.'" *Id*. at * 7 (quoting *McCarthy*, 810 F.3d at 462)). Generally speaking, courts distinguish between permissible injunctions against repeating comments already found to be defamatory, versus those directed at future speech, which could offend the First Amendment depending upon the future context in which the comment is made. *See Saadi v. Maroun*, 2009 WL 3617788, *3(M.D. Fl. Nov. 2, 2009) (citing *Balboa Island Village Inn, Inc. v. Lemen,* 40 Cal.4th 1141, 57 Cal. Rptr.3d 350 (Cal.2007)).

In *Saadi*, the court issued an injunction following the rationale of the

California Supreme Court in *Balboa Island* that "'a judgment for money damages

will not always give the plaintiff effective relief from a continuing pattern of

defamation.'" *Saadi*, at *3 (quoting *Balboa Island*, at 351). Nonetheless, the First

Amendment requires both narrowness and precision in enjoining speech. *Tory v.

Cochran*, 544 U.S. 734 (2005) (vacating overbroad injunction as prior restraint).

The injury inflicted upon Halper includes a continuing pattern of

defamation, multiple lawsuits for the immune speech, and the reputational damage

from being characterized in multiple forums as a "delusional" "liar," and

"deceiver" who is an "amoral, unscrupulous intelligence operative or a fantasist."

D.E. 65. ¶ 69. As part of the Plaintiff's fantastical "coup" account, Halper

fabricated a Russian hoax financed by his alleged government contract fraud.

Plaintiff's book alleges that Halper "swanned around the world at taxpayer's

expense gathering 'gossip' and manufacturing lies for the CIA and FBI," while

hiding from his peers because the "excellent academics at Cambridge easily smell

out a fraud." *Id*.

### C. A Pre-Filing Injunction is Justified

Third, injunctions against litigation absent leave of court are known as pre-

filing injunctions. *Cromer v. Kraft Foods of North America, Inc.*, 390 F.3d 812

22

(4th Cir. 2004).   Given the presumption of access to the courts, exigent

circumstances must justify such an injunction, requiring that:

> a court must weigh all the relevant circumstances, including (1) the party's
> history of litigation, whether he has filed vexatious, harassing, or duplicative
> lawsuits; (2) whether the party had a good faith basis for pursuing the
> litigation, or simply intended to harass; (3) the extent of the burden on the
> courts and other parties resulting from the party's filings; and (4) the
> adequacy of alternative sanctions.

*Cromer*, 390 F.3d at 818 (citing cases).

These circumstances favor a pre-filing injunction here.

- This is the second Lokhova suit since May 2019 in this Court, and it
  certainly is duplicative.  *See, e.g.*, D.E. 52,  Amended Complaint ¶ 48
  ("Defendant Halper also repeated his false allegations about Plaintiff and
  General Flynn to various members of the media who, upon information and
  belief, include, among others, journalists working for the Wall Street
  Journal, the Guardian, the New York Times, and the Washington Post."); ¶
  98 ("Although journalists had previously reported the fact that Halper was a
  "spy," Plaintiff was a credible academic and historian who sought to publish
  an entire book discussing Halper's efforts to smear a Presidential candidate
  and his National Security Advisor by falsely tying them and Plaintiff, an
  innocent third-party, to Russia, his clandestine operations in spying on the
  Presidential campaign, and his questionable contracts with the Pentagon.").

- Plaintiff did not have a good faith basis to bring either suit.  Her conclusory
  claims in *Lokhova I* were either untimely or failed to state a claim, and her
  claims in *Lokhova II* were duplicative of *Lokhova I*, and then were
  abandoned by Plaintiff upon a remand from the Fourth Circuit she sought.
  Further, Plaintiff's continuing willful behavior in this case demonstrates bad
  faith.  "In the Fourth Circuit, bad faith includes willful conduct, where the
  party 'clearly should have understood his duty to the court' but nonetheless
  'deliberately disregarded' it." *Certain Underwriters at Lloyd's, London v.
  Advanfort Co.*, No. 1:18cv1421, 2019 WL 3366103, at *8 (E.D. Va. July 25,
  2019) (quoting *Raab v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985))

- The burden imposed upon this Court, and upon the Fourth Circuit, by Plaintiff has been substantial.  *Lokhova* I lasted from May 2019 in this Court to April 21, 2021 in the Fourth Circuit, yielding repeated dismissals. *Lokhova II* started in this Court in December 2020, was remanded by the Fourth Circuit upon Plaintiff's claim that she was denied needed discovery, and was dismissed by this Court on September 7, 2022 for Plaintiff's continuing refusal to comply with this Court's discovery orders at all. Plaintiff has run through the services of two successive counsel, and appearing pro se, has failed to comply with this Court's show cause order of September 9, 2022.  D.E. 108.

- There are no adequate alternate sanctions.  Plaintiff has not only flouted this Court's scheduling and discovery orders; she has failed to provide the basic contact information required by this Court's show cause order to enable further participation in this litigation.   Plaintiff brought two defamation suits in this Court seeking $30 million in damages against Halper, and yet opposed the counterclaims on the ground that this Court lacked personal jurisdiction over her conduct in England as a British citizen.  When this Court previously financially sanctioned Lokhova in 2021, she refused to comply with financial discovery, purportedly withheld authority from him to accept a notice of deposition, and claimed exclusive possession of responsive documents.  D.E. 71, at 5-6 & 71-3 &4-.4

When justified, pre-filing injunctions "must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *Id*.  Finally, before issuance of a prefiling injunction, a court must give the party notice of this potential outcome and an opportunity to oppose. *Id*. at 819.  Here, this Court identified such a potential injunction as a likely result at the scheduled hearing on October 7th, and again in its Order later that day.  D.E. 116.   Nonetheless, to remove any doubt on this issue, Defendant suggests that a notice be sent to the effect that the Court intends to issue an injunction by a time certain prohibiting

24

Lokhova from suing Halper again relating to any of her allegations in *Lokhova I*, *Lokhova II*, and her Spygate book.

The justification for the relitigation injunction suggested by the Court—a narrower injunction which would not enjoin Plaintiff's future speech (as was the case in *B2Gold*)—is even more compelling here.   Such a relitigation injunction would more narrowly preclude Plaintiff from bringing another lawsuit against Halper based upon the allegations in *Lokhova I and II*.   The only addition that Halper would request is that the injunction also prohibit Plaintiff from suing Halper based upon the allegations in the Spygate Exposed book, which largely overlap with the pleadings in *Lokhova I & II*.  *See* D.E. 82-3 (comparison of the *Lokhova I* complaint allegations about media articles with Spygate Exposed book allegations).  The legal justification for this extension is tied to the now-admitted counterclaims, in which Halper squarely alleges that he was also defamed by Plaintiff's self-publication of Spygate Exposed.  D.E. 65, ¶ 69.

The same conclusion is reached simply by enforcement of the defaulted claims, affirmative defenses, and counterclaims:

- The affirmative defense of *res judicata* (both issue and claim preclusion) mandates preclusion on all facts that were, or could have been, adjudicated in *Lokhova I and II*.  This includes not only the

pleadings but, by virtue of the counterclaims, the allegations in the

Spygate Exposed book. *Res judicata* (issue preclusion)[8] applies to

default judgments in Virginia if they are actually litigated, which has

been construed as including cases involving discovery. *In re Cassidy*,

595 B.R. 507, 515 (W.D. Va. 2019) (citing *TransDulles*, 472 S.E.2d at

276); *In re Samantar*, 537 B.R. 250, 260 & n.6 (Bankr. E.D. Va.

2015) (citing cases; "'These courts reason that when a party actually

participated and had a full and fair opportunity to actually litigate the

issues in the prior action, but engaged in obstructive conduct resulting

in a default judgment, it would be inequitable to reward that conduct

by giving the party another opportunity to litigate the same issue in a

different forum.'") (Quoting *In re O'Quinn*, 401 B.R. 739, 743-44

(Bankr. M.D.N.C. 2009)).

---

[8] "In Virginia, five elements must be shown for collateral estoppel to apply: (1) the parties to the two proceedings must be the same; (2) the prior proceeding must have resulted in a valid final judgment against the party against whom preclusion is sought; (3) the factual issue to be precluded must have been actually litigated in the prior action; (4) the factual issue to be precluded must have been essential to the prior judgment; and (5) the party invoking estoppel would have been bound had the prior litigation reached the opposite result (stated differently, mutuality is present)." *In re Cassidy*, 595 B.R. 507, 515 (W.D. Va. 2019). All elements are present here.

- Here, Plaintiff pursued an appeal of this case to the Fourth Circuit, claiming that she needed discovery to respond to Defendant's privilege defense,[9] but then refused to produce discovery on remand and made no affirmative discovery requests.   Reed Declaration (Ex. 1), ¶ 6.

- The same conclusion applies to claim preclusion, which does not require actual litigation, because Plaintiff has had two full opportunities to make any legal claim she has against Halper, and has failed for three years.  *See* Va Sup. Ct. Rule 1:6(A); *Baron v. Brakis*, 312 F.Supp.2d 808, 815 (E.D. Va. 2004); *In re Gilson*, 250 B.R. 226, 241(Bankr. E.D. Va. 2000).  There are two final judgments involving the same parties, leaving only the issue of whether the causes of action are the same. [10]  "[C]courts look to 'whether the suits and the

---

[9]In this action, Plaintiff initially objected to Defendant's discovery requests.  D.E. 12, at 15. On appeal Plaintiff contended that: (i) this Court "erred in dismissing Lokhova's complaint on a Rule 11 motion without discovery and/or evidence," (Appellant Reply Brief, at 2), even though Plaintiff objected to defense discovery in this Court, and (ii) Halper had no intention of pursuing defamation against Plaintiff because Halper knew "that by filing a defamation claim, Halper would expose himself (and his confederates) to full discovery of the wrongdoing in 2016 and 2017."  Appellant Principal Brief, at 22; *id*. at 39, 46.


[10]  *Barrett v. PAE, Inc.,* 2022 WL 479097, *4(E.D. Va. Feb. 16, 2022) (""The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, (2008) . This Court looks to three elements when deciding whether claim applies, asking whether there is: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies

claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Barrett,* 2022 WL 479097, * 5 (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)).  The two Lokhova cases span the same series of transactions from 2017 until today.  *See Lokhova I*, D.E. 1 (Complaint) ¶ 130 (describing and hyperlinking to May 12, 2017 BBC "detailed interview with Lokhova" about what happened at Cambridge dinner).

- Under Rule 41(b), the dismissal of Plaintiff's claims "operates as an adjudication on the merits." *Id.*   This rule language "bar[s] refiling of the same claim in the [same court]." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001).  "Under Virginia law, as a general rule, a dismissal of a claim 'with prejudice' constitute 'an adjudication on the merits, and final disposition, barring the right to bring or maintain an action on the same claim or cause.'" *Davison v. Rose*, 19 F.4th 626, 633 (4th Cir. 2021) (quoting *Reed v. Liverman*, 250 Va. 97, 458 S.E.2d 446, 447 (1995)).

---

in the two suits." *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016)).

- Defendant's conduct is immune under Virginia statute and federal law, and also subject to the absolute and qualified privileges in the Answer. D.E. 65, at14-16 (Affirmative Defenses Third through Eighth).

- Plaintiff's defamation claims are defeated by her own continuous self-publication of her alleged defamation to third parties since 2017. *Hickey v. St. Martin's Press*, 978 F.Supp. 230, 237 (D.Md. 1997) ("The general rule is that, if a person claiming to be defamed communicates the allegedly defamatory statements to another, no liability for any resulting damages is incurred by the originator of the statements."). Plaintiff has been publishing her accounts of her alleged defamation since 2017, *see Lokhova I* Complaint, D.E. 1, ¶¶ 130, 132 ("extensive interview" of Lokhova by New York Times reporter), only to be capped in 2020 by a self-published 359-page book on her alleged central role in the same coup conspiracy.

**Conclusion**

For the foregoing reasons, this Court should enter a financial judgment of legal fees of $95,250.00, costs of $3,015.99 pursuant to Fed. R. Civ. P. 37(d)(3)

and Va. Code § 8.01-223.2B, defamation presumed and punitive damages of $75,000, and an injunction prohibiting Plaintiff from suing Halper for any allegations in *Lokhova I*, *Lokhova II*, or her book Spygate Exposed.

Respectfully submitted,

By: _____/s/_____

Terrance G. Reed (VA Bar No. 46076)
Lankford & Reed, PLLC
120 N. St. Asaph St.
Alexandria, VA  22314
(Phone) : 703-299-5000
(Facsimile) : 703-299-8876
tgreed@lrfirm.net

Robert D. Luskin (*pro hac vice. granted April 1, 2021*)
Paul Hastings LLP
875 15th ST NW
Washington, DC 20005
202-551-1966
202-551-0466
robertluskin@paulhastings.com

*Counsel for Defendant*
*Stefan A. Halper*