IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SVETLANA LOKHOVA,                )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        1:20-cv-1603 (LMB/WEF)
                                 )
STEFAN A. HALPER,                )
                                 )
            Defendant.           )

MEMORANDUM OPINION

Before the Court is defendant/counterclaim plaintiff Stefan A. Halper's ("Halper")

Application for Judgment Remedies, in which he seeks a permanent injunction barring pro se

plaintiff Svetlana Lokhova ("plaintiff" or "Lokhova") from bringing any further lawsuits against

him and recovery of compensatory and punitive damages, as well as some of the attorney's fees

and costs incurred in this litigation.  [Dkt. Nos. 117 and 126].

I. DISCUSSION

The animosity between Lokhova and Halper predates this civil action, going back to at

least the first lawsuit that Lokhova initiated against Halper in May 2019, Lokhova v. Halper, No.

1:19-cv-632 (LMB/JFA) (E.D. Va. May 23, 2019) ("Lokhova I").  The Lokhova I complaint,

filed by plaintiff's former counsel Steven Biss ("Biss"), began by calling Halper "a ratf***er and

spy," and asserted claims for defamation, civil conspiracy, and tortious interference with

contract, alleging that Halper was the source of media accusations that Lokhova was a Russian

spy and the paramour of Lt. General Michael Flynn and was involved in collusion between

Russia and the presidential campaign of former President Donald Trump.  Id. at [Dkt. No. 1].  On

February 27, 2020, the Court dismissed the Lokhova I complaint, which also named multiple

media outlets as defendants, finding that all but two of the defamation claims were barred by the

statute of limitations, and that the remaining claims failed to state a claim upon which relief

could be granted.  Lokhova I, 441 F. Supp. 3d 238 (E.D. Va. 2020).  In Lokhova I, Halper also

moved for sanctions against Lokhova and Biss, alleging that they litigated the case in bad faith.

The Court declined to impose sanctions, but nonetheless chastised Lokhova and Biss for their

improper tactics, including Biss's ad hominem attacks, and warned that "should Biss file further

inappropriate pleadings or pursue frivolous post-judgment litigation against any of these

defendants, sanctions might well be justified."  Id. at 267.  On April 15, 2021, the Fourth Circuit

affirmed the decision as to all issues.  Lokhova I, 995 F.3d 134 (4th Cir. 2021).

     While Lokhova I was pending before this Court and the Fourth Circuit, Lokhova made

arrangements to publish a book, titled The Spider: Stefan A. Halper and the Dark Web of a

Coup, leading to the instant civil action, Lokhova v. Halper, No. 1:20-cv-1603 (LMB/WEF)

(E.D. Va. Dec. 31, 2020) ("Lokhova II").  On December 31, 2020, Lokhova, again represented

by Biss, filed a Complaint against Halper for defamation and tortious interference with contract

based on Halper's alleged interference with the publication of her book.  [Dkt. No. 1].

Specifically, the Complaint alleged that on December 23, 2019, Lokhova entered into an author

profit participation agreement for her book with Post Hill Press, LLC ("Post Hill Press"), which

secured the agreement of Simon & Schuster to distribute the book.  Id. ¶¶ 1-2.  In response to

pre-publication advertising of the book by the publishers, Halper became aware of the impending

publication of the book, and the Complaint alleged that beginning on March 13, 2020, Halper

and his counsel contacted the publishers and made "false statements" about Lokhova with "the

sole purpose" of causing her book contract to be cancelled.  Id. ¶¶ 6, 18-19, 27.  After Halper and

his counsel contacted the publishers, Post Hill Press cancelled its book contract with Lokhova,

who later self-published her book as <u>Spygate Exposed: The Conspiracy to Topple President</u> <u>Trump</u> ("<u>Spygate Exposed</u>") (2020). <u>Id.</u> ¶¶ 21-23.

In response to plaintiff filing a new Complaint, Halper moved for sanctions against Lokhova and Biss, alleging that the claims were frivolous and filed for an improper purpose to harass Halper. [Dkt. No. 6]. On May 5, 2021, the Court granted that motion, dismissed the Complaint, and subsequently imposed a sanction of $33,875.00, representing a portion of Halper's attorney's fees, jointly and severally on Lokhova and Biss. <u>Lokhova II</u>, No. 1:20-cv-1603 (LMB/WEF), 2021 WL 2903237 (E.D. Va. July 9, 2021). While <u>Lokhova II</u> was on appeal, to aid in the collection of the sanctions award, Halper served discovery requests and noticed a deposition of Lokhova, who failed to appear for the deposition or otherwise comply with the requests. Biss sought to make arrangements with Halper to pay the fee award himself, explaining that "Lokhova has no money," [Dkt. No. 117-10], and later informed Halper that Lokhova "has not responded to any of [his] communications" and he had no authority to accept the notice of deposition on her behalf, [Dkt. No. 71-3]. On April 5, 2022, the Fourth Circuit reversed the sanctions decision and remanded <u>Lokhova II</u>, concluding that the decision was premature. <u>Lokhova II</u>, 30 F.4th 349 (4th Cir. 2022).

On remand, plaintiff retained new counsel, Leslie McAdoo Gordon ("McAdoo Gordon").[1] On June 2, 2022, Halper filed a motion to dismiss. [Dkt. Nos. 47 and 48]. Rather than opposing the motion, plaintiff filed an Amended Complaint asserting some new facts but maintaining the same claims as were in the original Complaint. [Dkt. No. 52]. After oral

---

[1] McAdoo Gordon entered an appearance on June 16, 2022, on behalf of plaintiff. Although Biss's signature does not appear on any documents filed by plaintiff after <u>Lokhova II</u> was remanded, he did not formally move to withdraw until July 14, 2022. [Dkt. No. 57]. The Court granted his motion on the same day. [Dkt. No. 58].

argument on July 15, 2022, Halper's Motion to Dismiss the Amended Complaint was denied. [Dkt. No. 60].  Two weeks later, Halper filed an Answer and counterclaims containing three claims, which alleged, in Counterclaim I, defamation for statements Lokhova made about Halper in the marketing material for her book and her book now titled Spygate Exposed, as well as for statements she made to individuals at Cambridge University in the United Kingdom, and in Counterclaim II, tortious interference with contract and business expectancies based on the alleged defamation.  [Dkt. No. 65].  Counterclaim III sought statutory recovery under Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2(B).  [Dkt. No. 65].

As the tortured history of this litigation shows, plaintiff has, both while represented by counsel and since becoming pro se, failed without good cause to comply with multiple orders of both the magistrate judge overseeing discovery and this Court to respond to Halper's reasonable discovery requests.  For example, on August 19, 2022, three days after the deadline to object to Halper's discovery requests, plaintiff moved for a protective order to extend the deadline to respond to the requests[2] and to quash a deposition of Lokhova noticed for September 6, 2022, arguing that the deposition was premature and inconvenient because Lokhova lived in the United Kingdom.  [Dkt. No. 68].  On August 24, 2022, the magistrate judge granted the motion in part by extending until August 26, 2022 the deadline to file objections to Halper's discovery requests, but denied the motion in all other respects.  [Dkt. No. 76].  Two days later, plaintiff appealed that

---

[2] Halper initially served discovery requests on plaintiff by email on July 25, 2022.  Plaintiff's counsel refused service on the ground that email does not constitute proper service under Fed. R. Civ. P. 5 and requested an extension due to her involvement in a criminal trial in Maryland.  On August 1, 2022, Halper served the same discovery requests by hand and mail, along with a notice of deposition of Lokhova for September 6, 2022.  Plaintiff's counsel "did not personally receive and review these discovery requests until Wednesday, August 17, when she began opening the mail and packages accumulated by her office for her during the course of the Maryland trial." [Dkt. No. 68] at 4.

decision to this Court, [Dkt. No. 78], and also filed objections to Halper's discovery requests, [Dkt. No. 80]. On August 31, 2022, after hearing plaintiff's discovery objections, the magistrate judge sustained in part and overruled in part the objections, and ordered plaintiff to serve her responses to Halper's interrogatories and produce the requested documents to Halper by noon on September 3, 2022. [Dkt. No. 87]. In a hearing held on September 2, 2022, and by an Order entered the same day, this Court denied plaintiff's appeal of the magistrate judge's decision and affirmed the set deadlines; however, as a courtesy to plaintiff to allow her to avoid having to incur the expense and inconvenience of travelling to the United States for her deposition, the Order permitted plaintiff to appear for her deposition by video in London. [Dkt. No. 91]. The Order also warned plaintiff that failure to appear for the deposition could result in dismissal of her complaint and entry of default against her as to Halper's counterclaims. Id.

During that September 2, 2022 hearing, McAdoo Gordon advised the Court for the first time that Lokhova had terminated her representation during the previous week and that communications between them had broken down. McAdoo Gordon was instructed to make her best effort to communicate with Lokhova about the September 6 deposition. Plaintiff did not comply with the August 31, 2022 Order requiring her to respond to Halper's discovery requests by noon on September 3, 2022, although McAdoo Gordon separately produced some government documents that were partially responsive to Halper's requests. [Dkt. No. 96] ¶¶ 4-5. McAdoo Gordon later informed the Court that she had advised Lokhova of the new location for the September 6 deposition and that during the evening of September 5, 2022, Lokhova contacted her in writing to convey that she would be unable to appear for her deposition and no longer wanted McAdoo Gordon to represent her. [Dkt. No. 105] ¶¶ 4-5. The deposition, for which plaintiff had received over a month's notice and which was moved to London, was not

cancelled; however, plaintiff did not appear for the deposition. [Dkt. No. 100] ¶ 5. In response, on September 7, 2022, Halper filed a Motion to Dismiss, for Default Judgment, and to Strike Plaintiff's Motion and Declaration, which sought dismissal of plaintiff's Amended Complaint and her pending motion to dismiss Halper's counterclaims, as well as a default judgment on the counterclaims. [Dkt. No. 103].

On September 8, 2022, plaintiff called chambers and attempted to speak with the undersigned judge about something "medical." The phone call was immediately ended, and an Order was issued which directed plaintiff to provide "credible evidence" of any "health emergency" that would explain her failure to communicate with her counsel and to comply with court-ordered discovery. [Dkt. No. 104]. On that day, McAdoo Gordon formally moved to withdraw, and that motion was granted by an Order issued the same day, which directed McAdoo Gordon to provide Lokhova's email address to enable the Court to communicate with plaintiff. [Dkt. No. 106].

On September 9, 2022, a Show Cause Order was issued giving plaintiff 21 days to show cause why her Amended Complaint should not be dismissed with prejudice and why a default judgment should not be entered in Halper's favor on his counterclaims due to her failure to comply with her court-ordered discovery obligations. [Dkt. No. 108]. That Order was emailed to plaintiff at the address her counsel had provided. On September 13, 2022, the Court received an unsigned letter from plaintiff that was sent from London via DHL. [Dkt. No. 110]. The letter explained that plaintiff was unable to attend the September 6 deposition because of a health emergency and scheduled medical appointments and requested a stay of the litigation until the resolution of her health issues. Id. at 2. The letter also explained that plaintiff has been "continuously 'in dialogue' (a witness) with Special Counsel John Durham's team," she had

been "made aware" of concerns that Halper's discovery requests posed for the Special Counsel's investigation, and she was unable to comply with court-ordered discovery without violating a purported confidentiality agreement with the Special Counsel. Id. at 2-3.

As explained in an Order issued the same day, plaintiff's unsigned letter was not accepted as a proper response to the Show Cause Order, because it was not signed under the penalty of perjury, was not notarized, and failed to attach any documentation supporting plaintiff's assertion that a medical condition affected her compliance with discovery. [Dkt. No. 112]. The Order also advised plaintiff that if the Special Counsel had any concerns about the scope of discovery at issue in this litigation, he could have intervened but had not done so.[3] Id. The Order was emailed to plaintiff, and there is no indication in the record that the email was undeliverable.

Having received no further communication from plaintiff, by an Order entered on October 7, 2022, Halper's Motion to Dismiss, for Default Judgment, and to Strike Plaintiff's Motion and Declaration was granted, plaintiff's Amended Complaint was dismissed with prejudice, and judgment on the counterclaims was granted in Halper's favor as to plaintiff's liability. [Dkt. No. 116]. The Order also directed Halper to file within seven days his specific request for monetary damages and injunctive relief. Id. The Order was emailed to plaintiff and sent by first class mail to the return address listed on the DHL envelope in which plaintiff's unsigned letter had been sent. There is no indication in the record that either the first class mail or email were returned as undeliverable.

On October 14, 2022, Halper filed the pending Application for Judgment Remedies. [Dkt. No. 117]. He also filed a Motion to Seal Temporarily his Application for Judgment

---

[3] In the two months since plaintiff's unsigned letter was received, neither the Special Counsel nor anyone from his office has notified the Court that any of the Court's orders on Halper's discovery requests posed any problems for their investigation.

Remedies and exhibits out of courtesy to plaintiff, because one of the documents referenced in the Application for Judgment Remedies had been produced to defense counsel during discovery under a protective order requested by plaintiff's former counsel. [Dkt. No. 124]. By an Order issued on October 19, 2022, plaintiff was given 14 days in which to object to the unsealing of those materials. [Dkt. No. 127]. Again, there is no evidence in the record of either the email or first class mailing of that Order being returned as undeliverable. No response having been received from plaintiff, on November 15, 2022, the materials were unsealed. [Dkt. No. 128].

In his Application for Judgment Remedies, Halper seeks $37,500.00 in presumed damages based on the multiple defamatory statements contained in plaintiff's book, Spygate Exposed; $37,500.00 in punitive damages; $95,250.00 in attorney's fees; and $3,015.99 in costs, as well as an injunction prohibiting Lokhova from ever suing Halper again for any allegations raised in either Lokhova I, Lokhova II, or Spygate Exposed. [Dkt. No. 117-3]. Halper has certified that a copy of this Application was sent to Lokhova by email and regular mail on October 17, 2022, [Dkt. No. 122], and as of December 1, 2022, she has neither requested an extension of time in which to reply nor filed any opposition. Plaintiff's failure to respond to any of the Court's orders issued since September 13, 2022 is clear evidence that she has abandoned her Amended Complaint and defaulted on Halper's counterclaims and request for remedies.

Having reviewed Halper's Application for Judgment Remedies and its attachments, especially Exhibits 5 and 6, Halper has clearly established that Lokhova defamed him in Spygate Exposed by, among other statements, calling him a "deceiver," [Dkt. No. 117-9] at 4, a "known professional deceiver," id. at 7, and a "liar," id. at 19, and writing that he "appears to lie, bully, and blackmail," id. at 6, and "weave[s] his web of deceit," id. at 16.

8

Although the Court has found plaintiff liable to the defendant on his defamation claim, Halper has not requested any damages for his tortious interference with business expectancies claim, and there is no evidence of any actual damages other than presumed damages. Given evidence that plaintiff did not have the financial resources to pay the sanctions previously imposed on her and Biss in this litigation, see [Dkt. No. 117-10], a reduced award of $1,000.00 in presumed damages and $10,000.00 in punitive damages is appropriate for the defamation claim. Moreover, because there is no evidence in the record of Halper suffering any loss of business, and Halper has not claimed any damages for tortious interference with contract, Counterclaim II will be dismissed.

Halper's request for attorney's fees and expenses is justified as a sanction under Fed. R. Civ. P. 37(d)(3) for noncompliance with discovery obligations. Rule 37 authorizes a court to order sanctions for a party's failure to attend its own deposition, produce documents, or answer interrogatories, and provides that "[i]nstead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). Plaintiff's unjustified noncompliance with discovery orders, including failing to serve her discovery responses on Halper by noon on September 3, 2022, as well as her failure to attend her video deposition in London on September 6 despite receiving over a month's notice of that date, warrant an award of sanctions. Nothing in the record indicates that plaintiff's failure to respond to Halper's discovery requests or attend her deposition was justified or that an award of expenses would be unjust.

In addition to Rule 37, in Counterclaim III, Halper invokes Virginia's anti-SLAPP statute to support his request for attorney's fees and costs. As relevant here, that statute provides that "[a] person shall be immune from civil liability" for claims of defamation "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party" and that "[a]ny person who has a suit against him dismissed . . . pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs." Va. Code Ann. § 8.01-223.2. Here, Halper contends that the statements that he allegedly made to Lokhova's publishers that were the subject of the Amended Complaint were matters of public concern and therefore protected by the immunity statute, pointing out that Russian interference in the 2016 election is a matter of public concern. [Dkt. No. 117-3] at 12-14; [Dkt. No. 65] ¶¶ 82-85. Halper argues that because plaintiff's defamation and tortious interference with contract claims were dismissed and the Court granted judgment on his counterclaims, including Counterclaim III, he is entitled to a fee award under the anti-SLAPP statute.

Halper's request for attorney's fees under Virginia's anti-SLAPP statute will be denied, because the Amended Complaint was not dismissed pursuant to a finding of immunity under the statute. In Hutchens v. McDougal, a court in this district declined to award attorney's fees and costs to a defendant when a plaintiff voluntarily dismissed his defamation case, reasoning that "to seek attorney's fees under Virginia's anti-SLAPP statute, the dismissal of the case must be pursuant to the immunity statute confers" and that there was no "decision by [the] [c]ourt on the merits of the case, much less a dismissal on the merits." No. 1:21-cv-982 (RDA/TCB), 2022 WL 2440347, at *2 (E.D. Va. July 5, 2022). In this case, plaintiff's defamation and tortious interference claims were dismissed because she failed to comply with the Court's Order to show

cause why her Amended Complaint should not be dismissed with prejudice and why a default

judgment should not be entered in Halper's favor as to his counterclaims in light of her failure to

prosecute this civil action. The Court did not reach the merits of Halper's claim of immunity

under the anti-SLAPP statute. Moreover, the Fourth Circuit has held that Virginia's anti-SLAPP

statute "does not require . . . and does not create a presumption in favor of a fee award" and

instead leaves a fee award to the court's discretion. Fairfax v. CBS Corporation, 2 F.4th 286,

297 (4th Cir. 2021). For these reasons, attorney's fees and costs will not be awarded under that

statute, and Counterclaim III will be dismissed; however, given plaintiff's contemptuous and

unreasonable conduct in the discovery process, an award of reasonable attorney's fees and

expenses under Fed. R. Civ. P. 37 is appropriate.

　　　To determine those fees, the Court must first establish a "lodestar figure by multiplying

the number of reasonable hours expended times a reasonable rate," Robinson v. Equifax Info.

Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009), and then apply the following twelve factors to

decide whether the lodestar should be increased or decreased:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered; (4) the attorney's
> opportunity costs in pressing the instant litigation; (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount in controversy and the results
> obtained; (9) the experience, reputation and ability of the attorney; (10) the
> undesirability of the case within the legal community in which the suit arose; (11) the
> nature and length of the professional relationship between attorney and client; and (12)
> attorneys' fees awards in similar cases.

Id. at 243-44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226, n.28 (4th Cir. 1978)). A

court "need not address all twelve factors independently." Signature Flight Support Corp. v.

Landow Aviation Ltd. P'ship, 730 F. Supp. 2d 513, 520 (E.D. Va. 2010). After determining the

lodestar figure, a court should subtract fees incurred for "unsuccessful, unrelated claims," and

then "award[] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Robinson, 560 F.3d at 244 (quoting Grissom v. Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008)).

Halper's attorney, Terrance G. Reed ("Reed"), is the only attorney for whom fees are being sought, and the Court previously determined that his hourly rate of $500 is reasonable given his approximately 36 years of litigation experience as of July 2021. See Lokhova II, 2021 WL 2903237, at *10. Reed's hourly rate is well below the customary rates for Northern Virginia attorneys with his level of experience pursuant to the widely-used Vienna Metro matrix, which provides that a reasonable rate for an attorney with over 20 years of experience is $505 to $820 per hour. See Vienna Metro LLC v. Pulte Home Corp., No. 1:10-cv-502, 2011 WL 13369780, at *6 (E.D. Va. Aug. 24, 2011).

Halper seeks to recover attorney's fees for 190.5 hours of work expended on this litigation from July 15, 2022 to October 7, 2022, representing the "time period in which this Court authorized discovery but plaintiff refused to participate . . . until dismissal" of the Amended Complaint. [Dkt. No. 117-3] at 11; [Dkt. No. 126-1] ¶ 4. Under Kimbrell's factor one (the time and labor expended), the number of hours will be reduced, because fees and expenses will be awarded only under Rule 37 and therefore must be "caused by the failure" of plaintiff to comply with discovery obligations. Fed. R. Civ. P. 37(d)(3). Accordingly, Halper is entitled to fees and expenses incurred only after the breakdown in discovery, which began when plaintiff's former counsel, McAdoo Gordon, filed a motion for protective order on August 19, 2022.

Based on Exhibit 3, Reed billed 14.5 hours to respond to plaintiff's motion for protective order, 7 hours to respond to plaintiff's appeal of the magistrate judge's ruling on that motion, 22 hours to respond to plaintiff's objections to Halper's requests for interrogatories and document

productions, 9 hours to draft notices of plaintiff's noncompliance with discovery obligations and

the Court's orders, and 8.25 hours to draft a motion to dismiss and for default judgment.  See

[Dkt. No. 117-6].  Reed also billed 39 hours to prepare for Lokhova's ultimately aborted

deposition,[4] of which 13 hours billed from August 5 to August 14 will be excluded, because that

work was expended before plaintiff violated discovery deadlines; however, plaintiff

subsequently failed to produce discovery that would have assisted defense counsel's preparation

for her deposition, and therefore the remaining 26 hours billed are recoverable.  In total, Reed

billed 86.75 hours of work that can be attributed to plaintiff's noncompliance with discovery

obligations, yielding fees in the amount of $43,375.00.

The Court finds that a slight reduction of Reed's fees is justified because his time entries

are lacking in detail and use an imprecise method of billing, as he has recorded work largely in

hour or half-hour increments, and only in quarter-hour increments in a handful of entries.[5]  See

Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 152 F. Supp. 3d 503, 520 (E.D.

Va. 2015) (reducing fee award for inadequate documentation involving "vague task

descriptions"); Won Kim v. U.S. Bank, N.A., No. 1:12-CV-986, 2013 WL 3973419, at *3 (E.D.

Va. July 29, 2013) (observing that hours recorded by counsel are "conveniently round and may

overstate the effort expended to accomplish the tasks associated with each billing line").  A fee

claimant "must submit documentation that reflects 'reliable contemporaneous recordation of time

_____

[4] In his affidavit, Reed states that he spent 43.25 hours preparing for Lokhova's deposition.
[Dkt. No. 126-1] ¶ 4.  Excluding the time spent drafting and serving the deposition notice, the
record reflects 39 hours of work relating to the deposition.

[5] For example, Reed billed continuous three- to four-hour blocks of time for drafting an
opposition to plaintiff's protective order motion each day from August 19 to August 22, 2022,
[Dkt. No. 117-6] at 6, continuous five- to six-hour blocks of time each day from August 27 to
August 29, 2022 for "draft opp to [p]laintiff's discovery objections," id. at 7, and continuous
five- to six-hour blocks of time each day from September 2 to September 5, 2022 for generic
"deposition preparation," id. at 9.

spent on legal tasks that are described with reasonable particularity'" to enable a court to exclude unreasonably expended hours. Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (quoting EEOC v. Nutri/System, Inc., 685 F. Supp. 568, 573 (E.D. Va. 1988)). Many of Reed's billing entries are insufficiently specific and there is no indication that they were contemporaneously recorded.[6] Based on the inadequate billing statements and the fact that plaintiff's motion for a protective order and discovery objections did not raise any particularly difficult or novel questions (Kimbrell's factor two), a ten percent reduction is justified. The Court has considered the remaining Kimbrell's factors and finds that none justify a further increase or decrease of the fee amount. In sum, Halper will be awarded $39,037.50 in attorney's fees.

Halper also seeks to recover $3,015.99 in costs representing the cost of arranging plaintiff's video deposition in London. See [Dkt. No. 117-7]. Because the Court permitted the deposition to occur in London by video for plaintiff's convenience and plaintiff failed to appear, the total amount of those costs will be awarded, which will be added to the attorney's fees, resulting in a total of $42,053.49 in attorney's fees and costs.

Lastly, Halper, whose "primary objective is to prevent Lokhova III," seeks a permanent injunction prohibiting Lokhova from suing Halper for any allegations that were the subject of Lokhova I, Lokhova II, or her book Spygate Exposed.[7] [Dkt. No. 117-3] at 2. The facts in the

---

[6] To the contrary, the billing statement reflects that on September 7, 2022, Reed billed six-and-a-half hours on drafting the motion to dismiss for lack of prosecution and one hour for "attend hearing," but there was no hearing in this civil action on that date. [Dkt. No. 117-6] at 9. A hearing was held on September 9, 2022 on plaintiff's pending motions, which were denied, and a hearing on Halper's motion to dismiss for lack of prosecution was held on October 7, 2022.

[7] Although Halper points out that "some courts have issued injunctions directly against defamatory speech" and states in a heading in his Application for Judgment Remedies that a "speech injunction is justified," [Dkt. No. 117-3] at 20, his request for injunctive relief focuses primarily on an injunction that prevents plaintiff from filing any new lawsuits against him and

record and the history of litigation between the parties, including plaintiff's filing of two lawsuits against Halper based on related allegations of defamation, support issuing the requested injunction against plaintiff.

## II. CONCLUSION

For the reasons explained above, Halper's Application for Judgment Remedies [Dkt. No. 117] will be GRANTED IN PART by an Order to be issued with this Memorandum Opinion.

Entered this 2 day of December, 2022.

Alexandria, Virginia

_____ /s/ _____
Leonie M. Brinkema
United States District Judge

---

not a speech injunction. Accordingly, to the extent Halper is requesting a speech injunction, the Court finds that such relief is not warranted.